1  Jeffrey N. Pomerantz, Esq. (CA Bar No. 143717)
   Gillian N. Brown (CA Bar No. 205132)
2  PACHULSKI STANG ZIEHL & JONES LLP
   10100 Santa Monica Boulevard, 13th Floor
3  Los Angeles, CA  90067
   Telephone: 310-277-6910 / Facsimile: 310-201-0760
4  E-mail: jpomerantz@pszjlaw.com; gbrown@pszjlaw.com

5  James W. Walker (admitted *pro hac vice*)
   Justin S. Levy (admitted *pro hac vice*)
6  COLE SCHOTZ P.C.
   2515 McKinney Avenue, Suite 1350
7  Dallas, TX  75201
   Telephone: 469-557-9390 / Facsimile: 469-533-0361
8  E-mail: jwalker@coleschotz.com; jlevy@coleschotz.com

9  Attorneys for Plaintiff, The
   Wimbledon Fund, SPC (Class TT)

10

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13                    **WESTERN DIVISION**

14  THE WIMBLEDON FUND, SPC (CLASS         C.D. Cal. Case No. 2:15-cv-6633-
    TT),                                   CAS-AJWx
15
                        Plaintiff,
16
    vs.
17
    GRAYBOX LLC; INTEGRATED                **OPPOSITION TO MOTIONS TO**
18  ADMINISTRATION; EUGENE SCHER,          **DISMISS FILED BY GRAYBOX,**
    AS TRUSTEE OF BERGSTEIN TRUST;         **LLC, EUGENE SCHER, AS**
19  and CASCADE TECHNOLOGIES CORP.,        **TRUSTEE OF BERGSTEIN**
                                           **TRUST, AND CASCADE**
20                      Defendants.        **TECHNOLOGIES CORP. [DOC.**
                                           **NO. 71] AND BY INTEGRATED**
21                                         **ADMINISTRATION [DOC. NO.**
                                           **72]; MEMORANDUM OF POINTS**
22                                         **AND AUTHORITIES IN SUPPORT**
                                           **THEREOF**
23

24
                                           Hearing:
25                                         Date: November 23, 2015
                                           Time: 10:00 a.m.
26                                         Location: Crtrm 5, Second Floor
27                                                   312 N. Spring Street
                                                     Los Angeles, CA 90012-4701
28

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES.................................................1

I. INTRODUCTION. ....................................................................................................1

II. FACTUAL ALLEGATIONS IN THE COMPLAINT. ............................................3

III. THIS COURT SHOULD SUMMARILY DENY THE MOTIONS.......................5

A.   The Complaint's Detailed Factual Allegations Satisfy the Applicable Pleading

Standards for the Fund's Fraudulent Transfer Claims. ...............................................5

B.   Defendants Are Able To Meaningfully Respond To The Complaint, And

Therefore, Their Requests For Alternative Relief Should Also Be Denied. ............10

C.   The Court May Take Judicial Notice Of The Injunction Motion And The Orders

Granting Same. .........................................................................................................12

IV. CONCLUSION. ...................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Albergo v. Cuxhaven Holdings, Ltd.,*
No. 11CV1787 DMS (MDD), 2011 WL 6300217
(S.D. Cal. Dec. 15, 2011) ..................................................................7, 9, 12

*Allstate Insurance Company. v. Countrywide Financial Corporation,*
842 F. Supp. 2d 1216 (C.D. Cal. 2012)...................................................9

*Angelotti Chiropractic, Inc. v. Baker,*
791 F.3d 1075 (9th Cir. 2015)................................................................12

*Bautista v. Los Angeles Cnty.,*
216 F.3d 837 (9th Cir. 2000)...........................................................10, 11

*Bourke v. City of San Diego,*
No. 14-cv-1027-BAS (RBB), 2015 WL 687092 (S.D. Cal. Feb. 18, 2015)............11

*Burnett v. Rowzee,*
No. SA CV 07-641 DOC (ANx), 2007 WL 4754539 (C.D. Cal. 2008)....................9

*Gerritsen v. Warner Bros. Entm't Inc.,*
No. CV 14-03305 MMM (CWx), 2015 WL 4069617 (C.D. Cal. Jan. 30, 2015).....13

*Hyosung (Am.), Inc. v. Hantle USA, Inc.,*
No. C 10-02160 SBA, 2011 WL 835781 (N.D. Cal. Mar. 4, 2011) ......................6, 8

