UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                          **'O'**

| Case No. | 2:15-cv-06633-CAS-AJW | | Date | November 19, 2015 |
|---|---|---|---|---|
| Title | THE WIMBLEDON FUND, SPC (CLASS TT) V. GRAYBOX, L.L.C., ET AL. | | | |

| Present: The Honorable | CHRISTINA A. SNYDER, U.S. DISTRICT JUDGE | |
|---|---|---|
| CONNIE LEE | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:**       DEFENDANTS CASCADE TECHNOLOGIES CORP, GRAYBOX LLC, AND EUGENE SCHER'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT (Dkt. 71, filed October 23, 2015)

DEFENDANT INTEGRATED ADMINISTRATION'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT (Dkt. 72, filed October 23, 2015)

The Court finds this motion appropriate for decision without oral argument.  See Fed. R. Civ. P. 78; C.D. Cal. Local Rule 7-15.  Accordingly, this matter is hereby taken under submission.

## I.    INTRODUCTION

Plaintiff, The Wimbledon Fund, SPC (Class TT) ("Wimbledon"), filed this action on August 28, 2015 against defendants Graybox, LLC. ("Graybox"), Integrated Administration ("IA"), Eugene Scher, as trustee of the Bergstein Trust ("Scher"), and Cascade Technologies, Corp. ("Cascade") (collectively, "defendants").  Compl.  In brief, the complaint alleges that Wimbledon was the victim of a fraudulent investment scheme involving an investment advisory company named Swartz IP Services Group ("SIP").  See generally  Id.  Wimbledon asserts that in November and December 2011, it invested $17.7 million dollars with SIP pursuant to a note purchase agreement, but that subsequently SIP caused this investment to be transferred to various third parties, including defendants.  Id. at 4-6.  Wimbledon asserts that these transfers violated its agreement with SIP and constituted fraudulent transfers in violation of the California Uniform Fraudulent Transfer Act ("CUFTA").  See id.  Accordingly, Wimbledon asserts

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                              **'O'**

| Case No. | 2:15-cv-06633-CAS-AJW | Date | November 19, 2015 |
|---|---|---|---|
| Title | THE WIMBLEDON FUND, SPC (CLASS TT) V. GRAYBOX, L.L.C., ET AL. | | |

claims against defendants for avoidance and recovery of fraudulent transfers pursuant to California Civil Code §§ 3439.04, 3439.05, and 3439.07.  Id. at 7-12.

On October 23, 2015, defendants Graybox, Scher, and Cascade filed a motion to dismiss plaintiff's complaint.  Dkt. 71.  The same day, defendant IA filed its own motion to dismiss plaintiffs complaint.  Dkt. 72.  On November 2, 2015, Wimbledon filed an opposition to both of the motions to dismiss.  Dkt. 77.  On November 9, 2015, Graybox, Scher, Cascade, and IA filed their respective replies. Dkt. 79, 80.  Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

The complaint alleges the following facts:  SIP was formed as a Texas corporation on December 2, 2010.  Compl. ¶ 10.  SIP's only shareholders are David Bergstein, Jerome Swartz, Aaron Grunfeld, and Kiarash Jam (the "SIP Shareholders").  Id. ¶ 11.  SIP is controlled entirely and exclusively by the SIP Shareholders.  Id.  Wimbledon contends that "[t]hese individuals created SIP for a single purpose: to shield them from personal liability arising from fraudulent conduct directly benefitting them"  Id.  Wimbledon further alleges that SIP "has no assets" and has completely failed to observe any corporate formalities, e.g., "no management committee was formed, no votes were ever taken on any issues, board of director meetings were never held, and no minutes were ever taken."  Id.

Rather, Wimbledon contends that the SIP Shareholders operated SIP as if they and SIP were a single economic entity.  Id. ¶ 12.  Specifically, they commingled their personal finances with the finances of SIP, SIP's obligations were funded on "as-need basis" from the SIP Shareholders personal bank accounts, and they regularly siphoned off company funds for their own personal benefit.  Id.  Accordingly, Wimbledon argues that SIP is not a real company, but rather a "mere fiction."  Id. ¶ 14.

