Jeffrey N. Pomerantz, Esq. (CA Bar No. 143717)
Jeffrey L. Kandel (CA Bar No. 115832)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA  90067
Telephone: 310-277-6910 / Facsimile: 310-201-0760
E-mail: jpomerantz@pszjlaw.com; jkandel@pszjlaw.com

James W. Walker (admitted *pro hac vice*)
Cameron A. Welch (admitted *pro hac vice*)
Eric S. Latzer (admitted *pro hac vice*)
COLE SCHOTZ P.C.
2515 McKinney Avenue, Suite 1350
Dallas, TX  75201
Telephone: 469-557-9390 / Facsimile: 469-533-0361
E-mail: jwalker@coleschotz.com; cwelch@coleschotz.com; elatzer@coleschotz.com

Attorneys for Plaintiff, The
Wimbledon Fund, SPC (Class TT)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| THE WIMBLEDON FUND, SPC (CLASS TT),<br><br>                          Plaintiff,<br><br>vs.<br><br>DAVID BERGSTEIN; JEROME SWARTZ; AARON GRUNFELD; KIARASH JAM; GRAYBOX LLC; INTEGRATED  ADMINISTRATION; EUGENE SCHER, AS TRUSTEE OF BERGSTEIN TRUST; and CASCADE TECHNOLOGIES CORP.,<br><br>                          Defendants. | C.D. Cal. Case No. 2:15-cv-6633-CAS-AJWx<br><br><br>**OPPOSITION TO THE EX PARTE APPLICATION FILED BY DEFENDANTS DAVID BERGSTEIN AND GRAYBOX, LLC [DOC. NO. 203]; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br><br><u>Hearing:</u><br>Date: N/A<br>Location:Crtrm 5, Second Floor<br>               312 N. Spring Street<br>               Los Angeles, CA 90012-4701<br>Trial date: October 24, 2017 |

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES................................................ 1

I.    PRELIMINARY STATEMENT............................................................... 1

II.   THE EX PARTE APPLICATION SHOULD BE DENIED BECAUSE DEFENDANTS CREATED THIS "EMERGENCY" AND FAILED TO COMPLY WITH THE LOCAL RULES...................................................... 4

III.  THE SUBPOENA SEEKS PRODUCTION OF BANK RECORDS CONTAINING INFORMATION RELEVANT TO THE FUND'S ALTER EGO AND FRAUDULENT TRANSFER CLAIMS. ............... 10

IV.   DEFENDANTS' COUNSEL SHOULD BE SANCTIONED. ............... 15

V.    CONCLUSION ....................................................................................... 16

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Civolution B.V. v. Doremi Labs Inc.*, No. 14-962, 2015 WL 11072166, at
  *2 (C.D. Cal. May 22, 2015) .................................................................. 4, 6

*Del Campo v. Am. Corrective Counseling Servs., Inc.*, No. C-01-21151
  JW, 2008 WL 4858502 (N.D. Cal. Nov. 10, 2008) .................................... 10

*Harris v. Baca*, No. CV-01-10905, 2003 WL 163210, at *1 (C.D. Cal.
  Jan. 8, 2003) .............................................................................................. 8

*Harris v. United States*, 413 F.2d 316 (9th Cir. 1969) ................................. 10

*In re Heritage Bond Litig.*, No. CV-02-1475-DT(RCX), 2004 WL
  1970058 (C.D. Cal. July 23, 2004) ........................................................... 11

*Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F. Supp.
  488 (C.D. Cal. 1995) ......................................................................... pasism

*Pate v. Wells Fargo Bank Home Mortg., Inc.*, No. CV 11-4151 PSG,
  2011 WL 2682646 (C.D. Cal. July 7, 2011) ............................................... 6

*Poturich v. Allstate Ins. Co.*, No. EDCV 15-0081-GW, 2015 WL
  4334419 (C.D. Cal. July 15, 2015) .......................................................... 15

*Smith v. Frank*, 923 F.2d 139 (9th Cir. 1991) ............................................. 16

*In re Yassai*, 225 B.R. 478 (Bankr. C.D. Cal. 1998) ................................... 10

*Wells Fargo Bank N.A. v. Ivy*, No. 2:13-cv-01561-MMD-NJK, 2014 WL
  1796216, at *3 (D. Nev. May 6, 2014) ...................................................... 10

**RULES**

Fed. R. Civ. P. 31(a)(5) ................................................................................ 5

Fed. R. Civ. P. 32(d)(3)(C) .......................................................................... 5

C.D. Cal. L.R. 37-2 ...................................................................................... 7

C.D. Cal. L.R. 37-2.2 ................................................................................................. 7, 8

