## CIVIL MINUTES – GENERAL    'O'

| Case No. | 2:15-cv-06633-CAS (SSx), C/W: 2:16-cv-02287-CAS(SSx) | Date | February 28, 2019 |
|---|---|---|---|
| Title | THE WIMBELDON FUND, SPC (CLASS TT) v. GRAYBOX, LLC ET AL.; C/W: THE WIMBELDON FUND, SPC (CLASS TT) v. DAVID BERGSTEIN; ET AL. | | |

Present: The Honorable    CHRISTINA A. SNYDER

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:      Attorneys Present for Defendants:

Not Present                Not Present

**Proceedings:**     (IN CHAMBERS) - THIRD PARTY DEFENDANTS' MOTIONS TO DISMISS (Dkts. [ 380 ], [381 ], [ 382 ], filed on December 20, 2018)

DEFENDANTS JAM AND INTEGRATED ADMINISTRATION'S MOTION FOR LEAVE TO AMEND (Dkt. [ 386 ], filed on January 22, 2019)

MOTION TO WITHDRAW AS COUNSEL (Dkt. [ 388 ], filed on January 28, 2019)

## I.    INTRODUCTION

Plaintiff, the Wimbledon Fund, SPC (Class TT) ("Wimbledon"), filed this action on August 28, 2015 against defendants Graybox, LLC. ("Graybox"), Integrated Administration ("IA"), Eugene Scher, as trustee of the Bergstein Trust ("Scher"), and Cascade Technologies, Corp. ("Cascade") (collectively, "defendants"). Dkt. 1 ("Compl."). In brief, Wimbledon alleged that it was the victim of a fraudulent investment scheme. Id.

On May 10, 2016, the Court consolidated this case with a related action against David Bergstein ("Bergstein"), Jerome Swartz ("Swartz"), Aaron Grunfeld ("Grunfeld"), and Kiarash Jam ("Jam"), which Wimbledon filed in the Southern District of Texas on July 30, 2015. Dkt. 134; see The Wimbledon Fund, SPC (Class TT) v. Bergstein, No. 2:16-cv-2287-CAS (AJWx). In that case, Wimbledon sought declaratory relief which identified the Texas defendants as alter egos of Swartz IP Services Group ("SIP"), and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    **'O'**

| Case No. | 2:15-cv-06633-CAS (SSx), C/W: 2:16-cv-02287-CAS(SSx) | Date | February 28, 2019 |
|----------|------------------------------------------------------|------|-------------------|
| Title | THE WIMBELDON FUND, SPC (CLASS TT) v. GRAYBOX, LLC ET AL.; C/W: THE WIMBELDON FUND, SPC (CLASS TT) v. DAVID BERGSTEIN; ET AL. | | |

which rendered them jointly and severally liable for SIP's liability arising out of or under a loan Wimbledon issued to SIP. <u>See generally</u> <u>id.</u>

On May 10, 2016, Graybox and Scher filed a third-party complaint seeking indemnification or contribution from third-party defendants, Weston Capital and Asset Management, LLC, Weston Capital Management, LLC (collectively "Weston"), Société Générale Private Banking Suisse, SA ("SG Suisse"), Swiss Financial Services (Bahamas) LTD, Albert Hallac and Jeffrey Hallac (collectively, the "Hallacs"), and Keith Wellner. Dkts. 133, 194. On September 15, 2016, Bergstein and Grunfeld filed separate, but substantially similar, third-party complaints seeking indemnification or contribution against the same third-party defendants named in Graybox and Scher's third-party complaint. Dkts. 204, 205.

Upon leave of Court, on November 15, 2018, Bergstein, Graybox, and Scher filed the operative joint second amended third party complaint against Weston, SG Suisse, Swiss Financial Services (Bahamas) LTD, the Hallacs, and Wellner. Dkt. 375 ("SATPC"). The SATPC alleges claims for equitable indemnity against all defendants; contribution against all defendants; fraudulent misrepresentation against the Hallacs, Wellner, and Weston; and negligent misrepresentation against SG Suisse. <u>Id.</u> Most basically, third-party plaintiffs allege that they acted in good faith and in reliance on representations that third-party defendants had decision-making authority with respect to the investment of funds derived from Wimbledon, or otherwise had authority to control the transfer of Wimbledon's assets. <u>Id.</u> ¶ 3. Third party plaintiffs claim that these representations led third-party plaintiffs to issue the allegedly fraudulent transfers, which are at issue in the underlying Wimbledon actions. <u>Id.</u> ¶ 5.

On December 20, 2018, SG Suisse filed a motion to dismiss third-party plaintiff's second amended third party complaint. Dkt. 380 ("MTD 1"). That same day, Wellner also filed a motion to dismiss, dkt. 381 ("MTD 2"), as did Weston and the Hallacs (collectively, the "Hallac defendants"), dkt. 382 ("MTD 3"). On January 14, 2019, third-party plaintiffs filed oppositions to the three motions to dismiss. Dkts. 383 ("Opp'n 1"), 385 ("Opp'n 2"), 384 ("Opp'n 3"). SG Suisse, Wellner, and the Hallac defendants filed reply briefs on February 11, 2019. Dkts. 394 ("Reply 1"), 393 ("Reply 2"), 395 ("Reply 3").

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:15-cv-06633-CAS (SSx),<br>C/W: 2:16-cv-02287-CAS(SSx) | Date | February 28, 2019 |
|---|---|---|---|
| Title | THE WIMBELDON FUND, SPC (CLASS TT) v. GRAYBOX, LLC ET AL.; C/W: THE WIMBELDON FUND, SPC (CLASS TT) v. DAVID BERGSTEIN; ET AL. | | |

On January 22, 2019, defendants IA and Jam filed a motion for leave to file amended pleadings in the suit brought by Wimbledon. Dkt. 386 ("MFL"). Plaintiff Wimbledon filed an opposition on February 4, 2019. Dkt. 391 ("OTL"). Jam and IA filed a reply on February 11, 2019. Dkt. 392 ("RTL").

On January 28, 2019, counsel for the Hallac defendants filed a motion to withdraw. Dkt. 388 ("MTW"). This motion is unopposed.

The motions to dismiss, the motion for leave to amend, and the motion to withdraw are presently before the Court. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

As mentioned, this action originated on August 28, 2015, when plaintiff Wimbledon filed suit against Graybox, IA, Scher, and Cascade. See Compl. In brief, the complaint alleges that Wimbledon was the victim of a fraudulent investment scheme involving an investment advisory company named Swartz IP Services Group ("SIP"). See generally Id. Wimbledon alleges that in November and December 2011, it invested $17.7 million dollars in SIP pursuant to a note purchase agreement ("NPA"), but that subsequently SIP caused this investment to be transferred to various related third parties, including defendants. Id. at 4–6. Wimbledon claims that these transfers violated its agreement with SIP and constituted fraudulent transfers in violation of the California Uniform Fraudulent Transfer Act ("CUFTA"). See id. Accordingly, Wimbledon asserts claims against defendants for avoidance and recovery of fraudulent transfers under California Civil Code §§ 3439.04, 3439.05, and 3439.07. Id. at 7–12. The Court consolidated the case with a related action against Bergstein, Swartz, Grunfeld, and Jam, which Wimbledon filed in Texas. These complaints are collectively referred to as the consolidated matter.

Previously, on October 1, 2013, Wimbledon also filed suit in the Supreme Court of New York against SG Suisse, Weston, Wellner, Albert Hallac, and Swiss Financial Services (Bahamas) Ltd.. SATPC, Ex. 2 (the "NY Compl."); see Chamonix Inv. Corp., et al. v. Weston Capital Asset Mgmt. LLC, et al., Index No. 654310/2012 (Supreme Ct., N.Y Co.). In that case, Wimbledon alleged multiple claims, including breach of fiduciary duty, aiding and abetting the breach of fiduciary duty, gross negligence, negligence,

**CIVIL MINUTES – GENERAL**    **'O'**

| Case No. | 2:15-cv-06633-CAS (SSx), C/W: 2:16-cv-02287-CAS(SSx) | Date | February 28, 2019 |
|---|---|---|---|
| Title | THE WIMBELDON FUND, SPC (CLASS TT) v. GRAYBOX, LLC ET AL.; C/W: THE WIMBELDON FUND, SPC (CLASS TT) v. DAVID BERGSTEIN; ET AL. | | |

breach of contract, fraud, and negligent misrepresentation. <u>See generally</u> NY Compl.  In brief, Wimbledon alleged that third party defendants grossly mismanaged an investment fund with over $100,000,000 under management by, *inter alia*, entering into the NPA with SIP.  <u>Id.</u> ¶ 1.

