# EXHIBIT AA

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------- x
THE WIMBLEDON FUND, SPC,

                                    Plaintiff,

          - against -

ADVISORY IP SERVICES INC., f/k/a SWARTZ IP
SERVICES GROUP INC.,

                                  Defendant.
---------------------------------------------------------------- x

Index No.: _____

**COMPLAINT**

        Plaintiff, The Wimbledon Fund, SPC, on behalf of Wimbledon Fund (Class TT) ("Purchaser"), as and for its Complaint alleges:

## NATURE OF THIS ACTION

        1.      This is an action for breach of contract arising out of a Note and Note Purchase Agreement ("NPA"), pursuant to which Purchaser loaned to Defendant Advisory IP Services Inc., formerly known as Swartz IP Services Group Inc. ("Company"), the principal amount of $17.7 million. Subsequently, several of Purchaser's investors made requests to redeem investments totaling approximately $9.5 million. Pursuant to the NPA, within 30 days of receiving written notice from Purchaser of a request from one of its investors to redeem an investment, Company was required to pay 50 percent of the redemption amount to Purchaser. Although Purchaser duly gave notice to Company that it owed Purchaser approximately $4.8 million, Company failed and refused to pay the amount due, in breach of its contractual obligations.

        2.      Based on Company's default, and pursuant to the terms of the NPA, Purchaser duly notified Company of acceleration of the Note, rendering the entire principal balance of the Note due and payable immediately. Consequently, Purchaser is entitled to a money judgment for

the entire unpaid principal balance of the Note ($17,693,900.27 as of July 31, 2012), plus interest from the date of breach, and reasonable attorneys' fees and disbursements.

## THE PARTIES, JURISDICTION, AND VENUE

3. Plaintiff is a Cayman Islands segregated portfolio company. Purchaser is a class of shareholders of Plaintiff. Plaintiff sues on Purchaser's behalf because Purchaser entered into the underlying Note and NPA.

4. Upon information and belief, Defendant Company is a Texas corporation located at 10101 Fondren Rd., Suite 515, Houston, Texas 77096-5144 with its principal place of business located in Santa Monica, California. On June 13, 2012, Company filed a Certificate of Amendment in the Office of the Texas Secretary of State, changing its name from Swartz IP Services Group Inc. to Advisory IP Services Inc.

5. Jurisdiction over Defendant is proper because Defendant, pursuant to Section 17.3(b) of the NPA, irrevocably submits to the exclusive jurisdiction of the courts of New York State and waives any objection that this Court lacks jurisdiction over Defendant.

6. Venue is proper in this Court because the parties agreed in Section 17.3(b) of the NPA that any action arising out of or relating to the NPA or Note shall be brought exclusively in New York and waive any objection to the laying of venue in this Court.

## FACTUAL ALLEGATIONS

**Purchaser and Company Enter into the Note and NPA**

7. On or about November 14, 2011, Purchaser and Company entered into the Note, pursuant to which Company promised to pay to Purchaser the principal sum (an amount of up to $25 million) on November 14, 2016, or a later date, as specified in the Note. A true copy of the Note is attached hereto as Exhibit A and incorporated herein by reference.

8. The Note was issued pursuant to the NPA, which the parties also entered into on or about November 14, 2011. A true copy of the NPA is attached hereto as Exhibit B and incorporated herein by reference.

9. The Note and the NPA specify that the aggregate principal amount of up to $25 million was to be delivered by Purchaser pursuant to a series of notes issued by Company called "Tranche A Notes," totaling the aggregate amount of $12.5 million, and "Tranche B Notes," totaling the aggregate amount of up to an additional $12.5 million (collectively, these notes are referred to here as the "Notes," and sometimes are called "Reference Notes" in the Note and NPA).

10. Investors in Purchaser, sometimes called "unaffiliated limited partners" ("ULPs"), are entitled to take their money out of Purchaser's fund, or "redeem" their investment, upon notice as provided in the NPA. As detailed below, the NPA expressly requires Company to pay 50% of such redemption amounts upon 30-days' notice from Purchaser of a redemption request by an ULP.

11. Pursuant to the Note, "[i]f any Event of Default occurs and is continuing, the principal of this Note may be declared due and payable in the manner, at the price and with the effect provided in the Note Purchase Agreement."

