# EXHIBIT CC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -  x
                                 :
UNITED STATES OF AMERICA         :        SEALED
                                 :        INDICTMENT
                                 :
                                 :        16 Cr.
        - v. -                   :
                                 :
DAVID BERGSTEIN                  :
and KEITH WELLNER,               :
                                 :
        Defendants.              :
                                 :
- - - - - - - - - - - - - - - -  x

## COUNT ONE
(Conspiracy to Commit Investment Advisor Fraud
and Securities Fraud)

The Grand Jury charges:

### Relevant Individuals and Entities

1.   At all times relevant to this Indictment, Weston
Capital Asset Management ("Weston") was a registered investment
adviser with the U.S. Securities and Exchange Commission
("SEC"), providing discretionary investment management and
advisory services to domestic and foreign private investment
funds, as well as domestic and foreign institutions and high net
worth individuals.  Pursuant to investment advisory contracts,
clients empowered Weston and its principals to make investment
decisions on their behalf in certain circumstances, with the
understanding that the investment advisors would make such
decisions based on the clients' best interests.  Weston had

places of business in both New York, New York and West Palm Beach, Florida.

2.    Weston managed more than a dozen hedge funds for its investors.  Each of Weston's funds had a particular investing strategy, primarily focused on investments in other hedge funds. Weston's funds included:

a.    Wimbledon Fund SPC ("Wimbledon"), which was segregated into classes of investment portfolios.  One of the investment portfolios in Wimbledon was the Class TT Portfolio (the "TT Portfolio"), which was meant to mirror the performance of the Tewksbury Investment Fund Ltd. ("Tewksbury"), a multi-billion-dollar hedge fund invested predominantly in securities and U.S. Treasury bills.

b.    The Wimbledon Financing Master Fund Ltd. ("WFF"), which focused on asset-backed lending investments.

c.    A series of "Partners" funds.  The Partners 2 Fund (the "P2 Fund") invested in funds managed by other hedge fund managers.

3.    Albert Hallac was Weston's founder.  At all times relevant to this Indictment, Hallac was the firm's president and served as an investment advisor to Weston's clients.  Thus, Hallac had a fiduciary duty to act in his clients' best interests and to disclose to them all material facts concerning transactions undertaken on their behalf.

4.    From in or about 2007 through in or about July 2012, KEITH WELLNER, the defendant, served as Weston's General Counsel, Chief Operating Officer, and Chief Compliance Officer. From in or about 2009 through in or about July 2012, WELLNER also managed the investments of WFF.  At various times, WELLNER served as an investment advisor to WFF investors, and thus was obligated to act in the best interests of those investors and to disclose to them all material facts.

5.    At all times relevant to this Indictment, DAVID BERGSTEIN, the defendant, was a film producer who owned, operated, or otherwise involved himself in a number of companies, focusing partly on private equity investments and partly on the film industry.  BERGSTEIN exercised substantial control over entities called Graybox LLC ("Graybox") and Arius Libra Inc. ("Arius Libra"), the latter of which purportedly invested in companies in the medical billing industry (including in a company called Pineboard Holdings Inc. ("Pineboard")).

6.    At all times relevant to this Indictment, Gerova Financial Corporation ("Gerova") was an international reinsurance company based in Bermuda.  Until 2011, Gerova traded publicly on the New York Stock Exchange.  From in or about 2010 through in or about 2011, an individual ("Associate-1") exercised substantial control over Gerova.

3

7.    Swartz IP Services Group Inc. ("Swartz IP") was a
company purportedly run by DAVID BERGSTEIN, the defendant, and
an associate of BERGSTEIN's ("Associate-2").  Swartz IP
purportedly invested in a number of companies.

### Overview of the Scheme to Defraud

8.    From at least in or about 2011 through at least in or
about 2012, DAVID BERGSTEIN and KEITH WELLNER, the defendants,
and others known and unknown, participated in a scheme to
defraud Weston investors.  The scheme involved, among other
things, an agreement among BERGSTEIN, WELLNER, and others to do
the following: (i) conceal material information from Weston
investors about financial transactions involving investor monies
that Weston was legally and contractually obligated to disclose;
(ii) transfer funds from one pool of Weston's investors to make
payments to, provide a security interest for, or otherwise
benefit, another pool of Weston's investors, without the
required disclosures to investors concerning conflicts of
interest, among other things; and (iii) convert improperly at
least a portion of funds transferred from investor accounts for
the benefit of BERGSTEIN, WELLNER, and others.

