# EXHIBIT EE

1

F7u6halp

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4           v.                          08 CR 8000(HBP)

5   JOHN DOE,

6               Defendant.

7   ------------------------------x

8                                   New York, N.Y.
                                    July 30, 2015
9                                   10:15 a.m.

10

    Before:
11
                    HON. HENRY B. PITMAN,
12
                                    District Judge
13

14                      APPEARANCES
    PREET BHARARA
15       United States Attorney for the
         Southern District of New York
16  ANDREW BAUER
    BRIAN BLAIS
17       Assistant United States Attorney

18  J. CHRISTOPHER ALBANESE
         Attorney for Defendant
19

20  Also present:  S.A. Shannon Bieniek, FBI

21

22

23

24

25

              SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

WF0020153

2

F7u6halp

```
 1              (In sealed court; case called)

 2              THE COURT:  Good morning.  Please be seated.

 3              THE DEPUTY CLERK:  Counsel, state your name for the

 4      record.

 5              MR. BLAIS:  Andrew Bauer and Brian Blais for the

 6      government.  We're joined at counsel table by FBI Agent Shannon

 7      Bieniek.

 8              MR. ALBANESE:  J. Christopher Albanese, attorney for

 9      the defendant Albert Hallac.

10              THE COURT:  Good morning.  This is an initial matter.

11      Any attorney in the well of the court with a cell phone is

12      directed to turn the cell phone off at this time so we give our

13      undivided attention to the matter at hand.

14              I understand there is an application on behalf of

15      Mr. Hallac.

16              MR. ALBANESE:  Yes, your Honor.

17              THE COURT:  And the applications are?

18              MR. ALBANESE:  We have an application to seal the

19      record, the docket, as well as the courtroom for this

20      proceeding.

21              I have an affirmation in that regard that I take it

22      the government has received?

23              MR. BAUER:  We have, your Honor.

24              THE COURT:  What is the government's position?

25              MR. BAUER:  Your Honor, our position is different for
```

WF0020154

3

F7u6halp

1    each of the requests.  As it relates to today's proceedings,

2    the government would consent or join in the application to seal

3    today's proceeding as well as the transcript.  There was

4    another request to seal the entire docket to make it a United

5    States v. John Doe entry.  We take no position on that, your

6    Honor.  We certainly see some of the points that defense

7    counsel has made.  We're not opposing it today, but on the

8    other hand we're not sure it is entirely necessary and we do

9    oppose the request to seal the courtroom.

10           THE COURT:  The opposition to sealing the courtroom,

11   is that based on the DOJ policy or is there something unique

12   about this case or is it something else?

13           MR. BAUER:  It is based on the DOJ policy, your Honor.

14   But as specific to this case, I don't think the facts as we

15   know them or are articulated in defense counsel's submission

16   rise to the level requiring the sealing of the courtroom.

17           THE COURT:  What are your thoughts?

18           MR. ALBANESE:  Your Honor, as the government notes and

19   I believe will attest the potential future defendants in this

20   matter are not only extremely litigious but they are

21   potentially dangerous.  There has been a history of violence.

22   One of the potential defendants -- I don't know if you would

23   like me to go into details with names, Drew.  But as far as

24   potential defendants go, there has been a potential history of

25   organized crime ties.  There has also been some rumors of other

WF0020155

4

F7u6halp

1   witnesses that have met untimely demise at least in his

2   father's case.  So there is some concern from defense counsel

3   on that issue.

4           THE COURT:  I am going to grant defendant's

5   application and seal the courtroom and the record.

6           Is there anyone in the gallery who is not either with

7   the U.S. Attorney's Office or with the FBI?

8           PRETRIAL OFFICER:  I am with pretrial, your Honor.

9           THE COURT:  Let me rephrase the question.  Anyone who

10  is not with the U.S. Attorney's Office, federal law

11  enforcement, pretrial, or other federal agency?

12          UNIDENTIFED SPEAKER:  Yes, your Honor.  We're counsel

13  for Weston Capitalized Management.

14          MR. ALBANESE:  They are co-counsel, your Honor.

15          THE COURT:  You're co-counsel?

16          MR. ALBANESE:  Yes.

17          THE COURT:  I take it there is no objection to their

18  remaining.

19          MR. ALBANESE:  I prefer if they did.

20          THE COURT:  Is there anyone else who doesn't fit into

21  those categories?

22          Let me ask the deputy at this time to lock the

23  courtroom door.

24          MR. ALBANESE:  Thank you, your Honor.

25          THE COURT:  The first order of business will be for

WF0020156

5

F7u6halp

1    Mr. Hallac to waive indictment and proceed by way of

2    information; is that right?

3           MR. BAUER:  That is correct, your Honor.  The matter

4    was wheeled out to Judge Berman.  To be clear on the record,

5    Judge Berman referred the case to your Honor for the guilty

6    plea.  This is our first --

7           THE COURT:  Let me ask Mr. Cancellarich to conduct the

8    waiver of indictment allocution.

9           THE DEPUTY CLERK:  You are Albert Hallac?

10          THE DEFENDANT:  Yes, I am.

11          THE DEPUTY CLERK:  Have you signed the waiver of

12   indictment?

13          THE DEFENDANT:  Yes, I have.

14          THE DEPUTY CLERK:  Before you signed it, did you

15   discuss it with your attorney?

16          THE DEFENDANT:  I certainly did.

17          THE DEPUTY CLERK:  Did your attorney explain it to

18   you?

