# EXHIBIT FF

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK

2  ------------------------------x

3  UNITED STATES OF AMERICA,

4          v.                              16 CR 746 (PKC)

5  KEITH WELLNER,

6               Defendant.

7  ------------------------------x

8                                    New York, N.Y.
                                     December 18, 2017
9                                    10:47 a.m.

10

11 Before:

12                   HON. P. KEVIN CASTEL

13                                    District Judge

14                      APPEARANCES

15 JOON H. KIM
        Acting United States Attorney for the
16      Southern District of New York
   EDWARD IMPERATORE
17  ROBERT W. ALLEN
        Assistant United States Attorneys
18
   LAW OFFICES OF GORDON MEHLER, P.L.L.C.
19      Attorney for Defendant
   GORDON MEHLER
20

21

22

23

24

25

                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

WF0020189

```
 1              (In open court; case called)
 2              THE COURT:  This is United States of America against
 3     Keith Wellner.  For the government.
 4              MR. IMPERATORE:  Good morning, your Honor.
 5              Edward Imperatore and Robert Allen for the government.
 6     With us at counsel table is Special Agent Joseph Strawman of
 7     the FBI.
 8              THE COURT:  Good morning.
 9              And for the defendant.
10              MR. MEHLER:  Good morning, your Honor.
11              Gordon Mehler M-E-H-L-E-R, 747 Third Avenue, New York
12     New York 10017.
13              THE COURT:  Good morning, Mr. Mehler.  And good
14     morning, Mr. Wellner.
15              THE DEFENDANT:  Good morning.
16              THE COURT:  Mr. Wellner, I've been told that you wish
17     to enter a plea of guilty to several counts of the indictment,
18     Counts One through Six.  And before I can accept a guilty plea
19     from you I must be satisfied that you understand the rights you
20     would have if this case went to trial and the rights you're
21     giving up by pleading guilty.  Also, I must be satisfied that
22     there is a factual basis for your plea of guilty and you
23     understand the consequences of the plea of guilty.
24              So, in a moment, I'm going to have the clerk place you
25     under oath and I'm going to ask you certain questions and
```

WF0020190

1    inform you of certain rights.  If I ask you something or I tell

2    you something and you don't quite understand, please let me

3    know and I'll put it into different words.  Also, if at any

4    point in this proceeding you wish to speak in private with your

5    lawyer I will give you the opportunity to do that.

6            Do you understand all that?

7            THE DEFENDANT:  Yes, I do.  Thank you, your Honor.

8            THE COURT:  Please stand and the clerk will administer

9    the oath.

10           (Defendant sworn)

11           THE COURT:  Now, Mr. Wellner, you're now under oath

12   and your answers to my questions are subject to the penalties

13   of perjury or of making a false statement if you do not answer

14   truthfully.  Also, anything you say today may be used in such a

15   prosecution.

16           Do you understand all that?

17           THE DEFENDANT:  I do.

18           THE COURT:  How old are you, sir?

19           THE DEFENDANT:  Fifty.

20           THE COURT:  And how far did you go in school?

21           THE DEFENDANT:  I have two postgraduate degrees.

22           THE COURT:  What are they in?

23           THE DEFENDANT:  One's in law, a JD in law; and one is

24   an MBA in business.

25           THE COURT:  Are you now or have you recently been

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

WF0020191

```
 1    under the care of a medical doctor?

 2             THE DEFENDANT:  I am under the care of a medical

 3    doctor.

 4             THE COURT:  For what condition?

 5             THE DEFENDANT:  Just general anxiety related.

 6             THE COURT:  What type of medication do you take?

 7             THE DEFENDANT:  I currently take anti anxiety

 8    medication and anti depressive medication.

 9             THE COURT:  Do those medications affect the clarity of

10    your thinking?

11             THE DEFENDANT:  No, they don't.

12             THE COURT:  Have you been under the care of a

13    psychiatrist or been treated for a mental illness other than

14    what you've described to me so far?

15             THE DEFENDANT:  No.

16             THE COURT:  Ever been addicted to any substance,

17    alcohol, marijuana, prescription medications, anything?

18             THE DEFENDANT:  No.

19             THE COURT:  How do you feel today?

20             THE DEFENDANT:  I feel fine.  Thank you.

21             THE COURT:  Do you understand what's happening?

22             THE DEFENDANT:  I do.

23             THE COURT:  Mr. Mehler, any doubt's as to your

24    client's competence to proceed?

25             MR. MEHLER:  None at all, your Honor.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

WF0020192

