# EXHIBIT D

**From:** Frymi Biedak <frymi@grayboxllc.com>
**Sent:** Thursday, November 10, 2011 4:56 PM
**To:** sean.edrington@db.com; Alisa Liley
**Cc:** davidbergstein@abcxyz.cc
**Subject:** Swartz IP Services Group, Inc.  -  New Account with Deutsche Bank
**Attachments:** 4370_001.pdf; 4371_001.pdf

**Importance:** High

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

**Categories:** db

Dear Sean and Alisa,

As previsouly discussed, please find attached the following documents pertaining info regarding the account we would request to be opened with Deutsche Bank:

Completed new Account Form
Completed and signed Corporate Account Authorization
Completed and signed Account Agreement

In addition:

Certificate of Filing
Certificate of Formation
Certificateof Secretary
Federal ID Number
Certificate of Good Standing with the State of Texas
David Bergstein's Passport and Drivers License

The original documents will be delivered to this afternoon.

Time is of the essence, please make sure that we receive the account number by the end of the day.

Please let me know if you need anything further.

Thank you so much for all your professional courtesy and assistance.

Best

Frymi Biedak
Assistant to David Bergstein

---

**From:** Alisa Liley [alisa.liley@db.com]
**Sent:** Wednesday, November 09, 2011 11:29 AM
**To:** Frymi Biedak
**Cc:** sean.edrington@db.com
**Subject:** Re: New Account with Deutsche Bank - BERGSTEIN

1



Classification: Public

Hi Frymi,

It has been a while. I hope that you are doing well.

<u>Here is the new account paperwork for a corporation:</u>


<u>Please complete the attached forms, fax them to: **213.814.1770**, and mail/send the originals to me at:</u>
Deutsche Bank Alex.Brown
Attn: Alisa Singhasri Liley
2000 Avenue of the Stars
Suite 910-N
Los Angeles, CA  90067

**Please include a legible copy of the authorized parties' driver's license/identification and any additional corporate documents, such as articles of incorporation, certificate of good standing, etc. with the above forms. Based on the information provided, we may require additional documentation or information.**

<u>Additional Corporate Docs</u>

- Articles of Incorporation
- DB Corporate Authorization
- Operating Agreement or LLC Agreement (including proof of ownership)
- Board Resolution or list of authorized signers which can confirm names and powers of the authorized officers
- Share Registry (list of shareholders)
- Valid Photo ID - Authorized Officers
- Certificate of Good Standing or State website printout confirming the status of the entity (< 1 year)
- Certificate of Good Standing or IRS website printout confirming the registration of the entity with IRS (< 1 year)
- Client details for all beneficial owners that own 25% or more must be listed on participant screen


Regards,

Alisa





**Alisa Singhasri Liley**
Sales Associate

Deutsche Bank Alex. Brown I A Division of Deutsche Bank Securities Inc.
2000 Avenue of the Stars I Suite 910-N I Los Angeles I CA I 90067
Tel. P: 310.788.6231 I T: 800.877.2539 I F: 213.814.1770 I E: alisa.liley@db.com

"This e-mail may contain confidential and/or privileged information, If you are not the intended recipient (or have received this e-mail in error), please notify the sender immediately and delete the e-mail from your computer. Any unauthorized copying, disclosure or distribution of the material in this e-mail is prohibited. Deutsche Bank Alex. Brown does not accept orders and/or instructions regarding your account by e-mail. Any orders or transactional requests sent by e-mail will not be processed until Deutsche Bank Alex. Brown can confirm your instructions or obtain appropriate written documentation, where necessary. Deutsche Bank Alex. Brown does not render legal or tax advice, and information contained in this e-mail should not be regarded as such."

*Passion to Perform.*

**Frymi Biedak <frymi@grayboxllc.com>**
11/08/2011 03:47 PM

To Alisa Liley/db/dbcom@DBAmericas

cc

Subject New Account with Deutsche Bank

Dear Alisa,

It's been a while.  We need to open a new corporate account with Deutsche Bank.  Please call me at your earliest convenience so that we can start with the process.

In the meantime, if you could provide me with a list of items necessary to open the account, I would appreciate it.

I hope all is well.  Say hi to Sean E.

Best

Frymi

P.S.  My direct line is (310) 828-1515 or your can reach me on my cell at (323) 336-1827

---
This communication may contain confidential and/or privileged information. If you are not the intended recipient (or have received this communication in error) please notify the sender immediately and destroy this communication. Any unauthorized copying, disclosure or distribution of the material in this communication is strictly forbidden.

Deutsche Bank does not render legal or tax advice, and the information contained in this communication should not be regarded as such.

# NEW ACCOUNT FORM – Corporate & Other Organized Entities

Before collecting the information required to open an account, please ensure that the Customer Identification Program Notice is provided.

**Deutsche Bank Alex.Brown**
A Division of Deutsche Bank Securities Inc.



Firm policy requires that this form must be completed and approved before any account activity. See Instructions for information concerning the completion of this form.

☑ **New**
☐ **Update**

**Account Number** [ ]

CA Number [ ]   SSC (S, T or N) [ ]   SS/TIN Number [ ███ **6794**]   Short Name [ ]
If applied for, obtain copy of application. For DVP, use Institution's TIN

Product Code A [ ]   Product Code B [ ]

**Account Type:** ☑ Retail   ☐ Retirement   ☐ COD

**Account Registration** [ ]

---

### Customer Identification Program (CIP) Notice.

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. This means that when you open an account, we will ask for your name, address, date of birth, tax identification number and other information that will allow us to identify you. We may also utilize a third-party information provider for verification purposes and/or ask to see your driver's license, passport or other identifying documents (e.g., Articles of Incorporation, Trust Agreement, etc.).

---

**CIP Notice:**   ☑ Verbal   ☐ Branch Notice   ☐ Fax   ☐ E-mail   ☐ Letter

---

Account Title **Swartz IP Services Group Inc.**

Account Title _____

Mailing Address **2425 Colorado Avenue, Suite 205** _____ Manager's Initials if P.O. Box _____

Mailing Address _____

Mailing Address _____

City **Santa Monica**   State/Province **CA**   Zip/Postal Code **90404**

Country **USA**

Contact Telephone Number: (Day) **(310) 828-1515**   (Evening) **(213) 618-3036 or (323) 336-1827**

---

**Legal Address must be completed if P.O. Box is provided above**

Legal Address (☑ Check if same as mailing address) _____

Legal Address _____

Legal Address _____

City _____ State/Province _____ Zip/Postal Code _____

Country _____ How long at legal address (years) _____

---

### USA PATRIOT Act Information

Does Account require New Client Adoption Approval?   ☐ Yes  ☑ No   Initial Source of Funds [ ]

Is Account Exempt from USA PATRIOT Act CIP?   ☐ Yes  ☑ No   CIP Exempt Code [ ]

Private Banking Account* ☑ Yes  ☐ No   Is Client a Foreign Bank* ☐ Yes  ☑ No   Method of Validation **RDCR**

Client's Anticipated Financial Activities (Check all that apply)  ☑ 3rd Party Wire Transfers  ☑ Checking  ☐ Debit/ATM card  ☐ None

---

Is any owner (or a person with a beneficial interest in the account) either (1) a senior military, governmental, or political official of any country, or (2) closely associated with or an immediate family member of such an official?   ☐ Yes (PEP*)  ☑ No
If Yes, please identify the name of the official, office held, country, and relationship to account owner.

Name _____ Title _____

Country _____ Relationship _____

*Additional documentation may be required to open these account types.

Account Number _____

**Investment Objective(s) for this Account** (Check all that apply)

☑ **Aggressive Growth** – Seeks greater-than-average potential gains or rapid growth of capital through securities and investment techniques involving speculation and substantial risk. This strategy may also seek short-term capital gains by engaging in short-term trading, including day trading, involving substantial risk and generally higher transaction costs.

❑ **Growth** – Seeks capital appreciation by investing in equity securities of various sized companies. This strategy may involve fluctuations in market values that are greater than the general stock market indexes.

❑ **Income** – Seeks income by investing in vehicles such as, but not limited to, bonds as well as dividend-yielding equity securities such as REITs, utilities, or preferred stocks. This strategy may involve risks associated with interest rate fluctuation, issuers' credit quality and fluctuations in the price of securities.

❑ **Capital Preservation** – Seeks return of capital and modest current income by investing in short-term fixed income securities, money markets and other securities with little risk to principal and modest yields.

Are any of the following employed by Deutsche Bank, its subsidiaries or affiliates?   ☑ No   ❑ Yes (Check all that apply)

❑ Any account owner                                                      ❑ Any immediate family member of the account owner
❑ Any member of the same household as the account owner                  ❑ Any person materially supported by the account owner
❑ Any person who materially supports the account owner

If Yes, provide name of employee, relationship to account owner and name of Deutsche Bank employer. _____

_____

Are any of the following employed by a member firm or registered broker-dealer?   ☑ No   ❑ Yes (Check all that apply)

❑ Any account owner                                                      ❑ Any immediate family member of the account owner
❑ Any member of the same household as the account owner                  ❑ Any person materially supported by the account owner
❑ Any person who materially supports the account owner

If Yes, 407 Letter is required to open or maintain account. Attach copy of Letter to Form. Provide name of employee, relationship to account owner and name of employer. _____

_____

Are any of the following employed by the NASD or any other self-regulatory organization?   ☑ No   ❑ Yes (Check all that apply)

❑ Any account owner                                                      ❑ Any immediate family member of the account owner
❑ Any member of the same household as the account owner                  ❑ Any person materially supported by the account owner
❑ Any person who materially supports the account owner

If Yes, provide name of employee, relationship to account owner and name of employer. _____

Is any owner now, or has any owner ever been, a senior corporate officer or director, or does any owner own 10% or more of any publicly-traded company's stock?   ❑ Yes   ☑ No   If Yes, provide name of company. _____

| Bank Name/Years with Institution | Phone Number | Address (City, State) |
|---|---|---|
| | | |
| Accountant/Attorney Name | Phone Number | Address |
| | | |

| Other Deutsche Bank Alex. Brown Accounts ❑ Yes  ❑ No | Other Brokerage Accounts ❑ Yes  ❑ No |
|---|---|
| If Yes, provide account number(s). | If Yes, provide name of Firm. |

Will anyone else be entering orders*?   ❑ Yes   ☑ No
If Yes, please list name(s).

_____

\* Additional documentation is Required

Account Number [                    ]

## Corporate and Other Organized Entities

### Entity Information

How long entity known (years)? _____   Number of Authorized Parties* __1__      **Account Registration** [                ]

* An Authorized Party Details Page must be completed for each completed for each Authorized Party.

### Entity Type*

- ☑ Corporate/Commercial Operating Company
- ☐ Noncorporate/Nonoperating*
  - ☐ Personal Investment/Holding Company
  - ☐ Limited Liability Company (LLC)
  - ☐ Delaware LLC
- ☐ Charitable/Non-profit Organization

- ☐ Investment Advisor (Client Disclosed) (See Instructions)
- ☐ Corporate Pension/Profit Sharing Plan
- ☐ Private Equity Fund*
- ☐ Hedge Fund*
- ☐ Venture Capital Fund*

- ☐ Investment Advisor (Client Not Disclosed) (See Instructions)
- ☐ Financial Organization
- ☐ Government Entity/Agency
- ☐ Sole Proprietor
- ☐ Other_____

Is Entity publicly-traded on any Exchange or Electronic Bulletin Board?   ☐ Yes   ☐ No

* Additional documentation may be required to open these account types.

