# EXHIBIT L

```
                                I2R7BER1

 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    UNITED STATES OF AMERICA,                New York, N.Y.

 4              v.                              16 Cr. 0746(PKC)

 5    DAVID BERGSTEIN,

 6                    Defendant.

 7    ------------------------------x
                                                February 27, 2018
 8                                              9:30 a.m.
      Before:
 9
                       HON. P. KEVIN CASTEL,
10
                                                District Judge
11
                             APPEARANCES
12
      GEOFFREY S. BERMAN
13         Interim United States Attorney for the
           Southern District of New York
14    BY:  EDWARD IMPERATORE
           ROBERT ALLEN
15         ELISHA KOBRE
              Assistant United States Attorneys
16
      BIENERT, MILLER & KATZMAN, PLC
17         Attorneys for Defendant
      BY:  THOMAS H. BIENERT, JR.
18         ANTHONY R. BISCONTI

19    SATTERLEE STEPHENS LLP
           Attorneys for Defendant
20    BY:  ANDREW L. FISH

21              - also present -

22    Ellie Sheinwald, U.S. Paralegal Specialist
      Sarah Emmerick, U.S. Paralegal Specialist
23    Caroline Howland, Defense Paralegal Specialist

24    SA Shannon Bieniek, FBI

25
```

1              (jury present)
2              THE COURT:  Please be seated.  Good morning, ladies
3    and gentlemen.  Counsel and I have been working, and I
4    apologize we didn't bring you out sooner, but we're working.
5              All right.  Mr. Bienert, you may call your next
6    witness.
7              MR. BIENERT:  Yes, your Honor, we call the defendant,
8    David Bergstein.
9              THE COURT:  OK.
10    DAVID BERGSTEIN,
11         the defendant, in his own behalf,
12         having been duly sworn, testified as follows:
13   DIRECT EXAMINATION
14   BY MR. BIENERT:
15   Q.  So, Mr.Bergstein, you have obviously been here the entire
16   three plus weeks listening to the testimony in the case, right?
17   A.  Yes.
18   Q.  I'm going to touch on a couple of big picture topics and
19   then we will go through a narrative.
20              You've heard the testimony from Mr. Wellner and
21   Mr. Hallac, each giving their own testimony as to the nature of
22   their relationship with you in 2011 and '12 frame.
23   A.  Yes.
24   Q.  What was the relationship that you had with Mr. Hallac and
25   Mr. Wellner in Weston in terms of what it was to do and

1     proposed making a loan to one of my entities and then using
2     part of the proceeds of that loan to do the first leg of the
3     Pineboard funding.
4     Q.  And is this what led to the TT Swartz IP loan?
5     A.  Correct.
6     Q.  Did you -- who was it who raised the idea of the TT Fund
7     being used to make the loan?
8     A.  Again, I didn't know one fund from the other.  They
9     proposed frankly initially making a $10 million loan, and then
10    it evolved into what became the ultimate agreement and up to
11    $25 million loan.  They proposed making the loan.  I did not
12    know what Wimbledon TT was, or Partners, or any of the other
13    funds.
14    Q.  Did it matter to you what loan was used -- what fund was
15    used for the loan?
16    A.  No.
17    Q.  So, what is your understanding?  If you can tell us, what
18    was sort of the overall structure that was agreed upon for the
19    TT Swartz IP loan?
20    A.  Well, that is a very simple structure.  Weston agreed to
21    loan up to $25 million to Swartz IP, with a minimum of 12 and a
22    half million dollars.  It was a five year loan subject to some
23    early call provisions which we described as redemptions.  They
24    were represented by counsel.  We went through a drafting of the
25    document, which I understood had been largely draft, because

1    they were considering almost an exact arrangement, and I
2    negotiated certain provisions, the most important one of which
3    is I said I am not doing the loan unless I can do what is
4    called related party transactions.
5             So, we modified the document in a drafting to allow us
6    to do related party transactions.
7    Q.  You can take a look to the N003.  Tell me if you recognize
8    what this is, sir.
9    A.  Yes.
10   Q.  Does this relate to what you just testified about
11   negotiating and modifying the draft note loan agreement?
12   A.  Yes.
13   Q.  Do you recognize who made changes to this draft?
14   A.  Well, both Keith and -- both Wellner's lawyers -- I don't
15   know who they were -- would have made changes.  And I think on
16   my side I probably just marked it up.  I don't remember
17   specifically.
18            MR. BIENERT:  I would like to move into evidence
19   Exhibit N003.
20            MR. IMPERATORE:  Objection, your Honor.  It's not an
21   executed agreement.
22            MR. BIENERT:  It's not for that purpose, your Honor.
23   It's about the negotiations and alterations.
24            THE COURT:  Overruled.
25            (Defendant's Exhibit N003 received in evidence)

1  A.  There are two accounts both referencing the side letter.
2  They are not brokerage accounts.  One of them, as the side
3  letter says, is a securities account, and the other one, as the
4  side letter says, is a loan account.  So they're not brokerage
5  accounts, they are two accounts.
6  Q.  When those were created in November 2011, they had no money
7  in them, right?
8  A.  That's correct.
9  Q.  And it was TT's money that infused that account, right?
10 A.  Correct.
11 Q.  Roughly 12-and-a-half-million dollars?
12 A.  Correct.
13 Q.  And that was the money, a portion of which you claim Swartz
14 IP lent to Arius Libra, right?
15 A.  Correct.
16 Q.  And you negotiated the loan agreement between TT and Swartz
17 IP?
18 A.  Yes.
19 Q.  And you helped edit the agreement and the note?
20 A.  Yes.
21 Q.  And you agreed that Swartz IP would meet the Tewksbury
22 returns plus one percent, right?
23 A.  That's what the agreement said, that the rate of interest
24 that would be paid would be Tewksbury plus 1 percent, but it
25 doesn't -- it's not -- I didn't agree that it would meet the