# EXHIBIT P

C.S.R. 12553

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3

4   THE WIMBLEDON FUND, SPC (CLASS     )
    TT),                               )
5                                      )
            PLAINTIFFS,     )
6                                      )
      VS.                   ) CASE NO.
7                           ) 2:15-CV-6633-CAS-ASJWX
                                       )
8                                      )
    GRAYBOX LLC; INTEGRATED            )
9   ADMINISTRATION; EUGENE SCHER, AS   )
    TRUSTEE OF BERGSTEIN TRUST; AND    )
10  CASCADE TECHNOLOGIES CORP.,        )
                                       )
11          DEFENDANTS.     )
    _____)
12

13

14

15

16          DEPOSITION OF KEITH KELTY, taken on behalf of the

17  Plaintiff, at 10100 Santa Monica Boulevard, 13th Floor,

18  Los Angeles, California, commencing at

19  9:34 a.m., Friday, March 29, 2019, before Sandra Mitchell,

20  C.S.R. 12553, pursuant to Notice.

21

14  generally custodians hold the assets in their name.  I

15  don't think SocGen was comfortable with Swartz IP, and

16  Albert pushed the envelope to make it happen.

17     Q   If you turn to exhibit seven, please.  That's

18  are two documents that were attached.  There are two

19  document attached to this e-mail to Kia Jam to David

20  Bergstein, et al.  And the first is a letter dated

21  November 17, 2011 to Keith Wellner.

22        Have you seen this letter before?

23     A   Yes, we were referred to this as a side letter.

24     Q   Okay.  When did you first see the side letter?

25     A   After we were notified of Swartz IP for the

THIS IS A ROUGH TRANSCRIPT          142
DO NOT CITE

1  first time when we began investigations.  It could be

2  with the information provided to us by Albert.  Could be

3  information we received from elsewhere.  I don't know

4  but I'll say it was after the fact.

5     Q   As of November 2011, Wimbledon Fund was not in

6  possession of the side letter; correct?

7     A   I do not think so.

8     Q   And in fact, the next document after the side

9  letter is the note purchase agreement between Swartz IP

10  and SocGen, and that's all also an agreement that

11  Wimbledon Fund didn't discovery until the sometime nin

12   2012?

13   A   Correct.

14   Q   As of November 2011 when the directors of

15   Wimbledon Fund executed the note purchase agreement,

16   they were not relying on the side letter; correct?

17   A   Correct.

18   Q   They didn't even know a side letter existed;

19   correct?

20   A   That's correct.

21   Q   Now if we look at the side letter in the third

22   bullet point, it says, "upon receipt of 12.5 million

23   from W. TT. which I assume is Wimbledon Fund T. SIP

24   agrees to make the following distributions 325,675 to

25   partners fund and 4,474,325 to or as directed by

THIS IS A ROUGH TRANSCRIPT          143
DO NOT CITE

1   Pineboard Holdings Inc.

2   Do you see that?

3   A   I do.

4   Q   In or around November 2011, do you know if

5   Swartz IP made any representations that it was going to

6   use the monies that were received by Wimbledon?

7   A   Not to the fund.

8   Q   In the note purchase agreement, between Swartz

9   IP and Wimbledon Fund, there is no use of proceeds

2   Wimbledon Fund the entity that you're representing today

3   was unaware that over $3 million was paid to a different

4   Wimbledon called the Partners Fund?

5     A   That's correct.

6     Q   The lawsuit that you're referenced, where was

7   that been filed?

8     A   New York.  We're all over the place, so bear

9   with me.  We have four lawsuits total.

10    Q   That lawsuit is ongoing; is that right?

11    A   Yes.

12    Q   And then the second subparagraph under 3 is

13  4,474,325 or to as directed by Pineboard Holdings.  Are

14  you aware that at any point between November 2011 and

15  August 2012, that Wimbledon TT was advised that Swartz

16  IP was going to send 4,474, 325 to Pineboard?

17    A   Wimbledon was not advised.

18    Q   This will be Exhibit 9.

19        (Exhibit      was marked for

20        identification by the Court Reporter

21        and is attached hereto.)

22  BY MR. WIECHERT:

23    Q   Now you'll notice in earlier dated in August of

24  2011 which is approximately a couple months before the

25  execution of the note purchase agreement.