*In re AFI Holding, Inc.,*
525 F.3d 700 (9th Cir. 2008)....................................................................7

*In re Llamas,*
No. 2:10-bk-17144-PC, 2011 WL 7637254 (C.D. Cal. Dec. 12, 2011) ...................14

*Jones v. Ventura Cnty. Sheriff's Deputies,*
No. CV 13-0062-JAK (DTB), 2013 WL 6018033
(C.D. Cal. Nov. 13, 2013) .......................................................................10

*Kelleher v. Kelleher,*
No. 13-cv-05450, 2011 WL 117805 (N.D. Cal. Mar. 19, 2014) ........................6, 8

*Lee v. Fed. Street LA,*
No. 2:14-cv-062640CAS0SS, 2015 WL 179787 (C.D. Cal. Jan. 12, 2015)............11

*Martinez v. CACH, LLC,*
No. 10CV1625 DMS (JMA), 2011 WL 2560251 (S.D. Cal. June 27, 2011)............9

*Munaf v. Geren,*
553 U.S. 674 (2008) ...............................................................................15

*Ness v. Ciba-Geigy Corp. USA,*
317 F.3d 1097 (9th Cir. 2003)..................................................................7

*NovelPoster v. Javitch Canfield Group,*
No. 13-cv-05186-WHO, 2014 WL 5594969 (N.D. Cal. Nov. 3, 2014) ...................13

*Palmdale 3D, LLC v. Calamos,*
No. CV-14-7523-MWF, 2015 WL 71561 (C.D. Cal. Jan. 5, 2015) ................6, 8, 14

*Phillips v. Girdich,*
408 F.3d 124 (2d Cir. 2005)....................................................................11

*Rodriguez v. SGLC, Inc.,*
No. 2:08-cv-01971-MCE-KJN, 2010 WL 2943128 (E.D. Cal. July 23, 2010)........11

*Semegen v. Weidner,*
780 F.2d 727 (9th Cir. 1985)....................................................................6

*Sunnyside Development Company v. Cambridge Display Technology Limited,*
No. C 08-01780 MHP, 2008 WL 4450328 (N.D. Cal. Sept. 29, 2008)...................10

*TD Ameritrade, Inc. v. The Nev. Agency & Trust Co.,*
No. 3:08-CV-00245-LRH-RAM, 2008 WL 4787138 (D. Nev. Oct. 30, 2008) .......13

ii

**Statutes**

Cal. Civ. Code § 3439.04.................................................................................6, 8
FRCP Rule 9 .............................................................................................6, 7
FRCP Rule 10 .......................................................................................10, 11
FRCP Rule 12 .......................................................................................10, 12

DOCS_LA:293890.3 93807/001

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Plaintiff, The Wimbledon Fund, SPC (Class TT) (the "Fund" or "Plaintiff") files this Opposition to the Motions to Dismiss (Doc. Nos. 71, 72) (collectively, the "Motions") filed by Graybox, LLC ("Graybox"), Eugene Scher, as Trustee of Bergstein Trust ("Scher"), and Cascade Technologies Corp. ("Cascade") and by Integrated Administration ("Integrated") (collectively, "Defendants").

## I.   INTRODUCTION.

The Complaint sets forth specific allegations concerning the $17.7 million fraudulent investment scheme perpetrated by a sham entity, Swartz IP Services Group Inc. ("SIP") and, specifically, its four alter ego principals (the "Alter Egos").  The scheme victimized the Fund and directly benefited Defendants—third parties that are operated by and/or for the benefit of the Alter Egos—who received more than $6.7 million of the Fund's investment through a series of fraudulent transfers authorized by the Alter Egos.  For each Defendant, the Complaint identifies:

- the total number of transfers received from SIP;
- the total amount of the transfers received from SIP;
- the date range (November 2011 through July 2012) within which SIP made the transfers; and
- the specific bank account (Wells Fargo or Deutsche Bank) from which SIP made the transfers.

Because the Complaint easily satisfies the applicable pleading standards for the Fund's actual and constructive fraudulent transfer claims, the Court should summarily deny the Motions.