On or about November 14, 2011, Wimbledon and SIP entered into a Note Purchase Agreement (the "NPA").  Id. ¶ 15.  Pursuant to this agreement, Wimbledon had the right to purchase up to $25 million worth of reference notes issued by SIP (the "SIP Notes").  Id.  According to Wimbledon, the NPA contained numerous provisions indicating that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**        **'O'**

| Case No. | 2:15-cv-06633-CAS-AJW | Date | November 19, 2015 |
|---|---|---|---|
| Title | THE WIMBLEDON FUND, SPC (CLASS TT) V. GRAYBOX, L.L.C., ET AL. | | |

SIP was a legitimate business and that the SIP Notes were a legitimate investment.  Id. ¶ 16.  For example:

- In Section 5.2, SIP represents and warrants that it is "duly authorized by the appropriate governing body" to execute the agreement;
- In Section 7.1, SIP offers to provide interim and annual financial statements, notices of board of directors meetings, and minutes from those meetings;
- In Section 7.2(a), SIP covenants to "preserve and maintain separate corporate existence and all material rights, franchises, licenses, permits, and privileges sufficient for the conduct of its business";
- In Section 7.2(e), SIP covenants to "maintain a system of accounting, and keep such books, records and accounts sufficient to permit the preparation of financial statements in accordance with GAAP";
- In Section 7.2(g), SIP covenants to make its properties, books, records, and files available for inspection;
- Section 8 explains how the SIP Notes would increase or decrease in value each year based on Tewksbury Investment Fund Ltd.'s performance, plus a premium of 1% thereon, and would become due and payable in full on November 14, 2016;
- Section 10.1 set forth SIP's obligations to satisfy a redemption request; and
- In Section 14, SIP states that the SIP notes may be presented for payment at SIP's office in Santa Monica, CA.

Id. ¶ 16.

In November and December 2011, Wimbledon made payments of $12.5 and $5.2 million, respectively, to SIP to purchase SIP Notes.  Id. ¶ 17.  Wimbledon's November 2011 investment was wired to SIP's bank accounts with Deutsche Bank.  Id. ¶ 18.  Over the course of the following weeks and months, the Deutsche Bank accounts were virtually depleted through a series of wire transfers to third-party entities controlled by or for the benefit of the SIP Shareholders.  Id.  Wimbledon contends that these transfers were entirely inconsistent with the terms of the NPA.  Id.

Many of these transfers were reportedly made to defendants.  Id.  For example, sixteen transfers totaling $1.8 million were made to defendant Graybox.  Id. ¶ 19.  SIP

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-06633-CAS-AJW | Date | November 19, 2015 |
|---|---|---|---|
| Title | THE WIMBLEDON FUND, SPC (CLASS TT) V. GRAYBOX, L.L.C., ET AL. | | |

Shareholder David Bergstein is Graybox's sole managing member.  Id.  Sixteen transfers totaling approximately $2 million were made to defendant IA.  Id. ¶ 20.  The majority shareholders, officers, and directors of IA are SIP Shareholders David Bergstein and Kiarash Jam.  Id.  Three transfers were made to defendant Scher totaling $125,000.  Id. ¶ 21.  Scher is the trustee for the Bergstein trust which owns David Bergstein's real property located throughout the country.  Id.  One transfer was made to defendant Cascade totaling $200,000.  Id. ¶ 23.  Scher is the CEO and COO of Cascade and SIP Shareholder Jerome Swartz is a director of Cascade.  Id.

Wimbledon's December 2011 investment of $5.2 million was wired to SIP's bank account with Wells Fargo.  Id. ¶ 24.  Within one month the account had been depleted to only $68,000.  Id.  By April 2012, the account's balance was only $17,000.  Id.  Like the Deutsche Bank accounts, the Wells Fargo account was depleted, at least in part, by transfers to defendants.  Id.  For example, two transfers totaling $200,000 were made to Graybox and one transfer totaling $100,000 was made to Scher.  In addition, Wells Fargo bank records indicate that six transactions totaling $2.2 million were recorded in Wells Fargo bank statements as "withdrawals made in branch."  Id. ¶ 27.  Wimbledon believes that at least some of these funds were diverted to defendants.  Id.