C.D. Cal. L.R. 37-2.4 .................................................................................................... 8

C.D. Cal. L.R. 37 ................................................................................................... 2, 7, 8

C.D. Cal. L.R. 37-3 ........................................................................................................ 4

C.D. Cal. L.R. 37-1 ............................................................................................... 2, 7, 8

### **MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff The Wimbledon Fund, SPC (Class TT) (the "Fund" or "Plaintiff") files this Opposition to the Ex Parte Application (the "Ex Parte Application") (Doc. No. 203) filed by defendants Graybox, LLC ("Graybox") and David Bergstein ("Bergstein") (together, "Defendants"). The Ex Parte Application seeks a protective order and/or to stay production of documents that Bank of America, N.A. ("BOA") has been ordered to produce pursuant to a subpoena seeking documents and a deposition on written questions (the "Subpoena") first <u>served by the Fund on August 16, 2016</u>.

## I.     PRELIMINARY STATEMENT.

This Ex Parte Application is precisely the type of abusive filing that federal courts in California have repeatedly disapproved. The application should be summarily denied, and Defendants' counsel should be sanctioned.

As a threshold matter, the so-called "emergency" precipitating Defendants' application is purely the result of Defendants' inexcusable neglect. <u>Defendants had notice of the Subpoena one month ago</u>. They did not object. To the contrary, more than three weeks after receiving the Subpoena, Defendants' counsel reached out to advise that Defendants <u>might</u> seek to negotiate a protective order limiting the disclosure of certain documents <u>after</u> BOA made its production in response to the Subpoena.

Then, just three days before BOA was to make its production – and twenty-eight days after Defendants were given notice of the Subpoena – Defendants suddenly determined that certain requests in the Subpoena were "improper" and advised the Fund that they intended to immediately file an ex parte application to stay BOA's production. Of course, "[e]x parte applications are not intended to save the day for parties who have failed to" act with due diligence during discovery. *See Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F. Supp. 488 (C.D. Cal. 1995). On this basis alone, the Ex Parte Application should be denied.

Denial is also warranted because Defendants, in their haste to file the Ex Parte Application, <u>failed to comply with a single requirement of Local Rule 37</u>.  Defendants did not send a letter requesting a Rule 37-1 conference and outlining the issues in dispute, including Defendants' positions concerning those issues.  In addition, prior to filing the Ex Parte Application, Defendants, moreover, did not send the Fund a discovery stipulation and, thus, did not file one with the Ex Parte Application.  Rather, Defendants presented the Fund with a last-minute ultimatum that absent the immediate withdrawal of the purportedly offending document requests in the Subpoena, Defendants would file their Ex Parte Application.  As a result of Defendants' conduct, there was no opportunity for the parties to confer or even attempt to resolve Defendants' concerns with the Subpoena.  In addition, Defendants improperly failed to file the underlying motion referenced in the Ex Parte Application.  The time to file such motion has now expired.  Defendants' non-compliance with Local Rule 37 also requires this Court to summarily deny the Ex Parte Application.

Although this Court should deny the Ex Parte Application outright solely on the basis that it is procedurally improper, this Court should also summarily reject Defendants' substantive arguments concerning the relevancy of the documents requested pursuant to the Subpoena.  The Subpoena seeks production of bank records for accounts belonging to Graybox, of which Bergstein is the sole managing member.  Graybox was the primary recipient of fraudulent transfers from Swartz IP Services Inc. ("SIP"), the entity through which the Alter Ego Defendants[1] – including Bergstein – effectively stole $17.7 million from the Fund.

This Court is well familiar with Graybox and Bergstein.  Graybox was the subject of the Fund's motion for a preliminary injunction filed in August 2015 (the "Injunction Motion").  This Court granted the Injunction Motion, and the Ninth Circuit affirmed.  [Order, Doc. No. 56; Opinion, Case No. 15-56540, Doc. No. 47-1].

_____

[1] The Alter Ego Defendant are Bergstein, Jerome Swartz, Aaron Grunfeld, and Kiarash K. Jam.

1    In its decision, this Court addressed substantial evidence presented by the Fund and

2    concluded, in part, that the Fund had sufficiently demonstrated a likelihood of success

3    on the merits of its fraudulent transfer claim against Graybox.