On September 29, 2015, the Court granted Wimbledon's request for a preliminary injunction and froze the assets of Graybox.  Dkt. 54.  The order was affirmed on appeal. <u>See</u> <u>Wimbledon Fund, SPC Class TT v. Graybox, LLC</u>, 648 F. App'x 701, 702 (9th Cir. 2016).

On November 19, 2015, the Court denied defendants Cascade, Graybox, Scher, and IA's motions to dismiss.  Dkt. 82.  On June 13, 2016, the Court denied defendants Bergstein, Grunfeld, and Jam's motions to dismiss.  Dkt. 151.  On August 31, 2016, the Court also denied Swartz's motion to dismiss.  Dkt. 192.

On May 10, 2016, Graybox and Scher filed a third-party complaint seeking indemnification or contribution from third-party defendants, Weston, SG Suisse, Swiss Financial Services (Bahamas) LTD, the Hallacs, and Wellner.  Dkts. 133, 194.  On September 15, 2016, Bergstein and Grunfeld filed separate, but substantially similar, third-party complaints seeking indemnification or contribution against the same third-party defendants named in Graybox and Scher's third-party complaint.  Dkts. 204, 205. On January 9, 2017, the Court stayed the consolidated matter along with the third party complaints, pending the resolution of a related criminal case against Bergstein and another defendant in the Southern District of New York.  Dkt. 29; <u>see</u> <u>United States v. Bergstein, et al.</u>, No. 16-cr-746-PKC (S.D.N.Y.).

On August 16, 2017, Bienert, Miller & Katzman, PLC ("BMK") appeared on behalf of Bergstein and Graybox.  Dkts. 307, 308.  Wimbledon reached a confidential settlement with Bergstein, Graybox, Scher, Cascade, Swartz, Grunfeld, and the Law Offices of Henry N. Jannol, and on August 17, 2017, the Court approved the parties' joint stipulation to lift the stay for the limited purpose of directing BMK to release the frozen funds to Wimbledon.  Dkt. 311.  On January 5, 2018, the Court subsequently granted the parties' joint stipulation to dismiss, with prejudice, all claims against the parties to the Settlement Agreement.  Dkt. 319.  Jam and IA remained the sole non-released defendants in the consolidated matter.

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:15-cv-06633-CAS (SSx),<br>C/W: 2:16-cv-02287-CAS(SSx) | Date | February 28, 2019 |
|---|---|---|---|
| Title | THE WIMBELDON FUND, SPC (CLASS TT) v. GRAYBOX, LLC ET AL.; C/W: THE WIMBELDON FUND, SPC (CLASS TT) v. DAVID BERGSTEIN; ET AL. | | |

On March 1, 2018, following a four-week trial, Bergstein was convicted on all counts and remanded into custody at the Metropolitan Correctional Center in New York. See Dkt. 326, Declaration of Anthony R. Bisconti ¶ 4. On June 27, 2018, Bergstein was sentenced and judgment was entered in the criminal case. See United States v. Bergstein, et al., No. 16-cr-746-PKC (S.D.N.Y.); Dkt. 420.

On July 5, 2018, the Court granted BMK's motion to withdraw as counsel, ordered Graybox to obtain counsel within thirty days, and explained that the previous stay had expired on its own terms, due to Bergstein's sentencing and entry of judgment. Dkt. 332.

On July 23, 2018, Wellner, SG Suisse, Weston and the Hallacs all filed motions to dismiss the previously-stayed third party complaints. Dkt. 335, 336, 337, 338, 339. On August 6, 2018, Alan D. Sege appeared on behalf of Graybox, dkt. 351, and subsequently filed requests for an extension of time to file responses to the third-party defendants' motions to dismiss, dkts. 352, 355. On September 18, 2018, Sege entered a notice of appearance on behalf of Scher and Bergstein, as well. Dkt. 370. On September 25, 2018, the Court granted third-party plaintiff's request to file amended complaints no later than November 15, 2018. Dkt. 372. Third party defendants' motions to dismiss were accordingly denied as moot, without prejudice to renewal once third-party plaintiffs filed amended complaints. Id. at 4.

Upon leave of Court, third-party plaintiffs filed the operative SATPC on November 15, 2018. Dkt. 375.

## III.  THIRD PARTY DEFENDANTS' MOTIONS TO DISMISS

### A.  Third Party Plaintiffs' Allegations

In their second amended complaint, third party plaintiffs allege claims for equitable indemnification and contribution against all defendants; fraudulent misrepresentation against Weston, the Hallacs, and Wellner; and negligent misrepresentation against SG Suisse. The suit arises out of a failed business relationship that allegedly originated in April 2011, when Bergstein first met with the Weston principals and eventually negotiated various investments and monetary transfers, using funds that were loaned by Wimbledon to SIP. Third party plaintiffs allege as follows.

### i.  The Parties

| | **CIVIL MINUTES – GENERAL** | | **'O'** | |
|---|---|---|---|---|
| Case No. | 2:15-cv-06633-CAS (SSx), C/W: 2:16-cv-02287-CAS(SSx) | Date | February 28, 2019 | |
| Title | THE WIMBELDON FUND, SPC (CLASS TT) v. GRAYBOX, LLC ET AL.; C/W: THE WIMBELDON FUND, SPC (CLASS TT) v. DAVID BERGSTEIN; ET AL. | | | |

Third party plaintiff Graybox is a limited liability company formed by Bergstein in 2000 and organized under the laws of the State of Nevada.  SATPC ¶ 10.  Graybox's principal place of business is in Santa Monica, California.  Id.  Bergstein is Graybox's sole manager.  Id.  The Bergstein Trust is administered out of Van Nuys, California. Id. ¶ 11.  SIP was a corporation formed in Texas in December 2010, and is allegedly based in California.  Id. ¶¶ 26, 54.[1]

Third party defendants the Hallacs are individuals residing in Palm Beach, Florida, and Wellner is an individual residing in New York.  Id. ¶¶ 16 – 19.  Weston is a limited liability company organized under the laws of the State of Delaware.  Id. ¶ 12.  Upon information and belief, its principal place of business is in New York.  Id.  Weston also maintained offices in Santa Monica, California.  Id. ¶ 21.  Weston's California-based employees allegedly reported to the Hallacs and Wellner, and the Hallacs and Wellner allegedly visited Weston's Santa Monica offices at least monthly during the events at issue in this case.  Id. ¶¶ 21–22.  SG Suisse allegedly maintains two of its eight U.S. offices in California.  Id. ¶¶ 28–29.   Third party plaintiffs claim that SG Suisse, "possibly through a U.S. subsidiary, is registered as qualified to do business in California as a foreign corporation."  Id. ¶ 30.

### ii.    The Loan from Wimbledon to SIP

Third party plaintiffs allege that Bergstein first met with Weston principals, including the Hallacs and Wellner, in April 2011, to discuss investment opportunities.  Id. ¶¶ 54, 55.  Weston, the Hallacs and Wellner represented to Bergstein that they could raise money for projects and business investments, and that they managed certain offshore funds which could be made available for investments.  Id. ¶ 55.  Plaintiffs add that "critically, throughout their dealings and in the course of discussing the possibility of investing certain offshore funds under Weston's control, Weston, through its officers Albert [Hallac], Jeffrey [Hallac], and Wellner, repeatedly and consistently represented to Bergstein that Weston, through Albert [Hallac], Jeffrey [Hallac], and Wellner, was the

---

[1]    Third party plaintiffs do not expressly allege that SIP had its principal place of business in California, but they refer to SIP as a "California-based company," and describe the events of this case as occurring through "SIP in California."  See SATPC ¶¶ 26, 31, 81.

| | CIVIL MINUTES – GENERAL | | 'O' | |
|---|---|---|---|---|
| Case No. | 2:15-cv-06633-CAS (SSx),<br>C/W: 2:16-cv-02287-CAS(SSx) | Date | February 28, 2019 | |
| Title | THE WIMBELDON FUND, SPC (CLASS TT) v. GRAYBOX, LLC ET AL.; C/W: THE WIMBELDON FUND, SPC (CLASS TT) v. DAVID BERGSTEIN; ET AL. | | | |

sole decision making authority regarding investment decisions, including any investments of funds derived from Wimbledon, and that no other person's or entity's consent was required for those investments." Id. ¶ 56.

In June 2011, Bergstein allegedly discussed with the Hallacs and Wellner the possibility of investing in a medical billing company, called Pineboard Holdings, LLC ("Pineboard"). Id. ¶ 62. Third party plaintiffs allege that, also in the middle of 2011, Albert Hallac approached Bergstein with a loan proposal. Id. ¶¶ 69–70. Under this loan agreement, Wimbledon and SIP would enter into a note purchase agreement ("NPA"), whereby Wimbledon would loan up to $25 million to SIP in the form of reference notes that Wimbledon could purchase from SIP. Id. ¶ 69. Third party plaintiffs allege that this loan was the means by which Wimbledon, through Weston and its affiliate Arius Libra, would make a capital contribution to Pineboard. Id. ¶¶ 63, 69.