**Relevant Provisions of the NPA**

12. Section 10.1 of the NPA, entitled "Prepayment upon Redemptions," provides:

> On or after December 1, 2011, within thirty (30) days of any written notice from Purchaser of a redemption request from one or more unaffiliated limited partner(s) in Purchaser's fund (each such request, a "**Redemption Event**"), which notice shall state the full amount of funds requested to be redeemed by such unaffiliated limited partner(s) in Purchaser's fund (the "**Redemption Amount**"), the Company shall prepay a principal amount of the Notes equal to fifty percent (50%) of the Redemption Amount set forth in such notice; provided, that any such redemption request must be accompanied by evidence, reasonably satisfactory to the Company, that the purpose and use of proceeds of the Redemption Event is to satisfy such redemption request (and no more than 50% the total amount thereof.)

13. Section 11 of the NPA, entitled "Events of Default," provides in relevant part:

> An "**Event of Default**" shall exist if any of the following conditions or events shall occur and be continuing:

3

    (a) the Company defaults in the payment of any principal on any Note when the same becomes due and payable;

***

    (c) the Company, or any of its Significant Subsidiaries (i) breaches a material term of any Indebtedness[1] and (ii) such breach results in Indebtedness in an aggregate amount (with other defaulted indebtedness) in excess of $500,000 becoming due and payable prior to its due date, and with respect to which a demand for payment has been made and not withdrawn within thirty (30) days of such demand being made[.]

14. Section 12.1 of the NPA, entitled "Acceleration," provides in relevant part:

> If any Event of Default has occurred and is continuing, holders of more than 50% of the aggregate principal amount of the Notes at the time outstanding may at any time at its or their option, by notice or notices to the Company, declare all the Notes then outstanding to be immediately due and payable. Upon any Notes becoming due and payable under this Section 12.1, such Notes will forthwith mature and the entire unpaid principal amount of such Notes shall all be immediately due and payable, without presentment, demand, protest or further notice, all of which are hereby waived.

15. Pursuant to Section 16 of the NPA, notices given pursuant to the NPA are deemed given upon physical delivery.

16. Pursuant to Section 17.3 of the NPA, the NPA and the Notes shall be construed and interpreted pursuant to New York law. In addition, "[e]ach party agrees that it will bring any action or proceeding in respect of any claim arising out of or related to this Agreement or the Notes exclusively in any federal or state court sitting in the State of New York (the '**New York Courts**'), and, solely in connection with claims arising under this Agreement or the Notes, (i) irrevocably submits to the exclusive jurisdiction of the New York Courts; (ii) waives any objection to laying venue in any such action or proceeding in the New York Courts; (iii) waives any objection that the New York Courts are an inconvenient forum or do not have jurisdiction

---

[1] The NPA defines "Indebtedness" in relevant part as "any indebtedness, contingent or otherwise, in respect of borrowed money, including indebtedness in respect of borrowed money evidenced by bonds, notes, debentures or similar instruments …." NPA, Schedule B-1.

4

over any party; and (iv) agrees that service of process upon such party in any such action or proceeding will be effective if notice is given in accordance with Section 17."

17. Finally, Section 17.5 of the NPA provides that, "[i]f there occurs any bankruptcy, reorganization, receivership of the Company or other proceedings affecting Company creditors' rights and involving a claim under this Agreement or the Notes or if the holders of Notes otherwise take action to collect amounts due under the Notes or to enforce the provisions of this Agreement or the Notes, then the Company shall pay the costs incurred by the holders for such enforcement or action or in connection with such bankruptcy, reorganization, receivership or other proceeding, including, but not limited to, attorneys' fees and disbursements."

**Purchaser Performs under the NPA**

18. Pursuant to the Note and NPA, Purchaser delivered funds to Company totaling $17.7 million.

19. Pursuant to the terms of the NPA, the principal balance of the Notes has been adjusted on a monthly basis through July 31, 2012, resulting in the total outstanding principal balance of $17,693,900.27 sought to be recovered in this lawsuit.

**Company Breaches the Note and NPA**

20. On August 22, 2012, pursuant to Section 10.1 of the NPA, Societe General Private Banking (Suisse) SA ("SocGen"), the custodian of Plaintiff's fund, gave written notice to Company of a redemption request (as defined in Section 10.1, a "Redemption Event") made by two unaffiliated limited partners in Purchaser's fund for approximately $9.2 million.

21. On October 1, 2012, pursuant to Section 10.1 of the NPA, SocGen gave written notice to Company of a redemption request (another "Redemption Event") made by two other ULPs in Purchaser's fund for approximately $400,000.