### Background on Weston

9.    Prior to the financial crisis of 2008, Weston's funds
(including separate funds for which Weston had provided seed
capital) had combined total assets, at their peak, of

4

approximately $2.8 billion. Following the financial crisis, investors made a significant number of redemption requests and withdrew their investments from the funds. As a result, during the time period relevant to this Indictment, Weston's assets under management declined to a few hundred million dollars. Weston's revenue also diminished, and the firm was in need of capital to continue its operations.

10. In or about January 2010, at Associate-1's initiation, Weston agreed to a transaction with Gerova that was intended, in part, to exchange illiquid, or hard-to-sell, assets held by one of Weston's funds for liquid assets. Specifically, as part of the transaction, Weston sent assets from WFF (which were comprised of investments in other hedge funds) to Gerova in exchange for restricted shares of Gerova's stock. The Gerova stock that Weston received was valued at approximately $85 million around the time of the transaction.

### The Scheme to Defraud Investors in WFF and the P2 Fund

11. In or about 2011, Gerova's stock price plummeted. Around this time, Associate-1 introduced Albert Hallac, the president of Weston, to DAVID BERGSTEIN, the defendant. BERGSTEIN proposed a transaction with Weston that, he claimed, would purportedly rescue some of Weston's failed investment in Gerova by securing a release of WFF's assets and then using those assets to capitalize a separate entity called Arius Libra,

5

which was a shell company controlled by BERGSTEIN that would later purportedly be used to purchase and operate medical billing businesses. In or about July through August 2011, this transaction was executed: WFF returned its shares of Gerova stock to Gerova, Gerova released the WFF assets, and WFF's assets were exchanged for an equity stake in Arius Libra.

12. Albert Hallac and KEITH WELLNER, the defendant, agreed on behalf of WFF investors, as part of the unwinding with Gerova, to repay approximately $5 million in debts purportedly associated with WFF's original Gerova investment, including debts Gerova purportedly owed to DAVID BERGSTEIN, the defendant. BERGSTEIN falsely represented to Hallac and WELLNER that he had made efforts to obtain a bank loan to cover those debts, as well as to provide operating capital for Arius Libra. When that loan was purportedly delayed, BERGSTEIN, Hallac, and WELLNER devised a plan in which Weston would secretly loan Arius Libra money from another of Weston's funds to cover these debts and expenses.

13. In or about August 2011, DAVID BERGSTEIN and KEITH WELLNER, the defendants, together with Albert Hallac, agreed to loan money belonging to Weston's P2 Fund to Arius Libra (the "P2 Loan"). The purpose of this loan was purportedly (1) to pay Gerova debts as part of the "unwind," and (2) to fund Arius Libra's purported medical billing businesses. To generate the

6

proceeds for the loan, Hallac and WELLNER liquidated the P2 Fund's interests in certain securities without the knowledge of P2 Fund investors. In total, from in or about August 2011 through in or about November 2011, approximately $9 million in investor money was disbursed from the P2 Fund pursuant to the P2 Loan.

14. KEITH WELLNER, the defendant, prepared certain paperwork in connection with the P2 Loan, including a "Contribution Agreement," dated August 3, 2011, which purported to create Arius Libra. Exhibit B of the Contribution Agreement stated that Arius Libra's "liabilities" included several million dollars in total debts to, among other entities, Gerova Management Inc., DPRE Enterprises LLC (an entity controlled by DAVID BERGSTEIN, the defendant), Associate-1, Gion Funding (another entity controlled by BERGSTEIN), and Weston. WELLNER also prepared a "Secured Note" that memorialized the terms of the first $3.6 million disbursed as part of the P2 Loan. Finally, WELLNER prepared an accompanying "Pledge Agreement," which provided that the first disbursement of the P2 Loan of approximately $3.6 million was secured by certain of the assets of WFF that had been contributed to Arius Libra. Thus, in the event the first disbursement of the P2 Loan was not repaid, the P2 Fund had the ability to liquidate WFF assets to make P2 investors whole, to the detriment of investors in WFF.