19          THE DEFENDANT:  Yes.

20          THE DEPUTY CLERK:  Do you understand what you are

21   doing?

22          THE DEFENDANT:  Yes.

23          THE DEPUTY CLERK:  Do you understand you are under no

24   obligation to waive indictment?

25          THE DEFENDANT:  Yes, sir.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

WF0020157

F7u6halp

6

1          THE DEPUTY CLERK:  Do you understand if you do not

2     waive indictment if the government wants to prosecute you, they

3     will present this case to a grand jury, which may or may not

4     indict you?

5          THE DEFENDANT:  I understand.

6          THE DEPUTY CLERK:  Do you understand by signing this

7     waiver of indictment, you have given up your right to have this

8     case presented to a grand jury?

9          THE DEFENDANT:  I understand.

10          THE DEPUTY CLERK:  Do you understand what a grand jury

11     is?

12          THE DEFENDANT:  Yes, sir.

13          THE DEPUTY CLERK:  Have you seen a copy of the

14     information?

15          THE DEFENDANT:  Yes, sir.

16          THE DEPUTY CLERK:  Do you waive its public reading?

17          THE DEFENDANT:  Yes, sir.

18          THE DEPUTY CLERK:  Thank you.

19          THE COURT:  At this time let me also ask

20     Mr. Cancellarich to place two documents before Mr. Hallac.

21          There a one-page document entitled Consent to Proceed

22     before a United Magistrate Judge on a Felony Plea Allocution

23     and a document in the form of a letter dated July 27, 2015.

24          Let me ask Mr. Cancellarich to mark the letter as

25     Court Exhibit 1, please.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

WF0020158

7

F7u6halp

1          Mr. Hallac, two documents have been placed before you.

2     I want to first discuss with you the one-page document entitled

3     Consent to Proceed before a United States Magistrate Judge on a

4     Felony Plea Allocution.

5          Do you see that one-page document?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Does your signature appear on the bottom

8     of it?

9          THE DEFENDANT:  Yes, your Honor.

10         THE COURT:  Did you read it before you signed it?

11         THE DEFENDANT:  Yes, I did.

12         THE COURT:  Did you discuss it with your attorney

13    before you signed it?

14         THE DEFENDANT:  Yes, I did, your Honor.

15         THE COURT:  Do you understand that you have the right

16    to have your plea taken by a district court judge instead of a

17    magistrate court judge?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  Do you understand that by signing that

20    piece of paper, you are giving up your right to have your plea

21    taken by district court judge and consenting to have it taken

22    by a magistrate judge?  Do you understand that to be the effect

23    of your signature on that piece of paper?

24         THE DEFENDANT:  I understand, your Honor.

25         THE COURT:  Has anyone made any promises to you or has

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

WF0020159

8

F7u6halp

1   anyone made any threats to you or has anyone made any force

2   against you to induce you to consent to proceed before a

3   magistrate judge?

4           THE DEFENDANT:  No, your Honor.

5           THE COURT:  There is a second document before you in

6   letter in the form of a letter marked Court Exhibit 1.  Do you

7   see Court Exhibit 1?

8           THE DEFENDANT:  Yes, your Honor.

9           THE COURT:  Does your signature appear on the last

10  page of Court Exhibit 1?

11          THE DEFENDANT:  Yes, it does.

12          THE COURT:  Did you read Court Exhibit 1 before you

13  signed it?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  Did you discuss it with your attorney

16  before you signed it?

17          THE DEFENDANT:  Yes, I did.

18          THE COURT:  Thank you.

19          Please bring those documents back up, Mr.

20  Cancellarich.

21          Please place Mr. Hallac under oath.

22          THE DEPUTY CLERK:  Will you please state your name for

23  the record.

24          THE DEFENDANT:  Albert Hallac.

25          (Defendant sworn)

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

WF0020160

9

F7u6halp

```
 1              THE COURT:  Mr. Hallac, you have now been placed under
 2     oath.  If you make a false statement during these proceedings,
 3     you can be prosecuted for perjury.  Do you understand that?
 4              THE DEFENDANT:  Yes, your Honor.
 5              THE COURT:  The law requires that I ask you a number
 6     of questions to ensure that your plea is knowing and voluntary
 7     in all respects.
 8              You can be seated.
 9              To ensure your plea is knowing and voluntary in all
10     respects, to you ensure that you understand what you are doing
11     today and the consequences of what you are doing.  If you don't
12     understand any question that I ask you, tell me that you don't
13     understand the question and I will try to clarify the question
14     or give you a chance to speak privately with your attorney so
15     that you understand exactly what is being asked of you.  In
16     addition, if at any time during these proceedings you want to
17     speak with your attorney for any reason whatsoever, just tell
18     me that you want to speak with your attorney and I will give
19     you the chance to speak with him privately.
20              Do you understand that?
21              THE DEFENDANT:  Yes, your Honor.
22              THE COURT:  Please state your full name.
23              THE DEFENDANT:  Albert Hallac.
24              THE COURT:  How old are you, sir?
25              THE DEFENDANT:  78.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

WF0020161

10

F7u6halp

```
 1              THE COURT:  How far did you get in school?

 2              THE DEFENDANT:  Bachelors degree.

 3              THE COURT:  Have you recently been treated for any

 4   type of mental illness?

 5              THE DEFENDANT:  Recently I was seeing a psychiatrist

 6   every six months or so.