```
 1              THE COURT:  Based on his responses to my questions and
 2    my observations I find that the defendant is fully competent to
 3    enter an informed plea in this case.
 4              Now, Mr. Wellner, have you taken advantage of the
 5    opportunity to discuss this case and the charges and how you
 6    might go about defending the charges with your lawyer,
 7    Mr. Mehler?
 8              THE DEFENDANT:  Yes, I have.
 9              THE COURT:  Have you had enough time to consider all
10    of your options in this case?
11              THE DEFENDANT:  Yes, I have.
12              THE COURT:  Are you satisfied with your lawyer's
13    representation of you?
14              THE DEFENDANT:  Yes, I am.
15              THE COURT:  I'm now going to explain to you the rights
16    you would have if this case went to trial and the rights you're
17    giving up by pleading guilty.  Under the Constitution and laws
18    of the United States, you are entitled to a speedy and public
19    trial by an impartial jury on the charges contained in the
20    indictment.
21              Do you understand that?
22              THE DEFENDANT:  I do.
23              THE COURT:  At such a trial you would be presumed to
24    be innocent.  You would not have to prove that you were
25    innocent.  The government would be required to prove each
```

WF0020193

```
 1    element of each crime by proof beyond a reasonable doubt.
 2    Before you could be convicted of any charge, a jury would have
 3    to find unanimously that you were guilty.
 4               Do you understand all that?
 5               THE DEFENDANT:  I do.
 6               THE COURT:  If there were a trial, at every stage of
 7    the case you would be entitled to be represented by a lawyer
 8    and if you could not afford a lawyer, one would be appointed at
 9    public expense.
10               Do you understand all that?
11               THE DEFENDANT:  I do.
12               THE COURT:  If there were a trial, the witnesses for
13    the government would have to come to court to testify.  You
14    would be able to see and hear them.  Your lawyer could
15    cross-examine them.  Your lawyer could object to evidence
16    offered by the government.  Your lawyer could present evidence
17    and could ask the Court to compel witnesses to appear at trial
18    on your behalf.
19               Do you understand all that?
20               THE DEFENDANT:  I do.
21               THE COURT:  If there were a trial, you would have the
22    right to testify if you chose to do so.  You could come up here
23    and take the witness stand.  Also, you would have the right not
24    to testify and no one would be permitted to draw any inference
25    or suggestion of guilt from the fact that you decided not to
```

WF0020194

```
 1 │ testify.
 2 │         Do you understand that?
 3 │         THE DEFENDANT:  I do.
 4 │         THE COURT:  Now, if there were a trial and the jury
 5 │ found you guilty, you would have the right to appeal that
 6 │ finding.
 7 │         Do you understand that?
 8 │         THE DEFENDANT:  I do.
 9 │         THE COURT:  Now, those are the rights you would have
10 │ if you went to trial.  If I accept a guilty plea from you there
11 │ will be no trial.  You will proceed to the sentencing phase in
12 │ which the Court will determine the punishment to be imposed on
13 │ you.  Even now you have the right to change your mind.  Instead
14 │ of pleading guilty, you may plead not guilty and go to trial.
15 │         Do you wish to plead not guilty and go to trial?
16 │         THE DEFENDANT:  No, I do not.
17 │         THE COURT:  Now, I'm going to go through the charges
18 │ and the maximum punishment.
19 │         Count One of the indictment charges you with
20 │ conspiracy to commit investment adviser fraud and securities
21 │ fraud from in or about 2011 through in or about 2012.
22 │         Do you understand that's what you're charged with?
23 │         THE DEFENDANT:  Yes, I do.
24 │         THE COURT:  The maximum penalty on Count One is five
25 │ years of imprisonment, a maximum term of three years of
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