---

Country of Incorporation/Organization __USA__      State/Province of Incorporation or Organization __Texas__

Social Security or Tax ID Number ▓▓▓6794      Corporate or Business ID# __801350138__

Tax Status:  ☐ 0 - 15%   ☐ 15.1% - 32%   ☐ 32.1% - 50%   ☐ 50%+      Method of Validation __RDCR__

Date of formation or incorporation (date formal business ID# issued)  [12/02/2010]

Primary Business Activity  __Consulting__

Principal Place of Business Address (Same as ☑ Mailing or ☐ Legal address) _____

Address _____

City _____ State/Province _____ Zip _____

Country _____

### CIP Documentation (Check all that apply)

- ☑ Registered/Certified Articles of Incorporation
- ☐ Government Issued Business License
- ☐ Form ADV (RIA)

- ☐ Offering Memorandum
- ☐ Government/State Issued Certificate of Good Standing
- ☑ Operating Agreement

- ☐ Foundation Papers
- ☐ DBA Filing
- ☐ Subscription Agreement

---

| Entity's Annual Income | | Entity's Net Worth (Excluding Principal Residence) | |
|---|---|---|---|
| ☐ Less than $100,000 | ☐ $500,000 - $1,000,000 | ☐ Less than $100,000 | ☐ $1,000,000 - $3,000,000 |
| ☐ $100,000 - $250,000 | ☑ $1,000,000 - $5,000,000 | ☐ $100,000 - $250,000 | ☐ $3,000,000 - $5,000,000 |
| ☐ $250,000 - $500,000 | ☐ $5,000,000 or more | ☐ $250,000 - $500,000 | ☑ $5,000,000 or more |
| | | ☐ $500,000 - $1,000,000 | |

Approximate % of net worth that is investable assets (Stocks, Bonds, etc.)?  __80%__

### Entity's Source of Wealth (Check all that apply)

- ☐ Inheritance/Gifts
- ☐ Sale of Securities
- ☐ Individual Earnings
- ☐ Other (specify)

- ☑ Corporate Earnings
- ☐ Sale of Business
- ☐ Corporate Executive

- ☐ Public/Gov't. Official
- ☐ Sale of Real Estate
- ☐ Professional Earnings

- ☐ Business Owner
- ☐ Sale of Other Assets
- ☐ Lottery/Gaming

---

Business Phone: __(310) 828-1515__      ☐ International   Fax: _____   ☐ International

E-Mail Address: _____

Account Number [_____]

# Corporate & Other Organized Entities
Authorized Party Details

## Authorized Party's Information

Has CA met this individual in person?  ☑ Yes  ☐ No    How long known (years)? **5**    **Participant Code** [_____]

Name ☑ Mr. ☐ Mrs. ☐ Ms. ☐ Dr.  **David Bergstein** _____ Last

Legal Address (☑ Check if same as Page 1) ███████████████████

Legal Address _____

City ████████ _____ State/Province **CA** _____ Zip ████

Country **USA** _____ How long at legal address (years)? **15+**

Country of Citizenship **USA** _____ Country of Residency **USA**

If authorized party is not a U.S. citizen, indicate status:  ☐ Resident Alien  ☐ Non-Resident Alien

Social Security or Tax ID Number* ████████    Date of Birth* ████████

Method of Validation **RDCR**

Employment Status:  ☐ Employed  ☑ Self-employed  ☐ Retired  ☐ Unemployed  ☐ Homemaker  ☐ Student

Occupation and Position **Executive / Financier**

Nature of Business **Consulting and Investments** _____ Is Employer a Broker-Dealer?  ☐ Yes  ☑ No

Employer Name _____

Employer's Address _____

Employer's Address _____

City _____ State/Province _____ Zip _____

Country _____ How long employed with this employer (years)? _____

\* Not required for authorized parties of U.S. publicly-traded corporations, U.S. regulated financial institutions or U.S. operating companies with annual net income of $5,000,000 or more.

## CIP Documentation (Check all that apply) Unexpired Photo Government Identification must be provided for all resident and non-resident aliens

ID Type:  ☑ Driver's License  ☑ Passport  ☐ Alien Registration Card  ☐ Other Government ID (specify) _____

ID Number ████████    Issue Date _____    Expiration Date ████████

Country of Issue **USA** _____ State/Province of Issue **California**

### Authorized Party's Investment Experience (Years)

| Investment Type | How Long Traded? | Investment Type | How Long Traded? | Investment Type | How Long Traded? | Investment Type | How Long Traded? |
|---|---|---|---|---|---|---|---|
| Stocks | 30 | Mutual Funds | 30 | Commodities | 30 | Hedge Funds | 5 |
| Bonds | 30 | Options | 30 | Real Estate | 30 | Private Equities | 30 |

Home Phone: _____  ☐ International    Cell Phone: **(213) 618-3036** _____  ☐ International

Business Phone: **(310) 828-1515**  ☐ International    Fax: **(310) 286-7260** _____  ☐ International

E-Mail Address: **davidbergstein@abcxyz.cc**

Account Number |_____|

## COD/DVP Details

**COD Customer Identification Program (CIP) Exemption**

**If COD account is exempt use CIP Exempt Code "RBNK."**

**If COD account is not exempt obtain the information applicable to the account type (e.g., individual, joint, trust, etc.).**

COD Accounts are exempt from CIP even if some information about the beneficial owner has been obtained, if **ALL FIVE** of the following conditions are met:

(1) The omnibus account or relationship is established by or on behalf of a financial intermediary (this includes registered investment advisors/money managers(s)) for the purpose of executing transactions that will clear and/or settle at another financial institution or, the omnibus account holder provides limited information solely for the purpose of delivering assets to the custody account of the beneficial owner at another financial institution .................................... ❏ Yes   ❏ No

(2) The limited information about the beneficial owner is used primarily to assist the financial intermediary with recordkeeping or to establish sub-accounts that hold positions for a limited duration to facilitate the transfer of assets to another financial institution.......................................................................................... ❏ Yes   ❏ No

(3) All transactions in the omnibus account or sub-accounts are initiated by the financial intermediary........................... ❏ Yes   ❏ No

(4) The beneficial owner has no direct control over the omnibus account or sub-accounts established by the financial intermediary on its behalf.............................................................................................................. ❏ Yes   ❏ No

(5) When the omnibus account or sub-accounts are established, the broker-dealer considers the prime broker, the custodian bank or the financial intermediary as the initial recourse counterparty for unsettled or otherwise failed transactions .................................................................................................................. ❏ Yes   ❏ No

**DTC Confirmation & Delivery Instructions**

DTC Number: _____   Institutional ID Number: _____

Agent Internal Account Number: _____   Alert Access Code: _____

Agent Bank Name: _____   Alert Acronym: _____

Agent Bank Number: _____   ABA Routing Number: _____

1st DTC ID Interested Party Number: _____

1st DTC ID Interested Party Internal Account Number: _____

2nd DTC ID Interested Party Number: _____

2nd DTC ID Interested Party Internal Account Number: _____

Additional Institutional Delivery Instructions: _____

_____

_____

**Additional Account Information** (If applicable)

**Account Contact**

Name: __**Frymi Biedak, Assistant to David Bergstein**_____

Business Address: __**2425 Colorado Avenue, Suite 205, Santa Monica, CA 90404**_____

Phone: __**310-828-1515 (office)  /  323-336-1827 (cell)**____   Fax: __**310-286-7260**____

E-mail: __**frymi@grayboxllc.com**_____

**Account Portfolio Manager**

Name: _____

Business Address: _____

Phone: _____   Fax: _____

E-mail: _____

**Account Trader**

Name: _____

Phone: _____   Fax: _____

**Account Back Office Contact**

Name: _____

Phone: _____   Fax: _____

Account Number

| **Proceeds** | ☑ Hold | ☐ Send | **Transfers** | ☑ Hold | ☐ Send | **Dividends** | ☐ Send | ☑ Credit |

**Money Funds Sweep**

**U.S. Retail**
☑ DBDA - Insured Deposit
☐ DTFS - Tax Free
☐ ITPV - Treasury
☐ Other _____

**Non U.S. Retail**
☐ GLMD - Global Managed Dollar

**Managed Select IRA/Retirement**
☐ STI - Short-term Income
☐ STG - Short-term U.S. Gov't

**Corp. Cash-Institutional**
☐ DCRI - DB Cash Reserve
☐ STEI - Scudder Tax Exempt

**Initial Transaction**
☐ Buy _____
☑ Deposit Funds
☐ Sell _____
☐ Deposit Securities
☐ Transfer _____
☐ Other _____

**How Was Account Acquired?**
☑ Existing Relationship
☐ Prior Business Relationship
☐ Personal Acquaintance
☐ Other (specify) _____
☐ Referral from Existing Client
☐ Referral from Affiliate
☐ Referral from 3rd Party
☐ Advertising
☐ Direct Mail
☐ CBDG/CESG # _____
☐ Cold Call
☐ Walk/Phone In

Is account a Middle Market Institutional Account?  ☐ Yes  ☑ No
If Yes, is account covered by a Sales Trader?  ☐ Yes – Enter Product Code for Sales Trader**  ☐ No – Enter Product Code 47
** Refer to Product Code Guide for information specific code.

Is account a Client Select Account?  ☑ Yes, Enter Product Code 30  ☐ No
If Yes, signed Client Select Account Certification obtained and attached?  ☐ Yes  ☐ No
If Yes, Account Catalog Disclosure Document provided?  ☐ Yes  ☐ No

**Interested Party Information**

**Interested Party 1** (check all that apply)  ☐ Confirmations  ☐ Statements  ☐ Proxies
Name: _____
Address: _____
Address: _____
Phone: _____  Fax: _____  E-mail: _____
Internal Account Number: _____  DTC#: _____

**Interested Party 2** (check all that apply)  ☐ Confirmations  ☐ Statements
Name: _____
Address: _____
Address: _____
Phone: _____  Fax: _____  E-mail: _____
Internal Account Number: _____  DTC#: _____

**Interested Party 3** (check all that apply)  ☐ Confirmations  ☐ Statements
Name: _____
Address: _____
Address: _____
Phone: _____  Fax: _____  E-mail: _____
Internal Account Number: _____  DTC#: _____

**Approval**

Is CA registered in the state(s) in which all owners reside?  ☐ Yes  ☐ No
Is CA registered in state where the portfolio manager is located?  ☐ Yes  ☐ No  ☐ N/A

| Client Advisor Signature | Date | Person Approving Account Signature | Date |
|---|---|---|---|
| | | | |

Private Wealth Management
Deutsche Bank Alex. Brown

## Corporate Account Authorization and Terms and Conditions
### Officer's Certificate

Account Number: _____

I, **David Bergstein** _____, the duly elected and acting **President** _____

of **Swartz IP Services Group Inc.** _____ (the "Corporation") hereby certify that:

(1)    The following resolutions were adopted by unanimous consent of the Board of Directors of the Corporation on the **10th** _____ day

of **November** _____ **2011** _____ :

RESOLVED, that any persons designated by the **President** _____ of the Corporation are authorized on behalf of the Corporation to:

(A)   Open and maintain one or more brokerage account(s) for and in the name of the Corporation at Deutsche Bank Securities Inc. (referred to herein as "Deutsche Bank Alex. Brown") (including any successor thereof);

(B)   Deposit, deliver, assign, withdraw and transfer funds, instruments and securities of any type;

(C)   Sell any securities owned by the Corporation;

(D)   Buy any securities in a cash account;

(E)   Buy, sell, sell securities short (including put and call options) in a margin account; and    **(CHECK IF (E) IS INAPPLICABLE)** ☐

(F)   Execute all documents, and exercise and direct the exercise of all duties, rights, and powers, and take all actions necessary or appropriate to perform the powers enumerated above.

FURTHER RESOLVED, that the **President** _____ of the Corporation shall certify in writing any changes in the powers, office or identity of those persons authorized to perform the powers enumerated above. Deutsche Bank Alex. Brown may rely upon any such certificate of authority furnished by the Corporation until written certification of any change in authority shall have been received by Deutsche Bank Alex. Brown. Any past action in accordance with this resolution is hereby ratified and confirmed. The powers enumerated above pertain to securities of any type now or hereafter held by the Corporation in its own right or in any fiduciary capacity. Powers previously certified by the Corporation shall not be affected by the dispatch or receipt of any other form of notice nor any change in the position with the Corporation held by any person so empowered. Any officer of the Corporation is hereby authorized to certify these resolutions to whom it may concern.

(2)    Each of the following are authorized to perform the powers enumerated in the foregoing resolutions and by signing his or her name in this section 2 agrees on behalf of the Corporation to the Terms and Conditions attached hereto:
(List name and corporate position)

| | | | |
|---|---|---|---|
| **David Bergstein** | **President** | | |
| Name | Position | Name | Position |
| | | | |
| Signature | | Signature | |
| | | | |
| Name | Position | Name | Position |
| | | | |
| Signature | | Signature | |

Deutsche Bank Alex. Brown is the Private Client Services Division of Deutsche Bank Securities Inc.



9-PWM-0186 Corp Acct Auth & T&C (3/10) ATLAS


CORP

(3)   The Corporation is duly organized and existing under the laws of the State of **Texas** _____ and has the powers to take the actions authorized by the resolutions certified herein.

(4)   No action has been taken to rescind or amend said resolutions, and they are now in full force and effect.

(5)   No one other than the Corporation shall have any interest in any account opened and maintained in the name of the Corporation.

(6)   **THE TERMS AND CONDITIONS ON THE NEXT TWO PAGES CONTAIN A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 11.**

IN WITNESS WHEREOF, I have hereunto affixed my hand and the seal of the Corporation this **10th** day of **November**, **2011**.