              THIS IS A ROUGH TRANSCRIPT          148
                    DO NOT CITE

1      Do you see that?

2    A   I do.

3    Q   Do you recall when Wimbledon Fund first started

4  doing diligence on David Bergstein to find out who he

5  aws and what he was all about?

6    A   After November -- September 30, 2012.  Or was

7  August 30, whatever the notice from Mr. Hallac was sent

8  out about SIP.  August 30, I think it was.

9      Okay.

10    Q   Okay.  And excuse me if I've asked this in a

11  different way before.  I don't want to repetitive.  At

12  the time that the directors Wimbledon executed the note

13  purchase agreement, that was signed by Kia Jam, they did

14  not know who Kia Jam was; correct?

15    A   I don't think so.

16    Q   You think I'm correct?

17    A   Yes.

18    Q   Yes?

19    A   I do.

20    Q   So from the standpoint of the directors, if

21  John Smith had signed, it wouldn't have mattered?

22    A   Same thing.  This same thing, yeah.

23    Q   Okay.  There are a number of discovery

24  responses that were provided to us and they didn't have

25  verification.

THIS IS A ROUGH TRANSCRIPT            149

23   A   This one.

24   Q   I want to go down some of the topics and make

25   sure I covered everything.


                    THIS IS A ROUGH TRANSCRIPT              151
                         DO NOT CITE




1    A   Okay.  Did you ever sign a version of this side

2    letter.  We don't have one.

3    Q   You got what we got.

4    A   I guess.

5    Q   And so page 7 of the Exhibit 1, deposition

6    topics.  I just want to run down some of these if I

7    haven't covered them already.

8        But other than Mr. Jam signing as vice

9    president on the purchse agreement and notes.  What

10   other facts do you support the notiong that he was the

11   alter ego of SIP?

12   A   There is an affidavit that he signed, his own

13   affidavit.  Describing him as an officer of Swartz IP.

14   There is all the wire transfers some of which he's

15   involved in by e-mail and actually receiving funds

16   personally.  This is more legal -- I'm not a lawyer but

17   I'm just talking off top of my head of the it's not like

18   I made notes for this.  But we have our reasons.  We

19   have our legal team has a list of reasons.

20   Q   All right.  I'm asking you for what you

21  understand?

22      A    Just evidence that I've seen.  There is a lot

23  that points to Mr. Jam being involved in a much larger

24  way.  In fact the fact that he signed the agreement to

25  me dictates that this fraud or the Swartz IP transaction

                    THIS IS A ROUGH TRANSCRIPT              152
                         DO NOT CITE

1   was caused.  Had Mr. Jam not signed the Swartz IP note,

2   we might not even be here today could be completely

3   different scenario.  And the Swartz IP transaction may

4   not have never happened.

5       Q    And the sentiment you just expressed.

6       A    Yes.

7       Q    If David Bergstein had asked someone else to

8   sign that document like Frymi Biedak would that have

9   changed anything?

10      A    Then it would have been Frymi Biedak that

11  triggered the fraud.

12      Q    But in terms ever actually going forth with the

13  note purchase agreement it didn't matter whose name was

14  on this agreement; correct?

15      A    Weston directed the directors of the fund to

16  sign the note purchase agreement.  I don't believe that

17  they knew who the representative of Swartz IP was at the

18  time.

19    Q    You've pulled or at least your client has

20    pulled the bank reports of Deutsche Bank where the two

21    wires from Wimbledon to Swartz IP totaling the

22    $17 million went?

23    A    I was aware of that.

24    Q    Did you pull the signature cards as well.

25    A    Yes.


THIS IS A ROUGH TRANSCRIPT              153
DO NOT CITE



1    Q    You realize David Bergstein was the sole signer

2    on this account, correct?

3    A    From the signature cards I've seen?

4    Q    Yes?

5    A    Yes.

6    Q    Paragraph 2, all facts supporting or refuting

7    or relating to the allegations in the complaint that I

8    fraudulently received $2 million of this NPA proceed for

9    improper use including personal benefit to Mr. Bergstein

10    and/or Mr. Jam, are you aware that Integrated

11    Administration spent some monies on trying to develop a

12    medical billing business?

13    A    You know they could say what they want.  I'm

14    not aware.

15    Q    Number 4 is all facts and documents relating to

16    all due diligence conducte by Wimbledon realting to