What makes the Motions particularly meritless is the fact that the Court already held, in orders (Doc. Nos. 54, 56, 70) granting the Fund's motion for a preliminary injunction against Graybox (Doc. No. 16) (the "Injunction Motion"), that the Fund demonstrated a likelihood of success on its fraudulent transfer claims against Graybox.  As Defendants are well aware, these orders were supported by voluminous evidence, including bank records showing the specific dates and amounts of distinct transfers to Defendants (not just Graybox).  The bank records also supported the Court's findings regarding the badges of fraud and SIP's insolvency—common elements to the fraudulent transfer claims asserted against each Defendant.  By virtue of the Injunction Motion and the orders granting same, Defendants had additional notice of the facts (and evidence) supporting the Fund's claims **before Defendants filed the Motions**.  The Court is entitled to take judicial notice of these documents—public records that the Fund previously relied upon in drafting the Complaint—but need not do so because of the sufficiency of the Fund's well-pled factual allegations.

The Motions represent, in truth, another attempt by Defendants to further delay resolution of this case on its merits and further burden the Fund as it prepares opposition to Graybox's pending appeal of the final order granting the Injunction Motion.  Absent from the law is any authority—and Defendants cite to none—to support the severe relief Defendants seek in the Motions: **dismissal of the Complaint with prejudice.** The Fund respectfully requests that the Court deny the Motions in their entirety.

DOCS_LA:293890.3 93807/001

## II.      FACTUAL ALLEGATIONS IN THE COMPLAINT.

The Alter Egos (David Bergstein, Jerome Swartz, Aaron Grunfeld, and Kiarash Jam) formed SIP in December 2010 as a vehicle to perpetrate a fraudulent investment scheme against the Fund.  [Compl., ¶¶ 10-11].  SIP was, at all times, a fictitious entity, with no legitimate operation and no assets.  [Compl., ¶¶ 11-14].

In November 2011, the Fund and SIP entered into a purported investment agreement (the "NPA"), pursuant to which the Fund purchased $17.7 million of so-called "reference notes" issued by SIP (the "SIP Notes").  [Compl., ¶¶ 15-17].  As detailed in the Complaint, the NPA contains several provisions suggesting that SIP was a viable business entity and that the Fund's investment was legitimate.  [Compl., ¶ 16].

Shortly after SIP received the Fund's $17.7 "investment" in November and December 2011, the Alter Egos authorized a series of illicit transfers of the Fund's investment from SIP's Deutche Bank and Wells Fargo bank accounts to Defendants.  [Compl., ¶¶ 18-27].  Specifically, between November 2011 and July 2012, the Alter Egos authorized the following transfers which were entirely inconsistent with, and contravened, the NPA's express terms:

- from the Deutsche Bank accounts, sixteen transfers totaling $1.8 million to Graybox, of which David Bergstein is the sole managing member;
- from the Deutsche Bank accounts, sixteen transfers totaling approximately $2 million to Integrated, an entity controlled by David Bergstein and Kiarash Jam, who are Integrated's majority shareholders, officers, and/or directors;

3

- from the Deutsche Bank accounts, three transfers totaling $125,000 to Scher, who is the marketing director of K.Jam Media (an entity owned by Kiarash Jam and which shares a "business" address with SIP) and the trustee for a trust that owns David Bergstein's real property throughout the country;
- from the Deutsche Bank accounts, a $200,000 payment to Cascade, of which Jerome Swartz is a director and Scher the CEO and COO;
- from the Wells Fargo account, two transfers totaling $300,000 to Graybox;
- from the Wells Fargo account, a $100,000 transfer to Scher; and
- from the Wells Fargo account, six withdrawals totaling approximately $2.2 million, which (upon information and belief) were diverted to Defendants.

[Compl., ¶¶ 18-27].  With respect to the Deutsche Bank accounts, nearly half of the Fund's $12.5 million "investment" was dissipated within just twelve days of receipt, and the accounts were entirely depleted within eight months of the "investment." [Compl., ¶ 18].  With respect to the Wells Fargo account, it had a December 2011 account balance of approximately $68,000.  [Compl., ¶ 24].  The Fund's investment of $5.2 million was wired into that account at the beginning of that month.  [Compl., ¶ 24].

SIP, which never did any legitimate business, received no value in exchange for these undisclosed transfers and was insolvent at the time it made the transfers. [Compl., ¶¶ 34, 36, 37, 46, 48, 49, 57, 59, 60, 68, 70, 71].  Defendants had full knowledge that the transfers were fraudulent.  [Compl. ¶¶ 38, 50, 61, 72].  Indeed, the transfers were made solely for the Alter Egos' direct personal benefit.  [Compl. ¶¶ 34, 46, 57, 68].