Pursuant to the NPA, Wimbledon was entitled to make redemption requests in certain circumstances requesting repayment of its investment from SIP.  See ¶¶ 16, 28.  In August and October of 2012, Wimbledon made redemption requests on SIP.  Id. ¶ 28.  In January of 2013, Wimbledon made a final redemption request on SIP for approximately $4.7 million.  Id.  SIP ignored all of these redemption requests.  Id.  On February 4, pursuant to another provision of the NPA, Wimbledon declared the SIP Notes immediately due and payable.  Id. ¶ 29.  SIP likewise ignored this notice.  Id.

On February 8, 2013, the Texas Secretary of State forfeited SIP's certificate of formation pursuant to section 171.309 of the Texas Tax Code.  Id. ¶ 30.  On that same date, Wimbledon sued SIP for breach of contract in New York state court.  Id. ¶ 31.  On July 14, 2015, the New York state court entered an award against SIP and in favor of Wimbledon in the amount of $18,171,635.  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-06633-CAS-AJW | Date | November 19, 2015 |
| Title | THE WIMBLEDON FUND, SPC (CLASS TT) V. GRAYBOX, L.L.C., ET AL. | | |

## III.   LEGAL STANDARD

### A.   Rule 12(b)(6)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint.  Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a  cognizable legal theory.'"  Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Id. (internal citations omitted).

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them.  Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998).  The complaint must be read in the light most favorable to the nonmoving party.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.").  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                          **'O'**

| Case No. | 2:15-cv-06633-CAS-AJW | Date | November 19, 2015 |
|---|---|---|---|
| Title | THE WIMBLEDON FUND, SPC (CLASS TT) V. GRAYBOX, L.L.C., ET AL. | | |

in briefs, affidavits, or discovery materials).  In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201.  In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted.  Fed. R. Civ. P. 15(a).  However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

### B.    Rule 9(b)

Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting a claim for fraud be pled with particularity.  Federal Rule of Civil Procedure 9(b) applies not just where a complaint specifically alleges fraud as an essential element of a claim, but also where the claim is "grounded in fraud" or "[sounds] in fraud."  Vess v. Ciba-Geigy Corp. U.S.A., 317 F.3d 1097, 1103–04 (9th Cir. 2003).  A claim is said to be "grounded in fraud" or "'sounds in fraud'" where a plaintiff alleges that defendant engaged in fraudulent conduct and relies on solely on that conduct to prove a claim.  Id. "In that event, . . . the pleading of that claim as a whole must satisfy the particularity requirement of [Fed. R. Civ. P.] 9(b)."  Id.  However, where a plaintiff alleges claims grounded in fraudulent and non fraudulent conduct, only the allegations of fraud are subject to heightened pleading requirements.  Id. at 1104.

A pleading is sufficient under Fed. R. Civ. P. 9(b) if it "[identifies] the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations."  Walling v. Beverly Enters., 476 F.2d 393, 397 (9th Cir. 1973). This requires that a false statement must be alleged, and that "circumstances indicating falseness" must be set forth.  In re GlenFed Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994).  Thus, Rule 9(b) requires a plaintiff to "identify the 'who, what, when, where and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-06633-CAS-AJW | Date | November 19, 2015 |
|---|---|---|---|
| Title | THE WIMBLEDON FUND, SPC (CLASS TT) V. GRAYBOX, L.L.C., ET AL. | | |

how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent conduct], and why it is false." Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010)).

## IV.   ANALYSIS

Wimbledon asserts claims against all defendants for avoidance and recovery of fraudulent transfers pursuant to CUFTA.  Section 3439.04(a) of CUFTA provides for two different types of fraudulent transfers: (1) "actual fraudulent transfers"; and (2) "constructive fraudulent transfers."  At the pleading stage a plaintiff is not required to expressly identify under which of these theories it seeks to avoid a fraudulent transfer; rather, "[c]laims for actual fraudulent transfer and constructive fraudulent transfer 'may be asserted as alternative theories of liability.' " Hyosung (America), Inc. v. Hantle USA, Inc., 2011 WL 835781, at *6 (N.D. Cal. Mar. 4, 2011) (citing Liberty Mut. Ins. Co. v. Hoge, 2005 WL 756568, at *4 (N.D. Cal. April 1, 2005).  However, defendants, in their motions to dismiss, contend that Wimbledon has failed to allege sufficient facts to support a claim for either of these types of fraudulent transfers.