4         The Fund served the Subpoena to obtain Graybox's bank records from

5    November 2011, the time when the Alter Ego Defendants commenced their fraudulent

6    scheme, through the present.  The bank records contain relevant information

7    concerning all of the fraudulent transfers Graybox received.  This includes the

8    transfers detailed in the Amended Complaint; additional transfers – including one

9    made in July 2014 – of which the Fund recently became aware; and transfers the Fund

10   does not yet know about.  The bank records also contain relevant information

11   concerning the disposition of the fraudulent transfers Graybox received and

12   Bergstein's use of corporations, like Graybox, as mere instrumentalities for his own

13   personal endeavors – claims that cut to the very heart of the alter ego claim asserted

14   against Bergstein in this case.  The Fund should not be obligated to take Defendants at

15   their word when they claim that the Fund already possesses all relevant information

16   concerning the illicit monies Graybox received.  Nor should this Court credit

17   Defendants' absurd contention that Defendants have already demonstrated that the

18   transfers received from SIP were "proper."  A review of this Court's ruling on, and the

19   Ninth Circuit's affirmance of, the Injunction Motion exposes that assertion as pure

20   fantasy.

21        Finally, the Fund is compelled to address Defendants' *ad hominem* attacks

22   against the Fund's counsel, including Defendants' outrageous accusation that counsel

23   "has engaged in improper efforts to obtain Bergstein's privileged and confidential

24   information."  [Ex Parte App., Doc. No. 203, Notice[2] at 2].  As addressed in the

25   accompanying Declaration of James W. Walker, there is not a shred of truth to these

26

27        [2] The Ex Parte Application (Doc. No. 203) includes repeat page numbers.  To
     avoid confusion, Plaintiff will refer to the initial pages of the filing (pages one through
28   three) as the "Notice," and the remainder of the filing as the "Brief."

1   accusations.  The accusations, moreover, only further expose Defendants' application

2   as meritless.  Indeed, the gravamen of Defendants' argument is that the Fund should

3   not be given access to relevant bank records purportedly containing sensitive

4   information due to the presumed "risk" that the Fund's counsel may "misuse" the

5   information.  Such an assertion is not only based on pure speculation, it smacks of

6   both desperation and a wholesale lack of professionalism.

7        The Ex Parte Application is both procedurally and substantively improper.  This

8   Court should deny the application, allow BOA to produce documents immediately,

9   and sanction Defendants' counsel for this abusive application.

10  **II.   THE EX PARTE APPLICATION SHOULD BE DENIED BECAUSE**
       **DEFENDANTS CREATED THIS "EMERGENCY" AND FAILED TO**
11     **COMPLY WITH THE LOCAL RULES.**

12        Defendants' Ex Parte Application should be summarily denied because: (i)

13  Defendants created the so-called "emergency" ostensibly justifying their application;

14  and (ii) Defendants' counsel blatantly failed to comply with the Local Rules before

15  filing the application.

16        **A.   Defendants have been compelled to seek ex parte relief**

17             **only as a result of their own dilatory conduct.**

18        "A party seeking ex parte relief must demonstrate: (1) <u>the moving party is</u>

19  <u>without fault in creating the crisis that requires ex parte relief or the crisis occurred as</u>

20  <u>a result of excusable neglect</u>; and (2) the moving party's cause will be irreparably

21  prejudiced if the underlying motion is heard according to regular noticed motion

22  procedures."  *Civolution B.V. v. Doremi Labs Inc.*, No. 14-962 JAK(JC), 2015 WL

23  11072166, at *2 (C.D. Cal. May 22, 2015) (emphasis added); *accord* C.D. Cal. L.R.

24  37-3 ("Unless the Court in its discretion otherwise allows, no discovery motions shall

25  be filed or heard on an ex parte basis, absent a showing of irreparable injury or

26  prejudice <u>not attributable to the lack of diligence of the moving party</u>." (emphasis

27  added)).

28

4

On August 16, 2016, the Fund provided Defendants with a copy of the Subpoena and notice of their intent to serve the Subpoena on BOA. [Accompanying Declaration of James W. Walker ("Walker Decl.") ¶ 5, Ex. A]. The Subpoena instructed BOA to produce documents by no later than September 19, 2016. [Walker Decl. ¶ 6, Ex. A]. Defendants raised no objection to the Subpoena.[3] [Walker Decl. ¶ 7].