SIP and Wimbledon entered into the NPA on or about November 14, 2011. Id. ¶ 69. Weston negotiated the NPA on behalf of Wimbledon. Id. ¶ 72. SG Suisse and Swiss Financial allegedly reviewed the documents, conducted due diligence, and certified the SIP note purchases to be "suitable" investments for Wimbledon. Id. ¶¶ 72–73. The final loan documents were executed by Weston, SG Suisse, Swiss Financial, and by Vincent King, as director of Wimbledon. Id. ¶ 73. Although the NPA permitted a loan of up to $25 million, Wimbledon only claims to have loaned a total of $17.7 million in notes to SIP. Id. ¶ 77.

Third Party Plaintiffs allege that, for the most part, "under the loan, SIP was free to use the Loan proceeds for whatever it wished"—including related party transactions. Id. ¶ 78. "Weston acting on behalf of Wimbledon, agreed to allow SIP to engage in related party transactions, specifically removing from the draft Loan a limitation on such transactions." Id. ¶ 71. The only obligatory uses of the loan proceeds were allegedly specified and directed by Weston, and the funds were issued to Weston affiliates. Id. ¶ 78. A letter signed by Jam, and dated November 17, 2011, allegedly delineated these obligatory disbursements (the "Side Letter"). Id. By late 2012, third party plaintiffs allege that SIP issued more than $10 million to Weston affiliates, including to Arius Libra, pursuant to Weston's direction. Id. ¶¶ 79, 90, 106.

### iii. Graybox's Transactions with Pineboard and Its Receipts from SIP

| | CIVIL MINUTES – GENERAL | 'O' | | |
|---|---|---|---|---|
| Case No. | 2:15-cv-06633-CAS (SSx), C/W: 2:16-cv-02287-CAS(SSx) | | Date | February 28, 2019 |
| Title | THE WIMBELDON FUND, SPC (CLASS TT) v. GRAYBOX, LLC ET AL.; C/W: THE WIMBELDON FUND, SPC (CLASS TT) v. DAVID BERGSTEIN; ET AL. | | | |

While the NPA between Wimbledon and SIP was being discussed, on or about October 1, 2011, Graybox entered into a Funding and Services Agreement with Pineboard, whereby Graybox provided services to Pineboard in exchange for $20,000 per month and reimbursement for costs. Id. ¶ 66. Graybox also allegedly advanced $1,410,367 to various entities on behalf of Pineboard between November 2011 and March 2012. Id. ¶¶ 63, 105. On or about November 18, 2011, SIP and Pineboard also entered into a Securities Purchase Agreement ("SPA"), whereby SIP purchased a note for the sum of $5 million, paying 50% of the purchase price upfront. Id. ¶ 67.

Third party plaintiffs allege that, based on Weston's representations regarding its authority as Wimbledon's manager, and in accordance with Weston's instructions, SIP thereafter transferred funds to Graybox to repay Pineboard's obligations to Graybox. Id. ¶ 107.[2] Graybox directed $400,000 of these funds allegedly owed to Graybox to be paid to the Bergstein Trust. Id. ¶ 109. These payments were the basis of Wimbledon's consolidated claims against third party plaintiffs. Third party plaintiffs allege that they only transferred and/or accepted funds from SIP because they reasonably and in good faith relied on representations by third party defendants that the transfers were authorized and permitted by Wimbledon's loan to SIP. Id. ¶¶ 105, 107–109. Indeed, third party plaintiffs allege that Graybox originally only advanced payments to Pineboard because Graybox relied on representations by Weston, the Hallacs, and Wellner that Wimbledon's loan to SIP would be employed to repay Graybox, and that "Weston had the authority to make payments from funds Graybox received from SIP." Id. ¶ 105.

### iv. Wimbledon Makes Redemption Demands, Pursuant to the NPA, and Ultimately Sues Third Party Plaintiffs and Defendants in New York, California, and Texas

---

[2] Third party plaintiffs also allege that SIP paid funds directly to Pineboard, pursuant to the Side Letter. Id. ¶ 93. Paul Parmar allegedly received in excess of $7 million of these funds in exchange for "certain assets pursuant to a purchase and sale agreement." Id. ¶ 94. Third party plaintiffs allege that "Parmar took the money but never delivered those assets." Id. ¶ 95. Third Party plaintiffs do not allege claims against Parmar, and they allege that Wimbledon also did not pursue Parmar because Wimbledon has an existing relationship with him. Id. ¶ 110.

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:15-cv-06633-CAS (SSx), C/W: 2:16-cv-02287-CAS(SSx) | Date | February 28, 2019 |
|---|---|---|---|
| Title | THE WIMBELDON FUND, SPC (CLASS TT) v. GRAYBOX, LLC ET AL.; C/W: THE WIMBELDON FUND, SPC (CLASS TT) v. DAVID BERGSTEIN; ET AL. | | |

In 2012, Wimbledon began making redemption demands from SIP, under the NPA. ¶ 97. After the parties failed to agree on the redemption payments owed by SIP, Wimbledon filed suit. Id. ¶¶ 97, 100–103. On October 1, 2013, Wimbledon and its affiliates sued third party defendants and others in the Supreme Court of the State of New York, alleging claims, *inter alia*, for breach of fiduciary duty, on behalf of multiple fiduciaries; aiding and abetting the breach of fiduciary duty; gross negligence, negligence, breach of contract, fraud, and negligent misrepresentation. See generally NY Compl. Then, on July 30, 2015, Wimbledon sued Bergstein, Swartz, Grunfeld, and Jam, in the Southern District of Texas, seeking a declaration that these defendants were alter egos of SIP. See Ex. 1 (Tex. Compl."). On August 28, 2015, Wimbledon also filed suit in this Court against Graybox, Scher, and others, alleging four claims for avoidance and recovery of fraudulent transfers, pursuant to California Civil Code §§ 3349.04, 3439.05, and 3439.07. Dkt. 1. The Texas and California actions were consolidated on May 10, 2016. Dkt. 134.

Bergstein, Graybox, and Scher initially sued Weston, the Hallacs, Wellner, Swiss Financial Services (Bahamas) LTD, and SG Suisse in two different actions for equitable indemnity. Dkts. 133, 194, 204, 205. In the operative joint, second amended third party complaint, they now claim equitable indemnity and contribution from all defendants, fraudulent misrepresentation against Weston, the Hallacs, and Wellner, and negligent misrepresentation against SG Suisse. Third Party plaintiffs allege that they advanced funds to Pineboard because they relied on the representations by third party defendants that Wimbledon's loan to SIP would repay them. SATPC ¶ 105. They further allege that only when Wimbledon sued SIP did third party plaintiffs learn, to their "complete surprise. . . that Weston was actually not authorized to direct or authorize the transactions and transfers" between Wimbledon, SIP, Pineboard, and Graybox, and therefore, "Weston, through Albert, Jeffrey, and Wellner, fraudulently and in breach of Weston's fiduciary duties to Wimbledon, directed or instructed SIP to repay the sums advanced by Graybox." Id. ¶ 104.

Third party plaintiffs allege that third party defendants "have a duty to indemnify third party plaintiffs for all damages incurred as a result of third party defendants' wrongdoing, including, but not limited to, the entire amount of the Settlement payments and the costs to third party plaintiffs of negotiating and performing under the Settlement Agreement in an amount to be proven at trial." Id. ¶ 138. Third party plaintiffs also

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:15-cv-06633-CAS (SSx), C/W: 2:16-cv-02287-CAS(SSx) | Date | February 28, 2019 |
|----------|------------------------------------------------------|------|-------------------|
| Title | THE WIMBELDON FUND, SPC (CLASS TT) v. GRAYBOX, LLC ET AL.; C/W: THE WIMBELDON FUND, SPC (CLASS TT) v. DAVID BERGSTEIN; ET AL. | | |

allege claims for fraudulent misrepresentation against Weston, the Hallacs, and Wellner, alleging that the third party defendants knowingly made false representations regarding their authority to control and invest Wimbledon's funds. Id. ¶¶ 144–145. Third party plaintiffs allege a claim against SG Suisse for negligent misrepresentation, alleging that it negligently approved the initial NPA entered into by SIP and Wimbledon. Id. ¶¶ 124, 150–152. Third party plaintiffs seek compensatory and punitive damages for their tort claims. Id. ¶¶ 148, 155.