22. On October 9, 2012, pursuant to Section 10.1 of the NPA, Purchaser gave Company further written notice of these redemption requests, enclosed additional copies of the requests, and included evidence that the purpose and use of proceeds of these Redemption

5

Events was to satisfy 50% of the Redemption Amount (*i.e.*, the sum of the funds requested to be redeemed).

23. Company did not pay any of the Redemption Amount.

24. On January 2, 2013, Purchaser gave Company a final notice pursuant to Section 10.1 (the "Final Redemption Notice").[2] Purchaser demanded that Company pay the amount of $4,766,894.93 (*i.e.*, 50% of the Redemption Amount stated in the Final Redemption Notice) within 30 days. The Final Redemption Notice enclosed Purchaser's October 9, 2012 letter, and included additional, detailed evidence that the purpose and use of proceeds of these Redemption Events was to satisfy 50% of the Redemption Amount. The Final Redemption Notice and attached data demonstrate how the Redemption Amount was calculated. A true copy of the Final Redemption Notice and the exhibits thereto, including proof of its delivery to Company, is attached hereto as Exhibit C and incorporated herein by reference.

25. Company ignored the Final Redemption Notice and has not paid any of the amounts due and owing.

26. On February 4, 2013, pursuant to Section 12.1 of the NPA, Purchaser sent to Company via Federal Express, on behalf of holders of more than 50% of the principal amount of the Notes, a notice declaring all the Notes then outstanding to be immediately due and payable and demanding such payment immediately and in full (the "Acceleration Notice"). A true copy of the Acceleration Notice, including proof of its delivery to Company, is attached hereto as Exhibit D and incorporated herein by reference. Accordingly, pursuant to Section 12.1, the Reference Notes have matured and the entire unpaid principal amount of the Notes as of July 31, 2012, $17,693,900.27, is immediately due and payable.

---

[2] The Final Redemption Notice was sent via Federal Express, overnight on December 27, 2012, but Company received it on January 2, 2013.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

27.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "26" as though fully set forth herein.

28.     The Note and NPA were and are valid, binding, and enforceable contracts.

29.     Purchaser performed all obligations under the Note and NPA, except to the extent such performance was excused.

30.     Under the terms of the NPA, Purchaser duly provided notice to Company of the Redemption Events under Section 10.1 of the NPA on January 2, 2013 and demanded that payment be made equal to 50% of the Redemption Amount set forth in the Final Redemption Notice, *i.e.*, $4,766,894.93.

31.     Company was obligated under the Note and NPA to pay 50% of the Redemption Amount within 30 days of the Final Redemption Notice. Company materially breached the Note and NPA by failing to timely make such payment on or before February 2, 2013, as required by Section 10.1 of the NPA.

32.     Company is in default of the Note and NPA pursuant to Section 11(a) because it defaulted in the payment of principal on the Note when the same became due and payable. Company also is in default of the Note and NPA pursuant to Section 11(c) by breaching a material term of Indebtedness, which resulted in Indebtedness in an aggregate amount in excess of $500,000 becoming due and payable prior to its due date, with respect to which a demand for payment has been made and not withdrawn within 30 days.

33.     Based on such defaults and pursuant to Section 12.1 of the NPA, Purchaser has accelerated the Notes. As a result, the Notes have matured, and the entire unpaid principal balance is immediately due and payable.

34.     As a direct and proximate result of Company's default and material breaches of the Notes and NPA, Purchaser has suffered damages in the amount of the unpaid principal balance of the Notes ($17,693,900.27), no portion of which has been paid by Company, although duly demanded by Purchaser, plus interest allowed by law.

35.  In addition, pursuant to Section 17.5 of the NPA, Purchaser is entitled to attorneys' fees and costs incurred in this action and in otherwise enforcing its rights.

## PRAYER FOR RELIEF

Wherefore, Plaintiff demands Judgment against Defendant as follows:

1.  Adjudging Company liable to Plaintiff in the amount of $17,693,900.27;

2.  Awarding Plaintiff attorneys' fees, costs, and expenses incurred in enforcing its rights under the NPA, including in this action;

3.  Awarding Plaintiff interest as allowed by law; and

4.  Granting Plaintiff such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       February 8, 2013

GREENBERG TRAURIG, LLP

By: *Loring I. Fenton /RFH*
    Loring I. Fenton
    Ryan F. Harsch

MetLife Building
200 Park Avenue
New York, NY 10166
Tel: (212) 801-9200
Fax: (212) 801-6400

*Attorneys for Plaintiff*
*The Wimbledon Fund, SPC*