7

BERGSTEIN reviewed and circulated the Contribution Agreement,
the Secured Note and the Pledge Agreement, among other documents
associated with the P2 Loan.

15.  KEITH WELLNER, the defendant, and Albert Hallac did
not inform P2 Fund investors of the existence of the P2 Loan,
much less the conflicts of interest inherent therein, as DAVID
BERGSTEIN, the defendant, well knew.  WELLNER and Hallac did not
explain to P2 Fund investors what Arius Libra was, nor did they
obtain permission to enter into the P2 Loan.  They did not
disclose the Contribution Agreement, the Secured Note or the
Pledge Agreement.  In particular, Hallac, with WELLNER and
BERGSTEIN's knowledge and approval, hid from P2 Fund investors
that they were using P2 Fund money to pay purported debts
associated with the failed Gerova transaction that had been
incurred by the WFF investors, despite Hallac's fiduciary duty
to manage the P2 Fund in the best interests of P2 Fund
investors.  Likewise, Hallac, with the knowledge and approval of
WELLNER and BERGSTEIN, did not inform either P2 Fund or WFF
investors of the conflict of interest arising from the P2 Fund's
security interest in WFF assets.

16.  Although DAVID BERGSTEIN, the defendant, had
represented that P2 Fund monies would be used both to pay off
creditors as part of unwinding WFF's transaction with Gerova and
to fund Arius Libra's medical billing businesses, in truth and

in fact, BERGSTEIN and others misappropriated a substantial portion of the P2 Loan proceeds.  Unbeknownst to Albert Hallac and KEITH WELLNER, the defendant, BERGSTEIN diverted P2 Loan proceeds to pay for, among other things, unrelated business expenses and a variety of BERGSTEIN's own personal expenses, including credit card bills and unrelated attorney's fees, among other things.

17.  From the summer through the fall of 2011, DAVID BERGSTEIN, the defendant, emailed to Albert Hallac and KEITH WELLNER, the defendant, a series of "Borrowing Certificates" memorializing BERGSTEIN's requests to draw down funds pursuant to the P2 Loan.  In these emails, BERGSTEIN made fraudulent representations to Hallac and WELLNER about how the P2 Loan proceeds would be used.  BERGSTEIN then misappropriated a portion of the P2 Loan proceeds for himself and a co-conspirator not named as a defendant herein ("CC-1").

18.  For example, on or about August 29, 2011, DAVID BERGSTEIN, the defendant, sent an email to Albert Hallac and KEITH WELLNER, the defendant, attaching a P2 Loan Borrowing Certificate and requesting additional money from the P2 Fund, falsely representing that the funds would be used for the benefit of Arius Libra and acquisitions involving companies known as "Bidz/Matrix."  In the email, BERGSTEIN falsely represented:

9

> I need the following if possible. . . . $25,000 sent to Michael Barnes. $150,000 to Graybox . . . to handle what is going on with Bidz/Matrix. I have to put out about $500K over the next two days to get what I need done in short order. I do not have it all and could use help.

In response to BERGSTEIN's email, Hallac and WELLNER issued from the P2 Fund the loan proceeds BERGSTEIN requested, including by wires transmitted through the Southern District of New York.

19. In truth and in fact, and contrary to the representations made by DAVID BERGSETIN, the defendant, in his August 29, 2011 email, BERGSTEIN misappropriated substantially all of the funds he requested in paragraph 18 above. After the $150,000 was wired from the P2 Fund, BERGSTEIN used those funds, among other things, to pay his wife's credit card bills and his own personal legal bills, and further diverted the funds to an entity used by CC-1 to pay for personal expenses and unrelated business expenses.

20. By way of further example, on or about October 19, 2011, DAVID BERGSTEIN, the defendant, sent an email to Albert Hallac and KEITH WELLNER, the defendant, attaching another P2 Loan borrowing certificate and requesting an additional $1 million. Bergstein represented in his email: "[t]he proceeds will be used for Pineboard." In response to BERGSTEIN's email, Hallac and WELLNER issued from the P2 Fund the loan proceeds

BERGSTEIN requested, including by wires transmitted through the Southern District of New York.