 7              THE COURT:  For what condition do you see the

 8   psychiatrist?

 9              THE DEFENDANT:  Depression.

10              THE COURT:  Do you take any medication for depression?

11              THE DEFENDANT:  Yes, a medication called Cymbalta.

12              THE COURT:  When was the last time you took Cymbalta?

13              THE DEFENDANT:  Last night.

14              THE COURT:  It is currently about 10:25 in the

15   morning.

16              Is there anything about that medication that affects

17   your ability to think or to understand?

18              THE DEFENDANT:  No, your Honor.

19              THE COURT:  How frequently do you see the

20   psychiatrist?

21              THE DEFENDANT:  Every six months or so.

22              THE COURT:  Am I correct in understanding that the

23   depression is not acute?  It's not profoundly serious?

24              THE DEFENDANT:  No, it is not.

25              THE COURT:  Have you recently been treated for drug
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

WF0020162

11

F7u6halp

1    addiction of any kind?

2            THE DEFENDANT:  No, your Honor.

3            THE COURT:  Have you recently been treated for

4    alcoholism?

5            THE DEFENDANT:  No, your Honor.

6            THE COURT:  Apart from this Cymbalta, have you taken

7    any kind of drugs or medicine, legal or illegal, within the

8    last two days?

9            THE DEFENDANT:  I do take two medications twice a day

10   for heart, for asthma, for rheumatoid arthritis and a bunch of

11   other things.  So I do take them at night and in the morning.

12           THE COURT:  Is there anything about those medications

13   that affects your ability to think or to understand?

14           THE DEFENDANT:  No, your Honor.

15           THE COURT:  Have you had any beer, wine or liquor in

16   the last 24 hours?

17           THE DEFENDANT:  No, your Honor.

18           THE COURT:  Apart from the conditions you've already

19   described are you seeing a doctor or health care provider for

20   any other conditions?

21           THE DEFENDANT:  I am seeing a health care provider in

22   Florida for rheumatoid arthritis.

23           THE COURT:  I think you mentioned asthma; right?

24           THE DEFENDANT:  Yes.  But that is -- I had a flareup

25   in March, April or so.

WF0020163

F7u6halp                                                          12

1              THE COURT:  You also mentioned a cardiac condition.

2              THE DEFENDANT:  Yes.  I have been very fine with that.

3     I have been taking regular medication for blood pressure and

4     for cholesterol.

5              THE COURT:  I see.  In general do you feel

6     clear-headed today and able to understand what is going on

7     around you?

8              THE DEFENDANT:  I feel fine, your Honor.

9              THE COURT:  Mr. Kaplan.

10             MR. ALBANESE:  Mr. Albanese.  I am standing in for

11    Mr. Kaplan today.

12             THE COURT:  Mr. Albanese, am I correct in my

13    assumption that you have spoken to Mr. Albanese before today's

14    proceeding?

15             MR. ALBANESE:  Yes, your Honor.

16             THE COURT:  Without telling me the content of anything

17    you may have discussed with him, did anything happen during

18    your conversations with Mr. Hallac where you have reservations

19    about his ability to proceed today?

20             MR. ALBANESE:  No, your Honor.

21             THE COURT:  Is either side aware of any physical,

22    psychological or emotional condition that might prevent

23    Mr. Hallac from entering a guilty plea today?

24             MR. BAUER:  No, your Honor.

25             THE COURT:  Let me ask Mr. Cancellarich to mark a copy

WF0020164

F7u6halp                                                                        13

1    of the information as Court Exhibit 1 and to also place that

2    before Mr. Hallac.

3           Now, Mr. Hallac, a copy of the information against you

4    has been placed before you and has been marked as Court Exhibit

5    2.  Did you receive a copy of that information prior to today?

6           THE DEFENDANT:  Yes, your Honor.

7           THE COURT:  Have you had a chance to read the

8    indictment and to discuss it with your attorneys, Mr. Kaplan

9    and other attorneys with his firm including Mr. Albanese?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Are you generally satisfied with the

12   representation you received in this case and the advice your

13   attorneys have given to you?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  Is it your intention here today to plead

16   guilty to Counts One through Five of the information?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  I want to discuss with you briefly the

19   nature of the charge against you in each of the counts of the

20   information, the elements the government would have to prove at

21   trial to establish your guilt, and the penalties you face if

22   your plea is accepted.

23          Do you understand that Count One of the information

24   charges you with conspiracy to commit the offenses of

25   investment advisor fraud and securities fraud in violation of

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

WF0020165

14

F7u6halp

1    Title 18, United States Code, Section 371?  Do you understand

2    that is the nature of the charge against you in Count One?

3            THE DEFENDANT:  Yes, your Honor.

4            THE COURT:  Do you understand that in order to

5    establish your guilt on Count One, the government would have to

6    prove three elements beyond a reasonable doubt:  First, that

7    there was an agreement among two or more people to commit the

8    offenses of investment advisor fraud and securities fraud;

9    second, that you knowingly entered into and became part of that

10   agreement with knowledge of its illegal object; and third, that

11   at least one the overt acts alleged in the information was

12   committed in furtherance of the agreement or conspiracy; do you

13   understand those are the three elements the government would

14   have to prove with respect to Count One?