WF0020195

```
 1   supervised release, a maximum fine of the greatest of $250,000
 2   or twice the gross pecuniary gain derived from the offense, or
 3   twice the gross pecuniary loss to a person other than yourself
 4   as a result of the offense, and a mandatory $100 special
 5   assessment.
 6           Do you understand all that?
 7           THE DEFENDANT:  I do.
 8           THE COURT:  Counts Two and Three of the indictment
 9   each charge you with investment advisor fraud from in or about
10   2011 through in or about 2012.  Each of Counts Two and Three
11   carry a maximum of -- maximum sentence of five years
12   imprisonment, a maximum term of three years of supervised
13   release, a maximum fine of the greatest of $250,000, twice the
14   gross pecuniary gain derived from the offense, or twice the
15   gross pecuniary loss to a person other than yourself as a
16   result of the offense, and a mandatory $100 special assessment.
17           Do you understand that that's the maximum penalty on
18   Count Two and it's also separately the maximum penalty on Count
19   Three.
20           Do you understand all of that?
21           THE DEFENDANT:  I do.
22           THE COURT:  Do you understand that Counts Four and
23   Five charge you with securities fraud from in or about 2011
24   through in or about 2012?
25           Do you understand that?
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

WF0020196

```
 1              THE DEFENDANT:  Yes, I do, your Honor.

 2              THE COURT:  Do you understand that each of Counts Four

 3    and Five carry a maximum sentence of 20 years imprisonment, a

 4    maximum term of three years of supervised release, a maximum

 5    fine of the greatest of $5 million, twice the gross pecuniary

 6    gain derived from the offense, or twice the gross pecuniary

 7    loss to a person other than the defendant as a result of the

 8    offense, and a mandatory $100 special assessment?

 9              Do you understand all of that?

10              THE DEFENDANT:  Yes, your Honor, I do.

11              THE COURT:  Do you understand that Count Six of the

12    indictment charges you with conspiracy to commit wire fraud

13    from in or about 2011 through in or about 2012?

14              Do you understand that?

15              THE DEFENDANT:  I do.

16              THE COURT:  Do you understand that Count Six carries a

17    maximum sentence of 20 years imprisonment, a maximum term of

18    three years supervised release, a maximum fine of the greatest

19    of $250,000 or twice the gross pecuniary gain derived from the

20    offense or twice the gross pecuniary loss to a person other

21    than yourself as a result of the offense, and a mandatory $100

22    special assessment?

23              Do you understand all of that?

24              THE DEFENDANT:  I do, your Honor.

25              THE COURT:  In addition to the foregoing, the Court
```

WF0020197

```
 1    must order restitution to any person who I find was injured by

 2    reason of your criminal conduct.

 3            Do you understand that?

 4            THE DEFENDANT:  Yes, your Honor, I do.

 5            THE COURT:  All right.  One moment, please.

 6            (Pause)

 7            Mr. Mehler, is your client prepared to admit the

 8    forfeiture allegations in paragraphs 52 and 53 of the

 9    indictment?

10            MR. MEHLER:  Yes, he is, your Honor.  I would point

11    out that there was $120,000 that he received and disgorged

12    before this even became a criminal investigation.

13            THE COURT:  That may be the case but the question for

14    today's purposes is whether he admits to the forfeiture

15    allegation or denies the forfeiture allegation; and if he

16    admits it, then the amount of forfeiture will be determined at

17    another point in time and there is no understanding or

18    agreement as to the amount of that forfeiture as I understand

19    it.  Is that correct?

20            MR. MEHLER:  Yes.  That's correct.  That's correct,

21    your Honor.

22            THE COURT:  Do you understand that, Mr. Wellner?

23            THE DEFENDANT:  I do.

24            THE COURT:  And as I've told you, the Court must order

25    that you make restitution to any person I find was injured by
```

WF0020198

```
 1    reason of your criminal conduct.