SEAL

_____
Signature of Certifying Officer

**David Bergstein**
Name of Certifying Officer

**President**
Corporate Title of Certifying Officer

**Please note: A second certifying officer must sign if the first certifying officer is one of the persons listed in section 2.**

_____
Signature of Second Certifying Officer

**David Bergstein**
Name of Second Certifying Officer

**Secretary**
Corporate Title of Second Certifying Officer

**IF THE CLIENT IS INCORPORATED OUTSIDE THE UNITED STATES, THE CLIENT MUST COMPLETE AND RETURN A FORM W-8 ALONG WITH THIS OFFICER'S CERTIFICATE.**

09-PWM-0186 Corp Acct Auth & T&C (3/10)

# Terms and Conditions Corporate Accounts

Deutsche Bank Securities Inc., acting through its Deutsche Bank Alex. Brown division (referred to herein as "DBAB"), accepts the Account of the client described in the attached certificate (the "Client"). The term "DBAB" includes its affiliates, officers, directors, agents and employees. Client understands that Pershing LLC is the carrier of the Account as clearing broker pursuant to a clearing agreement with DBAB.

Deutsche Bank Securities Inc. is a subsidiary of Deutsche Bank AG. As used herein, the term "affiliate of Deutsche Bank" or "Deutsche Bank affiliates" means Deutsche Bank AG and its subsidiaries and affiliates. Each of Deutsche Bank AG and its affiliates is a separately incorporated legal entity, none of which is responsible for the obligations of the others. "Securities and Other Property" shall include, but shall not be limited to, money and securities, financial instruments, commodities of every kind and nature, and all contracts and options relating to any thereof, owned by the Client or in which the Client has an interest. These terms and conditions shall be construed in accordance with the laws of the State of New York and the United States, as amended.

**By opening the Account, Client agrees to the following terms and conditions:**

1. **Confirmations, and Transmission of Instructions**
   Client agrees to notify DBAB in writing, within ten (10) days of sending Client a confirmation, of any objection Client has to any transaction in its Account. In the absence of such written notification, Client agrees that all transactions for its Account will be final and binding on it. Client understands that it is responsible for transmission of instructions to DBAB and that Client bears the risk of loss arising from the method of transmission that Client uses in the event of transmission errors, misunderstandings, impersonations, transmission by unauthorized persons or forgery. Client agrees to release and indemnify DBAB from any and all liability arising from the execution of transactions based on such instructions except if DBAB's gross negligence caused the transmission error.

2. **Cash Account**
   With respect to the Account: (i) Client will make full cash payment on or before settlement date for each security purchased, unless funds sufficient therefor are already held in the Account; (ii) Client does not contemplate selling any security before it is paid for as provided in the preceding clause; (iii) Client will own each security sold at the time of sale and, unless such security is already held in the account, will promptly deliver such security thereto on or before settlement date; and (iv) Client will promptly make full cash payment of any amount that may become due in order to meet necessary requests for additional deposits or, with respect to any unissued security purchased or sold, to mark to the market.

3. **Short and Long Orders; Deliveries and Settlements**
   Client agrees that, in giving orders to sell, all "short" sales will be designated by it as "short" and all other sales will be designated by DBAB as "long." Client also agrees that DBAB may, at its discretion, immediately cover any short sales in the Account, without prior notice. In case of non-delivery of a security, DBAB is authorized to purchase the security to cover Client's position and charge any loss, commissions and fees to the Account. Client agrees that if DBAB fails to receive payment for securities Client has purchased, DBAB may, without prior demand or notice, sell those securities or other property held by DBAB in the Account and any loss resulting therefrom will be charged to the Account. Client authorizes DBAB, at its discretion, to request and obtain extension(s) of Client's time to make payment for securities Client purchased, as provided for by Federal Reserve Bank Regulation T.

4. **Liens**
   Client hereby grants to DBAB and all affiliates of Deutsche Bank AG a security interest in all Securities and Other Property in its possession or in the possession of any affiliates of Deutsche Bank in which the Client has an interest in order to secure any and all indebtedness or any other of its obligations to DBAB or any affiliate of Deutsche Bank. All such Securities and Other Property shall be held as security for the payment of any such obligations or indebtedness in any account with DBAB in which Client has an interest, and DBAB may, in its discretion, at any time and without prior notice, sell and/or transfer any or all Securities and Other Property in order to satisfy such obligations. In enforcing this lien, DBAB shall have the discretion to determine which Securities and Other Property are to be sold and/or which contracts are to be closed.

5. **Authority to Borrow**
   In case of the sale of any security or other property by DBAB at Client's direction and DBAB's inability to timely deliver the same to the purchaser by reason of Client's failure to supply DBAB therewith, Client authorizes DBAB to purchase or borrow any security or other property necessary to make the required delivery, and Client agrees to be responsible for any loss or cost, including interest, which DBAB sustains as a result of Client's failure to make delivery to DBAB.

6. **Interest Charges**
   Client acknowledges that debit balances in the Account, including, but not limited to, those arising from its failure to make payment by settlement date for securities purchased, will be charged interest at the then current rate, in accordance with DBAB's usual custom. Interest will be computed on the net daily debit balance, which is computed by combining all debit balances and credit balances in each account with the exception of credit balances associated with short security positions.

7. **Credit Information and Investigation**
   Client authorizes DBAB to obtain reports concerning its credit standing and business conduct at DBAB's discretion. Client also authorizes DBAB and any affiliate of Deutsche Bank, including, without limitation, Deutsche Bank AG, to share among such affiliates such information and any other confidential information DBAB and such affiliates may have about Client and the Account.

8. **Satisfaction of Indebtedness**
   Client agrees to satisfy, upon demand, any indebtedness, including any interest and commission charges. Client further agrees to pay the reasonable costs and expenses of collection of any amount it owes DBAB, including reasonable attorney's fees and court costs. Client agrees that DBAB and its clearing broker have the right to collect any debit balance or other obligations owing in Client's Account, and that such rights may be assigned to each other.

9-PWM-0186 Corp Acct Auth & T&C (3/10)

9. **Loan or Pledge of Securities and Other Property**

   Within the limitations imposed by applicable law, all Securities and Other Property now or hereafter held, carried, or maintained by DBAB in its possession that have not been fully paid for, may be lent, either to DBAB or to others, pledged, and repledged by DBAB, without notice to Client. Client understands that while securities held for its Account are loaned out, Client will lose voting rights attendant to such securities.

10. **Aggregation of Orders and Average Prices**

    Client authorizes DBAB, at its discretion, to aggregate orders for the Account with other customer orders. Client recognizes that in so doing, it may receive an average price for its orders that may be different from the price(s) it might have received had its orders not been aggregated. Client understands that this practice may also result in its orders being only partially completed.

11. **Arbitration**

    ■ This section of the Agreement contains the predispute arbitration agreement between us. By signing this Agreement, we agree as follows:
    (i) All parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed;
    (ii) Arbitration awards are generally final and binding. A party's ability to have a court reverse or modify an arbitration award is very limited;
    (iii) The ability of the parties to obtain documents, witness statements and other discovery is generally limited in arbitration as compared to court proceedings;
    (iv) The arbitrators do not have to explain the reason(s) for their award;
    (v) The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry;
    (vi) The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court; and
    (vii) The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this Agreement.

    ■ Client agrees to arbitrate with DBAB any controversies which may arise, whether or not based on events occurring prior to the date of this agreement, including any controversy arising out of or relating to any account with DBAB, to the construction, performance or breach of any agreement, or any duty arising from any agreement or other relationship with DBAB, or to transactions with or through DBAB, only before the Financial Industry Regulatory Authority, Inc., or any exchange of which DBAB is a member, at Client's election. Client agrees that Client shall make Client's election by registered mail to Deutsche Bank Alex. Brown, Compliance Department – Attention: Director of Compliance, 280 Park Ave., 6th Floor, Mail Stop NYC03-0650, New York, NY 10017-1216. If Client's election is not received by DBAB within ten (10) calendar days of receipt of a written request from DBAB that Client make an election, then DBAB may elect the forum before which the arbitration shall be held.

    ■ Neither DBAB nor Client waive any right to seek equitable relief pending arbitration. No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until (i) the class certification is denied; or (ii) the class is decertified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.


# Important Disclosures for Your Records

Deutsche Bank Securities Inc., acting through its Deutsche Bank Alex. Brown Division ("DBAB") is furnishing this document to you to alert you to important matters regarding your account.

**Securities Investor Protection Corporation ("SIPC")**

Securities held by our clearing broker, Pershing LLC, for your account are protected up to the total net equity held in the account. Of this total, SIPC provides $500,000 of coverage, including $100,000 for claims for cash awaiting reinvestment. The remaining coverage is provided by Pershing through a commercial insurer. SIPC protection applies when the SIPC member firm through which you hold your investments fails financially and is unable to meet its obligations to securities clients, but SIPC protection does not protect against losses attributable to the rise and fall in the market value of investments. A small number of client accounts are not carried on Pershing's books due to specific account factors. These accounts are covered under DBAB's SIPC membership. DBAB does not provide coverage in excess of SIPC coverage. Certain investments, such as commodity futures contracts and currency, are ineligible for SIPC protection. For additional information on SIPC, see www.SIPC.org or call the SIPC public information number, (202) 371-8300.

**Payment for Order Flow**

DBAB receives payment when its routes for execution certain orders in certain securities. The determination as to where to route orders is based on several factors, consistent with DBAB's obligation to provide best execution for all client orders. Because several factors are considered with respect to such determinations, DBAB could potentially secure price improvements on such orders by routing them in a different manner and all such orders potentially could be executed at prices superior to the best bid or best offer. Payment is received by DBAB in the form of rebates, or credits against exchange fees, and specialist fees. Details will be furnished upon written request.

9-PWM-0186 Corp Acct Auth & T&C (3/10)

# Account Agreement

**Deutsche Bank Alex. Brown**
A Division of Deutsche Bank Securities Inc.

P.O. Box 515
Baltimore, MD 21203

Swartz IP Services Group Inc.
_____
Name(s)

_____

_____

Address
2425 Colorado Avenue, Suite 205
_____

| Santa Monica | CA | 90404 | |
|---|---|---|---|
| City | State | Zip Code | Account Number |

## IMPORTANT: PLEASE SIGN AND RETURN THIS ACCOUNT AGREEMENT IN THE ENCLOSED ENVELOPE.

In consideration of Deutsche Bank Securities Inc., acting through its Deutsche Bank Alex. Brown division (referred to herein as "Deutsche Bank Alex. Brown") accepting the Account(s) of the Undersigned, and agreeing to act as my broker, I agree to the following with respect to each of My Account(s) with you, in which I currently or in the future have an interest, for the extension of credit or the purchase or sale of securities, options, or other property. Throughout this Agreement, "I," "me," "my," "we," and "us" and "the undersigned" refer to the person(s) whose signature(s) appear(s) below and all others who are legally obligated on this account. "Account(s) of the Undersigned" and "My Account(s)" shall mean each and every account in the name of the undersigned and each and every account in which the undersigned may have an interest. "You" and "your" refers to Deutsche Bank Securities Inc., its subsidiaries, affiliates, officers, directors, agents, and employees, and to our clearing broker whose role is explained in paragraph three below. Our clearing broker extends all credit in transactions with the undersigned, and is therefore included in the meaning of the term "you" and "your."

Deutsche Bank Securities Inc. is a subsidiary of Deutsche Bank AG. As used herein, the term "affiliate of Deutsche Bank" or "Deutsche Bank affiliates" means Deutsche Bank AG and its subsidiaries and affiliates. Each of Deutsche Bank and its affiliates is a separately incorporated legal entity, none of which is responsible for the obligations of the others. "Securities and Other Property" shall include, but shall not be limited to, money and securities, financial instruments, commodities of every kind and nature, and all contracts and options relating to any thereof (whether for present or future delivery), owned by the undersigned or in which the undersigned has an interest. Where the context requires, the singular shall be plural and the plural shall be singular.

I understand that federal law requires you to obtain, verify and record information that identifies each person who opens an account in order to fight the funding of terrorism and money laundering activities. I understand and agree that you will ask for my name, address, date of birth, tax identification number, and other information that will allow you to identify me. I also understand and agree that you may ask to see my driver's license or other identifying documents such as articles of incorporation, trust agreements, or similar enabling documents depending on the person or entity that opens an account.

1. **Representations**
   Unless I have advised you otherwise in writing, I represent that I am of legal age, that I am not an employee or member of any securities exchange (or corporation of which any exchange owns a majority of the capital stock), the Financial Industry Regulatory Authority, Inc., or of any broker-dealer, nor am I a senior officer of any bank, savings and loan institution, insurance company, investment company, investment advisory firm, or institution that purchases securities, nor am I a member of the immediate family of such a person. I further represent that I am financially capable of satisfying any obligations undertaken through My Account(s) and that no one except the persons named on the account(s) has any interest in the account(s). I will promptly notify you in writing if any of the above circumstances change. I acknowledge that the purchase and sale of securities entails substantial economic risk, and I represent to you that I knowingly and willingly assume such risk.