Pursuant to the NPA, between August 2012 and February 2013, the Fund made redemption requests on SIP and declared the SIP Notes immediately due and payable. [Compl., ¶¶ 28-29]. SIP ignored the Fund's redemption requests and the acceleration notice. [Compl., ¶¶ 28-29]. The Texas Secretary of State ultimately forfeited SIP's certificate of formation on February 8, 2013—the same day the Fund sued SIP for breach of contract in New York state court. [Compl., ¶¶ 30-31]. In July 2015, the court in New York entered an $18,171,635 award against SIP and in favor of the Fund. [Compl., ¶ 31].

On September 9, 2015, the Fund filed the Complaint asserting claims for actual and constructive fraudulent transfers against Defendants pursuant to the California Uniform Fraudulent Transfer Act ("CUFTA").

## III.    THIS COURT SHOULD SUMMARILY DENY THE MOTIONS.

### A.    The Complaint's Detailed Factual Allegations Satisfy the Applicable Pleading Standards for the Fund's Fraudulent Transfer Claims.

The Complaint sets forth detailed allegations supporting the Fund's fraudulent transfer claims, and therefore, the Motions should be denied. As alleged in the Complaint, the Fund seeks to avoid the subject fraudulent transfers on the basis that they are either "actual fraudulent transfers" or, alternatively, "constructive fraudulent transfers."[1] [Mot., Doc. No. 71 at 5; Mot., Doc. No. 72 at 7 (both citing Cal. Civ.

---

[1] The Injunction Motion articulates the relevant law governing actual and constructive fraudulent transfer claims. [Inj. Mot., Doc. No. 16 at 12-15]. Defendants suggest that the Fund was required to expressly identify the theory on which it seeks to avoid the fraudulent transfers. [Mot., Doc. No. 71 at 5; Mot., Doc. No. 72 at 6-7]. The law,

5

Code § 3439.04(a)(1), (2))].  As Defendants acknowledge, claims for constructive

fraudulent transfers are not subject to the heightened pleading standard in Federal

Rule of Civil Procedure 9(b).  [Mot., Doc. No. 71 at 6; Mot. Doc. No. 72 at 7 (both

stating that Rule 9(b) only applies to actual fraudulent transfer claims)].  *See Hoysung*,

2011 WL 835781 at *6 (citation omitted) (noting that Rule 9(b) is inapplicable

because a constructive fraudulent transfer "does not 'sound in fraud'").  Thus, to

survive the Motions, the Complaint need only "contain sufficient factual matter . . . to

'state a claim to relief'" for a constructive fraudulent transfer "'that is plausible on its

face.'"  *See Palmdale 3D, LLC v. Calamos*, No. CV-14-7523-MWF, 2015 WL 71561,

at *3 (C.D. Cal. Jan. 5, 2015) (quotation marks omitted).

　　　　A claim to avoid an actual fraudulent transfer, on the other hand, is subject to

Rule 9(b)'s heightened pleading standard.  *See Kelleher v. Kelleher*, No. 13-cv-05450,

2011 WL 117805, at *4 (N.D. Cal. Mar. 19, 2014).  To satisfy that standard,

"allegations must be 'specific enough to give defendants notice of the particular

misconduct which is alleged to constitute the fraud charged so that they can defend

against the charge and not just deny that they have done anything wrong.'"  *Id.*

(quoting *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)); *accord Hyosung*,

2011 WL 835781 at *5.  "This includes 'the who, what, when, where, and how of the

misconduct charged.'"  *Kelleher*, 2011 WL 117805 at *4 (quoting *Ness v. Ciba-Geigy*

however, contains no such requirement.  Indeed, consistent with the Complaint,
"[c]laims for actual fraudulent transfer and constructive fraudulent transfer 'may be
asserted as alternative theories of liability.'"  *See Hyosung (Am.), Inc. v. Hantle USA,
Inc.*, No. C 10-02160 SBA, 2011 WL 835781, *6 (N.D. Cal. Mar. 4, 2011).

6

*Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).  However, "[m]alice, intent,

knowledge, and other conditions of a person's mind may be alleged generally" under

Rule 9(b).  *Albergo v. Cuxhaven Holdings, Ltd.*, No. 11CV1787 DMS (MDD), 2011

WL 6300217, at *4 (S.D. Cal. Dec. 15, 2011).