A "constructive fraudulent transfer" is a transfer made "without receiving a reasonably equivalent value in exchange for the transfer or obligation."  Cal. Civ. Code § 3439.04(a)(1).  In determining whether a transfer was for reasonably equivalent value, "the court must analyze all the circumstances surrounding the transfer." Cal. Serv. Emps. Health & Welfare Trsut Fund v. Advance Bldg. Maint., Inc., 2010 WL 3448512, at *3 (N.D. Cal. Sept. 1, 2010).  Here, Wimbledon alleges that within a matter of months its entire investment was dissipated through a series of self-dealing transactions intended to benefit the SIP Shareholders.  See generally Compl.  Based on these allegations it is not clear that SIP received *any value* from these transfers, let alone "reasonably equivalent value."  Wimbledon's claims are further bolstered by the fact that, subsequent to these transfers, Wimbledon is now a defunct entity with no assets.  Id. ¶ 30. Accordingly, the Court finds that Wimbledon has adequately alleged a claim for constructive fraudulent transfer.

Likewise, Wimbledon has adequately alleged a claim for "actual fraudulent transfer."  An "actual fraudulent transfer" is one made with "the actual intent to hinder,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  **'O'**

| Case No. | 2:15-cv-06633-CAS-AJW | Date | November 19, 2015 |
|---|---|---|---|
| Title | THE WIMBLEDON FUND, SPC (CLASS TT) V. GRAYBOX, L.L.C., ET AL. | | |

delay, or defraud a creditor."  Cal. Civ. Code § 3439.04(a)(1).  In determining whether the transferor acted with "actual intent" the statute provides that a court may consider the following non-exhaustive list of factors: "(1) Whether the transfer or obligation was to an insider; (2) Whether the debtor retained possession or control of the property transferred after the transfer; (3) Whether the transfer or obligation was disclosed or concealed; (4) Whether before the transfer was made or obligation was incurred, the debtor has been sued or threatened with suit; (5) Whether the transfer was of substantially all the debtor's assets; (6) Whether the debtor absconded; (7) Whether the debtor removed or concealed assets; (8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred; (11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor."  Cal. Civ. Code § 3439.04(b).

Here, the complaint alleges facts indicating that numerous of these so-called "badges of fraud" are present in this case.  For example, Wimbledon alleges that many of the transfers were made to entities controlled by and for the benefit of SIP's shareholders—i.e., the transfers were "to an insider" and SIP "retained possession or control of the property transferred after the transfer."  Cal. Civ. Code §§ 3439.04(b)(1)-(2); see also Kelleher v. Kelleher, 2014 WL 11117805, at *5 (N.D. Cal. Mar. 19, 2014) ("The Ninth Circuit has recognized that a special relationship between the debtor and the transferee is one of the more common circumstantial indicia of fraudulent intent.") (citing In re Acequia, Inc., 34 F.3d 800, 806 (9th Cir. 1994)).  Wimbledon also alleges that, after transferring it's investment to SIP, SIP rapidly transferred these funds to third parties and that Wimbledon was unaware of these transfers—i.e., the transfers were undisclosed and SIP "removed or concealed assets."  Cal. Civ. Code §§ 3439.04(b)(3),(6).  Likewise, Wimbledon contends that SIP's bank accounts were "depleted" after these transfers—i.e., the transfers were of "substantially all" of SIP's assets.  Cal. Civ. Code § 3439.04(b)(5).  And, Wimbledon alleges that SIP is now a defunct entity—i.e., SIP "became insolvent shortly after the transfer was made."  Cal. Civ. Code § 3439.04(b)(9).  Given these allegations the Court finds that Wimbledon has more than sufficiently pled claims for actual fraudulent transfer.  "The presence of a single badge of fraud may spur mere suspicion; the confluence of several can constitute conclusive evidence of actual intent to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                     **'O'**

| Case No. | 2:15-cv-06633-CAS-AJW | Date | November 19, 2015 |
|---|---|---|---|
| Title | THE WIMBLEDON FUND, SPC (CLASS TT) V. GRAYBOX, L.L.C., ET AL. | | |

defraud, absent 'significantly clear' evidence of a legitimate supervening purpose." In re Acequia, Inc., 34 F.3d at 806 (citing Max Sugarman Funeral Home, Inc. v. A.D.B. Investors, 926 F.2d 1248, 1254-55 (1st Cir. 1991)).