More than three weeks later, on September 6, 2016, Defendants' counsel circulated a proposed stipulated protective order generally governing the treatment of documents produced in the litigation. [Walker Decl. ¶ 8, Ex. B]. Counsel claimed that a protective order was necessary because Defendants believed that the discovery the Fund sought from the banks, including BOA, "involves certain sensitive personal, proprietary and/or financial information[.]" [Walker Decl. ¶ 8, Ex. B]. Nowhere in Ms. Chan's email did she assert that the specific Subpoena at issue here was improper or sought information that was not discoverable. [Walker Decl. ¶ 8, Ex. B]. In response, counsel for the Fund requested an explanation as to why a protective order was necessary, including the identification of any documents already produced in discovery containing Defendants' confidential and/or proprietary information that Defendants would propose making subject to that protective order. [Walker Decl. ¶ 9, Ex. C]. Defendants' counsel, in reply, acknowledged that it was premature to discuss whether a protective order was even needed until after BOA (and the other banks from which the Fund sought documents) made their respective productions. [Walker Decl. ¶ 10, Ex. C]. Counsel wrote as follows:

> We believe that it would be prudent to enter into a stipulated protective order in this case to protect any confidential

---

[3] In particular, Defendants did not object – and have never objected – to the written questions in the Subpoena, nor did they serve cross-questions. [Walker Decl. ¶ 7 n.2]. The time to do so has expired. *See* Fed. R. Civ. P. 31(a)(5), 32(d)(3)(C) (requiring cross-questions and objections to written questions to be served within fourteen days). This failure to object constitutes a waiver of Defendants' right to now challenge the propriety of the Subpoena.

personal or proprietary information that may be sought or produced; <u>however, at this time, we do not yet know what the various banks will produce in response to Wimbledon's discovery request.  As a result, we are willing to wait until the banks respond to Wimbledon's discovery to determine if there are, in fact, any materials that we believe may be confidential.  If there are, we will reach out to seek agreement on a protective order relating to the materials produced or file a motion at that time.</u>

[Walker Decl. ¶ 10, Ex. C (emphasis added)].

Once again, Defendants' counsel did not object to the Subpoena.  [Walker Decl. ¶ 11, Ex. C).  Far from it – counsel acknowledged that Defendants would "reach out" <u>after BOA produced documents</u>.  [Walker Decl. ¶ 11, Ex. C].

Four days later, on September 13, 2016 – approximately one month after Defendants received the Subpoena – Defendants' counsel contacted the Fund's counsel to advise, for the first time, that Defendants objected to certain requests in the Subpoena and that Defendants intended to immediately move to quash the Subpoena or, alternatively, for a protective order.  [Walker Decl. ¶ 12].  Defendants' counsel provided no explanation regarding why Defendants waited almost a month to raise this objection.  [Walker Decl. ¶ 12].  Nor did counsel explain why Defendants were suddenly no longer willing to allow BOA to produce documents and to then evaluate the need for a protective order.  [Walker Decl. ¶ 12].  Instead, Defendants' counsel made a take-it-or-leave-it demand: the Fund either needed to immediately withdraw the purportedly objectionable requests or Defendants would immediately file an ex parte application.  [Walker Decl. ¶ 12].  The Fund refused Defendants' demand. [Walker Decl. ¶ 12].  Two days later, Defendants filed the Ex Parte Application. [Walker Decl. ¶ 13; Ex Parte App., Doc. No. 203].

In short, this is a "crisis" of Defendants' own making.  Defendants had ample time to contest the Subpoena.  They did not.  Instead, Defendants' counsel later <u>advised that Defendants intended to permit BOA to produce documents before determining whether a protective order is necessary</u>.  Under these circumstances, this Court should deny the Ex Parte Application out of hand.  *See, e.g.*, *Civolution B.V.*,

2015 WL 11072166, at *2 (denying ex parte application where plaintiff waited
approximately a month before challenging defendant's refusal to produce documents
on the basis of privilege); *Pate v. Wells Fargo Bank Home Mortg., Inc.*, No. CV 11-
4151 PSG (MANx), 2011 WL 2682646, at *1 (C.D. Cal. July 7, 2011) (denying ex
parte application because "even if Plaintiff could establish that he will be irreparably
prejudiced were the case to proceed according to regular noticed motion procedures,
he fails to show that he is without fault in creating the situation that requires ex parte
relief" (emphasis added)); *Mission Power Engineering Co.*, 883 F. Supp. at 493
(denying ex parte application and noting "'[e]x parte applications are not intended to
save the day for parties who have failed to present requests when they should have  . .
. .'").

> **B.    Defendants failed to properly initiate and hold a pre-
>          filing conference, failed to confer in good faith, and failed
>          to circulate and file a joint stipulation.**

The Ex Parte Motion should also be denied because Defendants violated
multiple provisions of Local Rule 37.

Local Rule 37-1 states that before a discovery motion is filed, "counsel for the
parties shall confer in a good faith effort to eliminate the necessity for hearing the
motion or to eliminate as many of the disputes as possible."  Counsel for the moving
party must initiate the Rule 37-1 conference by serving a letter requesting such a
conference.  C.D. Cal. L.R. 37-1.  The letter "shall identify each issue and/or
discovery request in dispute, shall state briefly with respect to each such issue/request
the moving party's position (and provide any legal authority which the moving party
believes is dispositive as to that issue/request), and specify the terms of the discovery
order to be sought."  C.D. Cal. L.R. 37-1.  Counsel for the non-moving party is
required to confer with the moving party's counsel within ten days following receipt
of the letter.  C.D. Cal. L.R. 37-1.