After filing their initial third party complaints but before filing the operative, joint second amended third party complaint, Bergstein, Graybox, Scher, Cascade, Swartz, Grunfeld, and the Law Offices of Henry N. Jannol, reached a confidential Settlement Agreement with Wimbledon, which the Court approved on November 21, 2017. Id. ¶ 117. Pursuant to this agreement, Wimbledon dismissed its claims against the settling parties allegedly in exchange for $9.5 million. Id. ¶ 117.[3]

Third-party defendants move to dismiss third party plaintiffs' claims. They contend that the second amended third-party complaint fails to establish personal jurisdiction over the third-party defendants and fails to state a claim for equitable indemnification, contribution, fraud, or negligent misrepresentation. See Dkts. 335–339.

## B.    Legal Standard

Generally, personal jurisdiction exists if (1) it is permitted by the forum state's long-arm statute and (2) the "exercise of that jurisdiction does not violate federal due process." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154–55 (9th Cir. 2006). "California's long-arm statute is co-extensive with federal standards, so a federal court may exercise personal jurisdiction if doing so comports with federal constitutional due

---

[3]     Third Party plaintiffs appear to allege that Wimbledon has breached the Settlement Agreement by failing to produce certain documents which are relevant to the related criminal case, in which Bergstein was convicted. Id. ¶ 117. Bergstein represents that he requires these documents for his appeal. Id. ¶¶ 116–117. Third party plaintiffs also appear to allege that Wimbledon colluded with certain third party defendants to "lay blame on Bergstein" for the losses Wimbledon sustained through its transactions with Weston, the Hallacs, Pineboard, SIP, and others. Id. ¶¶ 110–111. Third party plaintiffs do not, however, allege claims against Wimbledon in this complaint.

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:15-cv-06633-CAS (SSx), C/W: 2:16-cv-02287-CAS(SSx) | Date | February 28, 2019 |
| Title | THE WIMBELDON FUND, SPC (CLASS TT) v. GRAYBOX, LLC ET AL.; C/W: THE WIMBELDON FUND, SPC (CLASS TT) v. DAVID BERGSTEIN; ET AL. | | |

process." <u>Boschetto v. Hansing</u>, 539 F.3d 1011, 1015 (9th Cir. 2008). "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 801 (9th Cir. 2004) (quoting <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945)). Depending on the nature of the contacts between the defendant and the forum state, personal jurisdiction is characterized as either general or specific.

### i.    General Jurisdiction

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 919 (2011) (quoting <u>International Shoe</u>, 326 U.S. at 317). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." <u>Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty.</u>, 137 S. Ct. 1773, 1780 (2017) (citations omitted). A corporation's place of incorporation and principal place of business are the paradigmatic bases for general jurisdiction. <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 137 (2014). Otherwise, "[t]he standard is met only by 'continuous corporate operations within a state [that are] thought so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities.'" <u>King v. Am. Family Mut. Ins. Co.</u>, 632 F.3d 570, 579 (9th Cir. 2011) (quoting <u>International Shoe</u>, 326 U.S. at 318).

The standard for general jurisdiction "is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." <u>Mavrix Photo, Inc. v. Brand Techs., Inc.</u>, 647 F.3d 1218, 1224 (9th Cir. 2011). To date, the Supreme Court has found the extension of general jurisdiction over a non-resident defendant to be proper in only one case, <u>Perkins v. Benguet Consolidated Mining Co.</u>, 342 U.S. 437 (1952). There, during wartime, a corporation halted its usual business operations in the Philippine Islands, and its President-general manager-principal stockholder relocated to his home

| | **CIVIL MINUTES – GENERAL** | **'O'** | |
|---|---|---|---|
| Case No. | 2:15-cv-06633-CAS (SSx), C/W: 2:16-cv-02287-CAS(SSx) | Date | February 28, 2019 |
| Title | THE WIMBELDON FUND, SPC (CLASS TT) v. GRAYBOX, LLC ET AL.; C/W: THE WIMBELDON FUND, SPC (CLASS TT) v. DAVID BERGSTEIN; ET AL. | | |

state of Ohio to conduct the business. Id. at 447. For that reason, the Supreme Court found general jurisdiction could be exercised, because "Ohio was the corporation's principal, if temporary, place of business . . . ." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 780 n.11 (1984) (citing Perkins, 342 U.S. at 448). Conversely, the Supreme Court found minimum contacts insufficient even where a Germany-based car corporation, through an indirect subsidiary company, had numerous offices in California, and received 10 percent of its U.S. revenues from California sales, as well as 2.4 percent of its worldwide sales. Daimler AG, 571 U.S. at 123. The company's U.S. subsidiary's place of incorporation was Delaware and its principal place of business was New Jersey, and the Supreme Court denied plaintiff's request to "approve the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business.'" Id. at 138. "That formulation, we hold, is unacceptably grasping." Id.

### ii.    Specific Jurisdiction

A court may exercise specific jurisdiction if the claim for relief arises out of or relates to the defendant's contacts with the forum. Bristol-Myers, 137 S. Ct. at 1780. The Ninth Circuit applies a three-part test to determine if the exercise of specific jurisdiction over a nonresident defendant is appropriate:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger, 374 F.3d at 802 (quoting Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)). The plaintiff bears the burden of satisfying the first two prongs, and if either of these prongs is not satisfied, personal jurisdiction is not established. Id.

When a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of establishing that

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:15-cv-06633-CAS (SSx), C/W: 2:16-cv-02287-CAS(SSx) | Date | February 28, 2019 |
|----------|------------------------------------------------------|------|-------------------|
| Title | THE WIMBELDON FUND, SPC (CLASS TT) v. GRAYBOX, LLC ET AL.; C/W: THE WIMBELDON FUND, SPC (CLASS TT) v. DAVID BERGSTEIN; ET AL. | | |

jurisdiction is proper." Boschetto, 539 F.3d at 1015 (citation omitted). Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1127 (9th Cir. 2010) (quoting Pebble Beach, 453 F.3d at 1154. The plaintiff cannot simply rely on the "bare allegations" of its complaint; however, uncontroverted allegations in the complaint must be taken as true, and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." Schwarzenegger, 374 F.3d at 800.

In the event the Court has doubts about whether it can exercise personal jurisdiction, a plaintiff may request an opportunity to conduct jurisdictional discovery. "A plaintiff need only present a colorable basis for jurisdiction to obtain discovery, and a court abuses its discretion in denying discovery when it might well demonstrate jurisdictionally relevant facts." Lang v. Morris, 823 F. Supp. 2d 966, 979 (N.D. Cal. 2011) (internal quotation marks and citations omitted).

## C.    Personal Jurisdiction over Wellner and the Hallacs

Third party plaintiffs argue that the Court may exercise specific jurisdiction over Wellner, who is domiciled in New York, and the Hallacs, who are domiciled in Florida. Third party plaintiffs allege that Wellner and the Hallacs regularly travel to California for business, and that they specifically traveled to California to conduct business and engage in transactions implicated in this case. Opp'n 2 at 12–13 (citing SATPC ¶ 22); Opp'n 3 at 10 (citing SATPC ¶¶ 25–27). Third party plaintiffs add that Weston maintains a Santa Monica, California-based office, and that the Hallacs, Wellner, and Weston directed larges sums of money to themselves from or through SIP, a company with whom the third party defendants negotiated and transacted with in California. Opp'n 2 at 14. Weston, Wellner, and Weston were also allegedly involved with the transactions related to Pineboard. SATPC ¶¶ 62–63, 69. Finally, TPP alleges that, in a related criminal case against Bergstein, Wellner testified under oath that Wellner had traveled to California multiple times to meet with Bergstein and to discuss transactions at issue in this lawsuit. Opp'n 3 at 5 (citing United States v. Bergstein, et al., No. 1:16-cr-00746-PKC (S.D.N.Y.)).

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:15-cv-06633-CAS (SSx), C/W: 2:16-cv-02287-CAS(SSx) | Date | February 28, 2019 |
|---|---|---|---|
| Title | THE WIMBELDON FUND, SPC (CLASS TT) v. GRAYBOX, LLC ET AL.; C/W: THE WIMBELDON FUND, SPC (CLASS TT) v. DAVID BERGSTEIN; ET AL. | | |

In response, the Hallacs argue that the Court lacks specific jurisdiction over them because "nothing about the fact that SIP is located in California and that [Wimbledon's loan was] to be issued and paid [t]here is sufficient to confer personal jurisdiction." MTD 2 at 12. The Hallacs cite cases that which hold that merely entering into a contract with a party in the forum does not confer jurisdiction, nor does the receipt of funds in the forum state. Opp'n 2 at 11–12. The Hallacs also provide sworn declarations which aver that they are not domiciled in California, and that they did not draft, negotiate, or execute the loans or monetary transfers at issue in this case in California. Dkts. 382-1 ("A. Hallac Decl."), 382-2 ("J. Hallac Decl.") ¶¶ 2, 7–9.