21.   In truth and in fact, and contrary to the representations made by DAVID BERGSTEIN, the defendant, in his October 19, 2011 email, BERGSTEIN diverted the $1 million P2 Loan disbursement, in substantial part, to pay for personal legal bills and to fund Graybox and another entity used by BERGSTEIN and CC-1 to pay for personal expenses and unrelated business expenses.  The proceeds were not used for Pineboard, as BERGSTEIN had falsely represented to Hallac and others.

### The Defendants' Concealment of the P2 Loan

22.   In or about November and December 2011, DAVID BERGSTEIN and KEITH WELLNER, the defendants, fraudulently revised and backdated the Arius Libra Contribution Agreement described in paragraph 14 above in an effort to conceal the existence of the indebtedness arising under the P2 Loan. Specifically, the Contribution Agreement, as revised and backdated to August 4, 2011 by BERGSTEIN and WELLNER, removed from Exhibit B the debt obligations to BERGSTEIN's entities, Associate-1, and others incurred pursuant to the P2 Loan. WELLNER and BERGSTEIN arranged for the revised and backdated Contribution Agreement to be presented to WFF's board of directors.  WFF's board of directors subsequently approved the revised Agreement in or about January 2012.  The board of

directors was not informed of the P2 Loan; the Secured Note; the Pledge Agreement, which pledged WFF's assets as security for the P2 Loan; or the fact that the P2 Loan was used to repay purported debts incurred by Gerova, including to BERGSTEIN himself.

23. In or about early December 2011, DAVID BERGSTEIN and KEITH WELLNER, the defendants, drafted a presentation for a WFF investor meeting, which they and Albert Hallac delivered to WFF investors on or about December 14, 2011. While the presentation touted the purported benefits of the Gerova "unwind" and the investment in Arius Libra, the presentation (1) falsely represented that Owari Opus, an entity purportedly controlled by BERGSTEIN, "arranged" an $8 million loan to Arius Libra, when, in truth and in fact, the loan was made by the P2 Fund; and (2) falsely omitted the fact that the P2 Loan was secured by WFF assets. Among the recipients of the false and misleading presentation were certain investors who had invested in both the P2 Fund and WFF.

### The Scheme to Defraud Investors in the TT Portfolio

24. In or about November 2011, DAVID BERGSTEIN and KEITH WELLNER, the defendants, and Albert Hallac entered into an undisclosed swap agreement involving the TT Portfolio and Swartz IP. The TT Portfolio, as described above, was a Weston fund whose offering memorandum stated, in pertinent part, that

12

investors' funds would be invested "either directly or notionally" in Tewksbury. As part of this swap agreement, Hallac and WELLNER transferred approximately $17.7 million from the TT Portfolio to Swartz IP. In exchange, BERGSTEIN agreed to provide notes that would match the Tewksbury returns plus an additional one percent return each year. BERGSTEIN also promised to meet investor redemptions on a current basis. The transfer of monies was completed in or about December 2011.

25. Albert Hallac, with the knowledge and approval of KEITH WELLNER, the defendant, failed to act in accordance with his fiduciary and contractual duties to TT Portfolio investors in entering into this transaction, and instead acted for the purpose of deceiving the investors and benefitting their own interests. Among other things, Hallac and WELLNER agreed to transfer TT Portfolio monies to Swartz IP without disclosing the transaction to TT Portfolio investors. Hallac and WELLNER intended to deceive TT Portfolio investors by, among other things, declining to amend the TT Portfolio offering memorandum to reflect disbursements to Swartz IP, as they had done with financial institutions with which Weston had previously entered into total return swaps. Hallac and WELLNER each understood that such a disclosure would have been material to TT Portfolio investors and would have caused them to redeem their investments in the fund.

13

26. Of the money that was transferred to Swartz IP, DAVID BERGSTEIN and KEITH WELLNER, the defendants, and Albert Hallac directed that approximately $3 million be transferred to the P2 Fund to pay back, in part, the P2 Loan. BERGSTEIN, WELLNER, and Hallac thus directed that money from one set of Weston's investors (the TT Portfolio investors) be used to pay back part of a debt owed to another set of Weston's investors (the P2 Fund investors) – another conflict of interest. This too was done without disclosure to, or the knowledge or consent of, TT Portfolio investors or P2 Fund investors, as BERGSTEIN and WELLNER well knew.