15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  Do you you understand on and Count One you

17   face the maximum sentence of five years' imprisonment, a

18   maximum term of supervised release of three years, a maximum

19   fine of the greatest of $250,000 or twice the gross pecuniary

20   gain deprived from the offense, or twice the gross pecuniary

21   loss to persons, other than yourself, plus a mandatory special

22   assessment of $100; do you understand those are the penalties

23   you face on Count One?

24           THE DEFENDANT:  Yes, your Honor.

25           THE COURT:  Do you understand that Count Two of the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

WF0020166

15

F7u6halp

1    information charges you with investment advisor fraud in

2    violation of Title 15, Untied States Code, Section 80b-6 and

3    80b-17?  Do you understand that is the nature of the charge

4    against you in Count Two?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Do you understand that in order to

7    establish your guilt on Count Two, the government would have to

8    prove the following elements beyond a reasonable doubt:  First,

9    that you were and investment advisor; second, that you did one

10    of the following:  That you either employed a device, scheme or

11    artifice to defraud an actual or prospective investor advisory

12    client or engaged in a transaction, practice or course of

13    business which operated as a fraud and deceit upon those

14    investment advisor clients or prospective advisory clients or

15    engaged in an act, practice and course of business that was

16    fraudulent, deceptive and manipulative?  The government would

17    have to prove one of those three to satisfy the second element.

18    The third element the government would have to prove is that

19    you devised or participated in such alleged device, scheme or

20    artifice to defraud or engaged in such alleged transaction,

21    practice or course of business knowingly, willfully and with

22    the intent to defraud; and fourth that you employed such

23    device, scheme or artifice to defraud or engaged in such

24    transaction, practice or course of business by use of the mails

25    or instrumentality of interstate commerce.

WF0020167

16

F7u6halp

1          Do you understand those are the elements the

2     government would have to prove with respect to Count Two?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  Do you understand that if your plea to

5     Count Two is accepted, you face a maximum sentence of five

6     years' imprisonment, a maximum term of three years' supervised

7     release, a maximum fine of the greatest $10,000 or twice the

8     gross pecuniary gain arrived from the offense or twice

9     pecuniary loss to persons other than yourself, plus a mandatory

10    special assessment of $100; do you understand those are the

11    penalties you face on Count Two?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  Do you understand that Count Three of the

14    information charges you with the offense of securities fraud in

15    violation of Title 15, United States Code, Section 78j(b),

16    Section 78ff and 17, C.F.R., 240.10b-5 and Title 18, United

17    States Code, Section 2?  Do you understand that is the nature

18    of the charge against you in Count Three, securities fraud?

19         THE DEFENDANT:  Yes, your Honor.

20         THE COURT:  Do you understand that in order to

21    establish your guilt on Count Three, the government would have

22    to prove -- excuse me.  In order to establish your guilt on

23    Count Three, the government would have to prove the following

24    elements beyond a reasonable doubt:  First, the government

25    would have to prove that in connection with the purchase or

WF0020168

17

F7u6halp

1    sale of securities, you did any one or more of the following:

2    Employed a device, scheme or artifice to defraud or made an

3    untrue statement of material facts or omitted to state a

4    material fact which made what was said under the circumstances

5    misleading or engaged in an act, practice or course of business

6    that operated or would operate as a fraud or deceit upon a

7    purchaser or seller.  The government would have to prove one of

8    those three to establish the first element.  The second element

9    is that you acted willfully and knowingly and willfully knowing

10   with the intent to defraud.  And third that the government

11   would have to prove that you knowingly used or caused to be

12   used any means or instruments of transportation or

13   communication in interstate commerce or the use of the mails in

14   furtherance the fraudulent conduct.

15           Do you understand those are the elements that the

16   government would have to prove to establish your guilt on Count

17   Three?

18           THE DEFENDANT:  Yes, your Honor.

19           THE COURT:  Do you understand that on Count Three you

20   face a maximum sentence of 20 years' imprisonment, a maximum

21   term of three years of supervised release, a maximum fine of

22   the greatest of $5 million or twice the gross pecuniary gain

23   deprived from the offense or twice the gross pecuniary loss to

24   persons other than yourself resulting from the offense, plus a

25   mandatory special assessment of $100; do you understand those

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

WF0020169

18

F7u6halp

1    are the penalties you face on Count Three?

2            THE DEFENDANT:  Yes, your Honor.

3            THE COURT:  Do you understand that Count Four charges

4    you with conspiracy to commit the offense of wire fraud in

5    violation of Title 18, United States Code, Section 1349?  Do

6    you understand that is the nature of the offense against you in

7    Count Four?

8            THE DEFENDANT:  Yes, your Honor.

9            THE COURT:  Do you understand that in order to

10   establish your guilt on Count Four, the government would have

11   to prove two elements beyond a reasonable doubt:  First, that

12   there was an agreement among two or more people to commit the

13   offense of wire fraud; and second, that you knowingly entered

14   into and became part of that agreement with knowledge of its

15   illegal objects; do you understand that those are the elements

16   the government would have to prove with respect to Count Four?