 2              Do you understand that?

 3              THE DEFENDANT:  I do.

 4              THE COURT:  Now, with respect to supervised release,

 5    there are terms and conditions attached to it; and if you do

 6    not live up to those terms and conditions you can be returned

 7    to prison for the full period of supervised release.

 8              So, say you get a prison term to be followed by a

 9    period of three years supervised release and you finish the

10    prison term and you're on supervised release and you live up to

11    the terms of supervised release for two years but then you

12    violate one of the provisions.  You may be returned to prison

13    for a full period of three years.

14              Do you understand that?

15              THE DEFENDANT:  I do.

16              THE COURT:  Mr. Wellner, are you a U.S. citizen?

17              THE DEFENDANT:  I am.

18              THE COURT:  By pleading guilty you may give up, in

19    fact, you will give up other valuable civil rights, such as the

20    right to vote, to hold public office, to sit on a jury, to

21    possess a firearm, to hold certain other licenses, and to

22    receive government benefits, certain government benefits.

23              Do you understand that?

24              THE DEFENDANT:  I do.

25              THE COURT:  Are you serving any other sentence, state
```

WF0020199

```
 1    or federal, or being prosecuted in any other court for any
 2    other crime?
 3              THE DEFENDANT:  No, I am not.
 4              THE COURT:  In sentencing you, I will receive a
 5    presentence report prepared by the office of probation that
 6    gives me background information and a recommended range of
 7    sentence under the sentencing guidelines.  After hearing from
 8    your lawyer and from the government, I will make my own
 9    determination of the correct guideline range that applies in
10    this case.  Even after determining the correct guideline range
11    I need not follow it and can sentence you all the way up to the
12    statutory maximum.  The guidelines are advisory and they are
13    not binding on the court.  They are one of the factors that the
14    Court takes account of in determining a sentence under a
15    statute which is commonly referred to as Section 3553(a).
16              Do you understand all that?
17              THE DEFENDANT:  Yes, I do.
18              THE COURT:  You will only be permitted to appeal or
19    collaterally attack a sentence on the basis that the sentence
20    is unreasonable or contrary to law.
21              Do you understand that?
22              THE DEFENDANT:  I do.
23              THE COURT:  Now, I understand there has been a plea
24    agreement reached between you and the government and it's
25    reflected in a five-page letter agreement on the letterhead of
```

WF0020200

```
 1  the U.S. Department of Justice bearing a date of November 28,

 2  2017 and addressed to Mr. Mehler.

 3          I'm going to ask the clerk to place that document in

 4  front of you.

 5          Take a look at it and tell me if that is your plea

 6  agreement with the government.

 7          THE DEFENDANT:  It is, your Honor.

 8          THE COURT:  Is that your signature on the last page?

 9          THE DEFENDANT:  It is, your Honor.

10          THE COURT:  Did you read it before you signed it?

11          THE DEFENDANT:  Yes, I have.

12          THE COURT:  Did you discuss it with your lawyer before

13  you signed it?

14          THE DEFENDANT:  Yes, I have.

15          THE COURT:  Did you understand it before you signed

16  it?

17          THE DEFENDANT:  Yes, I did.

18          THE COURT:  Has anyone threatened you or forced you in

19  any way to enter into the plea agreement or to plead guilty?

20          THE DEFENDANT:  No, they have not.

21          THE COURT:  Has anyone given you anything of value or

22  promised you anything in order to get you to enter into the

23  plea agreement or to plead guilty?