2. **Applicable Rules and Regulations**
   All transactions in My Account(s) shall be subject to the constitution, rules, regulations, customs, and usages of the exchange or market, and its clearing house, if any, where the transactions are executed. Transactions shall also be subject to the provisions of federal and state securities laws, as amended, and to the rules and regulations of the Securities and Exchange Commission and the Board of Governors of the Federal Reserve System. You shall not be liable for any loss caused directly or indirectly by your compliance with such rules or regulations or by government restrictions, exchange or market rulings, suspension of trading, war, or other conditions beyond your control.

3. **Role of Certain Third Parties**
   I understand that Pershing LLC ("Pershing") is the carrier of My Account(s) as clearing broker pursuant to a clearing agreement with Deutsche Bank Alex. Brown. I further understand that Pershing may accept from Deutsche Bank Alex. Brown, without inquiry or investigation, (i) orders for the purchase or sale of securities and other property on margin or otherwise, and (ii) any other instructions concerning My Account(s). I further understand that notices to me concerning margin requirements or other matters related to My Account(s) usually will go through Deutsche Bank Alex. Brown although direct notice to me with duplicate notice to Deutsche Bank Alex. Brown may occur if market conditions, time constraints, or other circumstances require it. I further understand that the contract between Deutsche Bank Alex. Brown and Pershing, and the services rendered thereunder, is not intended to create a joint venture, partnership, or other form of business organization of any kind. Pershing shall not be responsible or liable for any acts or omissions of Deutsche Bank Alex. Brown or its employees. I understand that Pershing provides no investment advice, nor does Pershing give advice or offer any opinion with respect to the suitability of any transaction or order. I further understand that Deutsche Bank Alex. Brown is not acting as the agent of Pershing and I agree that I will not hold Pershing, its affiliates, and its officers, directors, and agents liable for any trading losses incurred by me.

4. **Confirmations, Statements, and Written Communications**
   **I agree to notify you in writing, within ten (10) days of your sending me a confirmation, of any objection I have to any transaction in My Account(s). In the absence of such written notification, I agree that all transactions for My Account(s) will be final and binding on me.** Confirmations of transactions, as well as other communications, may be sent to the address I provided to you, or to such other address I may hereafter give to you in writing, and all communications so sent, whether by mail, private carrier, facsimile, messenger, electronically, or otherwise, shall be deemed given to me, whether actually received or not. Unless I advise you in writing to the contrary, you may disclose my name and address to the issuers of securities which you hold for me.

5. **Aggregation of Orders and Average Prices**

I authorize you, at your discretion, to aggregate orders for My Account(s) with other customer orders. I recognize that in so doing, I may receive an average price for my orders which may be different from the price(s) I might have received had my orders not been aggregated. I understand that this practice may also result in my orders being only partially completed.

6. **Cash Accounts**

This paragraph relates to and is effective solely with respect to cash accounts: (i) The undersigned will make full cash payment on or before settlement date for each security purchased, unless funds sufficient therefor are already held in the account; (ii) the undersigned does not contemplate selling any security before it is paid for as provided in the preceding clause; (iii) the undersigned will own each security sold at the time of sale and, unless such security is already held in the account, will promptly deliver such security thereto on or before settlement date; and (iv) the undersigned will promptly make full cash payment of any amount which may become due in order to meet necessary requests for additional deposits or, with respect to any unissued security purchased or sold, to mark to the market.

7. **Short and Long Orders; Deliveries and Settlements**

I agree that, in giving orders to sell, all "short" sales will be designated by me as "short" and all other sales will be designated by you as "long." "Short sale" means any sale of a security not owned by me or any sale that is consummated on settlement date by delivery of a borrowed security. I also agree that you may, at your discretion, immediately cover any short sales in My Account(s), without prior notice. My failure to designate a sale order as "short" is a representation on my part that I own the security free of restriction, and if the security is not in your possession at the time of the sale, I agree to deliver the security to you by settlement date. In case of non-delivery of a security, you are authorized to purchase the security to cover my position and charge any loss, commissions, and fees to My Account(s). I agree that if you fail to receive payment for securities I have purchased you may, without prior demand or notice, sell those securities or other property held by you in any of My Account(s) with you and any loss resulting therefrom will be charged to such account(s). I authorize you, at your discretion, to request and obtain extension(s) of my time to make payment for securities I purchase, as provided for by Federal Reserve Bank Regulation T.

8. **Liens**

I hereby grant to you and all affiliates of Deutsche Bank AG a security interest in all securities and other property in your possession or in the possession of any of your affiliates in which I have an interest (held individually, jointly or otherwise) in order to secure any and all indebtedness or any other of my obligations to you or any affiliate of Deutsche Bank AG. All such securities and other property shall be held as security for the payment of any such obligations or indebtedness in any account with you or any affiliate of Deutsche Bank AG in which I have an interest, and you may, in your discretion, at any time and without prior notice, sell and/or transfer any or all securities and other property in order to satisfy such obligations. In enforcing this lien, you shall have the discretion to determine which securities and property are to be sold and/or which contracts are to be closed. Notwithstanding the foregoing, nothing herein shall be deemed to grant an interest in any account(s) or assets that would give rise to a prohibited transaction under Section 4975(c)(1)(B) of the Internal Revenue Code of 1986, as amended.

9. **Authority to Borrow**

In case of the sale of any security or other property by you at my direction and your inability to timely deliver the same to the purchaser by reason of my failure to supply me therewith, I authorize you to purchase or borrow any security or other property necessary to make the required delivery, and I agree to be responsible for any loss or cost, including interest, which you sustain as a result of my failure to make delivery to you.

10. **Interest Charges**

I acknowledge that debit balances in my cash or margin account, including, but not limited to, those arising from my failure to make payment by settlement date for securities purchased, will be charged interest at the then current rate, in accordance with your usual custom. Interest will be computed on the net daily debit balance, which is computed by combining all debit balances and credit balances in each account with the exception of credit balances associated with short security positions. I acknowledge receipt of your statement regarding interest charges. I understand that you charge an Annual Account Fee for certain accounts, as set forth in your Annual Disclosure Statement. If this fee applies to My Account(s), I authorize you to deduct such fee from My Account(s).

11. **Credit Information and Investigation**

I authorize you to obtain reports concerning my credit standing and business conduct at your discretion. I also authorize you and any affiliate of Deutsche Bank (including, without limitation, Deutsche Bank AG) to share among such affiliates such information and any other confidential information you and such affiliate(s) may have about me and My Account(s), in accordance with the Privacy Policy of Deutsche Bank Alex. Brown, a copy of which you will provide to me shortly after execution by me of this Agreement. You may request a credit report on the undersigned and upon request, you will state the name and address of the consumer reporting agency that furnished it. If you extend, update, or renew the undersigned's credit, you may request a new credit report without telling the undersigned.

12. **Satisfaction of Indebtedness**

I agree to satisfy, upon demand, any indebtedness, including any interest and commission charges. I further agree to pay the reasonable costs and expenses of collection of any amount I owe you, including reasonable attorney's fees and court costs. I agree that any rights that Deutsche Bank Alex. Brown or its clearing broker has under this agreement, including but not limited to the right to collect any debit balance or other obligations owing in any of My Account(s), may be assigned to each other and that either Deutsche Bank Alex. Brown or its clearing broker may collect from the undersigned independently or jointly to enforce any rights granted to Deutsche Bank Alex. Brown or its clearing broker under this agreement.

13. **Margin Maintenance, Calls for Additional Collateral, Liquidations, and Covering Short Positions**

If I engage in margin transactions, I will maintain such securities and other property in My Account(s) for margin purposes as you shall require from time to time in your sole discretion for any reason whatsoever. You shall have the right in accordance with your general policies regarding margin maintenance requirements, as such may be modified or amended from time to time, to require additional collateral or the liquidation of any securities and other property whenever in your sole discretion you consider it necessary for your protection. You may do so under circumstances which include, but are not limited to, the failure to promptly meet any call for additional collateral, the filing of a petition in bankruptcy, the appointment of a receiver by or against me, or the attachment or levy against any account with you in which I have an interest. In such event, you are authorized to sell any and all securities and other property in any of My Account(s) with you whether carried individually or jointly with others, to buy all securities or other property which may be short in such account, to cancel any open orders, and to close any or all outstanding contracts, all without demand for margin or additional margin, notice of sale or purchase, or other notice or advertisement, each of which is expressly waived. Upon a default, I will also bear the cost of preserving the value of collateral, including hedging transactions, that may be executed at your discretion. Any sales or purchases hereunder may be made at your discretion on any exchange or other market where such business is usually transacted, or at public auction or private sale, and you may be the purchaser for your own account. I understand that any prior demand, or call, or prior notice of the time and place of such sale or purchase shall not be considered a waiver of your right to sell or buy without demand or notice as provided herein. I further understand and agree that if you permit me a period of time in which to satisfy a call, the granting of that period of time shall not in any way waive or diminish your right, in your sole discretion, to shorten the time period in which I must satisfy the call, including an outstanding call, or to demand that a call be satisfied immediately. I further understand that your right to sell out positions in order to satisfy a call may involve positions in My Account(s) that are as great as the full indebtedness owed by me.

14. **Loan or Pledge of Securities and Other Property**

Within the limitations imposed by applicable law, all securities and other property now or hereafter held, carried, or maintained by you in your possession that have not been fully paid for, or are held in a margin account, may be lent, either to yourself or to others, pledged, and repledged by you, without notice to me, either separately or in common with other securities and other property of your other customers for any amount due in any account with you in which I have an interest, or for any greater amount, and you may do so without retaining in your possession or control for delivery a like amount of similar securities or other property. I understand that while securities held for My Account(s) are loaned out, I will lose voting rights attendant to such securities.

**15. Third Party Authorization; No Agency**

If I have authorized any registered investment adviser or other third party to give you instructions with respect to My Account(s) with you, you are authorized to accept from such third party, without inquiry or investigation by you, (i) orders for the purchase or sale of securities or other property for My Account(s), on margin or otherwise, and (ii) any other instructions concerning My Account(s). I understand that any investment adviser or other third party I authorize to act for me, whether or not referred to me by you, is not your agent and that you shall have no responsibility or liability to me for any acts or omissions of such third party, its officers, employees, or agents.

**16. Transmission of Instructions.**

I understand that I am responsible for transmission of instructions to you and that I bear the risk of loss arising from the method of transmission that I use in the event of transmission errors, misunderstandings, impersonations, transmission by unauthorized persons, forgery or intercepts. I agree to release and indemnify you, your affiliates, employees, and directors from any and all liability arising from the execution of transactions based on such instructions except if your gross negligence caused the transmission error.

**17. Joint Accounts**

- If this is a Joint Account, we authorize you to designate this account as "joint tenants with right of survivorship," or if we are married and we reside in a state that recognizes "tenants by the entireties," then, as "tenants by the entireties," unless otherwise directed by us. We agree that our account will be carried on your books in the form reflected by the Account name appearing on the Account Statement that you provide. In the event that the account is a joint tenancy with rights of survivorship or a tenancy by the entireties, the entire interest in the joint account shall be vested in the survivor or survivors on the same terms and conditions as before the death and the survivors will indemnify you for any loss which you may incur through treatment of the account as provided herein.

- We agree that each of us shall have authority with respect to this account to deal with you as if each of us alone were the account owner, all without notice to the other account owner(s). We agree that notice to any account owner shall be deemed to be notice to all account owners. Each account owner shall be jointly and severally liable for this account. You may follow the instructions of any of us concerning this account and make deliveries to any of us, of any or all property and payment, even if such deliveries and/or payments shall be made to one of us personally, and not to all of the account owners. You shall be under no obligation to inquire into the purpose of any such demand for delivery of securities or payment, and you shall not be bound to see to the application or disposition of the securities and/or monies so delivered or paid to any of us. Notwithstanding the foregoing, you are authorized, in your discretion, to require joint action by all of the account owners with respect to any matter concerning the account, including the giving or cancellation of orders and the withdrawal of monies, securities, or other property.

- In the event of the death of any of us, the survivor(s) shall immediately give you written notice thereof, and you may, before or after receiving such notice, take such action, require such documents, retain such securities and/or restrict transactions in the account as you may deem advisable to protect you against any tax, liability, penalty, or loss under any present or future laws or otherwise. Any cost resulting from the death of any of us, or through the exercise by any decedent's estate or representatives of any rights in the account shall be chargeable against the interest of the survivor(s) as well as against the interest of the estate of the decedent. The estate of the decedent and each survivor shall continue to be liable jointly and severally to you for any obligation of the joint account or net debit balance or loss in said account until such time as you distribute the assets in accordance with our instructions.