 Importantly, actual fraudulent intent under CUFTA "'may be proven on the

basis of circumstantial evidence.'"  *Id.* (quoting *In re AFI Holding, Inc.*, 525 F.3d 700,

704 (9th Cir. 2008)).  The Ninth Circuit has also recognized that a "'special

relationship between the debtor and the transferee[,]'" including a family, friendship,

or close associate relationship, "'is one of the 'more common circumstantial indicia of

fraudulent intent.'"  *Id.* at *5 (citations omitted).

 Here, as set forth in detail above, the Complaint contains well-pled allegations

of both actual and constructive fraudulent transfers that more than sufficiently put

Defendants on notice of the wrongful conduct at issue.  The Complaint does not, as

Defendants contend, simply "allege that at some point in time, [Defendants] received

unspecified transfers from SIP, at unspecified times, in mostly unspecified

amounts[,]" nor does it "bald[ly] assert[] . . . a few badges of fraud[,]" nor does it

simply make "naked assertions of the statutory prerequisites for a constructive

fraudulent transfer [without] further factual enhancement."  [Mot., Doc. No. 71 at 7, 9,

10; Mot., Doc. No. 72 at 10-11].

 To the contrary, the Complaint includes detailed allegations regarding: (i) SIP's

fraudulent intent, including allegations that SIP was a sham entity that was insolvent

7

at the time it made the subject transfers; (ii) the transfers were made to Defendants who were SIP's insiders; (iii) SIP, through the Alter Egos, was in continuous possession of the Fund's investment; and (iv) the Fund was unaware of the transfers.[2] The Complaint also contains the specific time period within which Defendants received the illicit transfers, the total number of transfers, the total amounts of the transfers, and the identity of the transferor banks.  The Complaint further alleges that SIP did not receive reasonably equivalent value in exchange for the transfers to Defendants.  In fact, as alleged, SIP received **_no value_**, failed to honor the Fund's redemption requests, and caused the Fund's $17.7 million investment to vanish in a matter of several months.

In short, the Complaint "includes 'the who, what, when, where, and how of the misconduct charged'" and unmistakably gives Defendants notice of the misconduct at issue, such that Defendants can defend against the Fund's allegations.  *See Kelleher*, 2011 WL 117805 at *4.  Under these circumstances, the Court should deny the Motions.[3]

---

[2] *See* Cal. Civ. Code § 3439.04(a)(1); *Kelleher*, 2014 WL 1117805 at *5 (citation omitted) (stating that "[t]he presence of a single badge of fraud may spur mere suspicion; the confluence of several can constitute conclusive evidence of actual intent to defraud, absent 'significantly clear evidence of a legitimate supervening purpose'").
[3] *See, e.g.*, *Palmdale*, 2015 WL 71561 at *5 (denying motion to dismiss fraudulent transfer claims where complaint "allege[d] a number of badges of fraud[,]" including that the recipients of the transfers were insiders and controlling members of the transferor entity); *Kelleher*, 2014 WL 1117805 at *5 (denying motion to dismiss fraudulent transfer claims where plaintiff alleged, *inter alia*, that the transfers were never disclosed and that the transferee was an insider); *Hyosung*, 2011 WL 835781 at *5 (denying motion to dismiss fraudulent transfer claims where plaintiffs alleged, "in

In urging dismissal, Defendants make several additional unpersuasive arguments.  They first incorrectly argue that the Fund's allegations are conclusory because they "parrot the statutory language" in CUFTA.  [Mot., Doc. No. 71 at 8, 10; Mot., Doc. No. 72 at 10, 12].  However, the law does not prohibit the Fund from including allegations that mirror the relevant statutory provisions underlying the Fund's claims.  Moreover, allegations regarding the solvency and fraudulent nature of a fictitious entity are not conclusory merely because they refer to circumstantial evidence.  *See Albergo*, 2011 WL 6300217, at \*4-5.  In addition, the Fund does not merely identify Defendants as third parties that are operated by and/or for the benefit of the Alter Egos—instead, the Complaint articulates each Defendant's direct relationship to the Alter Egos.