Nonetheless, defendants argue that plaintiff's allegations are not pled with sufficient particularity as required by Federal Rule of Civil Procedure 9(b). "Because a claim for actual fraudulent transfer involves an allegation of fraud or mistake, it is subject to Federal Rule of Civil Procedure 9(b)." Martinez v. CACH, LLC, 2011 WL 2560251, at *4 (citing Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1102–03 (9th Cir.2003)). To satisfy the requirements of Rule 9(b), "allegations of fraud [must be] specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). Defendants argue that the allegation in the complaint are insufficient for them to properly respond to Wimbledon's claims. This argument gives short shrift to the numerous specific allegations contained in the complaint.

The complaint alleges the specific time period in which the alleged fraudlent transfers occurred. It identifies the recipients of those transfers, the total number of those transfers, the total amounts of those transfers, and the bank accounts from which those transfers were made. In addition, the complaint identifies which of the SIP Shareholders was associated with each of the transferees and provides detailed allegations regarding why Wimbledon believes these transfers were fraudulent. Specifically, Wimbledon explains that the transfers were largely self-dealing transactions in direct contravention of numerous provisions of the NPA. This more than sufficiently provides defendants with the "who, what, where, when, and how of the misconduct charged." See Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir.2003)).

Finally, defendants contend that the complaint fails to comply with the requirements of Federal Rule of Civil Procedure 10(b). Pursuant to Rule 10(b), "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." In brief, defendants contend that the complaint is deficient because it does not separately set forth the circumstances surrounding each of the purportedly fraudulent transfers in separate paragraphs or counts. Dkt. 71, at 11; Dkt. 72, at 13. Defendants overstate the purpose of Rule 10(b). Rule

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**       **'O'**

| Case No. | 2:15-cv-06633-CAS-AJW | | Date | November 19, 2015 |
|---|---|---|---|---|
| Title | THE WIMBLEDON FUND, SPC (CLASS TT) V. GRAYBOX, L.L.C., ET AL. | | | |

10(b) was designed as a "guideline to ensure that complaint are simple, concise, and direct." <u>Philips v. Girdrich</u>, 408 F.3d 124, 128 (2d. Cir. 2005).  The rules' "ultimate goals are efficiency and fairness." <u>Rodriguez v. SGLC, Inc.</u>, 2010 WL 2943128, at \*3 (S.D. Cal. Jul. 23, 2010).  Thus, so long as "the absence of numbering or succinct paragraphs does not interfere with one's ability to understand the claims or otherwise prejudice the adverse party, the pleading should be accepted." <u>Philips</u>, 408 F.3d at 128. As already stated, the claims in the complaint are supported with detailed factual allegations sufficient to satisfy the particularity requirements of Rule 9(b).  Accordingly, the complaint is sufficiently pled for defendants to understand the claims and meaningfully file a responsive pleading.[1]

## V.    CONCLUSION

In accordance with the foregoing, defendants' motions to dismiss are **DENIED**.

The hearing date of November 23, 2015 at 10:00 AM, is **VACATED.**

IT IS SO ORDERED

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | | CL |

---

[1] For these same reasons, defendants alternative request for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) is also DENIED.  "A motion for a more definite statement is only appropriate where the allegations are sufficiently unintelligible that a 'defendant literally cannot frame a responsive pleading.' " <u>Jones v Ventura Cnty. Sheriff's Deputies</u>, 2013 WL 6018033, at \*2 (C.D. Cal. Nov. 13, 2013) (citing <u>Bureerong v. Uvawas</u>, 922 F.Supp. 1450, 1461 (C.D. Cal.1996))