"If counsel are unable to settle their differences" during the Rule 37-1 conference, "they shall formulate a written stipulation, unless otherwise ordered by the Court." C.D. Cal. L.R. 37-2. In this regard, "counsel for the moving party shall personally deliver, e-mail, or fax to counsel for the opposing party the moving party's portion of the stipulation, together with all declarations and exhibits to be offered in support of the moving party's position." C.D. Cal. L.R. 37-2.2. "The Court will not consider any discovery motion in the absence of a joint stipulation or a declaration from counsel for the moving party establishing that opposing counsel (a) failed to confer in a timely manner in accordance with L.R. 37-1; (b) failed to provide the opposing party's portion of the joint stipulation in a timely manner in accordance with L.R. 37- 2.2; or (c) refused to sign and return the joint stipulation after the opposing party's portion was added." C.D. Cal. L.R. 37-2.4.

Defendants' counsel, without any explanation, ignored each one of these requirements. Counsel did not send a letter requesting a conference, outlining the issues in dispute, or advising of Defendants' positions. [Walker Decl. ¶ 14]. Counsel, moreover, did not provide the Fund with a ten-day period within which the parties could confer. [Walker Decl. ¶ 15]. Rather, counsel called the Fund's counsel, presented a take-it-or-leave-it demand, and filed the Ex Parte Application two days later. [Walker Decl. ¶ 15]. Defendants' counsel did not even attempt to confer in good faith. [Walker Decl. ¶ 15]. In addition, prior to filing the Ex Parte Application, Defendants' counsel never provided the Fund's counsel with a stipulation and, indeed, the Ex Parte application excludes the requisite joint stipulation. [Walker Decl. ¶ 16]. These egregious violations of Local Rule 37 justify summary denial of Defendants' Ex Parte Application. *See, e.g.*, *Harris v. Baca*, No. CV-01-10905 RWSLCTX, 2003 WL 163210, at *1 (C.D. Cal. Jan. 8, 2003) ("Unless there is an extreme emergency which was not created by the litigant who is bringing the application, strict compliance with the local rules is required and discovery disputes must be brought to

the attention of the court by way of joint stipulation, not ex parte application." (emphasis added)).

## C.   Defendants' counsel failed to file the motion underlying the Ex Parte Application.

The Ex Parte Application is further improper because Defendants failed to file the motion to quash and/or for a protective order referenced in their application. "An ex parte motion should never be submitted by itself.  It must always be accompanied by a separate proposed motion for the ultimate relief the party is seeking." *Mission Power Engineering Co.*, 883 F. Supp. at 492 (emphasis added).  As this Court has explained:

> Properly designed ex parte motion papers thus contain two distinct motions or parts. The first part should address only why the regular noticed motion procedures must be bypassed. The second part consists of papers identical to those that would be filed to initiate a regular noticed motion (except that they are denominated as a "proposed" motion and they show no hearing date.) These are separate, distinct elements for presenting an ex parte motion and should never be combined. The parts should be separated physically and submitted as separate documents.
>
> *Id.*

Defendants admittedly failed to file their underlying motion to quash and/or for a protective order.  [*See* Ex Parte App., Doc. No. 203, Notice at 2 ("Graybox and Bergstein intend to file a motion to quash the subpoena as to the above-quoted requests or, alternatively, for a protective order but there is not sufficient time to do so before September 19, 2016[.]") (emphasis added)].  Defendants' failure to comply with this requirement – due to "insufficient time" – is remarkable given that Defendants received the Subpoena one month ago yet did nothing.  Moreover, to the extent Defendants now seek to file a motion to quash and/or for a protective order, such motion would be untimely.  9 *Moore's Federal Practice* § 45.50[1] (Matthew Bender 3d ed.) ("Because Rule 45 does not provide any specific time period for

1  bringing a motion to quash or modify, <u>courts have required that the motion be made</u>

2  <u>before the date specified in the subpoena for compliance</u>." (citing cases) (emphasis

3  added)).  The Ex Parte Application should be denied on this basis as well.

**III.  THE SUBPOENA SEEKS PRODUCTION OF BANK RECORDS CONTAINING INFORMATION RELEVANT TO THE FUND'S ALTER EGO AND FRAUDULENT TRANSFER CLAIMS.**

6  Defendants' inability to show they were without fault in creating this so-called

7  emergency, and their failure to comply with the Local Rules, justify denial of the Ex

8  Parte Application outright.  Denial of the application is also warranted should this

9  Court reach of the merits of Defendants' underlying motion – which Defendants have

10  not yet filed – concerning the Subpoena.