Wellner also argues that the Court lacks specific personal jurisdiction over him. "Here, the Third Party Plaintiffs allege no activities engaged in by Wellner that were directed to California that caused the harm alleged in the TPC at any time for any reason. They do not allege that Wellner drafted, executed, or negotiated the NPA in California. Similarly Third Party Plaintiffs do not allege that Wellner directed or consented to the alleged transfers that are the subject of the Complaint in California." MTD 3 at 12. As with the Hallacs, Wellner also includes a declaration in which he denies participating in any of the events or activities associated with this case in the forum. Dkt. 381-1 ("Wellner Decl.") ¶¶ 6–10 .

The Court finds jurisdictional discovery is appropriate for determining whether the Court may exercise personal jurisdiction over the Hallacs and Wellner. Third party plaintiffs allege facts about the Hallac's and Wellner's meetings with Bergstein, their involvement in the negotiation of Wimbledon's loan to SIP, as well as their direction of funds obtained by SIP. However, third party plaintiffs proffered no affidavits or other evidence supporting these claims. In light of third party defendants' sworn affidavits denying their involvement in the forum-based events in these actions, third party plaintiffs accordingly have not carried their burden of demonstrating personal jurisdiction. "[A] plaintiff can rely on the allegations in his complaint to the extent they are not controverted by the moving party[, but i]f defendants adduce evidence controverting the allegations . . . the plaintiff must 'come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" Ayunan v. Caktiong, No. CV 15-9355-RSWL (PLAx), 2016 WL 738288, at *2 (C.D. Cal. Feb. 23, 2016) (quoting Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986)).

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:15-cv-06633-CAS (SSx), C/W: 2:16-cv-02287-CAS(SSx) | Date | February 28, 2019 |
|----------|------------------------------------------------------|------|-------------------|
| Title | THE WIMBELDON FUND, SPC (CLASS TT) v. GRAYBOX, LLC ET AL.; C/W: THE WIMBELDON FUND, SPC (CLASS TT) v. DAVID BERGSTEIN; ET AL. | | |

At oral argument, counsel for both the Hallacs and Wellner argued that third party plaintiffs' failure to submit affidavits forfeited their right to request jurisdictional discovery. The Ninth Circuit has held that "where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery . . . ." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1160 (9th Cir. 2006) (citing Terracom v. Valley Nat. Bank, 49 F.3d 555, 562 (9th Cir. 1995)). However, "[d]iscovery may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted *or where a more satisfactory showing of the facts is necessary*." Boschetto v. Hansing, 539 F.3d 1011, 1020 (9th Cir. 2008) (emphasis added) (citations omitted). "A plaintiff need only present a colorable basis for jurisdiction to obtain discovery, and a court abuses its discretion in denying discovery when it might well demonstrate jurisdictionally relevant facts." Lang, 823 F. Supp. 2d at 979 (internal quotation marks and citations omitted).

Here, the Court finds that third party plaintiffs' allegations are not "attenuated," and that a fuller record is necessary to determine whether the Court may exercise personal jurisdiction. Accordingly, the Court grants jurisdictional discovery. The discovery period shall not exceed forty-five (45) days and the scope of discovery is limited to actions related to the forum-based negotiations, transactions, meetings and other events at issue in this case. Seven (7) days after the forty-five (45) day discovery period closes, plaintiff shall file a memorandum not to exceed ten (10) pages, setting forth facts demonstrating the availability of personal jurisdiction. The Hallacs and Wellner may respond seven days thereafter, also by filing a memorandum not to exceed ten (10) pages. The parties are directed not to submit any further briefing on the other grounds underlying their motions to dismiss.

### D. Personal Jurisdiction Over Weston

Third party plaintiffs also argue that the Court may exercise jurisdiction over Weston. Third party plaintiffs insist that Weston's maintenance of an office in Santa Monica, California, where Weston employs California-based employees who conduct business in California, establishes general jurisdiction. Opp'n 2 at 5. This, third party plaintiffs argue, coupled with the forum-related negotiations and transactions allegedly orchestrated by the Hallacs, demonstrates that jurisdiction is proper. Opp'n 2 at 13.

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:15-cv-06633-CAS (SSx),<br>C/W: 2:16-cv-02287-CAS(SSx) | Date | February 28, 2019 |
|----------|----------------------------------------------------------|------|-------------------|
| Title | THE WIMBELDON FUND, SPC (CLASS TT) v. GRAYBOX, LLC ET AL.; C/W: THE WIMBELDON FUND, SPC (CLASS TT) v. DAVID BERGSTEIN; ET AL. | | |

As a preliminary matter, third party plaintiffs fail to establish general jurisdiction over Weston. Despite their allegations that Weston regularly conducts business in California, third party plaintiffs do not, and could not, argue that Weston's principal place of business is in California, nor that the Weston entities were incorporated in California. Daimler AG, 571 U.S. at 137. Weston is a limited liability company organized under the laws of the State of Delaware. ¶ 12. Third party plaintiffs allege, upon information and belief, its principal place of business is in New York. ¶ 12.

Additionally, in light of the Hallacs' responsive declarations denying that Weston affiliates conducted activities associated with the underlying claims in California, the Court finds that third party plaintiffs fail to demonstrate that the Court may exercise specific jurisdiction over Weston. However, jurisdictional discovery is appropriate to determine Weston's involvement in forum-related activities pertinent to this case. Third party plaintiffs may pursue this discovery in conjuncture with its jurisdictional discovery into the Hallacs and Wellner.

### E.     Personal Jurisdiction Over SG Suisse

With respect to SG Suisse, the Court also directs the parties to conduct jurisdictional discovery. As SG Suisse argues, the fact that SG Suisse may maintain offices in California—which SG Suisse disputes— does not establish that the Court may exercise personal jurisdiction over SG Suisse. SG Suisse is a Switzerland-based financial institution, and no exceptional circumstances render it "at home" in California. Opp'n 1 at 1. Accordingly, general jurisdiction is not proper. Daimler AG, 571 U.S. at 137. The alleged existence of forum-based offices similarly does not give rise to specific jurisdiction, because specific jurisdiction requires that "the claim . . . be one which arises out of or relates to the defendant's forum-related activities." Opp'n 1 at 8 (citing Schwarzenegger, 374 F.3d at 802).

However, third party plaintiffs also allege that SG Suisse "performed services for Wimbledon and Weston in relation to the California-based company SIP and the Loan at issue in this case, and, on information belief [sic], was paid for that work from proceeds of that in-California transaction." SATPC ¶ 31. Third party plaintiffs also allege that SG Suisse represents that it conducted due diligence in the course of approving the loan. Id. ¶¶ 73, 85. This could indicate that SG Suisse researched and reviewed SIP, an allegedly California-based company, and that SG Suisse recognized that it was participating in a

**CIVIL MINUTES – GENERAL      'O'**

| Case No. | 2:15-cv-06633-CAS (SSx), C/W: 2:16-cv-02287-CAS(SSx) | Date | February 28, 2019 |
|---|---|---|---|
| Title | THE WIMBELDON FUND, SPC (CLASS TT) v. GRAYBOX, LLC ET AL.; C/W: THE WIMBELDON FUND, SPC (CLASS TT) v. DAVID BERGSTEIN; ET AL. | | |

California investment scheme.[4] "The mere existence of a contract with a party in the forum state does not constitute sufficient minimum contacts for jurisdiction." Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir. 1990) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985)). But where "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . determine [that] the defendant's contacts are substantial and not merely random, fortuitous, or attenuated," a Court may exercise specific personal jurisdiction. Sher, 911 F.2d at 1362 (internal citations and quotations omitted).

Given third party plaintiffs' allegations pertaining to SG Suisse's involvement in and ultimate approval of the SIP NPA, third party plaintiffs "present a colorable basis for jurisdiction to obtain discovery." Lang, 823 F. Supp. 2d at 979.[5] As with the discovery

---

[4] At oral argument, counsel for SG Suisse argued that a letter which is referenced in Wimbledon's initial complaint filed against SG Suisse in New York demonstrates that this due diligence never occurred. See Opp 1, Ex. 2 ("Nov. Letter"). Third party plaintiffs' SATPC included as an attachment this New York complaint, but the SATPC does not reference the letter. Counsel for SG Suisse argues that the Court may judicially notice that letter pursuant to the incorporation by reference doctrine. Dkt. 380-1 at 2 (citing Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1160 (9th Cir. 2012) ("[C]ourts may take into account 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'")). The Court disagrees. For the purposes of this motion to dismiss, it would be improper to take judicial notice of a document referenced in an attachment to the complaint. The doctrine of incorporation is not so far-reaching. However, even assuming the Court took judicial notice of the letter, the Court does not find that the letter necessarily demonstrates that SG Suisse never conducted due diligence with regard to the NPA. Instead, the letter appears to indicate that Wimbledon did not rely exclusively on information that SG Suisse provided—whatever information that was. Nov. Letter at 1 ("We have made our own appraisal of the financial, economic and legal characteristics of the above-mentioned instrument(s) without relying exclusively on the information with which we were provided . . . .").