27. Despite knowing that Swartz IP lacked any substantial assets aside from what it received from the TT Portfolio, and that Associate-2 neither invested in nor had any involvement in operating Swartz IP, DAVID BERGSTEIN, the defendant, misled Albert Hallac and KEITH WELLNER, the defendant, as well as TT Portfolio investors, by, among other things:

a. creating a fake balance sheet that falsely represented that Swartz IP had approximately $19 million in assets;

b. falsely representing that Swartz IP could satisfy any redemption requests filed by TT investors;

14

          c.    falsely representing that Associate-2 had personally invested millions of dollars into Swartz IP, which would serve as security for the swap agreement; and

          d.    sending to Hallac and WELLNER screenshots of account balances for a Swartz IP brokerage account that misleadingly reflected that the account maintained a balance of more than $5 million. In fact, however, BERGSTEIN maintained two brokerage accounts in the name of Swartz IP, and the screenshots he shared with Hallac and WELLNER related to one account that was encumbered by the holdings of a second account that was not disclosed. BERGSTEIN withdrew millions of dollars from the second account such that it had a negative balance and was secured by the assets held by the first account. Thus, even though the net holdings of both accounts approached zero, BERGSTEIN was able to make it falsely appear to Hallac and WELLNER that Swartz IP held millions of dollars in cash and liquid securities.

    28.  DAVID BERGSTEIN, the defendant, also diverted millions of dollars in TT Portfolio funds in a manner that was entirely inconsistent with the obligations Swartz IP undertook (1) to meet the Tewksbury returns, plus an additional one percent; and (2) to satisfy TT Portfolio investors' redemption requests. BERGSTEIN secretly diverted TT Portfolio investor proceeds to

pay BERGSTEIN's personal expenses and to pay CC-1, among other things.

29. After DAVID BERSTGEIN, the defendant, received the TT Portfolio proceeds through Swartz IP, BERGSTEIN periodically sent false and misleading records of the disbursements to Albert Hallac and KEITH WELLNER, the defendant. For example, on or about February 1, 2012, BERGSTEIN emailed a "master proceeds worksheet" to Hallac and WELLNER listing various disbursements that were made from Swartz IP, purportedly for certain business transactions and to fund Arius Libra. BERGSTEIN's worksheet, however, omitted millions of dollars in secret disbursements from Swartz IP to Graybox (BERGSTEIN's entity), CC-1's entities, BERGSTEIN's personal attorneys, and for BERGSTEIN's personal expenses, all of which BERGSTEIN hid from Weston. The worksheet BERGSTEIN drafted and circulated also falsely reflected that Swartz IP maintained approximately $8 million it received from the TT Portfolio, when in fact it maintained only about $4 million by February 1, 2012, because BERGSTEIN had already improperly converted millions of dollars in TT Portfolio funds.

30. In addition to diverting TT Portfolio money for unauthorized and improper investments, Albert Hallac, KEITH WELLNER, the defendant, and another Weston officer not named as a defendant herein ("Officer-1") improperly paid themselves with TT Portfolio investor money. Hallac, WELLNER, and Officer-1

16

formed an entity known as Purplebox LLC ("Purplebox"), and a bank account was opened in that entity's name. At the direction of WELLNER and DAVID BERSTEIN, the defendant, Swartz IP wired approximately $750,000 of TT Portfolio monies first to a Weston bank account, then back to Swartz IP and finally to the Purplebox account. WELLNER personally received approximately $120,000 of this amount. WELLNER, among others, directed this round-trip transaction to disguise the payment to Purplebox.

31. Although Swartz IP paid a redemption request of approximately $1 million to a particular TT Portfolio investor, Swartz IP did not repay to the TT Portfolio the funds that had been entrusted to it. The total loss to TT Portfolio investors was approximately $16 million.

### The Defendants' Efforts to Conceal the Scheme

32. Beginning in or about early 2012, DAVID BERGSTEIN and KEITH WELLNER, the defendants, took steps to conceal their scheme to defraud the P2 Fund, WFF, and TT Portfolio investors.