17           THE DEFENDANT:  Yes, your Honor.

18           THE COURT:  Do you understand that on Count Four you

19   face a maximum sentence of 20 years' imprisonment, a maximum

20   term of supervised release of three years, a maximum fine of

21   the greatest $250,000 or twice the gross pecuniary gain derived

22   from the offense, or twice the gross pecuniary loss to persons

23   other than yourself plus a mandatory special assessment of

24   $100; do you understand those are the penalties you face on

25   Count Four?

WF0020170

F7u6halp

1              THE DEFENDANT:  Yes, your Honor.

2              THE COURT:  Finally, do you understand that Count Five

3    charges you with the substantive offense of wire fraud in

4    violation of Title 18, United States Code, Section 1343; do you

5    understand that is the nature of the charge against you in

6    Count Five?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  Do you understand that in order to

9    establish your guilt on Count Five, the government would have

10   to prove the following elements beyond a reasonable doubt:

11   First, that there was a scheme or artifice to defraud or to

12   obtain money or property by materially false and fraudulent

13   pretenses, representations, or promises as alleged in the

14   information; second, that you knowingly and willfully

15   participated in the scheme or artifice to defraud with

16   knowledge of its fraudulent nature and with the specific intent

17   to defraud; and third, that in the execution of the scheme, you

18   either used or caused the use of the interstate wires as

19   specified in the information; do you understand those are the

20   elements that the government would have to prove to establish

21   your guilt on Count Five, the wire fraud count?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  Do you understand that on Count Five you

24   also face the maximum sentence of 20 years' imprisonment, a

25   maximum term of supervised release of three years, a maximum

WF0020171

F7u6halp

1     fine of the greatest of $250,000 or twice the gross pecuniary

2     gain derived from the offense or twice the gross pecuniary loss

3     to persons other than yourself, plus a mandatory special

4     assessment of $100; do you understand those are the penalties

5     you face on Count Five?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  Do you understand that in the aggregate

8     you face a maximum term of imprisonment of 70 years; do you

9     understand that?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  Mr. Hallac, do you also understand that as

12    part of your sentence the Court must enter an order of

13    restitution that you pay back to any victim any ill-gotten gain

14    or expenses that the victims incurred as a result of your

15    conduct; do you understand that?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  Mr. Hallac, the plea to a felony can also

18    have immigration consequences for individuals who are not

19    United States citizens.  In light of that fact, let me ask you

20    are you a U.S. citizen?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  Mr. Hallac, do you understand that under

23    the Sentencing Reform Act of 1984 the United States Sentencing

24    Commission has issued advisory guidelines for judges to consult

25    in imposing sentences in criminal cases; do you understand

WF0020172

21

F7u6halp

1    that?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Have you and your attorneys discussed how

4    the guidelines might apply in your case?

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  Do you understand that Judge Berman, the

7    judge who is going to impose sentence here, will not be able to

8    determine the appropriate guideline sentence for your case

9    until a document called a presentence report has been prepared

10   and until both you and the government have had the opportunity

11   to review the report and make any challenges you have to the

12   facts in the report and to the guideline range recommended by

13   the Probation Department; do you understand that?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  Do you understand that the guideline range

16   found to apply in your case may turn out to be different from

17   any range you discussed with your attorneys or any range you

18   discussed with the government; do you understand that?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  Do you understand that after your

21   guideline range has been determined, the Court has the

22   authority to depart from the guidelines and to impose a

23   sentence that is even more severe or less severe than the

24   sentence called for by the guidelines; do you understand that?

25             THE DEFENDANT:  Yes, your Honor.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

WF0020173

22

F7u6halp

```
1              THE COURT:  Do you understand that the form of early
2    release known as parole no longer exists in the federal system
3    and that if you are sentenced to a term of imprisonment, you
4    will not be released on parole; do you understand that?
5              THE DEFENDANT:  Yes, your Honor.
6              THE COURT:  Do you understand that under some
7    circumstances the government may have the right to appeal from
8    any sentence that is imposed upon you and seek the imposition
9    of a harsher sentence; do you understand that?
10             THE DEFENDANT:  Yes, your Honor.
11             THE COURT:  I want to discuss with you some of the
12   rights you are giving up by pleading guilty.  Do you understand
13   that you have the right to plead not guilty to the charges
14   against you and you have the right to persist in that plea at
15   all stages of the proceedings against you; do you understand
16   you have those rights?
17             THE DEFENDANT:  Yes, your Honor.
18             THE COURT:  Do you understand that if you chose to
19   plead not guilty, you have the right to the assistance of
20   counsel at all stages of the proceedings against you and you
21   have the right to have counsel appointed to you if you could
22   not afford counsel; do you understand you have those rights?
23             THE DEFENDANT:  Yes, your Honor.
24             THE COURT:  Do you understand that if you chose to
25   plead not guilty, you have the right to a trial by jury?  At
```

WF0020174

23

F7u6halp

1    the trial, you would be presumed innocent and the government

2    would have to prove your guilty beyond a reasonable doubt.  At

3    a trial you would have the right to the assistance of counsel,

4    you have the right to have counsel appointed if you could not

5    afford counsel, you would have the right to see and hear all

6    the witnesses against you, and you would have the right to have

7    those witnesses cross-examined or questioned in your own

8    defense.  At a trial you have the right to testify and the

9    right to offer evidence in your defense.  Conversely, you have

10   the right to decline to testify or decline to offer evidence.

11   And if you chose not to testify or chose not to offer evidence,

12   those facts would not be used against you.  Finally, at trial

13   you will have the right to compulsory process or court orders

14   to compel witnesses to come to court and give testimony in your

15   behalf.

16          Do you understand you have all those rights if you

17   chose to plead not guilty and go to trial?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  Do you understand that by entering a plea

20   of guilty if the plea is accepted, there will be no trial and

21   you will be giving up your right to a trial as well as all the

22   other rights associated with the trial that I have just

23   described to you; do you understand you are giving up all those

24   rights?