24          THE DEFENDANT:  No, they have not.

25          THE COURT:  Does the plea agreement contain all of
```

WF0020201

 1 | your understandings with the government?

 2 |       THE DEFENDANT:  Yes, it does.

 3 |       THE COURT:  I want you to know that any calculation,

 4 | estimate, or prediction that anyone has made to you as to what

 5 | sentence I might give you is not binding on me, not binding on

 6 | the Court, and if it turns out to be wrong you will not be

 7 | permitted to withdraw your guilty plea.

 8 |       Do you understand that?

 9 |       THE DEFENDANT:  Yes, sir.

10 |       THE COURT:  Now, one of the features of your agreement

11 | with the government is that you have agreed to provide the

12 | government with substantial assistance and truthful cooperation

13 | including testifying if asked to do so; is that correct?

14 |       THE DEFENDANT:  That is correct.

15 |       THE COURT:  It's up to the government, not up to me,

16 | to decide whether your cooperation has been substantial enough

17 | for the government to ask that I take account of it in

18 | sentencing.  I cannot second guess that decision.  But if they

19 | do ask me to take account of substantial assistance, it is up

20 | to me, up to the Court to decide whether to grant their

21 | request.  And if I do take account of your substantial

22 | assistance it's up to me to decide how much weight or

23 | consideration to give to it.

24 |       Do you understand all of that?

25 |       THE DEFENDANT:  Yes, your Honor.

WF0020202

1        THE COURT:  If the government declines to make such a

2    motion or request or if they do but I decline to accept their

3    recommendation or grant their motion, you will not be permitted

4    to withdraw your plea of guilty.

5        Do you understand all of that?

6        THE DEFENDANT:  Yes, I do.

7        THE COURT:  Now, I'm going to have the government

8    layout the elements of the six crimes to which you've offered

9    to plead guilty and this is -- this would be in summary what

10   the government would have to prove if the case went to trial as

11   well as the manner in which they would prove it.

12       MR. IMPERATORE:  Yes, your Honor.

13       Count One of the indictment charges the defendant,

14   Keith Wellner, with conspiracy to commit investment advisor

15   fraud and securities fraud, in violation of 18 U.S.C. Section

16   371.

17       The elements of the conspiracy are as follows:

18       First, that two or more persons entered into the

19   unlawful agreement charged in the indictment in Count One; and

20   second, that the defendant knowingly and willfully joined in

21   that agreement; and third, that one of the members of the

22   conspiracy committed at least one of the overt acts charged in

23   the indictment and that the overt act was committed to further

24   some objective of the conspiracy.

25       There are two charged objects of the conspiracy

WF0020203

1  charged in Count One.  The first object is to commit investment

2  advisor fraud in violation of 15 U.S.C. Sections 80b-6 and

3  80b-17.

4       That crime has five elements:

5       First, that the investment advisor named in the

6  indictment, Albert Hallac was, in fact, an investment advisor;

7       Second, that the investment advisor did one of the

8  following:  (a) employed a device, scheme or artifice to

9  defraud an actual or prospective investor advisory client; (b)

10  engaged in a transaction, practice, or course of business which

11  operated as a fraud and deceit upon those investment advisory

12  clients or prospective investment advisory clients; or (c)

13  engaged in an act, practice, and course of business that was

14  fraudulent, deceptive and manipulative;

15       Third, that the investment advisor, again Albert

16  Hallac, devised or participated in such alleged device, scheme

17  or artifice to defraud, or engaged in such alleged transaction,

18  practice, or course of business, knowingly, willfully, and with

19  the intent to defraud;

20       Fourth, that the investment advisor, Albert Hallac,

21  employed such alleged device, scheme, or artifice to defraud or

22  engaged in such alleged transaction, practice or course of

23  business by use of the mails or an instrumentality of

24  interstate commerce; and

25       Fifth, that the defendant aided and abetted the

WF0020204

1   investment adviser willfully and knowingly associated himself

2   in some way with the crime, and by willfully and knowingly

3   seeking by some act to help make the crime succeed.

4          The second element or, excuse me, the second object of

5   the conspiracy charged in Count One is to commit securities

6   fraud in violation of 15 U.S.C. sections 78j(b) and 78ff, and

7   to violate Title 17 of the Code of Federal Regulations Section

8   240.10b-5.  That rule sets forth three elements of securities

9   fraud:

10          First, that in connection with the purchase or sale of

11  stock or shares in a company the defendant did any one or more

12  of the following:

13          A.  employed a device, scheme or artifice to defraud,

14          made an untrue statement of a material fact or omitted

15  to state a material fact which was made -- which made what was

16  said under the circumstances misleading, or

17          Engaged in an act, practice, or course of business

18  that operated or would operate as a fraud or deceit upon a

19  purchaser or seller;

20          Second, that the defendant acted unlawfully,

21  knowingly, willfully and with the intent to defraud; and

22          Third, that the defendant used or caused to be used

23  any means or instruments of transportation or communication in

24  interstate commerce or the use of the mails, or of any facility

25  of any national securities exchange in furtherance of the

WF0020205

1    fraudulent conduct.

2            Counts Four and Five -- excuse me.  Counts Two and

3    Three charge the defendant with aiding and abetting the

4    investment advisor fraud of Albert Hallac, in violation of

5    Sections 80b-6 and 80b-17 of Title 15 of the United States

6    Code, and Section 2 of Title 18 of the United States Code.

7            The elements of investment advisor fraud are the same

8    as I just read with respect to the investment advisor fraud

9    object of the conspiracy charged in Count One.

10           Counts Four and Five of the indictment charge the

11   defendant with securities fraud in violation of sections 78j(b)

12   and 78ff of Title 15 of the U.S. Code.

13           THE COURT:  Is it Title 15?

14           MR. IMPERATORE:  Yes, your Honor, for securities fraud

15   it's Title 15.

16           THE COURT:  All right.  Because in your plea

17   agreement -- okay.  I see.  I misread it.  You're correct.

18   Thank you.

19           MR. IMPERATORE:  And Title 15 of the United States

20   Code and Section 240.10b-5 of Title 17 of the Code of Federal

21   Regulations.  The elements of securities fraud are the same as

22   I just read with respect to the securities fraud object of the

23   conspiracy charged in Count One.

24           Count Six of the indictment charges Keith Wellner, the

25   defendant, with conspiracy to commit wire fraud in violation of

WF0020206

1    Section 1349 of Title 18 of the United States Code.

2            The elements of the conspiracy are:

3            First, that two or more persons entered into an

4    agreement charged in the indictment, here to commit wire fraud;

5    and

6            Second, that the defendant knowingly and willfully

7    became a member of conspiracy.

8            The object of the conspiracy charged in Count Six is

9    wire fraud in violation of Title 18 United States Code Section

10   1343.

11           There are three elements of wire fraud.

12           First, that there was a scheme or artifice to defraud

13   or to obtain money or property by materially false and

14   fraudulent pretenses, representations or promises as alleged in

15   the indictment;

16           Second, that the defendant knowingly participated in

17   the scheme or artifice to defraud with knowledge of its

18   fraudulent nature and with specific intent to defraud; and

19           Third, that in the execution of that scheme the

20   defendant used or caused the use of the interstate wires, in

21   other words, wires between states.

22           So those are the elements of the six charges against

23   the defendant in the indictment.

24           In addition, the government must prove by a

25   preponderance of the evidence that venue is proper in the

WF0020207

1   Southern District of New York as to each count.

2           Your Honor, in terms of the proof against the

3   defendant, the government would prove that the defendant is

4   guilty beyond a reasonable doubt as to each count in the

5   indictment.  The evidence would consist of both documents and

6   witness testimony.  Documents would include, among other

7   things, the defendant's e-mail communications, investment

8   documentation, and bank and brokerage records reflecting the

9   disbursement of investor funds.  Witnesses would include, among

10  others, a cooperating witness, investor victims, law

11  enforcement witnesses, and other percipient witnesses.

12          THE COURT:  Mr. Wellner, please tell me in your own

13  words that leads you to believe that you are guilty of each of

14  these six crimes.

15          THE DEFENDANT:  Good morning, your Honor.

16          From December 2007 until May/June 2012, I was the

17  chief operating officer, general counsel and chief compliance

18  officer of Weston Capital Management, LLC.  Weston Capital

19  Management had a wholly-owned subsidiary, Weston Capital Asset

20  Management, LLC, which was a registered investment advisor.  I

21  served in similar capacities for this registered investment

22  advisor.  Each of these Weston entities had offices in

23  New York, Connecticut and Florida.  Weston managed

24  approximately ten hedge funds for its investors.  My plea today

25  involves three of those hedge funds mainly the partners fund 2

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1  or P2, the Wimbledon financing fund or WFF, and Wimbledon TT or

2  just TT. Because of the complexity of the transactions, I have

3  made some notes that I will be referring to today.

4        In early 2010, WFF entered into a transaction with

5  Gerova Financial Group, in which WFF exchanged all of its

6  assets for stock of Gerova. By early 2011, Gerova was

7  essentially insolvent and the WFF stock became worthless. In

8  the spring of 2011, Albert Hallac and Jeffrey Hallac were

9  approached by David Bergstein with a proposal for WFF to

10 receive some of its former assets back from Gerova in exchange

11 for returning the worthless Gerova stock. In order to

12 accomplish this exchange, Bergstein proposed a complicated

13 transaction where he would arrange for a loan to be taken from

14 a large European bank and secured by the assets received back

15 by WFF and deposited into a newly formed entity. This entity

16 was called Arius Libra. This entity was majority owned by WFF

17 and approximately 34 percent owned by Mr. Bergstein himself.

18 When the loan that Mr. Bergstein promised did not come to

19 fruition within the necessary timeframe, in August 2011,

20 Mr. Bergstein convinced Albert Hallac to have P2 provide a

21 loan. This loan was for the benefit of WFF. I committed a

22 fraud in assisting Mr. Hallac in negotiating and agreeing to

23 have P2 provide the loan to Arius Libra, which was ultimately

24 for the benefit of WFF. While I believed that this loan would

25 be repaid, the existence of the loan was material information

WF0020209

1   that was not disclosed to either investors in P2 or WFF.

2   Mr. Bergstein continued to draw monies under the P2 loan

3   through November 2011 and I assisted and agreed with Mr. Hallac

4   in providing those subsequent monies to Mr. Bergstein.  The

5   failure to disclose this loan was a conflict of interest in

6   that the loan was made by P2, it was secured by the assets of

7   Arius Libra, which were previous WFF assets, without the

8   knowledge of either P2 or WFF investors, thus placing the

9   interests of P2 and WFF investors at odds with each other.

10  Prior to P2 making the loan to Arius Libra and for the benefit

11  of WFF investors, P2 was invested in hedge fund securities and

12  a portion of the monies from the liquidation of these hedge

13  fund securities was used to fund the Arius Libra loan.

14          Additionally, in November 2011 Mr. Bergstein

15  approached Mr. Hallac once again with another transaction,

16  namely entering into a swap agreement with an entity that

17  Mr. Bergstein controlled called Swartz IP Services, Inc.  The

18  Weston controlled fund that was to be the counterparty to the

19  swap agreement was Wimbledon TT.  In connection with entering

20  into that swap agreement, I assisted and agreed with Albert

21  Hallac, who had a fiduciary duty to TT investors, in committing

22  a fraud on TT investors by helping to negotiate and approve the

23  TT portfolio entering into an undisclosed swap transaction with

24  Mr. Bergstein's entity, Swartz IP Services.  The existence of

25  this swap transaction was material information, should have

WF0020210

1   been disclosed, and created a conflict of interest through the

2   ultimate use of the funds and additionally caused TT fund

3   assets to be invested into an entity whose credit risk was

4   substantially inferior to its prior investments.  The money

5   used to fund the swap was liquidated from certain hedge fund

6   securities by Mr. Hallac.

7          All of the conduct described above involved the

8   exchange of e-mails between people located in multiple states,

9   including at least New York, Florida, and California.  At least

10  some of the conduct described above occurred while I was in

11  Manhattan, New York City.

12         For all the conduct described above, I was aware that

13  the conduct was wrong at the time I was doing it and the funds

14  involved were used in a manner that was outside the stated

15  mandate in the offering memoranda.  In each case, I neither

16  disclosed the material information to the relevant investors

17  nor did I contact the fund's outside counsel and advise them of

18  such information.

19         THE COURT:  Thank you.

20         Does the government agree there's a sufficient factual

21  predicate for a plea of guilty to Counts One through Six?

22         MR. IMPERATORE:  Yes, your Honor.

23         And I'd like to just give a brief proffer on the

24  securities at issue.

25         THE COURT:  Yes.

WF0020211