**18. Foreign Securities**

With respect to debt or equity securities of non-U.S. issuers, or debt or deposit instruments of non-U.S. banks ("Foreign Securities"), I acknowledge and understand that: (i) Foreign Securities are, in most cases, not registered with the Securities and Exchange Commission or listed on a U.S. securities exchange; (ii) Foreign Securities, particularly those of issuers in the so-called "emerging markets" are often illiquid, are sometimes subject to legal and/or contractual transfer restrictions, and it may be difficult or impossible to dispose of such Foreign Securities prior to the maturity thereof, or to determine the market price thereof, for valuation purposes; (iii) Foreign Securities, and the issuer, guarantors, or other obligors with respect thereto ("Obligors"), are subject to a variety or risks in addition to those typically faced in the case of U.S. securities and issuers, including, among other things, currency risk, exchange controls, confiscatory taxation, withholding, limitations on the rights of security holders, civil unrest, hyperinflation, discriminatory treatment of foreign investors, etc.; (iv) there is often less information available regarding Obligors, and such information may be more difficult to interpret, than is the case with U.S. issuers whose securities are subject to the periodic reporting requirements under U.S. securities laws; (v) there may be no effective means to determine if an Obligor is in default of its obligations in respect of its debt securities or other financial obligations (and you specifically acknowledge that Foreign Securities purchased by you may be in default at the time of purchase); (vi) the Foreign Securities in question may be unrated; and (vii) such securities are not suitable for all investors. I authorize Deutsche Bank Alex. Brown to purchase Foreign Securities (and, in the case of Foreign Securities denominated in foreign currencies, the relevant foreign currencies) from or sell Foreign Securities (and foreign exchange) to an affiliate of Deutsche Bank AG. In dealing with such affiliates, such affiliates may take their normal commissions, spreads, or other fees without regard to Deutsche Bank Alex. Brown's relationship with me.

**19. Acknowledgment of Possible Conflicts of Interest**

I acknowledge that the advice provided to me by the employees of Deutsche Bank Alex. Brown may differ from the advice or the timing or nature of action recommended by or taken by other individuals or groups at Deutsche Bank Alex. Brown and/or affiliates of Deutsche Bank AG, whether acting as principal or agent. I understand that Deutsche Bank Alex. Brown provides investment advice, portfolio management, and execution services for many clients and, in addition, acts as principal in various markets. Given these different roles, individuals and groups at Deutsche Bank Alex. Brown and affiliates of Deutsche Bank are seldom of one view as to an investment strategy and will often pursue differing or conflicting strategies. Employees of Deutsche Bank Alex. Brown shall have no obligation to recommend to me, or inform me of, strategies being pursued by Deutsche Bank Alex. Brown or by other clients. I also acknowledge that: (i) Deutsche Bank Alex. Brown and affiliates of Deutsche Bank may perform services for or solicit business from issuers whose securities are recommended by their employees; (ii) Deutsche Bank Alex. Brown and affiliates of Deutsche Bank may be paid fees by Registered Investment Companies or other investment vehicles, including without limitation, fees for acting as investment advisor, administrator, custodian, and transfer agent; and (iii) Deutsche Bank Alex. Brown and affiliates of Deutsche Bank act as brokers, principals, and/or market makers in certain markets and may do so in transactions with me.

**20. No FDIC Insurance, Not Obligations of Any Bank**

I understand that the assets in My Account(s) are subject to the risk of partial or total loss due to market fluctuations or the insolvency of the issuer(s). The assets in My Account(s) (including all related cash balances and shares of any mutual fund) are not deposits or other obligations of Deutsche Bank AG or any other bank, and are not guaranteed by Deutsche Bank AG, and are not insured by the Federal Deposit Insurance Corporation ("FDIC"). I may from time to time be offered investment products as to which Deutsche Bank AG is an obligor. These products may be complex, may not provide for the return of the full amount of principal invested or for the payment of a fixed rate of interest (or any interest) and will not usually be subject to FDIC insurance. I will assume they are not subject to FDIC insurance and that such products may not be protected as to principal or interest unless Deutsche Bank AG states in writing that a particular product is subject to FDIC insurance.

**21. No Non-Investment Advice**

I acknowledge and agree that you will not provide the undersigned with any legal, tax, or accounting advice, that your employees are not authorized to give any such advice, and that the undersigned will not solicit or rely upon any such advice from you, or your employees whether in connection with transactions in or for any of My Account(s). In making legal, tax, or accounting decisions with respect to transactions in or for My Account(s) or any other matter, I will consult with and rely upon my own advisers, and not you, and you shall have no liability therefor.

**22. Extraordinary Events**

You shall not be liable for loss caused directly or indirectly by government restrictions, exchange or market rulings, suspension of trading, war, strikes, or other conditions beyond your control.

**23. No Waiver**

If you fail or delay in exercising any right or power hereunder, your failure or delay does not constitute a waiver of that right or power. I further acknowledge and agree that this Agreement cannot be modified by conduct, and that no failure on the part of you at any time to enforce your rights hereunder shall in any way be deemed to waive, modify, or relax all of the rights granted to you herein, including those rights vested in you to deal with collateral on all loans made to me.

**24. Option Transactions**

If at any time the undersigned enters into any transaction for the purchase or resale of an option contract, the undersigned hereby agrees to abide by the rules of any national securities association, registered securities exchange, or clearing organization applicable to the trading of option contracts and, acting alone or in concert, will not violate the position or exercise limitation rules of any such association or exchange or of the Options Clearing Corporation or other clearing organization.

**25. Closure of Small Accounts.**

If My Account has a market value of less than $10,000 ($500 for retirement accounts), or if I have not undertaken any transactions over a 24-month period (except for retirement accounts), you have sole discretion to make a final distribution to me of the positions in My Account and to close My Account. You have sole discretion to either remit a check representing the value of the positions in My Account or to deliver to me certificates representing the positions in My Account. I agree that the mailing of a check or certificates by first-class mail to my last-known address will be deemed receipt by me of the check or the certificates. I also agree that if My Account has expenses that exceed the value of My Account, you may collect your expenses by liquidating my positions and you may close My Account upon written notice to me by first-class mail to my last-known address. I further agree that if a mailing is returned to you as not deliverable, you have the discretion to treat the returned assets immediately as abandoned property. I further agree that abandoned property will be escheated to the state of my last known address based on a schedule stipulated by that state. I further agree that if My Account is a retirement account and it meets the preceding conditions, a final distribution of my positions will be treated as a total distribution with no income tax withholding and that any reporting to the Internal Revenue Service will be based on my age at the time of the distribution.

**26. Separability**

If any provision or condition of this agreement shall be held to be invalid or unenforceable by any court, administrative agency, or regulatory or self-regulatory agency or body, such invalidity or unenforceability shall attach only to such provision or condition. The validity of the remaining provisions and conditions shall not be affected thereby and this agreement shall be carried out as if any such invalid or unenforceable provision or condition were not contained herein.

**27. Contact Information**

I understand that for questions or assistance on any matter relating to My Account, I should contact my Client Advisor or the Branch Office Manager at the address and telephone numbers provided to me with my Welcome Package.

**28. Complaints**

If at any time I wish to make a formal complaint against you or any of your employees, it should be directed to Deutsche Bank Alex. Brown, Compliance Department - Client Inquiries, 280 Park Avenue, 7th floor, New York, NY 10017 or you may call 212-454-8006.

**29. Arbitration**

- This section of the Agreement contains the predispute arbitration agreement between us. By signing this Agreement, we agree as follows:
  (i) **All parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.**
  (ii) **Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.**
  (iii) **The ability of the parties to obtain documents, witness statements and other discovery is generally limited in arbitration as compared to court proceedings.**
  (iv) **The arbitrators do not have to explain the reason(s) for their award.**
  (v) **The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.**
  (vi) **The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.**
  (vii) **The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this Agreement.**
- I agree to arbitrate with you any controversies which may arise, whether or not based on events occurring prior to the date of this agreement, including any controversy arising out of or relating to any account with you, to the construction, performance or breach of any agreement, or any duty arising from any agreement or other relationship with you, or to transactions with or through you, only before the Financial Industry Regulatory Authority, Inc., or any exchange of which Deutsche Bank Alex. Brown is a member, at my election. I agree that I shall make my election by registered mail to you, at 280 Park Avenue, 7th floor, New York, NY 10017, Attention Director of Compliance. If my election is not received by you within ten (10) calendar days of receipt of a written request from you that I make an election, then you may elect the forum before which the arbitration shall be held.
- Neither you nor I waive any right to seek equitable relief pending arbitration. No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until (i) the class certification is denied; or (ii) the class is decertified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver or any rights under this agreement except to the extent stated herein.

**30. Assignment**

This Agreement shall be binding upon my heirs, executors, administrators, personal representatives and permitted assigns. It shall inure to the benefit of your successors and assigns, or any successor clearing broker, to whom you may transfer My Account(s).

**31. Entire Understanding**

This Agreement contains the entire understanding between us concerning the subject matter of this Agreement, and there are no oral or other agreements in conflict herewith.

**32. Right to Amend**

I agree that you have the right to amend this Agreement at any time by sending written notice of such amendment to me. Any such amendment shall be effective as of the date established by you.

**33. Controlling Law**

This Agreement shall be deemed to have been made in the State of New York and shall be construed, and the rights of the parties determined, in accordance with the laws of the State of New York and the United States, as amended, without giving effect to the choice of law or conflict-of-laws provisions thereof.

**34. Paragraph Headings**

Paragraph headings are for convenience only and shall not affect the meaning or interpretation of any provision of this Agreement.

**Please Complete 35a or 35b as applicable.**

**35a. Certification — Taxpayer Identification Number — U.S. Citizen or U.S. Resident Alien**

I will cross out item (ii) below if I have been notified by the IRS that I am currently subject to backup withholding because I have failed to report all interest and dividends on my tax return. If I am an exempt payee, I will write the word "Exempt" here: _____. However, if I am opening an account on behalf of a pension or profit-sharing plan that is designed to be a qualified plan under federal tax law, or a self-directed account for such plan, I hereby certify that the account is an exempt payee. (For further information, see "Exempt Payee" on IRS Form W-9, a copy of which can be obtained from a Deutsche Bank Alex. Brown Client Advisor.)

I certify that: (i) The number shown on this form is my correct Taxpayer Identification Number (or I am waiting for a number to be issued to me), (ii) I am not subject to backup withholding because (a) I am exempt from backup withholding or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and (iii) I am a U.S. citizen or other U.S. person.

Under penalties of perjury, I declare that by my signature below I have examined the information and certifications in Paragraph 35a and to the best of my knowledge and belief, they are true, correct, and complete.

**35b. Certification — Non-U.S. Person**

Permanent Residence Address _____

City _____State _____Zip_____

Type of Beneficial Owner: _____

Country of Incorporation or Organization _____

By signing below, I hereby certify under penalties of perjury, (i) that (a) I am the beneficial owner of all the income earned in My Account(s), (b) I am neither a citizen nor a resident of the U.S. (and I have not made an election to be treated as a resident because of my marriage to a citizen or resident), (c) I have not been and do not intend to be present in the U.S. for 183 days or more during any calendar year in which this Agreement is in effect, and (d) I am not a former citizen or long-term resident of the United States subject to section 877 (relating to certain acts of expatriation) or (ii) if signing on behalf of a corporation, partnership, trust or estate, that I am authorized to sign for the payee named on My Account(s) and such payee (a) is the beneficial owner of all the income earned in My Account(s) and (b) is not a United States person and (iii) that in either case, I am neither engaged, nor expect to be, or any such named payee is not and does not expect to be, engaged during the year, in a U.S. trade or business that has effectively connected income from transactions within My Account(s).

In addition, if I, or any such named payee, is claiming a United States tax treaty benefit, I hereby certify, under penalties of perjury, that I, or any such named payee, is a resident of _____ within the meaning of the income tax treaty between the United States and that country. If required, a U.S. Taxpayer Identification Number is included below. I also certify under penalties of perjury that the named payee meets the requirements of the article in the applicable treaty dealing with limitations on benefits, if any, and derives the income for which the treaty benefits are claimed.

Under penalties of perjury, I declare that by my signature below I have examined the information and certifications in Paragraph 35b and to the best of my knowledge and belief, they are true, correct, and complete.

**36. Declaration of Tax Status**

This Agreement is designed for use by both U.S. Persons and Non-U.S. Persons. Please check the box next to the paragraph below that applies to you. You certify that you will notify us in writing immediately if the representation certified to below ceases to be true and correct.

❑   **36a. U.S. Persons.** By checking this box, you hereby certify under penalties of perjury that you are a U.S. person. Your U.S. Taxpayer Identification Number is _____. You further agree to provide us, at our request or as may be periodically required by applicable law or regulation, a validly completed Internal Revenue Service Form W-9 or any equivalent successor form.