Defendants also rely on several inapposite cases.  [*See* Mot. Doc. No. 71 at 9; Mot. Doc. No. 72 at 10-11].  In *Martinez v. CACH, LLC*, No. 10CV1625 DMS (JMA), 2011 WL 2560251, at \*5 (S.D. Cal. June 27, 2011), for instance, the complaint was dismissed because—unlike here—the plaintiff did "not identify any specific alleged transfers of assets or include allegations regarding the amounts, mechanisms, or timing of such transfers."  The court in *Allstate Insurance Company. v. Countrywide Financial Corporation*, 842 F. Supp. 2d 1216, 1230 (C.D. Cal. 2012),

---

sufficient detail, that [the transferor entity] fraudulently transferred its entire business operation to [defendant] for the purpose of rendering itself judgment-proof"); *Burnett v. Rowzee*, No. SA CV 07-641 DOC (ANx), 2007 WL 4754539 (C.D. Cal. 2008) (holding investors sufficiently pled allegations of fraudulent transfers in a Ponzi scheme context).

9

applied Illinois, not California, law and granted a motion to dismiss where—unlike here—the plaintiff only alleged two badges of fraud which were "consistent both with liability and with an innocent explanation."  Finally, in *Sunnyside Development Company v. Cambridge Display Technology Limited*, No. C 08-01780 MHP, 2008 WL 4450328, at *8 (N.D. Cal. Sept. 29, 2008), unlike here, the plaintiff merely alleged that certain fraudulent transfers were for "all or almost all" of the transferor's assets and that they were made for minimal to no consideration.

For these reasons, this Court should deny the Motions.

**B.     Defendants Are Able To Meaningfully Respond To The Complaint, And Therefore, Their Requests For Alternative Relief Should Also Be Denied.**

Near the conclusions of the Motions, Defendants hastily seek alternative relief pursuant to Rules 12(e) and 10(b).  [Mot., Doc. No. 71 at 11, 12 n.37; Mot., Doc. No. 72 at 13].  Neither request is appropriate because there is no vagueness or ambiguity in the Complaint preventing Defendants from meaningfully responding to same.

Pursuant to Rule 12(e), "[a] motion for more definite statement is only appropriate where the allegations are sufficiently unintelligible that a defendant literally cannot frame a responsive pleading."  *Jones v. Ventura Cnty. Sheriff's Deputies*, No. CV 13-0062-JAK (DTB), 2013 WL 6018033, at *2 (C.D. Cal. Nov. 13, 2013) (citations and quotations omitted).  "Further, such a motion is not the appropriate vehicle to elicit additional details of [the Fund's] claims."  *See id.* (citing *Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 843 (9th Cir. 2000)  (Reinhardt, J.,

10

concurring) ("[T]o the extent that a complaint lacks detail that the defendants believe they need to investigate the claims and prepare their defense strategy, they can obtain such detail readily through interrogatories or early depositions.")).[4]

Rule 10(b) sets forth the circumstances under which a party's claims must be set forth in numbered paragraphs.  The rule is typically implicated in cases involving numerous plaintiffs and defendants.[5]  "[The] rule was designed to facilitate the clear presentation of the matters set forth, so that allegations might easily be referenced in subsequent pleadings . . . [and] as a guideline to ensure that complaints are simple, concise, and direct."  *Phillips v. Girdich*, 408 F.3d 124, 128-129 (2d Cir. 2005) (citations and quotations omitted).    "The ultimate goals are efficiency and fairness . . . ."  *Rodriguez*, 2010 WL 2943128, at *3-4 (citation omitted).  The pleading should be accepted if the violation "does not interfere with one's ability to understand the claims or otherwise prejudice the adverse party . . . ."  *Philips*, 408 F.3d at 128 (citations omitted).

---

[4] At this early stage in the litigation, it would be unreasonable to require the Fund to plead additional factual allegations in support of its fraudulent transfer claims.  *See Lee v. Fed. Street LA*, No. 2:14-cv-062640CAS0SS, 2015 WL 179787, at *5 (C.D. Cal. Jan. 12, 2015) (citation omitted).  Despite Defendants' suggestion otherwise, [*see* Mot., Doc. No. 71 at 1], SIP provided no meaningful discovery in the underlying breach of contract action resulting in the $18 million default judgment entered against it.  In fact, despite the Fund's repeated requests, SIP did not produce a single document in the Fund's breach-of-contract action.  The below-referenced evidence was obtained from third parties, such as Wells Fargo and Deutsche Bank.

[5] *See generally Bautista*, 216 F.3d at 840-41 (fifty-one plaintiffs); *Bourke v. City of San Diego*, No. 14-cv-1027-BAS (RBB), 2015 WL 687092, at *3 (S.D. Cal. Feb. 18, 2015); *Rodriguez v. SGLC, Inc.*, No. 2:08-cv-01971-MCE-KJN, 2010 WL 2943128, at *3-4 (E.D. Cal. July 23, 2010).