11  As an initial matter, Defendants' claim that they have a "privacy" interest in

12  Graybox's banking records does not warrant quashing the Subpoena or staying BOA's

13  production.  "The Ninth Circuit has stated that '**[t]he cases hold that depositors have**

14  **no rights in the records of their bank, and that the records may be subpoenaed**

15  **over the objection of the depositor, notwithstanding the fact that the records**

16  **concern the account of the depositor**[.]'"  *In re Yassai*, 225 B.R. 478 (Bankr. C.D.

17  Cal. 1998) (citing *Harris v. United States*, 413 F.2d 316, 319 (9th Cir. 1969))

18  (emphasis added) (holding that there is no privilege for communications between a

19  bank and the depositor).  For this reason, "**courts have declined to prevent discovery**

20  **of information despite assertions of privacy of bank records by the bank client**."

21  *Id.* (citing cases) (emphasis added).

22  Defendants ignore this settled law and rely on California law and a District of

23  Nevada case in urging this Court to bar production of Graybox's bank records.  [Ex

24  Parte App., Doc. No. 203, Brief at 15].  First, state law is inapplicable.  *See Del*

25  *Campo v. Am. Corrective Counseling Servs., Inc.*, No. C-01-21151 JW, 2008 WL

26  4858502, at *3 (N.D. Cal. Nov. 10, 2008) ("[E]ven assuming that a state constitution

27  creates 'a right to privacy in financial records, such state privilege[ ] do[es] not

28  preclude discovery of bank records in a federal court suit." (quotation marks

omitted)).  Second, *Wells Fargo Bank N.A. v. Ivy*, the Nevada case on which
Defendants rely, squarely <u>supports</u> the Fund's position.  No. 2:13-cv-01561-MMD-
NJK, 2014 WL 1796216, at *3 (D. Nev. May 6, 2014).  In *Ivy*, plaintiff was permitted
to obtain defendants' bank records subject to a protective order.[4]  The court did not
bar production of the bank records, as Defendants seek to do here.  To the extent
Defendants can establish a valid privacy interest in Graybox's banking records,
Defendants can seek a protective order <u>after</u> BOA produces documents – as counsel
previously stated Defendants planned to do.  *See, e.g.*, *In re Heritage Bond Litig.*, No.
CV-02-1475-DT(RCX), 2004 WL 1970058, at *5 n.12 (C.D. Cal. July 23, 2004)
("Any privacy concerns Kaiser defendants have in their bank records and related
financial statements are adequately protected by the protective order, and are not
sufficient to prevent production in this matter.").

   With regard to the relevancy of the documents in question, the Subpoena seeks
Graybox's bank records from November 2011 through the present.  As alleged in the
Fund's Amended Complaint (Doc. No. 105) and as evidenced in the Injunction
Motion (Doc. No. 16 at 4), Graybox received at least twenty fraudulent transfers,
totaling more than $2.4 million, as a result of SIP's fraudulent investment scheme.
The Fund, therefore, is entitled to obtain bank records for information concerning,
among other issues: (i) Graybox's receipt of the fraudulent transfers; <u>and</u> (ii) the

---

[4] As here, the plaintiff in *Ivy* brought fraudulent transfer claims.  The defendant
argued that bank records sought by plaintiff were not relevant.  The court disagreed,
finding:

> In light of Plaintiff's allegations, <u>Defendants' bank and
> financial records are relevant</u>, inter alia, to Plaintiff's
> assertion that Defendants fraudulently conveyed assets to
> related companies while indebted to Plaintiffs. . . .
> <u>Defendants' banking records are highly relevant to
> significant issues in this case for which discovery is
> required</u>.

2014 WL 1796216, at *2-3 (emphasis added).

11

disposition of those transfers.  This information is directly relevant to the Fund's fraudulent transfer claim against Graybox and its alter ego claim against Bergstein.

Defendants effectively concede that Graybox's bank records from November 2011 through 2012 are discoverable.  [Ex Parte App., Doc. No. 203, Brief at 2]. Incredibly, however, Defendants contend that the Fund should not be permitted to obtain these records from BOA because: (i) Bergstein, in opposing the Injunction Motion, produced the "relevant Graybox banking records"; and (ii) "Graybox has already provided the contracts and invoices and banking records showing the allegedly fraudulent transfers to SIP to have been proper."  [Ex Parte App., Doc. No. 203, Brief at 2].  Defendants also contend that SIP is not entitled to obtain Graybox's banking records from 2013 through the present.  [Ex Parte App., Doc. No. 203, Brief at 13].  Defendants concede that Graybox received a fraudulent transfer in December 2013, (Ex Parte App., Doc. No. 203, Brief at 13; *see also* Injunction Motion, Doc. No. 16 at 4), but somehow contend that the 2013 records are not discoverable. Defendants' arguments are baseless.