[5] In its reply brief, SG Suisse argues that jurisdictional discovery is inappropriate in this case where "SG Suisse's motion accepts the Third Party Complaint's allegations as true and makes a facial challenge to the adequacy of those jurisdictional allegations."

| | CIVIL MINUTES – GENERAL | | 'O' | |
|---|---|---|---|---|
| Case No. | 2:15-cv-06633-CAS (SSx),<br>C/W: 2:16-cv-02287-CAS(SSx) | Date | February 28, 2019 | |
| Title | THE WIMBELDON FUND, SPC (CLASS TT) v. GRAYBOX, LLC ET AL.; C/W: THE WIMBELDON FUND, SPC (CLASS TT) v. DAVID BERGSTEIN; ET AL. | | | |

pertaining to the other third party defendants, the discovery period shall not exceed forty-five (45) days and the scope of discovery is limited to SG Suisse's involvement in approving the SIP loan, particularly focused on its forum-based contacts. The parties will follow the same briefing schedule as with the other third-party defendants.

\*     \*     \*     \*     \*

In conclusion, the Court directs the parties to engage in jurisdictional discovery. The Court **RESERVES** ruling on third party defendants' additional proffered arguments in support of dismissing third party plaintiff's claim, until the time the Court has determined whether it may exercise personal jurisdiction over the parties.

## IV.   DEFENDANTS JAM AND INTEGRATED ADMINISTRATION'S MOTION FOR LEAVE TO FILE AMENDED PLEADINGS

Defendants Jam and IA seek leave to file amended pleadings in the consolidated matter brought by Wimbledon. MFL at 1. As noted, in light of the Settlement Agreement entered into by Bergstein, Graybox, Scher, Cascade, Swartz, Grunfeld, and the Law Offices of Henry N. Jannol (the "Settling Parties"), Jam and IA remain the sole defendants in the consolidated case. Jam and IA move for leave to amend their answer to allege two additional defenses. MFL at 3. Jam also moves to amend the pleadings to state a counterclaim against Wimbledon for declaratory relief that Jam is not an alter-ego of SIP. Both parties seek leave to state a counterclaim against Wimbledon and a cross-claim against the Settling Parties for reformation of the Settlement Agreement, whereby Jam and IA would be treated as released defendants and Wimbledon's claims against them would be dismissed with prejudice. MFL at 3.

---

Reply 1 at 5 (citing Lu v. Cent. Bank of Republic of China (Taiwan), 610 Fed. App'x 674, 675 (9th Cir. 2015) ("Defendants' motion to dismiss mounted a facial attack on Lu's jurisdictional allegations, so further discovery was not relevant to the motion.")). However, the Court finds that SG Suisse did not facially accept third party plaintiffs' contentions that SG Suisse conducted due diligence and reviewed the loan with SIP, which could suggest contacts with a forum-based entity. Discovery on this issue will accordingly help resolve whether the Court has personal jurisdiction over SG Suisse in this case.

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:15-cv-06633-CAS (SSx), C/W: 2:16-cv-02287-CAS(SSx) | Date | February 28, 2019 |
|---|---|---|---|
| Title | THE WIMBELDON FUND, SPC (CLASS TT) v. GRAYBOX, LLC ET AL.; C/W: THE WIMBELDON FUND, SPC (CLASS TT) v. DAVID BERGSTEIN; ET AL. | | |

## A.    The Settlement Agreement

Bergstein, Graybox, Scher, Cascade, Swartz, Grunfeld, and the Law Offices of Henry N. Jannol, Jam entered into a Settlement Agreement with Wimbledon on November 16, 2017. MFL at 1. Although the Settlement Agreement was previously confidential, Bergstein allegedly introduced a copy of the Settlement Agreement in his criminal trial, and Jam and Integrated Administrated attached the document to their motion—claiming that it is now a public document. MFL at 1, n.1; see dkt. 386-1 ("SA"). Pursuant to that Settlement Agreement, Wimbledon would dismiss its claims against Bergstein, Graybox, Scher, Cascade, Swartz, Grunfeld, the Law Offices of Henry N. Jannol, Jam and IA in exchange for $9.412 million. SA (A)(1). These funds were to be paid in three installments: an immediate $2.412 million payment from Graybox's frozen funds; a $5 million payment, within thirty days of entering into the Settlement Agreement, by SIP or its designee; and a final $2 million payment by SIP or its designee within twelve months of executing the agreement. Id.

Under the Settlement Agreement, Wimbledon would dismiss with prejudice its claims against Bergstein, Graybox, Scher, Cascade, Swartz, Grunfeld, and the Law Offices of Henry N. Jannol upon receipt of the $5 million. Id. (A)(1)(d). However, Wimbledon would only release Jam and IA upon the final receipt of $2 million, within twelve months of executing the Settlement Agreement. Id. [6]

Although Wimbledon received the first two payments, pursuant to the terms of Settlement Agreement, the final payment of $2 million was never received. MFL at 8. Accordingly, Wimbledon never dismissed its claims against Jam and IA. Jam and IA

---

[6]    The Court notes that SG Suisse also attached copy of a Settlement Agreement that Bergstein purportedly entered into with Wimbledon, which was filed in a separate case, pending in the Supreme Court of New York, Wimbledon Financing Master Fund, Ltd. v. Bergstein et al., Index No. 150584/2016 on May 1, 2018 (Dkt. 960); see 380-8 ("NY SA"). This case has not previously been disclosed to this Court. The Court has reviewed the document and finds that the terms of that copy of the Settlement Agreement, as they relate to Jam and IA, are substantially similar to the Settlement Agreement produced by Jam and IA. See NY SA ¶ 6 (providing that Jam and IA would be released only upon the final payment of $2 million).

CIVIL MINUTES – GENERAL       'O'

| Case No. | 2:15-cv-06633-CAS (SSx),<br>C/W: 2:16-cv-02287-CAS(SSx) | Date | February 28, 2019 |
| Title | THE WIMBELDON FUND, SPC (CLASS TT) v. GRAYBOX, LLC ET AL.; C/W: THE WIMBELDON FUND, SPC (CLASS TT) v. DAVID BERGSTEIN; ET AL. | | |

now seek leave to amend the pleadings on the basis that they were wrongfully excluded from settlement discussions, and on the basis that they were not released from the case, with the other defendants.

### B.    Federal Rule of Civil Procedure 15(a)

As a preliminary matter, the Court must decide whether Federal Rule of Civil Procedure 15(a) or 16(b) applies. Generally, a court grants a motion for leave to amend pleadings pursuant to the permissive standard of Rule 15(a). Martinez v. Newport Beach City, 125 F.3d 777, 785 (9th Cir.1997). However, if the district court has entered a scheduling order establishing a deadline for amending pleadings, Rule 16(b) applies once the deadline has passed. Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir.2000). This is because once the scheduling order deadline passes, the court must modify the scheduling order to permit an amendment. Judge Beverly Reid O'Connell & Judge Karen L. Stevenson, Federal Civil Procedure Before Trial (2018) § 8:1469 (citing Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992)). Here, since Jam and IA's filing abides by the parties' joint stipulation to extend the deadline by which parties could file amended pleadings, see dkt. 378, Rule 15(a) provides the applicable standard.

Rule 15 provides that after a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a).

Where leave to amend is required, the decision whether to grant leave to amend "is entrusted to the sound discretion of the trial court." Jordan v. County of Los Angeles, 669 F.2d 1311, 1324 (9th Cir.1982), vacated on other grounds, 459 U.S. 810 (1982). "Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." Johnson v. Buckley, 356 F.3d 1067, 1077 (9th Cir. 2004) (citing Nunes v. Ashcroft, 348 F.3d 815, 818 (9th Cir. 2003)). "Some courts have stressed prejudice to the opposing party as the key factor." Texaco v. Ponsoldt, 939 F.2d 794, 798 (9th Cir. 1991). However, "[u]ndue delay is a valid reason for denying leave to amend." Id. (internal quotation marks and citation omitted); but see Bowles v. Reade, 198 F.3d 752, 758 (9th Cir. 1999) ("Undue delay by itself, however, is insufficient to justify denying a motion to amend."). Further, "the

CIVIL MINUTES – GENERAL        'O'

| Case No. | 2:15-cv-06633-CAS (SSx),<br>C/W: 2:16-cv-02287-CAS(SSx) | Date | February 28, 2019 |
|----------|-----------------------------------------------------------|------|-------------------|
| Title | THE WIMBELDON FUND, SPC (CLASS TT) v. GRAYBOX, LLC ET AL.; C/W: THE WIMBELDON FUND, SPC (CLASS TT) v. DAVID BERGSTEIN; ET AL. | | |

liberality of Rule 15(a) does not mean that amendment will be allowed regardless of the diligence of the moving party. Where the party seeking amendment knows or should know of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend may be denied." Jordan, 669 F.3d at 1324. "[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." Acri v. Int'l Ass'n of Machinists & Aerospace Workers, 781 F.2d 1393, 1398 (9th Cir. 1986).