33. For example, in or about March 2012, KEITH WELLNER, the defendant, uploaded to an electronic "dropbox" available to all Weston investors a fraudulent investor disclosure, which falsely stated that Arius Libra was indebted to Swartz IP for $8 million. The purpose of WELLNER's false disclosure was to deceive investors into believing that Arius Libra's debt was owed to Swartz IP, when in truth and in fact, and as WELLNER

17

knew, Arius Libra's $8 million debt was secretly owed to the P2
Fund and the P2 Loan had been made without investors' knowledge
or consent.

34.  In or about May 2012, KEITH WELLNER, the defendant,
returned from meeting with DAVID BERGSTEIN, the defendant, in
Los Angeles, with two fraudulent documents.

a.  First, WELLNER produced to Albert Hallac a fake
loan agreement falsely representing that Arius Libra had
borrowed $8 million from Swartz IP.  WELLNER had signed this
agreement, claiming to be the President of Arius Libra.  The
fake loan agreement, which was back-dated to August 1, 2011 and
served as support for the fraudulent disclosure that WELLNER had
placed into the investor dropbox in March 2012, made it falsely
appear that the $8 million loan was issued by Swartz IP rather
than the P2 Fund.  The loan agreement likewise absolved DAVID
BERGSTEIN, the defendant, from having to repay the money Arius
Libra owed to Weston's P2 Fund.

b.  Second, WELLNER presented Albert Hallac with a
back-dated loan agreement between Hallac and Purplebox.  The
purpose of the loan agreement was to make it appear that the
$750,000 sent to Purplebox of TT investors' monies was in fact a
loan to Hallac, secured by Hallac's own personal assets.  Hallac
refused to sign the fraudulent loan agreement.

18

## Statutory Allegations

35. From at least in or about 2011, up to and including in or about 2012, in the Southern District of New York and elsewhere, DAVID BERGSTEIN and KEITH WELLNER, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States, to wit, (1) investment advisor fraud, in violation of Title 15, United States Code, Sections 80b-6 and 80b-17, and (2) securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff and Title 17, Code of Federal Regulations, Section 240.10b-5.

36. It was a part and object of the conspiracy that DAVID BERGSTEIN and KEITH WELLNER, the defendants, and others known and unknown, willfully and knowingly would and did use the mails and other means and instrumentalities of interstate commerce, directly and indirectly, (a) to employ a device, scheme, and artifice to defraud clients and prospective clients; (b) to engage in a transaction, practice, and course of business which operated as a fraud and deceit upon clients and prospective clients; and (c) to engage in an act, practice, and course of business which was fraudulent, deceptive, and manipulative, in violation of Title 15, United States Code, Sections 80b-6 and 80b-17.

37. It was a further part and object of the conspiracy that DAVID BERGSETIN and KEITH WELLNER, the defendants, and others

known and unknown, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce and of the mails, and of the facilities of national securities exchanges, in connection with the purchase and sale of securities, would and did use and employ manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

### Overt Acts

38.   In furtherance of the conspiracy and to effect its illegal objects, DAVID BERGSTEIN and KEITH WELLNER, the defendants, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.    In or about August 2011, BERGSTEIN and WELLNER caused Weston's P2 Fund to agree to loan up to approximately $9 million to another entity, Arius Libra, which loan was secured with the assets of another Weston fund, WFF, for the purpose of,

among other things, paying debts which were not incurred by P2 Fund investors.

b.    In or about November 2011, BERGSTEIN and WELLNER caused Weston to transfer approximately $17.7 million from Weston's TT Portfolio to another entity, Swartz IP, for the purpose of, among other things, paying debts owed to P2 Fund investors.

c.    In or about January 2012, BERGSTEIN and WELLNER caused approximately $750,000 to be withdrawn from a bank account which was funded with TT Portfolio investor monies for the benefit of WELLNER, among others.

d.    In or about May 2012, WELLNER signed a back-dated loan agreement falsely representing that Arius Libra had borrowed $8 million from Swartz IP and presented the agreement to Albert Hallac in New York, New York.

(Title 18, United States Code, Section 371.)

## COUNT TWO
(Investment Advisor Fraud - WFF and P2 Fund)

The Grand Jury further charges:

39.    The allegations contained in paragraphs 1 through 34 and 38 of this Indictment are repeated and realleged as if fully set forth herein.