25          THE DEFENDANT:  Yes, your Honor.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

WF0020175

24

F7u6halp

1           THE COURT:  Apart from the agreements that are set

2     forth in Court Exhibit 1, which is the letter agreement you

3     identified at the outset of these proceedings, has anyone made

4     any other promises to you or has anyone made any threats to you

5     or has anyone used any force against you to induce you to plead

6     guilty?

7           THE DEFENDANT:  No, your Honor.

8           THE COURT:  Are you pleading guilty because you are in

9     fact guilty?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  At this time I am going to ask you to tell

12    us what it is that you did that makes you guilty of the

13    offenses charged in the information.

14          Let me ask counsel is it a prepared statement?

15          MR. ALBANESE:  Yes, your Honor.  We have a prepared

16    statement.  Would you mind if he sits.

17          THE COURT:  He can sit.  Let me ask you not to go too

18    fast when you read.

19          MR. ALBANESE:  Your Honor, would you like a copy?

20          THE DEFENDANT:  Your Honor, the factual basis for my

21    plea is as follows: During the time period specified in the

22    information, I was the president of Weston Capital Asset

23    Management.  Weston was a registered investment advisor and had

24    offices in New York, Connecticut and West Palm Beach, Florida.

25    Weston managed over a dozen hedge funds for its investors.

WF0020176

25

F7u6halp

1        From in or about 2009 through at least in or about

2    late 2012, I, along with others, participated if a scheme to

3    defraud Weston investors.  Generally speaking:

4        I failed to disclose to my investors material

5    information about financial transactions involving their

6    moneys;

7        I failed to discuss close to investors the transfer of

8    moneys from one investment fund to benefit the investors of

9    another fund;

10        I, along with the others, retained certain investor

11    funds that were improperly transferred to an account that I

12    controlled; and

13        I agreed to make a false representation to assist a

14    co-conspirator in an attempt to defraud another company.

15        Allow me to explain these acts more specifically.

16        In or about the fall of 2009, Fund.com, a public

17    company, agreed to purchase a substantial ownership interest in

18    Weston.  I soon learned that Fund.com was controlled by Jason

19    Galanis, an individual who was barred by the SEC from being an

20    officer or director of a public company.  While I disclosed the

21    purchase of Weston by Fund.com to my investors, I did not

22    disclose to the investors Galanis' control over, or involvement

23    in, Fund.com.

24        Similarly, in or about early 2010, I agreed with

25    Galanis to enter into a transaction between one of Weston's

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

WF0020177

26

F7u6halp

1    hedge funds called the Wimbledon Financing Fund, and an entity

2    controlled by Galanis called the Gerova Financial Corporation.

3    As part of that transaction I had the Wimbledon Financing Fund

4    exchange all of its assets, which at the time consisted of

5    investments in other hedge funds, with Gerova for restricted

6    shares of Gerova stock believed to be worth approximately $85

7    million.  While the details of the transaction were fully

8    disclosed to investors of the Wimbledon Financing Fund, I did

9    not disclose Galanis' control over or involvement with Gerova.

10         In both instances I was concerned that Galanis'

11    involvement in the deals, and the fact of his SEC bar, would

12    upset my investors and cause them to oppose or aggressively

13    question the deals.  I intentionally withheld this information

14    about Galanis from the investors and did not instruct anyone

15    else at Weston to inform the investors of Galanis' involvement

16    with either Fund.com or Gerova.

17         In early 2011, a series of negative articles appeared

18    about Galanis, as well as other of his associates, and their

19    involvement with Gerova.  As a result, Gerova's stock plummeted

20    and it was eventually delisted from the American Stock

21    Exchange.  The stock that the Wimbledon Financing Fund held in

22    Gerova became worthless.

23         Around this time, Galanis introduced me to another

24    individual named David Bergstein.  Bergstein offered to help me

25    recover, on behalf of the Wimbledon Financing Fund investors,

WF0020178

27

F7u6halp

1    the assets that they had given to Gerova in exchange for the

2    now worthless Gerova stock.  However, Bergstein would only

3    assist in this effort if the Wimbledon Financing Fund would

4    contribute to the recovered assets to another company he

5    created, called Arius Libra, in order to help finance

6    investments in medical billing companies.  Hoping to recover

7    Wimbledon Financing Fund's assets from Gerova, I agreed to this

8    transaction.

9         Part of the Gerova unwind transaction put together by

10   Bergstein required paying off approximately $5 million worth of

11   Gerova's debts.  Bergstein had assured me that the assets Arius

12   Libra received from the financing fund, which had been

13   recovered from Gerova, would be used to both obtain a loan to

14   pay off the expenses of Gerova as well as provide operating

15   capital for Arius Libra.  Bergstein, however, failed to obtain

16   the promised loan for Arius Libra and then convinced me to take

17   cash held in another Weston fund called the Partners II fund,

18   and loan that cash to Arius Libra.  From in and or about

19   August 2011 through December 2011, I caused Partners II to loan

20   Arius Libra up to $9 million.  While the loans were

21   collateralized with the Wimbledon Financing Fund assets in

22   Arius Libra's possession, I did not inform the investors of

23   Partners II that I had made this loan with their assets for the

24   benefit of a separate group of Weston investors.