```
1          MR. IMPERATORE:  As to Count Four, the predicate
2   securities are, first, the note between Weston Capital Partners
3   Master Fund II and Arius Libra, Inc.; and, second, Weston's
4   interest in the Sagil Latin America Opportunities Fund, which
5   was redeemed on or about June 30, 2011.
6          As to Count Five, the predicate securities are:
7   First, the Swartz IP Services group, Inc. Note Purchase
8   Agreement, and any notes issued in accordance with it; and
9   second, Weston's notional interest in the Tewksbury hedge fund
10  and all agreements between Weston and Societe Generale entities
11  executed in furtherance of Weston's interest.
12         THE COURT:  All right.
13         Mr. Mehler, any basis to challenge the government's
14  proffer?
15         MR. MEHLER:  None, Your Honor.
16         THE COURT:  All right.
17         MR. MEHLER:  I believe the allocution is sufficient.
18         THE COURT:  All right.  Are you aware, Mr. Mehler, of
19  any defense that would likely prevail at trial or any reason
20  why your client should not be permitted to plead guilty?
21         MR. MEHLER:  I am not aware of any reason or
22  impediment.
23         THE COURT:  All right.
24         Mr. Wellner, do you have any questions for me?
25         THE DEFENDANT:  No, your Honor.
```

WF0020212

 1          THE COURT:  All right.  With regard to Count One of
 2   the indictment, how do you plead, guilty or not guilty?
 3          THE DEFENDANT:  Guilty.
 4          THE COURT:  With regard to Count Two of the
 5   indictment, how do you plead, guilty or not guilty?
 6          THE DEFENDANT:  Guilty.
 7          THE COURT:  With regard to Count Three of the
 8   indictment, how do you plead, guilty or not guilty?
 9          THE DEFENDANT:  Guilty.
10          THE COURT:  With regard to Count Four of the
11   indictment, how do you plead, guilty or not guilty?
12          THE DEFENDANT:  Guilty.
13          THE COURT:  With regard to Count Five of the
14   indictment, how do you plead, guilty or not guilty?
15          THE DEFENDANT:  Guilty.
16          THE COURT:  With regard to Count Six of the
17   indictment, how do you plead, guilty or not guilty?
18          THE DEFENDANT:  Guilty.
19          THE COURT:  With regard to paragraphs 52 and 53 of the
20   indictment containing the forfeiture allegations, do you admit
21   those allegations or do you deny those allegations?
22          THE DEFENDANT:  I admit them, your Honor.
23          THE COURT:  Based upon your responses to my questions
24   and my observations of your demeanor, I find that you know your
25   rights, you know the consequences of pleading guilty and there

WF0020213