❑   **36b. Non-U.S. Persons (Individual).** By checking this box, you hereby certify under penalties of perjury that you are neither a citizen nor a resident of the United States (and you have not made an election to be treated as a resident because of your marriage to a citizen or resident), you have not been and intend not to be present in the United States for 183 days or more during any calendar year in which this Agreement is in effect, and the income you will earn hereunder is not effectively connected to a United States trade or business. You further agree to provide us, at our request or as may be periodically required by applicable law or regulation, a validly completed Internal Revenue Service Form W-8BEN, W-8ECI, W- 8EXP or W-8IMY or any equivalent successor form as may be appropriate to your United States taxable status. Additionally, you confirm that it is your responsibility to fulfill any tax obligations and any other regulatory reporting duties applicable to you in any relevant jurisdictions that may arise in connection with assets, income or transactions in your account(s) and your business relationship with the Bank.

❑   **36c. Non-U.S. Persons (Corporate and Other).** By checking this box, you hereby certify under penalties of perjury that you are not a United States person as defined under Section 7701(a)(30) of the Internal Revenue Code or any applicable successor provision and the income you will earn hereunder is not effectively connected to a U.S. trade or business. You further agree to provide us, at our request or as may be periodically required by applicable law or regulation, a validly completed Internal Revenue Service Form W-8BEN, W-8ECI, W-8EXP or W-8IMY or any equivalent successor form as may be appropriate to your United States taxable status. Additionally, you confirm that it is your responsibility to fulfill any tax obligations and any other regulatory reporting duties applicable to you in any relevant jurisdictions that may arise in connection with assets, income or transactions in your account(s) and your business relationship with the Bank. Furthermore, you confirm that the necessary information (to the best of your knowledge and capabilities) is made available no less than annually to the relevant beneficial owner(s), settlor(s), beneficiary(ies), partner(s), etc. to enable him/her/them to fulfill any respective tax obligations that may arise for him/her/them in connection with your business relationship with the Bank.

**Please complete by signing below and inserting the date of your signature. Please also insert the applicable identification number.**

BY SIGNING BELOW I ACKNOWLEDGE THAT I HAVE RECEIVED, READ, AND AGREE TO THE TERMS OF THIS AGREEMENT INCLUDING THE APPLICABLE CERTIFICATION ABOVE.

I ACKNOWLEDGE THAT MUTUAL FUNDS AND OTHER SECURITIES ARE NOT INSURED BY THE FDIC, ARE NOT DEPOSITS OR OTHER OBLIGATIONS OF, OR GUARANTEED BY, ANY BANK, AND ARE SUBJECT TO INVESTMENT RISK, INCLUDING POSSIBLE LOSS OF THE PRINCIPAL INVESTED.

IF THIS IS A JOINT ACCOUNT, ALL ACCOUNT OWNERS MUST SIGN.

THE INTERNAL REVENUE SERVICE DOES NOT REQUIRE MY CONSENT TO ANY PROVISION OF THIS DOCUMENT OTHER THAN THE CERTIFICATION REQUIRED TO AVOID BACKUP WITHHOLDING, AND, IF APPLICABLE, THE CERTIFICATION REQUIRED TO ESTABLISH MY STATUS AS A NON-U.S. PERSON AND OBTAIN A REDUCED RATE OF WITHHOLDING.

**THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 29 ON THE PRIOR PAGE.**

Signature _____    Date _____

Social Security or Employer ID No. _____

Signature _____    Date _____

Social Security or Employer ID No. _____

Signature _____    Date _____

Social Security or Employer ID No. _____

**If a corporation, partnership, trust or other entity:**

Name of Entity  Swartz IP Services Group Inc.                Employer ID No. ▮▮▮▮ 6794 _____

Signature of Officer, Partner or Trustee _____    Date  11/10/2011 _____

Signature of Officer, Partner or Trustee _____    Date _____

Signature of Officer, Partner or Trustee _____    Date _____

**PLEASE READ AND SIGN BELOW TO OPEN A MARGIN ACCOUNT.**

I agree to open a margin account with you and acknowledge to you that, in addition to the preceding information, I understand each of the following:

- If I am not familiar with the mechanics and risks of margin, I should not open a margin account or engage in margin transactions.
- When I purchase securities on margin, I borrow money from you to finance that purchase; I may also borrow against collateral in my margin account for other purposes.
- I will be obligated to pay interest on all sums I borrow from you.
- I am obligated to repay all sums borrowed, with interest, regardless of the value of My Account at the time such repayment (or portion thereof) becomes due.
- I may be required to deliver additional collateral consisting of cash or securities to you to maintain my loan balance, as you require.
- By using a margin account to leverage my investments, I increase my risk of loss.
- Deutsche Bank Alex. Brown will deduct all interest charges from My Account.

Deutsche Bank Alex. Brown represents to me that:

- My current margin debit balance will appear on each account statement Deutsche Bank Alex. Brown sends to me.
- Deutsche Bank Alex. Brown will charge me interest on a monthly basis and will disclose on my account statement the interest rate and total interest charge.

By signing below, I authorize you to open and carry a margin account for my benefit, and acknowledge that securities in my account may be loaned to Deutsche Bank Alex. Brown as principal or loaned to others. I acknowledge that I have read the Initial Margin Disclosure Statement on the adjoining page. I also acknowledge that I have received, read and agree to the terms of this Agreement.

I ACKNOWLEDGE THAT MUTUAL FUNDS AND OTHER SECURITIES ARE NOT INSURED BY THE FDIC, ARE NOT DEPOSITS OR OTHER OBLIGATIONS OF, OR GUARANTEED BY, ANY BANK, AND ARE SUBJECT TO INVESTMENT RISK, INCLUDING POSSIBLE LOSS OF THE PRINCIPAL INVESTED.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 29.

**If this is a Joint Account, all account owners must sign.**

Signature _____   Date _____

Signature _____   Date _____

Signature _____   Date _____

**If a corporation, partnership, trust or other entity:**

Name of Entity  Swartz IP Services Group Inc. _____   Employer ID No. ████6794 _____

Signature of Officer, Partner or Trustee _____   Date 11/10/2011 _____

Signature of Officer, Partner or Trustee _____   Date _____

Signature of Officer, Partner or Trustee _____   Date _____

Paragraph 35 of this Agreement includes representations regarding the applicability of income tax withholding. If Deutsche Bank Alex. Brown does not receive the applicable certification, it will be required to withhold a portion of all payments to this account.

---

FOR OFFICE USE ONLY          Branch Manager approval for margin accounts:

Signature _____   Date _____

---

10-PWM-0583 (8/10)

## IMPORTANT: PLEASE RETAIN THIS INITIAL MARGIN DISCLOSURE FOR YOUR RECORDS

Deutsche Bank Securities Inc., acting through its Deutsche Bank Alex. Brown division ("DB Alex. Brown"), is furnishing this document to you to provide some basic facts about purchasing securities on margin, and to alert you to the risks involved with trading securities in a margin account and other features of holding securities in a margin account. Before trading in stocks in a margin account, please review the attached Account Agreement and its provisions on margin. Please call your Client Advisor with any questions or concerns you may have with your margin account. If margin is utilized in the account, you will be charged interest and costs incurred by DB Alex. Brown in maintaining margin in the account. The use of margin also has the potential to increase the frequency of trading in the account which may result in an increase in the amount of commissions being paid to DB Alex. Brown by you. The Client Advisor will receive additional compensation depending on the amount of the margin debt and its interest rate and may have an incentive to recommend utilizing margin leverage for the client's account that may conflict with the interests of the client.

When you purchase securities, you may pay for the securities in full or you may borrow part of the purchase price from DB Alex. Brown. You may also borrow for purposes other than the purchase of securities based on the value of fully-paid securities held in your account. If you choose to borrow funds from DB Alex. Brown, you must open a margin account and sign the attached Account Agreement with DB Alex. Brown. The securities purchased or held in the margin account are DB Alex. Brown's collateral for the margin loan. You are required to maintain a minimum amount of collateral in your account as defined by federal regulation. If the securities in your account decline in value, so does the value of the collateral supporting your loan. As a result, DB Alex. Brown can take action, such as issue a margin call and/or sell securities or other assets in any of your accounts in order to maintain the required equity in the account.

**It is important that you fully understand the risks involved in trading securities on margin. These risks include the following:**

**You can lose more funds than you deposit in the margin account.**
A decline in the value of securities that are purchased on margin may require you to provide additional funds to DB Alex. Brown to avoid the forced sale of those securities or other securities or assets in your account(s).

**DB Alex. Brown can force the sale of securities or other assets in your account(s).**
If the equity in your account falls below the maintenance margin requirements, or DB Alex. Brown's higher "house" requirements, DB Alex. Brown can sell the securities or other assets in any of your accounts held at DB Alex. Brown to cover the margin deficiency. You also will be responsible for any shortfall in the account after such a sale.

**DB Alex. Brown can sell your securities or other assets without contacting you.**
Some investors mistakenly believe that a firm must contact them for a margin call to be valid, and that the firm cannot liquidate securities or other assets in their accounts to meet the call unless the firm has contacted them first. This is not the case. While DB Alex. Brown will attempt to notify its customers of margin calls, DB Alex. Brown is not required to do so. However, even if DB Alex. Brown has contacted a customer and provided a specific date by which the customer can meet a margin call, DB Alex. Brown can still take necessary steps to protect its financial interests, including immediately selling the securities without notice to the customer.

**You are not entitled to choose which securities or other assets in your account(s) are liquidated or sold to meet a margin call.**
Securities are held as collateral for the margin loan, DB Alex. Brown has the right to decide which security to sell in order to protect its interests.

**DB Alex. Brown can increase its "house" maintenance margin requirements at any time and is not required to provide you advance written notice.**
These changes in DB Alex. Brown's "house" requirements often take effect immediately and may result in the issuance of a maintenance margin call. Your failure to satisfy the call may cause the DB Alex. Brown to liquidate or sell securities in your account(s).

**You are not entitled to an extension of time on a margin call.**
While an extension of time to meet margin requirements may be available to customers under certain conditions, a customer does not have a right to the extension.

**It is important that you fully understand certain other features of holding securities in a margin account, such as:**

**Cost of Margin Borrowing**
Interest on margin balances is the sum of the DB Alex. Brown Call Rate plus a charge over the DB Alex. Brown Call Rate based upon the size of the average daily net debit. The DB Alex. Brown Call Rate is based upon a consideration of a variety of factors including DB Alex. Brown's weighted overnight borrowing cost and other internal costs of funds, the Federal Funds rate and other rates for the period.

**Voting Rights**
You may not have the right to vote the shares on matters with voting record dates while carrying a debit balance on your margin loan.

**Payments in Lieu of Dividends**
You may receive a payment in lieu of dividends during the period of a margin loan. This payment may incur a different income tax treatment from the dividend. Please consult with your tax advisor on this matter.

## IMPORTANT: PLEASE RETAIN THESE IMPORTANT DISCLOSURES FOR YOUR RECORDS

Deutsche Bank Securities Inc., acting through its Deutsche Bank Alex. Brown Division ("DB Alex. Brown") is furnishing this document to you to alert you to important matters regarding your account.

**Securities Investor Protection Corporation ("SIPC").**
Deutsche Bank Securities Inc. provides SIPC coverage through Pershing and/or as a member of SIPC. For additional information on this coverage see www.SIPC.org or call the SIPC public information number 202-371-8300.

**Payment for Order Flow.**
DB Alex. Brown receives payment when its routes for execution some orders in certain securities. The determination as to where to route orders is based on several factors subject to the overriding consideration that clients receive best execution. All orders for which DB Alex. Brown receives payment are exposed to the possibility of price improvement, so that all such orders potentially can be executed at prices superior to the best bid or best offer. Payment is received in the form of rebates, or credits against exchange fees and specialist fees. Details will be furnished upon written request.

Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697



Hope Andrade
Secretary of State

# Office of the Secretary of State

## CERTIFICATE OF FILING
## OF

Swartz IP Services Group Inc.
File Number: 801350138

The undersigned, as Secretary of State of Texas, hereby certifies that a Certificate of Formation for the above named Domestic For-Profit Corporation has been received in this office and has been found to conform to the applicable provisions of law.

ACCORDINGLY, the undersigned, as Secretary of State, and by virtue of the authority vested in the secretary by law, hereby issues this certificate evidencing filing effective on the date shown below.

The issuance of this certificate does not authorize the use of a name in this state in violation of the rights of another under the federal Trademark Act of 1946, the Texas trademark law, the Assumed Business or Professional Name Act, or the common law.