11

Here, efficiency and fairness would not be promoted by demanding a more specific pleading because the Fund's claims against each Defendant are already set forth in separate counts.  The Complaint also contains distinct factual allegations supporting the claims against each Defendant, segregating the transfers for which each Defendant is potentially liable.  Finally, as explained below, by virtue of the Injunction Motion and the Court's orders granting same, Defendants were provided additional notice of the facts supporting the claims asserted against them.

### C.   The Court May Take Judicial Notice Of The Injunction Motion And The Orders Granting Same.

To the extent necessary, in evaluating Defendants' contentions regarding the purported inadequacy of the Fund's allegations and Defendants' purported inability to meaningfully respond to the Complaint, the Court may consider the Injunction Motion and the orders granting same.[6]  In particular, the Court may take judicial notice of the facts that the Fund submitted voluminous evidence in support of the Injunction Motion and that the Court made several findings in support of its holding that the Fund demonstrated a likelihood of success on its fraudulent transfer claims against

---

[6] *See Albergo*, 2011 WL 6300216, at *4 (citation omitted) ("[F]ollowing Plaintiff's successful motion for preliminary injunctive relief, there is little question that his claims are at least 'facially plausible.'"); *cf. Angelotti Chiropractic, Inc. v. Baker*, 791 F.3d 1075, 1087-88 (9th Cir. 2015) (citations and quotations omitted) ("Although the standards for a motion for preliminary injunctive relief and dismissal under Rule 12(b)(6) are not coterminous, they overlap where a court determines that the plaintiff has no chance of success on the merits.").

Graybox.[7]    For example, the Fund filed the following evidence in support of the

Injunction Motion:

- the NPA and SIP Notes, [Inj. Mot., Doc. No. 16, Exs. A, B];
- formation documents, resolutions, and bank records identifying the Alter Egos as SIP's officers and directors, [Inj. Mot., Exs. A, B, C, E, F, K, L, Y];
- November 2011, December 2011, January 2012, and September 2012 summaries for SIP's Wells Fargo and Deutsche Bank accounts, [Inj. Mot., Exs. H-J, O, P];
- Deutsche Bank records showing distinct wire transfers to Graybox, [Inj. Mot., Exs. Q-X, Z-FF];
- Deutsche Bank records showing distinct wire transfers to Integrated, [Inj. Mot., Exs. Q, U-W, DD, EE];
- Deutsche Bank records showing distinct wire transfers to Scher, [Inj. Mot., Exs. U, V];
- Wells Fargo records showing distinct wire transfers and payments to Graybox, [Inj. Mot., Exs. H, GG, HH]; and
- Wells Fargo records showing a distinct wire transfer to Scher, [Inj. Mot., Exs. H, GG].[8]

Although none of these documents show a transfer to Cascade, that omission is

harmless because: (i) as stated above, the Complaint's well-pled allegations satisfy the

Fund's pleading burdens; (ii) the "Cascade Transfer" consists of a single $200,000

wire transfer from one of SIP's two Deutsche Bank accounts to Cascade, [Compl., ¶¶

23, 67], making it simple for Cascade to investigate and defend the Fund's actual and

---

[7] *See Gerritsen v. Warner Bros. Entm't Inc.*, No. CV 14-03305 MMM (CWx), 2015 WL 4069617, at *12 (C.D. Cal. Jan. 30, 2015) (citations omitted) (citing *NovelPoster v. Javitch Canfield Group*, No. 13-cv-05186-WHO, 2014 WL 5594969, at *4 n.7 (N.D. Cal. Nov. 3, 2014)); *accord TD Ameritrade, Inc. v. The Nev. Agency & Trust Co.*, No. 3:08-CV-00245-LRH-RAM, 2008 WL 4787138, at *4-5 (D. Nev. Oct. 30, 2008) (citations omitted) (taking judicial notice of preliminary injunction and order).
[8] As explained in the Fund's reply in support of the Injunction Motion, the evidence filed by Graybox in opposition to the Injunction Motion actually bolstered the requested asset freeze.  [Reply Inj. Mot., Doc. No. 52 at 4-5].