To begin, Bergstein did not produce the bank records demanded by the Subpoena and to which the Fund is entitled.  Rather, Bergstein produced "invoices" and select "wire transfer" records purportedly evidencing payments directed to SIP for "services" provided by Pineboard Holdings, Inc. – an entity controlled by SIP's insiders, Bergstein and Kiarash Jam.  [Declarations of David Bergstein, Doc. No. 50-2, Exs. 8, 9; Doc. No. 51-1, Exs. 5, 6].  The Fund is patently entitled to the underlying bank records as well.

More to the point, the very notion that the Fund is somehow required to simply accept Defendants' representations that all that is relevant has been produced is antithetical to the entire purpose of the discovery process.  It is a scary proposition indeed to think that a Subpoena could be quashed simply because a litigant seeking to avoid disclosure of potentially prejudicial materials suggests there is no need for the documents.

In any event, Defendants have already produced records in discovery which directly undermine their representations regarding the "completeness" of the relevant financial records.   Specifically, banking statements evidencing SIP's account with Morgan Stanley Smith Barney LLC ("Morgan Stanley") obtained in discovery demonstrate that Graybox received fraudulent transfers from SIP <u>as late as July 2014</u>. [Walker Decl. ¶ 34 p. 6).  These transfers are in addition to the "Graybox Transfers" detailed in the Amended Complaint.[5]   Contrary to what Defendants would have the Court believe, the Fund seeks recovery of <u>all</u> fraudulent transfers Graybox received, not just the 2011-2013 transfers detailed in the Amended Complaint.  [Amended Compl., Doc. No. 105 ¶ 41 ("The Fund seeks a judgment against Graybox for the value of <u>any and all fraudulent transfers</u>, including the Graybox Transfers, from SIP to Graybox[.]" (emphasis added)].

The Morgan Stanley records further demonstrate why the Fund is entitled to Graybox's banking records from 2013 to the present.  Again, the Fund is entitled to information concerning transfers of monies from SIP – and any of the other related entities through which the Alter Ego Defendants perpetrated fraud – to Graybox.  The Fund is also entitled to information concerning the disposition of the fraudulent transfers Graybox received.  The discovery the Fund has obtained to date demonstrates that Graybox received numerous fraudulent transfers from November 2011 through July 2014.  There is more than a good-faith basis to believe that Graybox received additional fraudulent transfers during that time frame and thereafter. The only way in which the Fund can resolve this issue – and determine the disposition of the fraudulent funds – is to review the bank records sought pursuant to the Subpoena.

Perhaps most astounding is Defendants' assertion that the Fund is not entitled to discovery because Graybox has already shown that the fraudulent transfers it received

---

[5] The Fund was not aware of the transfers evidenced in the Morgan Stanley records when it filed the Amended Complaint.

1   were "proper."  As a preliminary matter, this case is ongoing.  Defendants cannot

2   introduce self-serving evidence as a basis to impede discovery.   More to the point, it

3   appears Defendants have forgotten about this Court's ruling on the Injunction Motion

4   and the Ninth Circuit's affirmance of that ruling.  As a reminder, this Court held that

5   the Fund sufficiently demonstrated a likelihood of success on the merits of its

6   fraudulent transfer claim against Graybox.  [Order, Doc. No. 56 at 9-11].  In so

7   holding, this Court rejected Graybox's reliance on the same "Insider Agreements" on

8   which Defendants now rely in urging the Court to deny the Fund the discovery it

9   seeks from BOA.  [Order, Doc. No. 56 at 10].  Specifically, the Court found that

10  Graybox failed to show how the agreements "comported with the provisions of the

11  [operative Note Purchase Agreement entered into between SIP and the Fund]" and

12  concluded that the agreements appeared to show "further instances of insider

13  transactions between SIP and companies owned by its members and directors."

14  [Order, Doc. No. 56 at 10 (emphasis added)].  The Insider Agreements did not warrant

15  denial of the Injunction Motion, nor do they warrant denying SIP access to

16  discoverable information.