### C.    Discussion

Jam and IA move for leave to amend their answer to allege two additional defenses: that Wimbledon already settled its claims against Jam and IA, and that Wimbledon is limited to seeking $2 million in damages. MFL at 3. Jam also moves to amend the pleadings to state a counter-claim against Wimbledon for declaratory relief that Jam is not an alter-ego of SIP. Id. Both Jam and IA seek to state a counterclaim against Wimbledon and a cross-claim against the Settling Parties for reformation of the Settlement Agreement, whereby Jam and IA would be treated as released defendants and Wimbledon's claims against them would be dismissed with prejudice. Id. In reforming the Settlement Agreement, Jam and IA allegedly "seek relief in the form of being included among the first group of released defendants, a class to which Jam and IA are rightful members and to which they were only excluded because David Bergstein willed otherwise." RFL at 4.

Jam and IA acknowledge that they were not privy to the Settlement Agreement discussions and negotiations. RFL at 4. Still, they argue that leave to amend the pleadings should be permitted because they were wrongfully excluded from the Settlement Agreement's releases. More specifically, Jam contends that Bergstein excluded Jam from release because Bergstein "desired to retain leverage over Jam with regard to his potential testimony at the criminal trial," which occurred in New York. MFL at 2. Additionally, Jam argues that his prior attorney, Jannol, who was also a co-defendant, wrongfully excluded Jam from settlement discussions and failed to disclose the existence of the agreement until months after it was executed, namely in March 2018. MFL 5. Particularly because Jannol secured his own release under the Settlement

**CIVIL MINUTES – GENERAL**    **'O'**

| Case No. | 2:15-cv-06633-CAS (SSx), C/W: 2:16-cv-02287-CAS(SSx) | Date | February 28, 2019 |
|----------|------|------|------|
| Title | THE WIMBELDON FUND, SPC (CLASS TT) v. GRAYBOX, LLC ET AL.; C/W: THE WIMBELDON FUND, SPC (CLASS TT) v. DAVID BERGSTEIN; ET AL. | | |

Agreement, Jam contends that this conflict of interest renders the Settlement Agreement contrary to public policy. MFL at 3, 5.

Wimbledon opposes Jam and IA's motion. Wimbledon first argues that Jam and IA's proposed amendments are futile. Wimbledon contends that Jam and IA have no legal basis to reform the Settlement Agreement, Wimbledon asserts that the Settlement Agreement is not contrary to public policy, and Wimbledon argues that Jam's proposed counter-claim for declaratory relief should be denied as duplicative. OTL at 9, 11, 13. Wimbledon also emphasizes that this case has proceeded for more than three years, and that discovery is nearly complete—which renders Jam and IA's motion untimely and prejudicial. OTL at 1, 15.

The Court finds that, on balance, the factors weigh against leave to amend. This case has lingered for over three years, and its procedural history is robust. When this case commenced, the Court denied Jam and IA's motions to dismiss. The Court has granted a preliminary injunction, which was affirmed by the Ninth Circuit, and has stayed the matter pending the resolution of related cases. At this point, with discovery set to be completed in only one month, the Court finds that Jam and IA's motion would unfairly prejudice Wimbledon, as these claims would expand the scope of discovery to investigate the circumstances of the settlement. See Jackson v. Bank of Hawaii, 902 F. 2d 1385, 1387 (9th Cir. 1990) (denying leave to amend due to undue delay and the prejudice that would be caused by additional discovery after amendment).

This motion is also untimely. While Jam and IA argue that the necessity of these amendments only became apparent when they learned of the Settlement Agreement, by their own admission they learned of the Settlement Agreement on March 30, 2018— nearly eleven months ago. MFL at 5. Even if the $2 million payment was not due until November 2018, twelve months after the Settlement Agreement was executed, Jam and IA would still have known in March that the Settlement Agreement provided for their release differently than for the other defendants. Moreover, in September 2018, Jam and IA acted to delay this case when they opposed Wimbledon's motion to modify the scheduling order once the Court lifted the stay on this matter. See Dkt. 366. Jam and IA argued that the Court should not proceed with the case because it was not yet clear whether Bergstein would pay the $2 million necessary to release Jam and IA. Id. at 3. Clearly then, the implications of this Settlement Agreement have been apparent to Jam

**CIVIL MINUTES – GENERAL**    **'O'**

| Case No. | 2:15-cv-06633-CAS (SSx), C/W: 2:16-cv-02287-CAS(SSx) | Date | February 28, 2019 |
|---|---|---|---|
| Title | THE WIMBELDON FUND, SPC (CLASS TT) v. GRAYBOX, LLC ET AL.; C/W: THE WIMBELDON FUND, SPC (CLASS TT) v. DAVID BERGSTEIN; ET AL. | | |

and IA long ago. Jam and IA offer no justification for their delay—which strongly militates in favor of denial of leave. <u>Texaco</u>, 939 F.2d at 799 (affirming denial of leave to amend where a party waited eight-months before seeking leave to amend).

The Court also finds that Jam and IA's proposed amendments would be futile. First, Jam and IA offer no legal grounds to allege a claim for reformation. "Where the parties come to an agreement, but by mistake (or fraud) the written instrument does not express their agreement correctly, it may be reformed or revised on the application of the aggrieved party, provided that this can be done without prejudice to rights acquired by third persons in good faith and for value." 1 Witkin, <u>Summary of Cal. Law</u> (11th ed. 2018), Contracts § 277; <u>see also</u> <u>Hess v. Ford Motor Co.</u>, 27 Cal. 4th 516, 524 (2002). Here, Jam and IA were not parties to the Settlement Agreement and they did not participate in its negotiations. However, they argue that they are third party beneficiaries to the Settlement Agreement with standing to seek reformation, because the Settlement Agreement contemplated their releases. MFL at 6 (citing <u>International Service Ins. Co. v. Gonzales</u>, 194 Cal. App. 3d 110, 118–119 (1987)); RFL 3. The Court notes that the authority Jam and IA cite pertains to intended beneficiaries of *insurance* policies, not a Settlement Agreement. Witkin similarly provides that insurance policy holders, as well as a grantee of a mortgagor, may exercise rights to reformation as intended beneficiaries, but Witkin does not suggest that the remedy applies to intended beneficiaries of Settlement Agreements. <u>See</u> 1 Witkin, <u>Summary of Cal. Law</u> (11th ed. 2018), Contracts § 277. But even assuming Jam and IA have standing to sue for reformation, they plead no facts supporting the contention that a mutual mistake or fraud occurred in writing the Settlement Agreement. Indeed, as Wimbledon argues, "Jam and Integrated's proposed change"—namely to release Jam and IA because Bergstein, Graybox, and the others were released— "is decidedly *inconsistent* with the settling parties' intent, as evidenced by the express terms of the Settlement Agreement." OTL at 10. The proposed reformation would also require Wimbledon to release all defendants without receiving the full benefit of the Settlement Agreement—namely, $9.4 million.

The facts presented by Jam and IA also do not indicate that the Settlement Agreement should be deemed unconscionable or contrary to public policy. Wimbledon entered into a Settlement Agreement with certain parties to this lawsuit. That Settlement Agreement provided that Jam and IA would be released from this lawsuit, provided that certain conditions precedent occurred by a specific date. When the negotiating parties

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:15-cv-06633-CAS (SSx),<br>C/W: 2:16-cv-02287-CAS(SSx) | Date | February 28, 2019 |
| --- | --- | --- | --- |
| Title | THE WIMBELDON FUND, SPC (CLASS TT) v. GRAYBOX, LLC ET AL.; C/W: THE WIMBELDON FUND, SPC (CLASS TT) v. DAVID BERGSTEIN; ET AL. | | |

did not satisfy the condition precedent, Jam and IA were not released.  Jam and IA may dislike that outcome, but the failure of one party to satisfy an obligation under a contract does not render it unconscionable.  As Wimbledon underscores, "Bergstein had no obligation to secure a release for Jam and IA, nor did [Wimbledon] have an obligation to settle with all defendants."  OTL at 11.  Jam and IA similarly present no authority that the alleged misconduct by their attorney renders the Settlement Agreement unconscionable, even if it may give rise to a legal malpractice claim.