40.    From in or about 2011, up to and including in or about 2012, in the Southern District of New York and elsewhere, DAVID

BERGSTEIN and KEITH WELLNER, the defendants, willfully and knowingly used the mails and other means and instrumentalities of interstate commerce, directly and indirectly, (a) to employ a device, scheme, and artifice to defraud clients and prospective clients; (b) to engage in a transaction, practice, and course of business which operated as a fraud and deceit upon clients and prospective clients; and (c) to engage in an act, practice, and course of business which was fraudulent, deceptive, and manipulative, to wit, while Albert Hallac served as an investment advisor to the WFF and the P2 Fund, BERGSTEIN and WELLNER aided and abetted Hallac's fraud on the WFF and P2 Fund investors by, among other things, causing the funds to enter into undisclosed transactions and then causing certain investor funds to be used as payments to or to otherwise benefit other investors without disclosing the transactions or the conflicts of interest inherent therein to investors to whom fiduciary duties were owed.

(Title 15, United States Code, Sections 80b-6 and 80b-17; and Title 18, United States Code, Section 2.)

**COUNT THREE**
(Investment Advisor Fraud – TT Portfolio)

The Grand Jury further charges:

41. The allegations contained in paragraphs 1 through 34 and 38 of this Indictment are repeated and realleged as if fully set forth herein.

22

42. From in or about 2011, up to and including in or about 2012, in the Southern District of New York and elsewhere, DAVID BERGSTEIN and KEITH WELLNER, the defendants, willfully and knowingly used the mails and other means and instrumentalities of interstate commerce, directly and indirectly, (a) to employ a device, scheme, and artifice to defraud clients and prospective clients; (b) to engage in a transaction, practice, and course of business which operated as a fraud and deceit upon clients and prospective clients; and (c) to engage in an act, practice, and course of business which was fraudulent, deceptive, and manipulative, to wit, while Albert Hallac served as an investment advisor to the TT Portfolio, BERGSTEIN and WELLNER aided and abetted Hallac's fraud on TT Portfolio investors by, among other things, causing the TT Portfolio to enter into undisclosed transactions and causing certain investor funds to be used as payments to or to otherwise benefit other investors without disclosing the transactions or the conflicts of interest inherent therein to investors to whom Hallac owed fiduciary duties.

(Title 15, United States Code, Sections 80b-6 and 80b-17; and Title 18, United States Code, Section 2.)

## COUNT FOUR
(Securities Fraud - P2 Fund)

The Grand Jury further charges:

43.  The allegations contained in paragraphs 1 through 34 and
38 of this Indictment are repeated and realleged as if fully set
forth herein.

44.  From in or about 2011, up to and including in or about
2012, in the Southern District of New York and elsewhere, DAVID
BERGSTEIN and KEITH WELLNER, the defendants, willfully and
knowingly, directly and indirectly, by use of the means and
instrumentalities of interstate commerce and of the mails, and
of the facilities of national securities exchanges, in
connection with the purchase and sale of securities, used and
employed manipulative and deceptive devices and contrivances in
violation of Title 17, Code of Federal Regulations, Section
240.10b-5, by (a) employing devices, schemes, and artifices to
defraud; (b) making untrue statements of material fact and
omitting to state material facts necessary in order to make the
statements made, in the light of the circumstances under which
they were made, not misleading; and (c) engaging in acts,
practices, and courses of business which operated and would
operate as a fraud and deceit upon persons, to wit, BERGSTEIN
and WELLNER schemed to defraud investors in the P2 Fund by,
among other things, (i) failing to disclose the P2 Loan, and

24

misrepresenting its source, which Loan was funded with the undisclosed sale of P2 Fund securities; (ii) failing to disclose the security interest of P2 Fund investors in WFF assets, and the conflict of interest with WFF investors that arose from the Pledge Agreement; and (iii) as to BERGSTEIN, improperly converting a portion of the funds transferred pursuant to the P2 Loan for BERGSTEIN's and CC-1's personal use and benefit.

   (Title 15, United States Code, Sections 78j(b) & 78ff;
   Title 17, Code of Federal Regulations, Section 240.10b-5;
        and Title 18, United States Code, Section 2.)

### COUNT FIVE
(Securities Fraud - TT Portfolio)

   The Grand Jury further charges:

45.   The allegations contained in paragraphs 1 through 34 and 38 of this Indictment are repeated and realleged as if fully set forth herein.