25        Excuse me.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

WF0020179

F7u6halp

28

1          (Pause)

2          In and around November 2011, Bergstein convinced me to

3   enter into another transaction between a Weston fund called the

4   Wimbledon TT Fund and an entity Bergstein controlled called

5   Swartz IP.  As part of this transaction, I agreed to invest the

6   cash held by the TT Fund into Swartz IP.  I did not conduct

7   proper due diligence on Swartz IP nor did I inform the

8   investors of the transaction.  The total amount of money

9   transferred to Swartz IP was approximately $17 million.  I,

10  along with Bergstein and others, also arranged for three

11  million of the TT Fund to be used to repay part of the loan

12  Arius Libra owed to the P II fund.  Again, this was not

13  disclosed to the TT investors.

14         In each of the before-mentioned conduct, which I

15  omitted material information, this made my representations

16  incomplete and therefore misleading.

17         Many of the funds described above traded securities in

18  the public exchanges.

19         In addition, Bergstein caused $750,000 of the TT Fund

20  money to be transferred to an entity called Purplebox.  This

21  entity was an investment vehicle created for the benefit of

22  myself and two other executives of Weston.  When I realized

23  that the money Bergstein sent to Purplebox account belonged to

24  the TT investors, I did not return the moneys to the TT Fund as

25  I should have.  By this time I had transferred 240,000 of the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

WF0020180

29

F7u6halp

1    750,000 out of the Purplebox account for my personal use.

2        In 2012, Bergstein requested I assist them in

3    acquiring another company called Bidz.com.  Bergstein asked me

4    to falsely represent that Weston would be the guarantor of

5    Bergstein's purchase on Bidz.com.  Specifically, Bergstein

6    falsely created and e-mailed me a financial statement for a

7    Weston fund called Partners III that had no assets.  Bergstein

8    asked me to falsify -- falsely represent that this fund,

9    Partners III, would back him as the guarantor for the

10    acquisition.  I knew the financial statement was false, but I

11    forwarded the balance sheet to an attorney working on the

12    transaction and represented the financial statement to be

13    accurate.

14        When I communicated with investors, it was by

15    telephone, e-mail, and regular mail and the investors were in

16    many states.  Many of the actions described to you today

17    occurred while conducting business in the City of New York.

18        I stand before the Court today to plead guilty to the

19    crimes I have just described.  When I engaged in these acts, I

20    knew they were wrong but did them anyway.  Your Honor, I worked

21    hard my whole life to build my business and provide for my

22    family.  I strove to live and conduct myself both personally

23    and professionally, in a manner that I could be proud of:  With

24    honor, modesty, dignity and integrity.  I recognize that the

25    conduct that I have just described betrayed these aspirations.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

WF0020181

30

F7u6halp

1    Yet I take full responsibility for my actions and I will spend

2    every day, for the rest of my life, living with the

3    consequences of my actions and working to repair the damage I

4    have caused to others, my family and myself.

5            THE COURT:  Does the government believe any further

6    inquiry is a necessary concerning the facts of the offenses?

7            MR. BAUER:  Judge, just a couple technical matters

8    relating to interstate commerce and venue.  Mr. Hallac

9    mentioned that he conducted business in the City of New York.

10   I believe that is Manhattan, the Southern District of New York.

11   If we can clarify that.

12           THE COURT:  Mr. Hallac, on page 7 of your comments you

13   referred to conducting business in the City of New York.  Was

14   that specifically Manhattan or the Bronx within the City of New

15   York?

16           THE DEFENDANT:  It was in Manhattan, yes, sir.

17           MR. BAUER:  Then referring to the bottom of page 6

18   where it was discussing that Mr. Hallac had sent the false

19   financial statement regarding Bidz.com, I wanted to clarify

20   that.  I believe that was sent by e-mail electronic mail, and

21   it was done so while Mr. Hallac was in Florida.  He sent it to

22   a recipient in California, but the e-mail server from which it

23   was sent over was here in the Southern District of New York.

24           THE COURT:  Is that correct?

25           THE DEFENDANT:  Yes.  Yes, your Honor, that is

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

WF0020182

31

F7u6halp

1    correct.

2         MR. BAUER:  Thank you, your Honor.  No other

3    questions.

4         THE COURT:  Does the government represent that it has

5    facts in its possession to prove Mr. Hallac's guilt beyond a

6    reasonable doubt?

7         MR. BAUER:  Yes, your Honor.

8         Mr. Hallac, how do you plead to each of the Counts One

9    through Five to the information that has been placed before you

10   and marked Court Exhibit 2, guilty or not guilty?

11        THE DEFENDANT:  Guilty.

12        THE COURT:  That is guilty to each count; is that

13   correct?

14        THE DEFENDANT:  Yes, your Honor.

15        THE COURT:  Does the government believe any further

16   inquiry should be made concerning any matter?

17        MR. BAUER:  Well, your Honor, there is a forfeiture

18   allegation in the information.  I would ask that your Honor ask

19   Mr. Hallac if he admits to that allegation.

20        MR. ALBANESE:  Mr. Hallac, it is also my understanding

21   that as part of your agreement with the government, you're

22   agreeing to forfeit or give over to the government any

23   ill-gotten gain that you have received as a result of the

24   conduct you just described or anything that you purchased with

25   the ill-gotten gain that resulted from the conduct; is that

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

WF0020183

32

F7u6halp

1  correct?

2          THE DEFENDANT:  That's correct, your Honor.

3          THE COURT:  Anything else from the government?

4          MR. BAUER:  No, your Honor.  Thank you.

5          THE COURT:  Mr. Albanese, do you believe any further

6   inquiry should be made concerning any subject?