```
 1    is a factual basis for your plea of guilty.  Your plea of
 2    guilty and your admission to the forfeiture allegations are
 3    accepted.  Further, I find that your plea agreement was
 4    knowingly and voluntarily entered into.
 5          Now, I'm not going to order a presentence
 6    investigation report at this juncture.  I will set a control
 7    date for sentencing but that may be and probably will be
 8    adjusted.
 9          Eventually there will be a presentence investigation
10    and it's important that you be candid, truthful and honest with
11    the people who prepare the presentence report.  Tell them the
12    good things and the not-so-good things because the report will
13    be important in my decision on sentencing.  Before the day of
14    sentencing, you'll have an opportunity to review that report.
15    Go through it carefully.  If there are mistakes, point them out
16    to your lawyer so that he can point them out to me.
17          Let me give you a control date for sentencing.  Any
18    thoughts from the government on the when?
19          MR. IMPERATORE:  Subject to the Court's views we might
20    propose six months.
21          THE COURT:  I'm going to set a control date for
22    sentencing and it will be May 30 at 10 a.m.
23          Anything further from the government?
24          MR. IMPERATORE:  No, your Honor.
25          THE COURT:  Anything further from the defendant?
```

WF0020214

HCI9WELP

1          MR. MEHLER:  No, your Honor.

2          THE COURT:  All right.  Thank you all very much.

3          (Adjourned)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

WF0020215