Dated: 12/02/2010

Effective: 12/02/2010



Hope Andrade
Secretary of State

*Come visit us on the internet at http://www.sos.state.tx.us/*

**Form 201**

Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
FAX: 512/463-5709

Filing Fee: $300



**Certificate of Formation
For-Profit Corporation**

**Filed in the Office of the
Secretary of State of Texas
Filing #: 801350138 12/02/2010
Document #: 343365560002
Image Generated Electronically
for Web Filing**

## Article 1 - Entity Name and Type

The filing entity being formed is a for-profit corporation. The name of the entity is:

# Swartz IP Services Group Inc.

The name must contain the word "corporation," "company," "incorporated," "limited," or an abbreviation of one of these terms. The name must not be the same as, deceptively similar to or similar to that of an existing corporate, limited liability company, or limited partnership name on file with the secretary of state. A preliminary check for "name availability" is recommended.

### Article 2 – Registered Agent and Registered Office

☑ A. The initial registered agent is an organization (cannot be corporation named above) by the name of:

# Vcorp Services, LLC

**OR**

☐ B. The initial registered agent is an individual resident of the state whose name is set forth below:

C. The business address of the registered agent and the registered office address is:

**Street Address:**
10101 Fondren Road, Suite 515   Houston  TX  77096

### Consent of Registered Agent

☐ A. A copy of the consent of registered agent is attached.

**OR**

☑ B. The consent of the registered agent is maintained by the entity.

## Article 3 - Directors

The number of directors constituting the initial board of directors and the names and addresses of the person or persons who are to serve as directors until the first annual meeting of shareholders or until their successors are elected and qualified are set forth below:

Director 1: **Aaron   Grunfeld**

Address: **2049 Century Park East, Suite 3670   Los Angeles  CA, USA  90067**

## Article 4 - Authorized Shares

The total number of shares the corporation is authorized to issue and the par value of each of such shares, or a statement that such shares are without par value, is set forth below.

| Number of Shares | Par Value (must choose and complete either A or B) | Class | Series |
|---|---|---|---|
| **100,000** | ☑ A. has a par value of $.**001**  ☐ B. without par value. | | |

If the shares are to be divided into classes, you must set forth the designation of each class, the number of shares of each class, and the par value (or statement of no par value), of each class. If shares of a class are to be issued in series, you must provide the designation of each series. The preferences, limitations, and relative rights of each class or series must be stated in space provided for supplemental information.

## Article 5 - Purpose

The purpose for which the corporation is organized is for the transaction of any and all lawful business for which corporations may be organized under the Texas Business Organizations Code.

## Supplemental Provisions / Information

[The attached addendum, if any, is incorporated herein by reference.]

**Effectiveness of Filing**

☑A. This document becomes effective when the document is filed by the secretary of state.

**OR**

☐B. This document becomes effective at a later date, which is not more than ninety (90) days from the date of its signing. The delayed effective date is:

**Organizer**

The name and address of the organizer is set forth below.

**Effie Stern          5670 Wilshire Blvd. Suite 1530 Los Angeles CA 90036**

**Execution**

The undersigned affirms that the person designated as registered agent has consented to the appointment. The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

**Effie Stern**

Signature of organizer

**FILING OFFICE COPY**

# BY-LAWS OF

# SWARTZ IP SERVICES GROUP INC.,

# A TEXAS CORPORATION

### ARTICLE I
### OFFICES

Section 1.01 **Offices.** The Corporation shall have its registered office in the State of Delaware, and may have such other offices and places of business within or outside the State of Delaware as the Board of Directors may from time to time determine or the business of the Corporation may require.

### ARTICLE II
### STOCKHOLDERS

Section 2.01 **Place of Meetings**. Meetings of stockholders for any purpose may be held at such place or places, either within or outside the State of Texas, as shall be designated by the Board of Directors, or by the Chief Executive Officer or the President, as the case may be, with respect to meetings called by him.

Section 2.02 **Annual Meeting**. The annual meeting of stockholders shall be held on such date as may be determined by the Board of Directors. At such meeting, the stockholders shall elect a Board of Directors and transact such other business as may properly come before the meeting.

Section 2.03 **Special Meetings**. Special meetings of stockholders may be called at any time by the Board of Directors, a Chief Executive Officer or by the President, as the case may be and shall be called by the Chief Executive Officer or the President or Secretary, as the case may be, at the written request of stockholders owning a majority of the shares of the Corporation then outstanding and entitled to vote.

Section 2.04 **Notice of Meetings**. Written notice of the annual meeting or any special meeting of stock shall be given to each stockholder entitled to vote thereat, not less than ten nor more than sixty days prior to the meeting, except as otherwise required by statute, and shall state the time and place and, in the case of a special meeting, the purpose or purposes of the meeting. Notice need not be given, however, to any stockholder who submits a signed waiver of notice, before or after the meeting, or who attends the meeting in person or by proxy without objecting to the transaction of business.

Section 2.05 **Quorum**. At all meetings of stockholders, the holders of a majority of the stock issued and outstanding and entitled to vote thereat, present in person or represented by proxy, shall constitute a quorum for the transaction of business, except as otherwise provided by statute, the Certificate of Incorporation or these By-Laws. When a quorum is once present to organize a meeting, it is not broken by the subsequent withdrawal of any

stockholder.

Section 2.06 **Voting**. (a) At all meetings of stockholders, each stockholder having the right to vote thereat may vote in person or by proxy, and, unless otherwise provided in the Certificate of Incorporation or in any resolution providing for the issuance of any class or series of stock adopted by the Board of Directors pursuant to authority vested in the Board by the Certificate of Incorporation, shall have one vote for each share of stock registered in his name. Election of directors shall be by written ballot.

(b) When a quorum is once present at any meeting of stockholders, a majority of the votes cast, whether in person or represented by proxy, shall decide any question or proposed action brought before such meeting, except for the election of directors, who shall be elected by a plurality of the votes cast, or unless the question or action is one upon which a different vote is required by express provision of statute, the Certificate of Incorporation or these By-Laws or an agreement among stockholders, in which case such provision shall govern the vote on the decision of such question or action.

Section 2.07 **Adjourned Meetings**. Any meeting of stockholders may be adjourned to a designated time and place by a vote of a majority in interest of the stockholders present in person or by proxy and entitled to vote, even though less than a quorum is present, or by the Chief Executive Officer or the President, as the case may be if a quorum of stockholders is not present. No notice of such adjourned meeting need be given, other than by announcement at the meeting at which adjournment is taken, and any business may be transacted at the adjourned meeting which might have been transacted at the meeting as originally called. However, if such adjournment is for more than thirty days, or if after such adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at such meeting.

Section 2.08 **Action by Written Consent of Stockholders**. Any action of the stockholders required or permitted to be taken at any regular or special meeting thereof may be taken without any such meeting, notice of meeting or vote if a consent in writing setting forth the action thereby taken is signed by the holders of outstanding stock having not less than the number of votes that would have been necessary to authorize such action at a meeting at which all shares entitled to vote were present and voted. Prompt notice of the taking of any such action shall be given to any stockholders entitled to vote who have not so consented in writing.

Section 2.09 **Stockholders of Record**. (a) The stockholders from time to time entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, or to express consent to any corporate action without a meeting, or entitled to receive payment of any dividend or other distribution or the allotment of any rights, or entitled to exercise any rights in respect of any change, conversion or exchange of stock or for the purpose of any other lawful action, shall be the stockholders of record as of the close of business on a date fixed by the Board of Directors as the record date for any such purpose. Such a record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board of Directors, and shall not, with respect to stockholder meetings, be

more than sixty days nor less than ten days before the date of such meeting, or, with respect to stockholder consents, more than ten days after the date upon which the resolution fixing the record date is adopted by the Board of Directors.

(b) If the Board of Directors does not fix a record date, (i) the record date for the determination of stockholders entitled to notice of or to vote at a meeting of stockholders shall be as of the close of business on the day next preceding the day on which notice of such meeting is given, or, if notice is waived as provided herein, on the day next preceding the day on which the meeting is held; (ii) the record date for determining stockholders entitled to express consent to corporate action in writing without a meeting, where no prior action by the Board of Directors is necessary, shall be the close of business on the day on which the first signed written consent setting forth the action taken or proposed to be taken is delivered to the Corporation; and (iii) the record date for determining stockholders for any other purpose shall be at the close of business on the day on which the resolution of the Board of Directors relating thereto is adopted.

## ARTICLE III
## DIRECTORS

Section 3.01 **Board of Directors**. The management of the affairs, property and business of the Corporation shall be vested in a Board of Directors, the members of which need not be stockholders. In addition to the power and authority expressly conferred upon it by these By-Laws and the Certificate of Incorporation, the Board of Directors may take any action and do all such lawful acts and things on behalf of the Corporation and as are not by statute or by the Certificate of Incorporation or these By-Laws required to be taken or done by the stockholders.

Section 3.02 **Number.** The number of directors shall be as fixed from time to time by the Board of Directors.

Section 3.03 **Election and Term of Directors**. At each annual meeting of the stockholders, the stockholders shall elect directors to hold office until the next annual meeting. Each director shall hold office until the expiration of such term and until his successor, if any, has been elected and qualified, or until his earlier resignation or removal.

Section 3.04 **Annual and Regular Meetings**. The annual meeting of the Board of Directors shall be held promptly after the annual meeting of stockholders, and regular meetings of the Board of Directors may be held at such times as the Board of Directors may from time to time determine. No notice shall be required for the annual or any regular meeting of the Board of Directors.

Section 3.05 **Special Meetings**. Special meetings of the Board of Directors may be called by the Chief Executive Officer or the President, as the case may be, by an officer of the corporation who is also a director or by any two directors, upon one day's notice to each director either personally or by mail, telephone, telecopier, telegraph or electronically, and if by telephone, telecopier, electronically or telegraph confirmed in writing before or

after the meeting, setting forth the time and place of such meeting. Notice of any special meeting need not be given, however, to any director who submits a signed waiver of notice, before or after the meeting, or who attends the meeting without objecting to the transaction of business.

Section 3.06 **Place of Meetings**. (a) The Board of Directors may hold its meetings, regular or special, at such places, either within or outside the State of Texas, as it may from time to time determine or as shall be set forth in any notice of such meeting.

(b) Any meeting of the Board of Directors may be held by means of conference telephone or similar communications equipment whereby all persons participating in the meeting can hear each other, and such participation shall constitute presence at the meeting.

Section 3.07 **Adjourned Meetings**. A majority of the directors present, whether or not a quorum, may adjourn any meeting of the Board of Directors to another time and place. Notice of such adjourned meeting need not be given if the time and place thereof are announced at the meeting at which the adjournment is taken.

Section 3.08 **Quorum of Directors**. A majority of the total number of directors shall constitute a quorum for the transaction of business. The total number of directors means the number of directors the Corporation would have if there were no vacancies.

Section 3.09 **Action of the Board of Directors**. The vote of a majority of the directors present at a meeting at which a quorum is present shall be the act of the Board of Directors, unless the question or action is one upon which a different vote is required by express provision of statute, the Certificate of Incorporation or these By-Laws, in which case such provision shall govern the vote on the decision of such question or action. Each director present shall have one vote.

Section 3.10 **Action by Written Consent of Directors**. Any action required or permitted to be taken at any meeting of the Board of Directors or of any committee thereof may be taken without a meeting, if a written consent thereto is signed by all members of the Board of Directors or of such committee, and such written consent is filed with the minutes of proceedings of the Board of Directors or committee.

Section 3.11 **Resignation**. A director may resign at any time by giving written notice to the Board of Directors, the Chief Executive Officer or the President, as the case may be, or the Secretary of the Corporation. Unless otherwise specified in the notice, the resignation shall take effect upon receipt by the Board of Directors or such officer, and acceptance of the resignation shall not be necessary.

Section 3.12 **Removal of Directors**. Any or all of the directors may be removed with or without cause by the stockholders.

Section 3.13 **Newly Created Directorships and Vacancies**. Newly created directorships resulting from an increase in the number of directors or vacancies occurring in the Board of Directors for any reason except the removal of directors without cause may be filled

by a vote of the majority of the directors then in office, although less than a quorum. Vacancies occurring by reason of the removal of directors without cause shall be filled by a vote of the stockholders. A director elected to fill a newly created directorship or to fill any vacancy shall hold office until the next annual meeting of stockholders, and until his successor, if any, has been elected and qualified.

Section 3.14 **Chairman**. At all meetings of the Board of Directors the Chairman of the Board or, if one has not been elected or appointed or in his absence, a chairman chosen by the directors present at such meeting, shall preside.