13

1   constructive fraudulent transfer claims; and (iii) consistent with the Fund's alter-ego

2   and insider allegations, [Compl., ¶¶ 19-23], each Defendant, including Cascade, likely

3   has pre-existing knowledge of the Fund's evidence.  Finally, with respect to the

4   Court's badges of fraud and insolvency findings, [*see* Doc No. 56 at 4-6, 10-12; Doc.

5   No. 70 at 3], the Court's analysis would be identical for the Fund's actual and

6   constructive fraudulent transfer claims against the other Defendants (Scher, Cascade,

7   and Integrated).[9]

8

9   [Remainder of page left intentionally blank]

_____

[9] *See Palmdale 3D, LLC*, 2015 WL 71561 at *5 (citation omitted) ("The debtor's intent is the crucial aspect of a fraudulent conveyance claim"); *In re Llamas*, No. 2:10-bk-17144-PC, 2011 WL 7637254, at *6 (C.D. Cal. Dec. 12, 2011) (citations omitted) ("Conversely, the transferor's intent is immaterial to the constructively fraudulent transfer in which the issue is equivalence of the consideration coupled with either insolvency or inadequacy of remaining capital, or inability to pay debts as they mature.").

14

## IV.   CONCLUSION.

In sum, before Defendants filed the Motions, they had more than adequate notice of the facts supporting the Fund's claims.  Defendants may have filed the Motions for an improper purpose,[10] but the Fund simply requests that they be denied, so that the Fund may proceed to the discovery stage of this litigation.


Dated: November 2, 2015                    COLE SCHOTZ P.C.
                                                               -and-
                                           PACHULSKI STANG ZIEHL & JONES LLP

                                           By: _____/s/ Gillian N. Brown_____
                                           Jeffrey N. Pomerantz
                                           Gillian N. Brown
                                           Attorneys for Plaintiff,
                                           The Wimbledon Fund, SPC (Class TT)

---

[10] Defendants could have filed the Motions at an earlier date in an attempt to facilitate appellate review of both the Injunction Motion and the Motions, *see Munaf v. Geren*, 553 U.S. 674, 691-92 (2008), but instead, Defendants waited until the last day of their requested, extended response deadline to file the Motions, [*see* Stip., Doc. No. 46].

15

# PROOF OF SERVICE

STATE OF CALIFORNIA )
)
COUNTY OF LOS ANGELES )

I, Mary de Leon, am employed in the city and county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 10100 Santa Monica Blvd., 13th Floor, Los Angeles, California 90067.

On November 2, 2015, I caused to be served the **OPPOSITION TO MOTIONS TO DISMISS FILED BY GRAYBOX, LLC, EUGENE SCHER, AS TRUSTEE OF BERGSTEIN TRUST, AND CASCADE TECHNOLOGIES CORP. [DOC. NO. 71] AND BY INTEGRATED ADMINISTRATION [DOC. NO. 72]; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** on the parties listed on the attached service list as follows:

☐ (BY MAIL) I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ (BY EMAIL) I caused to be served the above-described document by email to the parties indicated on the attached service list at the indicated email address.

☑ (BY NOTICE OF ELECTRONIC FILING) I caused to be served the above-described document by means of electronic transmission of the Notice of Electronic Filing through the Court's transmission facilities, for parties and/or counsel who are registered ECF Users.

☑ (BY HAND DELIVERY) I caused to be served the above-described document by hand delivery to the parties as indicated on the attached service list.

I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on November 2, 2015, at Los Angeles, California.

*/s/ Mary de Leon*
Mary de Leon

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:293894.1 93807/001

## <u>SERVICE LIST</u>

**2:15-cv-06633-CAS-AJWx Notice will be sent via CM/ECF to:**

- **Anthony R Bisconti**
  tbisconti@bmkattorneys.com,admin@bmkattorneys.com
- **Gillian N Brown**
  gbrown@pszjlaw.com
- **Steven J Katzman**
  skatzman@bmkattorneys.com,admin@bmkattorneys.com
- **Paul H Levine**
  phl@smbgroup.com
- **Justin S Levy**
  jlevy@coleschotz.com
- **James W Walker**
  jwalker@coleschotz.com,ahickey@coleschotz.com,jlevy@coleschotz.

**2:15-cv-06633-CAS-AJWx Notice will be sent via hand delivery to:**

The Honorable Christina A. Snyder
U.S. District Court
312 North Spring Street
Courtroom 5, 2nd Floor
Los Angeles, CA 90012-4701