17        This Court's ruling on the Injunction Motion, as well as the Ex Parte

18  Application itself, further demonstrate why the BOA records concerning Graybox are

19  discoverable.  In particular, the records will support the Fund's theory – and this

20  Court's findings in connection with the Injunction Motion – that Graybox is a sham

21  entity and Bergstein is its alter ego.  The Court found that the evidence introduced by

22  the Fund showed that Bergstein "regularly transferred assets between Graybox" and

23  other entities he controlled.  [Order, Doc. No. 56 at 11].  Although the Court

24  expressed concern regarding the trustworthiness of the Trustee's Report,[6] the Court

25  "note[d] that [the report] contains serious accusations regarding the corporate integrity

26

27        [6] The Fund introduced the Trustee's Report in support of the Injunction Motion.
    The Trustee's Report is a report submitted by the trustee in a bankruptcy proceeding
28  to which Graybox was party.

of Graybox and other entities controlled and/or managed by Bergstein[,]" who had a history of using Graybox funds to pay for his personal gambling expenses.  [Order, Doc. No. 56 at 11-12 (emphasis added)].

Consistent with these findings, Defendants now contend in the Ex Parte Application that Bergstein has a "privacy" interest in Graybox's banking records.  [Ex Parte App., Doc. No. 203, Brief at 15].  Defendants specifically argue that the banking records "will include highly private information of a personal" nature, including "mortgage payments," "charitable donations," "medical bills," and purported "transfers of investment proceeds to and from [Bergstein]."  [Bergstein Decl., Doc. No. 203-1 ¶ 3].  Bergstein further states, in his declaration, that the records "will reflect thousands of transactions relating to Graybox's and my private investment and financial activities[.]"  [Bergstein Decl., Doc. No. 203-1 ¶ 3 (emphasis added)].  Thus, as before, Bergstein concedes that he uses Graybox as his personal piggy bank.  The Fund should be entitled to obtain information which bears directly on Graybox – which Defendants effectively concede is a sham entity – and Bergstein, the alter ego of both SIP and Graybox.

IV.   **DEFENDANTS' COUNSEL SHOULD BE SANCTIONED.**

Defendants' counsel should be sanctioned for abusing the ex parte application process.  This Court has strongly cautioned against filing ex parte applications and – of greater concern – the abuse of ex parte applications.  In general, ex parte applications are "inherently unfair" and cause numerous problems, which "debilitate the adversary system" and "detract[] from a fundamental purpose of the adversary system, namely, to give the court the best possible presentation of the merits and demerits of the case on each side."  *Mission Power Engineering Co.*, 883 F. Supp. at 491.  Ex parte applications "throw the system out of whack.  They impose an unnecessary administrative burden on the court and an unnecessary adversarial burden on opposing counsel who are required to make a hurried response under pressure, usually for no good reason."  *Id.*  "Lawyers must understand that filing an ex parte

motion, whether of the pure or hybrid type, is the forensic equivalent of standing in a crowded theater and shouting, 'Fire!'  There had better be a fire." *Id.* at 492.

For these reasons, "the abusive use of ex parte motions . . . is detrimental to the administration of justice and, unless moderated, will increasingly erode the quality of litigation and present ever-increasing problems for the parties, their lawyers, and for the court." *Id.* at 489.  An "[i]mproperly prepared ex parte motion[]" – such as the one filed by Defendants – "exacerbate[s] the problems created by their abusive use." *Id.*

As detailed, Defendants have flouted the Local Rules and disregarded settled jurisprudence governing ex parte applications.  Both the Fund and this Court have suffered as a result.  Under these circumstances, an award of sanctions is more than appropriate.  *See, e.g.*, *Poturich v. Allstate Ins. Co.*, No. EDCV 15-0081-GW (KKx), 2015 WL 4334419, at *3 (C.D. Cal. July 15, 2015) (awarding sanctions due to plaintiffs' counsel's failure to participate in the meet and confer or joint stipulation process required under the Local Rules); *Smith v. Frank*, 923 F.2d 139, 142 (9th Cir. 1991) ("For violations of local rules, sanctions may be imposed . . . .").

**V.    CONCLUSION**

For the foregoing reasons, this Court should deny the Ex Parte Application and sanction Defendants' counsel.


Dated: September 19, 2016          PACHULSKI STANG ZIEHL & JONES LLP
                                                     -and-
                                        COLE SCHOTZ P.C.


                                        By: /s/ James W. Walker
                                        James W. Walker (admitted *pro hac vice*)
                                        Cameron A. Welch (admitted *pro hac vice*)
                                        Eric S. Latzer (admitted *pro hac vice*)
                                        Attorneys for Plaintiff,
                                        The Wimbledon Fund, SPC (Class TT)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was sent to all counsel of record in this consolidated lawsuit via CM/ECF on this the 19th day of September 2016.

/s/ James W. Walker
James W. Walker