The Court further finds that Jam's counterclaim for declaratory relief that he is not an alter ego of SIP is futile because it is irrelevant to the issues in this case.  "Declaratory relief is appropriate '(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'"  Guerra v. Sutton, 783 F.2d 1371, 1376 (9th Cir. 1986) (quoting Bilbrey by Bilbrey v. Brown, 738 F.2d 1462, 1470 (9th Cir.1984)).  Jam seeks to allege a counterclaim for declaratory relief that he is not an alter-ego of SIP.  In response to Wimbledon's argument that this claim is duplicative of Wimbledon's request for a declaration that Jam *is* an alter-ego, OTL at 13, Jam clarified that while Wimbledon's claim focused on Jam's alleged liability as an alter-ego of SIP for actions regarding the alleged fraudulent transfers, Jam seeks a declaration that "he is not the alter-ego of SIP and thus not liable for SIP's obligations under the Settlement Agreement," RFL at 5.  This distinction is of no effect, because it is irrelevant.  This case considers the alleged fraudulent transfers sent from SIP to its related parties.  There are no allegations that SIP breached the Settlement Agreement.  Accordingly, the Court finds that Jam's proposed counterclaim for declaratory relief will not "serve a useful purpose in clarifying and settling the legal relations in issue," which renders leave to amend unnecessary. Guerra, 783 F.2d at 1376; see also Concorde Equity II, LLC v. Miller, 732 F. Supp. 2d 990, 1003 (N.D. Cal. 2010) (denying declaratory relief where it was deemed "redundant and duplicative").

Finally, the proposed affirmative defenses are similarly futile because they appear to assert defenses that rely on provisions of the Settlement Agreement which never took effect.  Jam and IA's proposed affirmative defense that Wimbledon "already settled its claims" against them has no basis seeing as the $2 million final payment was never received.  See MFL Ex. B ¶ 119; MFL Ex. C ¶ 103 (proposed amended pleadings).  Additionally, Jam and IA appear to argue that Wimbledon may only pursue damages of

| | CIVIL MINUTES – GENERAL | | 'O' | |
|---|---|---|---|---|
| Case No. | 2:15-cv-06633-CAS (SSx),<br>C/W: 2:16-cv-02287-CAS(SSx) | Date | February 28, 2019 | |
| Title | THE WIMBELDON FUND, SPC (CLASS TT) v. GRAYBOX, LLC ET AL.; C/W: THE WIMBELDON FUND, SPC (CLASS TT) v. DAVID BERGSTEIN; ET AL. | | | |

$2 million, because that was the additional sum that would have released Jam and IA under the Settlement Agreement. *See* MFL Ex. B ¶ 120; MFL Ex. C ¶ 104; RFL at 7. This contention has no merit. Of course a party is not limited to damages it was willing to accept in the event that the parties *settled* a dispute in the event that the parties ultimately proceed to trial. Settlement negotiations are not even admissible as evidence to prove or disprove the validity of a disputed claim. Fed. R. Evid. 408.

In sum, the Court finds that the undue delay, prejudice to the opposing party, and futility of amendment all strongly militate against permitting leave to amend in this case. Jam and IA have further failed to demonstrate that "justice so requires" leave. Fed. R. Civ. P. 15(a). Accordingly, Jam and IA's motion for leave is **DENIED**.[7]

## V.     MOTION TO WITHDRAW AS COUNSEL

On January 28, 2019, Huang Ybarra Gelberg & May ("HYGM") filed a motion to withdraw as counsel of record for the Hallac defendants. MTW at 1. HYGM asserts that for over six months, the Hallac defendants have failed to pay HYGM for any services rendered in this case, in violation of their engagement agreement. Id. HYGM further represents that it has notified the Hallac defendants of their intention to withdraw as counsel, and has informed the Weston entities that they may not represent themselves pro se. Id. at 2. HYGM's motion is unopposed.

Local Rule 83-2.3.2 allows an attorney to withdraw as counsel only upon leave of court. If withdrawal will cause delay in the case, the court will not allow the attorney to withdraw unless "good cause is shown and the ends of justice require [such relief]." L.R. 83-2.9.2.4. Under California Rule of Professional Conduct 1.16(b)(5), an attorney may withdraw where "the client breaches a material term of an agreement with, or obligation, to the lawyer relating to the representation, and the lawyer has given the client a reasonable warning after the breach that the lawyer will withdraw unless the client fulfills

---

[7]     At oral argument, counsel for Jam and IA argued that, however the Court rules on the motion for leave to amend, Jam will still pursue discovery pertaining to discussions leading up to the Settlement Agreement. He argues that Jam's exclusion from the settlement discussion is relevant to Wimbledon's claim that Jam is an alter ego of SIP. The Court declines to rule on this issue and advises the parties that all discovery matters are to be handled by the Magistrate Judge to whom the case is assigned.

| | CIVIL MINUTES – GENERAL | | **'O'** | |
|---|---|---|---|---|
| Case No. | 2:15-cv-06633-CAS (SSx), C/W: 2:16-cv-02287-CAS(SSx) | Date | February 28, 2019 | |
| Title | THE WIMBELDON FUND, SPC (CLASS TT) v. GRAYBOX, LLC ET AL.; C/W: THE WIMBELDON FUND, SPC (CLASS TT) v. DAVID BERGSTEIN; ET AL. | | | |

the agreement or performs the obligation." Cal. Rule of Prof. Conduct 1.16(b)(5). While the Local Rules do not necessarily permit withdrawal where a client fails to pay fees, L.R. 83-2.3.4, courts have permitted withdrawal in certain circumstances, see, e.g., Garnica v. Fremont Inv. & Loan, No. SA CV 12-1366-DOC, 2012 WL 5830078, at *1 (C.D. Cal. Nov. 14, 2012). HYGM represents that the Hallac defendants will not be prejudiced by their withdrawal because HYGM timed its dismissal to align with the Hallac defendants' motion to dismiss. MTW at 4.

The Court concludes that Counsel has made a sufficient showing of good cause, and thus hereby **GRANTS** the motion to be relieved as counsel. The moving parties are hereby ordered to provide the Hallac defendants with notice of the Court's order in accordance with Local Rule 83-2.3.4. Since Weston is a corporate entity, and as such may not appear *pro se*, the moving parties are ordered to inform Weston that it must retain new counsel within **thirty** (30) days of the date this order takes effect. The moving parties shall advise Weston that its failure to retain new counsel or otherwise respond within **thirty** (30) days may result in the imposition of sanctions or the entry of default. The moving parties shall attach a copy of this order to the letter, and shall otherwise comply with all applicable rules of professional responsibility.

## VI. CONCLUSION

In accordance with the foregoing, the Court directs the parties to pursue jurisdictional discovery, and **RESERVES** ruling on third party defendants' motions to dismiss until the jurisdictional discovery is completed. The discovery period shall not exceed forty-five (45) days and the scope of discovery is limited to actions related to the forum-based negotiations, transactions, meetings and other events at issue in this case. Seven (7) days after the forty-five (45) day discovery period closes, plaintiff shall file memorandums not to exceed ten (10) pages, setting forth facts demonstrating the availability of personal jurisdiction. Third-party defendants, in their individual capacities, can respond seven days thereafter, also by filing a memorandum not to exceed ten (10) pages. The parties are directed not to submit any further briefing on the other grounds underlying their motion to dismiss.

The Court **DENIES** Jam and IA's motion for leave to amend.

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:15-cv-06633-CAS (SSx),<br>C/W: 2:16-cv-02287-CAS(SSx) | Date | February 28, 2019 |
|----------|--------------------------------------------------------|------|-------------------|
| Title | THE WIMBELDON FUND, SPC (CLASS TT) v. GRAYBOX, LLC ET AL.; C/W: THE WIMBELDON FUND, SPC (CLASS TT) v. DAVID BERGSTEIN; ET AL. | | |

The Court **GRANTS** HYGM's motion to withdraw.  The moving parties are hereby ordered to provide the Hallac defendants with notice of the Court's order in accordance with Local Rule 83-2.3.4.  Since Weston is a corporate entity, and as such may not appear *pro se*, the moving parties are ordered to inform Weston that it must retain new counsel within **thirty** (30) days of the date this order takes effect.  The moving parties shall advise Weston that its failure to retain new counsel or otherwise respond within **thirty** (30) days may result in the imposition of sanctions or the entry of default. The moving parties shall attach a copy of this order to the letter, and shall otherwise comply with all applicable rules of professional responsibility.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|--|----|---|----|
| Initials of Preparer | | CMJ | |