46.   From in or about 2011, up to and including in or about 2012, in the Southern District of New York and elsewhere, DAVID BERGSTEIN and KEITH WELLNER, the defendants, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce and of the mails, and of the facilities of national securities exchanges, in connection with the purchase and sale of securities, used and employed manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section

25

240.10b-5, by (a) employing devices, schemes, and artifices to
defraud; (b) making untrue statements of material fact and
omitting to state material facts necessary in order to make the
statements made, in the light of the circumstances under which
they were made, not misleading; and (c) engaging in acts,
practices, and courses of business which operated and would
operate as a fraud and deceit upon persons, to wit, BERGSTEIN
and WELLNER schemed to defraud investors in the TT Portfolio by,
among other things, (i) arranging to disburse TT Portfolio
investor funds to Swartz IP, which disbursement was contrary to
the TT Portfolio's investment parameters and was not disclosed
to TT Portfolio investors; (ii) using TT Portfolio assets to
repay, in part, the P2 Loan, which payment was contrary to the
TT Portfolio investment parameters and was not disclosed to TT
Portfolio investors; and (iii) improperly converting a portion
of funds transferred from the TT Portfolio to Swartz IP for
their personal use and benefit.

     (Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5;
and Title 18, United States Code, Section 2.)

**COUNT SIX**
(Conspiracy to Commit Wire Fraud)

The Grand Jury further charges:

47.  The allegations contained in paragraphs 1 through 34 and 38 of this Indictment are repeated and realleged as if fully set forth herein.

48.  From in or about 2011, up to and including in or about 2012, in the Southern District of New York and elsewhere, DAVID BERGSTEIN and KEITH WELLNER, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

49.  It was a part and an object of the conspiracy that DAVID BERGSTEIN and KEITH WELLNER, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce writings, signs, signals, pictures, and sounds for the purpose

of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349.)

### COUNT SEVEN
(Wire Fraud)

The Grand Jury further charges:

50. The allegations contained in paragraphs 1 through 34 and 38 of this Indictment are repeated and realleged as if fully set forth herein.

51. From in or about 2011, up to and including in or about 2012, in the Southern District of New York and elsewhere, DAVID BERGSTEIN, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, BERGSTEIN schemed to defraud P2 Fund and TT Portfolio investors by making and causing to be made misrepresentations by telephone and e-mail, among other methods, concerning the uses BERGSTEIN intended to make of investor funds for the purpose of inducing the disbursement of funds from the P2 Fund and the TT Portfolio,

28

including by wire transfer to and from the Southern District of New York, for BERGSTEIN's own personal use and benefit, and for the personal use and benefit of other co-conspirators.

(Title 18, United States Code, Sections 1343 and 2.)

## FORFEITURE ALLEGATION

52. As a result of committing one or more of the offenses alleged in Counts One through Seven of this Indictment, DAVID BERGSTEIN and KEITH WELLNER, the defendants, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, any and all property, real or personal, that constitutes or is derived from proceeds traceable to the commission of the offenses alleged in Counts One through Seven of this Indictment.

## Substitute Assets Provision

53. If any of the above-described forfeitable property, as a result of any act or omission of DAVID BERGSTEIN and KEITH WELLNER, the defendants:

> a. cannot be located upon the exercise of due diligence;
>
> b. has been transferred or sold to, or deposited with, a third party;
>
> c. has been placed beyond the jurisdiction of the court;
>
> d. has been substantially diminished in value; or

e. has been commingled with other property which

cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p), and Title 28, United States

Code Section 2461, to seek forfeiture of any other property of

said defendants up to the value of the forfeitable property

described above.

(Title 18, United States Code, Section 981(a)(1)(C);
Title 21, United States Code, Section 853(p);
Title 28, United States Code, Section 2461.)

GRAND JURY FOREPERSON

Preet Bhavara /kRq
PREET BHARARA
United States Attorney

30

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**UNITED STATES OF AMERICA**

- v. -

**DAVID BERGSTEIN**
**and KEITH WELLNER,**

Defendants.

## INDICTMENT

16 Cr. ____

(Title 15, United States Code, Sections
78j(b),78ff, 80b-6 and 80b-17;
Title 18, United States Code, Sections
371, 1343, 1349 and 2.)



PREET BHARARA
United States Attorney.