7          MR. ALBANESE:  No, your Honor.

8          THE COURT:  You can be seated, gentleman.

9          Based on Mr. Hallac's physical appearance, his

10  demeanor and his answers to all the forgoing questions, I find

11  that he is fully competent and capable of entering an informed

12  and voluntary plea, that he is aware of the nature of the

13  charges and the consequences of the plea, and that the plea is

14  knowing and voluntary and supported by an independent basis in

15  fact as to each of the essential elements of the offenses.  I

16  therefore accept the plea and recommend that Judge Berman

17  accept the plea.

18          I take it a presentence report should not be ordered

19  at this time nor should a sentencing date be set?

20          MR. BAUER:  No, your Honor.  If you would like if you

21  want to set a control date, I would ask for six months out.  I

22  would also be just as comfortable to represent to your Honor

23  that we'll be in touch with Judge Berman's chambers and set a

24  control date with them.

25          THE COURT:  I think it is better to do that directly

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

WF0020184

33

F7u6halp

1    with Judge Berman's chambers.

2            MR. BAUER:  Thank you, your Honor.

3            THE COURT:  My understanding is that this is

4    Mr. Hallac's initial appearance; is that correct?

5            MR. ALBANESE:  That is correct, your Honor.

6            THE COURT:  So bail also needs to be set?

7            MR. BAUER:  That's correct, your Honor.

8            THE COURT:  Do you have the pretrial services report?

9            MR. BAUER:  We do, your Honor.

10           THE COURT:  What are the parties' view on bail?

11           MR. BAUER:  Your Honor, I think the parties have come

12    to an agreement to a package that hopefully your Honor deems

13    appropriate.  It is a 500,000-dollar personal recognizance bond

14    secured by the signature of Mr. Hallac.  And then besides that

15    it is all of the usual terms, including travel restricted to

16    the continental United States.  He has a United States

17    passport, your Honor.  What the parties have discussed is that

18    we would like him to turn that passport over to Pretrial, but

19    somewhere close to where he lives in Florida so that it could

20    be accessed if necessary.  I know that Mr. Hallac in particular

21    has an interest in visiting family in Canada in the next month

22    or two.  The government is not opposed to it, but the

23    government would ask that Mr. Hallac just make that application

24    through Pretrial to Judge Berman.

25           THE COURT:  Do we know what district he resides in in

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

WF0020185

34

F7u6halp

1    Florida?

2            MR. BAUER:  Southern District of Florida.

3            THE COURT:  Passport to be surrendered to the Southern

4    District of Florida.

5            MR. BAUER:  And then no new travel applications be

6    made.

7            I also saw in the Pretrial Services' report that

8    Pretrial recommended continued mental health treatment.  That

9    seems to make sense.  Mr. Hallac said to you, your Honor, he

10   sees a psychiatrist every six months.  That seems like that

11   should continue.  In terms of reporting to Pretrial Services, I

12   am happy to go along with Pretrial's recommendation that he

13   report by the web or telephone as directed.

14           THE COURT:  Mr. Albanese, what are your thoughts?  Is

15   that the package that the parties have agreed?

16           MR. ALBANESE:  Yes, your Honor.

17           THE COURT:  I am going to set the bail as suggested by

18   the government, a 500,000 PRB, travel limited to the

19   continental United States, passport surrendered to Pretrial in

20   the Southern District of Florida, no new applications for

21   travel documents, continued mental health treatment, and

22   regular Pretrial supervision by reporting by web or telephone.

23           MR. ALBANESE:  Your Honor, I have one minor point.  At

24   present Mr. Hallac is with his wife and family on vacation in

25   Vermont so he will not be back in the Southern District of

WF0020186

35

F7u6halp

1   Florida until the end of August.

2          THE COURT:  So the bond set today and the other

3   conditions met by August 31?

4          MR. BAUER:  I am pausing on the passport.

5          THE COURT:  Where is the passport right now?

6          MR. ALBANESE:  In my pocket right now.

7          THE COURT:  You want it surrendered in Florida?

8

9          PRETRIAL OFFICER:  Your Honor, we can take possession

10  of the passport.  We'll send it to the Pretrial office in the

11  Southern District of Florida.

12         THE COURT:  Does that work for everybody?

13         MR. ALBANESE:  Thank you.

14         THE COURT:  He doesn't need the passport between now

15  and the end of August, does he?

16         THE DEFENDANT:  No.

17         MR. ALBANESE:  Definitely not.

18         THE COURT:  So the bond and passport will be

19  surrendered today and the other conditions met by the end of

20  August.

21         MR. ALBANESE:  Thank you, your Honor.

22         THE COURT:  Anything else from either side,

23  government?

24         MR. BAUER:  No, Judge.  Just to clarify what we

25  started to say, which was the sealing request, that the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

WF0020187

36

F7u6halp

1    courtroom has been closed today.  I do think that it is your

2    Honor's order that the docket will be United States v. John Doe

3    docket.

4            THE COURT:  No docket entries.  Everything is held by

5    Judge Berman until it is unsealed.

6            Anything else from the government?

7            MR. BAUER:  No, your Honor.  Thank you for your time.

8            THE COURT:  Mr. Albanese, anything else?

9            MR. ALBANESE:  No, your Honor.  Thank you very.

10           THE COURT:  Thank you all.

11                        oOo

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

WF0020188