Section 3.15 **Committees Appointed by the Board of Directors**. The Board of Directors may, by resolution passed by a majority of the entire Board of Directors or by written consent of all of the directors, designate one or more committees, each committee to consist of one or more of the directors. The Board may also designate one or more directors as alternate members of any committee who may replace any absent or disqualified committee member at any committee meeting. Any such committee, to the extent provided in the resolution, except as restricted by law, shall have and may exercise the powers of the Board of Directors in the management of the affairs, business and property of the Corporation, and may authorize the seal of the Corporation to be affixed to all papers which may require it.

Section 3.16 **Compensation**. No compensation shall be paid to directors, as such, for their services, but the Board of Directors may authorize payment of an annual retainer and/or fixed sum and expenses for attendance at each annual, regular or special meeting of the Board of Directors. Nothing herein contained shall be construed to preclude any director from serving the corporation in any other capacity and receiving compensation therefor.

**ARTICLE IV**
**OFFICERS**

Section 4.01 **Offices, Election and Term**. (a) At its annual meeting the Board of Directors shall elect or appoint (i) a Chief Executive Officer or President, as the case may be, and (ii) a Secretary, and may, in addition, elect or appoint at any time such other officers as it may determine. Any number of offices may be held by the same person.

(b) Unless otherwise specified by the Board of Directors, each officer shall be elected or appointed to hold office until the annual meeting of the Board of Directors next following his election or appointment and until his successor, if any, has been elected or appointed and qualified, or until his earlier resignation or removal.

(c) Any officer may resign at any time by giving written notice to the Board of Directors, the Chief Executive Officer or the President, as the case may be, or the Secretary of the Corporation. Unless otherwise specified in the notice, the resignation shall take effect upon receipt thereof, and the acceptance of the resignation shall not be necessary to make it effective.

(d) Any officer elected or appointed by the Board of Directors may be removed by the Board of Directors with or without cause. Any vacancy occurring in any office by reason of death, resignation, removal or otherwise may be filled by the Board of Directors.

Section 4.02 **Powers and Duties**. The officers, agents and employees of the corporation shall each have such powers and perform such duties in the management of the affairs, property and business of the Corporation, subject to the control of and limitation by the Board of Directors, as generally pertain to their respective offices, as well as such powers and duties as may be authorized from time to time by the Board of Directors.

Section 4.03 **Sureties and Bonds**. If the Board of Directors shall so require, any officer, agent or employee of the Corporation shall furnish to the Corporation a bond in such sum and with such surety or sureties as the Board of Directors may direct, conditioned upon the faithful performance of his duties to the Corporation and including responsibility for negligence and for the accounting for all property, funds or securities of the corporation which may come into his hands.

**ARTICLE V**
**CERTIFICATES AND TRANSFER OF SHARES**

Section 5.01 **Certificates**. Unless otherwise provided pursuant to the General Corporation Law of the State of Texas, the shares of stock of the Corporation shall be represented by certificates, as provided by the General Corporation Law of the State of Texas. They shall be numbered and entered in the books of the Corporation as they are issued.

Section 5.02 **Lost or Destroyed Certificates**. The Board of Directors may in its discretion authorize the issuance of a new certificate or certificates in place of any certificate or certificates theretofore issued by the Corporation, alleged to have been lost, stolen or destroyed. As a condition of such issuance, the Board of Directors may require, either generally or in each case, the record holder of such certificates, or his legal representative, to furnish an affidavit setting forth the facts of such alleged loss, theft or destruction, together with proof of advertisement of the alleged loss, theft or destruction, and a bond with such surety and in such form and amount as the Board may specify indemnifying the Corporation, any transfer agent and registrar against any claim against any of them relating to such lost, stolen or destroyed certificates.

Section 5.03 **Transfer of Shares**. (a) Upon surrender to the Corporation or the transfer agent of the Corporation of a certificate for shares or other securities of the Corporation duly endorsed or accompanied by proper evidence of succession, assignment or authority to transfer, the corporation shall issue a new certificate to the person entitled thereto, and cancel the old certificate, except to the extent the Corporation or such transfer agent may be prevented from so doing by law, by the order or process of any court of competent jurisdiction, or under any valid restriction on transfer imposed by the Certificate of Incorporation, these By-Laws, or agreement of security holders. Every such transfer shall be entered on the transfer books of the Corporation.

(b) The Corporation shall be entitled to treat the holder of record of any share or other security of the Corporation as the holder in fact thereof and shall not be bound to recognize any equitable or other claim to or interest in such share or security on the part of any other person whether or not it shall have express or other notice thereof, except as expressly provided by law.

## ARTICLE VI
## INDEMNIFICATION

Section 6.01 **Indemnification**. The Corporation shall indemnify the directors, officers, agents and employees of the Corporation in the manner and to the full extent provided in the General Corporation Law of the State of Texas. Such indemnification may be in addition to any other rights to which any person seeking indemnification may be entitled under any agreement, vote of stockholders or directors, any provision of these By-Laws or otherwise. The directors, officers, employees and agents of the Corporation shall be fully protected individually in making or refusing to make any payment or in taking or refusing to take any other action under this Article VI in reliance upon the advice of counsel.

## ARTICLE VII
## MISCELLANEOUS

Section 7.01 **Corporate Seal**. The seal of the Corporation shall be circular in form and bear the name of the Corporation, the year of its organization and the words, "Corporate Seal, Texas". The seal of the certificates for shares or any corporate obligation for the payment of money, or on any other instrument, may be a facsimile, engraved, printed or otherwise reproduced.

Section 7.02 **Execution of Instruments**. All corporate instruments and documents shall be signed or countersigned, executed, and, if desired, verified or acknowledged by a proper officer or officers or such other person or persons as the Board of Directors may from time to time designate.

Section 7.03 **Fiscal Year**. The fiscal year of the Corporation shall be as determined by the Board of Directors.

## ARTICLE VIII
## AMENDMENTS

Section 8.01 **Amendments**. These By-Laws may be altered, amended or repealed from time to time by the stockholders or by the Board of Directors without the assent or vote of the stockholders.

**CERTIFICATE OF SECRETARY**

**OF**

**Swartz IP Services Group Inc.**
**A Texas Corporation**

I am the duly elected, qualified and acting Secretary of Swartz IP Services Group
Inc., a Texas corporation, and certify that the foregoing Bylaws were adopted as the
Bylaws of the Corporation as of December 02, 2010 by the Director of the Corporation.

Dated: As of December 02, 2010

_____
David Bergstein, Secretary

IRS  DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
CINCINNATI  OH   45999-0023

Date of this notice:  11-10-2011

Employer Identification Number:
███████6794

Form:  SS-4

Number of this notice:  CP 575 A

SWARTZ IP SERVICES GROUP INC
2425 COLORADO AVE STE 205
SANTA MONICA, CA  90404

For assistance you may call us at:
1-800-829-4933

IF YOU WRITE, ATTACH THE
STUB AT THE END OF THIS NOTICE.


                    WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER

         Thank you for applying for an Employer Identification Number (EIN).  We assigned you
EIN ███████6794.  This EIN will identify you, your business accounts, tax returns, and
documents, even if you have no employees.  Please keep this notice in your permanent
records.

         When filing tax documents, payments, and related correspondence, it is very important
that you use your EIN and complete name and address exactly as shown above.  Any variation
may cause a delay in processing, result in incorrect information in your account, or even
cause you to be assigned more than one EIN.  If the information is not correct as shown
above, please make the correction using the attached tear off stub and return it to us.

         Based on the information received from you or your representative, you must file
the following form(s) by the date(s) shown.

                    Form 1120                            11/10/2011

         After our review of your information, we have determined that you have not filed
tax returns for the above-mentioned tax period(s) dating as far back as 2011.  Please
file your return(s) by 11/25/2011.  If there is a balance due on the return(s),
penalties and interest will continue to accumulate from the due date of the return(s)
until it is filed and paid.  If you were not in business or did not hire any employees
for the tax period(s) in question, please file the return(s) showing you have no
liabilities.

         If you have questions about the form(s) or the due date(s) shown, you can call us at
the phone number or write to us at the address shown at the top of this notice.  If you
need help in determining your annual accounting period (tax year), see Publication 538,
Accounting Periods and Methods.

         We assigned you a tax classification based on information obtained from you or your
representative.  It is not a legal determination of your tax classification, and is not
binding on the IRS.  If you want a legal determination of your tax classification, you may
request a private letter ruling from the IRS under the guidelines in Revenue Procedure
2004-1, 2004-1 I.R.B. 1 (or superseding Revenue Procedure for the year at issue).  Note:
Certain tax classification elections can be requested by filing Form 8832, Entity
Classification Election.  See Form 8832 and its instructions for additional information.

         **IMPORTANT INFORMATION FOR S CORPORATION ELECTION:**

         If you intend to elect to file your return as a small business corporation, an
election to file a Form 1120-S must be made within certain timeframes and the
corporation must meet certain tests.  All of this information is included in the
instructions for Form 2553, Election by a Small Business Corporation.

(IRS USE ONLY)   575A             11-10-2011   SWAR   B   9999999999   SS-4

If you are required to deposit for employment taxes (Forms 941, 943, 940, 944, 945, CT-1, or 1042), excise taxes (Form 720), or income taxes (Form 1120), you will receive a Welcome Package shortly, which includes instructions for making your deposits electronically through the Electronic Federal Tax Payment System (EFTPS). A Personal Identification Number (PIN) for EFTPS will also be sent to you under separate cover. Please activate the PIN once you receive it, even if you have requested the services of a tax professional or representative. For more information about EFTPS, refer to Publication 966, *Electronic Choices to Pay All Your Federal Taxes*. If you need to make a deposit immediately, you will need to make arrangements with your Financial Institution to complete a wire transfer.

The IRS is committed to helping all taxpayers comply with their tax filing obligations. If you need help completing your returns or meeting your tax obligations, Authorized e-file Providers, such as Reporting Agents (payroll service providers) are available to assist you. Visit the IRS Web site at www.irs.gov for a list of companies that offer IRS e-file for business products and services. The list provides addresses, telephone numbers, and links to their Web sites.

To obtain tax forms and publications, including those referenced in this notice, visit our Web site at www.irs.gov. If you do not have access to the Internet, call 1-800-829-3676 (TTY/TDD 1-800-829-4059) or visit your local IRS office.

**IMPORTANT REMINDERS:**

* Keep a copy of this notice in your permanent records. **This notice is issued only one time and the IRS will not be able to generate a duplicate copy for you.**

* Use this EIN and your name exactly as they appear at the top of this notice on all your federal tax forms.

* Refer to this EIN on your tax-related correspondence and documents.

If you have questions about your EIN, you can call us at the phone number or write to us at the address shown at the top of this notice. If you write, please tear off the stub at the bottom of this notice and send it along with your letter. If you do not need to write us, do not complete and return the stub. Thank you for your cooperation.

Keep this part for your records.          CP 575 A (Rev. 7-2007)

--------------------------------------------------------------------------------

Return this part with any correspondence
so we may identify your account. Please                              CP 575 A
correct any errors in your name or address.
                                                                9999999999

Your Telephone Number   Best Time to Call   DATE OF THIS NOTICE:  11-10-2011
(     )         -                            EMPLOYER IDENTIFICATION NUMBER:        6794
_____      _____        FORM:  SS-4           NOBOD

INTERNAL REVENUE SERVICE                     SWARTZ IP SERVICES GROUP INC
CINCINNATI  OH   45999-0023                  2425 COLORADO AVE STE 205
IlıIııIılıIıIııIıIıIııIıIıIıIıIıIııIıIı       SANTA MONICA, CA  90404

Certificate of Account Status - Letter of Good Standing   https://ourcpa.cpa.state.tx.us/coa/servlet/cpa.app.coa.CoaLetter



# TEXAS COMPTROLLER OF PUBLIC ACCOUNTS

### SUSAN COMBS · COMPTROLLER · AUSTIN, TEXAS 78774

November 10, 2011

## CERTIFICATE OF ACCOUNT STATUS

THE STATE OF TEXAS
COUNTY OF TRAVIS

I, Susan Combs, Comptroller of Public Accounts of the State of Texas, DO
HEREBY CERTIFY that according to the records of this office

**SWARTZ IP SERVICES GROUP INC.**

is, as of this date, in good standing with this office having no franchise
tax reports or payments due at this time. This certificate is valid through
the date that the next franchise tax report will be due May 15, 2012.

This certificate does not make a representation as to the status of the
entity's registration, if any, with the Texas Secretary of State.

This certificate is valid for the purpose of conversion when the converted
entity is subject to franchise tax as required by law. This certificate is
not valid for any other filing with the Texas Secretary of State.

GIVEN UNDER MY HAND AND
SEAL OF OFFICE in the City of
Austin, this 10th day of
November 2011 A.D.

*Susan Combs*

Susan Combs
Texas Comptroller

Taxpayer number: ███████
File number: 0801350138

Form 05-304 (Rev. 12-07/17)

1 of 1                                                                11/10/2011 1:27 PM



