# EXHIBIT R

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

THE WIMBLEDON FUND, SPC (CLASS )
TT),                              )
                                  )
            PLAINTIFFS,           )
                                  )
   VS.                            ) CASE NO.
                                  ) 2:15-CV-6633-CAS-ASJWx
                                  )
GRAYBOX LLC; INTEGRATED           )
ADMINISTRATION; EUGENE SCHER, AS  )
TRUSTEE OF BERGSTEIN TRUST; AND   )
CASCADE TECHNOLOGIES CORP.,       )
                                  )
            DEFENDANTS.           )
_____)


VIDEOTAPED DEPOSITION OF KIARASH JAM

TAKEN ON

WEDNESDAY, MARCH 27, 2019


Sandra Mitchell
C.S.R. 12553

10:57:34  1  mistakenly trusted him.
         2      Q   So I take it it's your testimony that you only
         3  consult attorneys when signing legal documents if you
         4  believe there's something nefarious going on?
10:57:44  5      A   No.  In this particular case -- in this
         6  particular case, I didn't think there was any reason to
         7  consult lawyers.  David would -- had a bunch of lawyers
         8  that he was dealing with that were working on a number
         9  of things with him, and I just assumed that these were
10:57:58 10  all already vetted by -- by legal staff and I didn't
        11  need to do that.
        12      Q   Even though you were the signatory, you saw no
        13  reason to secure independent legal advice to protect
        14  your own individual interest?
10:58:11 15      A   Unfortunately not.
        16          MR. WIECHERT:  Objection.  Asked and answered
        17  now a few times.
        18          THE WITNESS:  Sorry.
        19  BY MR. WALKER:
10:58:16 20      Q   Now, when you say, "Jeff, please make sure this
        21  gets loaded up," what was that instructing Jeff to do?
        22      A   Just to load it up to, like, a, probably, box
        23  or some place where the documents could be find because
        24  there was a -- always a scramble to find documents.  So
10:58:30 25  I was trying to be organized; trying to ask Keith to

Kiarash Jam

Page 79

```
10:58:33   1    countersign and send it back so we could have organized
           2    files.
           3         Q    And you say, "I will file original."
           4              Did I read that correctly?
10:58:41   5         A    Yes.
           6         Q    Where were you filing it?
           7         A    These files I would probably give to David's
           8    office.  Frymi would -- was the keeper of kind of all
           9    things in David's office.  All the filing and stuff.
10:58:52  10         Q    So she was down the hall from you?
          11         A    Yes, sir.
          12         Q    It was the same office you were located at?
          13         A    Yes, sir.
          14         Q    Okay.  Let's go to the first page -- the second
10:59:00  15    page of this exhibit, sir, Page 282.
          16         A    Okay.
          17         Q    Do you see that?
          18         A    Yes, I do.
          19         Q    Okay.  So this is the first page of a two-page
10:59:11  20    letter dated November 17, 2011; correct?
          21         A    Yes, sir.
          22         Q    And it's a letter that you signed on behalf of
          23    Swartz IP Services, Inc.; correct?
          24         A    Yes, sir.
10:59:24  25         Q    And your signature appears there on the second
```

```
10:59:26   1    page of the letter; correct?
           2       A    Yes, sir.
           3       Q    All right.  And you were sending the letter to
           4    Keith Wellner for WTT as defined below, whose title is
10:59:40   5    chief operating officer of Weston Capital Management;
           6    correct?
           7       A    Yes, sir.
           8       Q    Now, the first paragraph states, "This letter
           9    is to be read in conjunction with the note and NPA as
10:59:53  10    defined below."
          11            Did I read that correctly?
          12       A    Yes.
          13       Q    Did you understand that to reference the
          14    reference note that you signed?
10:59:59  15       A    I did not read this letter.
          16       Q    Did you understand NPA to reference the note
          17    purchase agreement that you signed?
          18            MR. WIECHERT:  No foundation.
          19            THE WITNESS:  I did not read this letter.
11:00:07  20    BY MR. WALKER:
          21       Q    The second sentence states, "The
          22    representations made in this letter are a material
          23    inducement to WTT, defined as Wimbledon Fund (Class TT),
          24    who has relied on the representations contained herein
11:00:23  25    in making their decision to enter into that certain note
```

```
11:00:27   1    dated November 14, 2011."
           2           Did I read that correctly?
           3    A     You did.
           4    Q     Now, when it says that these -- the
11:00:32   5    representations made in this letter are a material
           6    inducement to WTT, do you recognize that to be the same
           7    entity that is suing you in this lawsuit?
           8    A     Yes, I do.
           9    Q     And you understand that Class TT, the same
11:00:47  10    entity that's referenced in this correspondence, is
          11    suing you in part for the documents that you executed on
          12    behalf of Swartz IP?
          13    A     Yes, I do.
          14    Q     Going to the next section, it says, "Swartz IP
11:01:05  15    represents and warrants as follows."
          16           And then there's a list of items; correct?
          17    A     Yes, sir.
          18    Q     Okay.  The first item is "SIP maintains an
          19    account at Deutsche Bank, Alex Brown in its name," and
11:01:16  20    provides an account number; correct?
          21    A     That's what it says.
          22    Q     Prior to signing this letter, did you engage in
          23    any rudimentary diligence to determine whether or not
          24    that account existed?
11:01:26  25    A     I did not.
```

```
11:01:27   1        Q    It goes on to state in Item 2, "Until such time
           2   as that certain note -- and then I'll just cut down a
           3   little bit -- has been repaid in full, Swartz IP agrees
           4   to maintain the Deutsche Bank account and agrees not to
11:01:40   5   transfer funds out of the Deutsche Bank account other
           6   than in accordance with the terms of this letter."
           7             Did I read that correctly?
           8        A    Yes, you did.
           9             MR. WIECHERT:  Well, and you left out "the note
11:01:50  10   or the note purchase agreement dated November 14, 2011,
          11   between WTT and SIP (NPA)."
          12             MR. WALKER:  I don't require any instructions
          13   on how to ask a question.  If you hadn't interpreted me,
          14   I was going to go there.
11:02:06  15             MR. WIECHERT:  Well, Counsel, when you refer to
          16   one part of a sentence and leave out other significant
          17   agreements in that sentence, at least based on the
          18   sentence, it seems like the question is incomplete.  So
          19   I was trying to help you along there.
11:02:16  20             MR. WALKER:  I don't require your assistance.
          21   And it's only incomplete if I don't ask the next
          22   question, at which point you could then make your point.
          23             MR. WIECHERT:  In this case, it would have
          24   helped.
11:02:24  25             MR. WALKER:  No, it would not have helped.
```

Kiarash Jam

Page 83

11:02:26  1   BY MR. WALKER:
          2        Q    Now, it goes on to also say that you agree not
          3   to transfer funds out of the Deutsche Bank account in
          4   accordance with the terms of the note; correct?
11:02:35  5        A    That's what it says, yes.
          6        Q    It also goes on to say that you agree not to
          7   transfer funds out of the Deutsche Bank account in
          8   accordance with the terms of the note purchase
          9   agreement; correct?
11:02:44 10        A    And when you say "you," you mean SIP?
         11        Q    Yes.
         12        A    Okay.  That's what it says, yes.
         13        Q    Okay.  Did you understand by signing this
         14   letter that you were committing Swartz IP to these
11:02:53 15   terms?
         16             MR. WIECHERT:  Calls for speculation.  No
         17   foundation.
         18             THE WITNESS:  I did not read this letter when I
         19   signed it.
11:02:59 20   BY MR. WALKER:
         21        Q    Why is that?
         22        A    Again, as I told you, I trusted David at the
         23   time.  He said it's just part of ordinary course of
         24   business.  All this stuff is, I think, negotiated,
11:03:11 25   great.  All the stuff we had to do, everybody seems

eLitigation Services, Inc. - els@els-team.com

```
11:03:16   1   happy; Keith Wellner comes to the office, sits over
           2   there, and no one's unhappy.  I thought everything was
           3   according to plan.  He would send me the document and
           4   say, please sign it right away, and I would sign it and
11:03:25   5   send it back to him.
           6       Q    Were --
           7       A    I didn't feel like I needed a lawyer.  I
           8   thought David was, you know, talking to the hundreds of
           9   lawyers that he has employed or had at the time.  And
11:03:34  10   that everything was done by the book.  I wasn't even --
          11   I didn't even -- I didn't even read the document.
          12       Q    Were the Class TT investors happy?
          13            MR. WIECHERT:  Calls for speculation.  No
          14   foundation.
11:03:46  15            THE WITNESS:  I have no idea.  I don't know who
          16   they are.  I've never interacted with them.  I don't
          17   know who, where, what, how.  I've never had any
          18   interaction with the investors of Class TT.
          19   BY MR. WALKER:
11:03:57  20       Q    And, again, when you're looking at this letter,
          21   clearly it's a letter that you're signing on behalf of
          22   Swartz IP that is making certain representations and
          23   providing certain warrants; correct?
          24            MR. WIECHERT:  Letter speaks for itself.
11:04:11  25            THE WITNESS:  Yes, the letter is making
```

Page 85

11:04:13  1    representations, yes.
          2    BY MR. WALKER:
          3        Q   And had you read the letter prior to signing
          4    it, you would be aware of its terms; correct?
11:04:18  5        A   Yes.
          6        Q   And was there any instruction from
          7    Mr. Bergstein not -- for you not to secure the benefit
          8    of Mr. Solomon's advice, as a friend and as an attorney
          9    that you knew, with respect to the ramifications of your
11:04:32 10    signing this on behalf of Swartz IP?
         11        A   No.
         12        Q   Was there any instruction from Mr. Bergstein
         13    not to retain the advice of Mr. Zarrinkelk, your friend
         14    and it financial advisor of many years?
11:04:42 15        A   No.
         16        Q   You just made a voluntary decision not to
         17    consult or secure advice from either Mr. Solomon or
         18    Mr. Zarrinkelk with respect to your signature on this
         19    letter; correct?
11:04:51 20        A   I made a decision to trust that David was doing
         21    everything by the book and always as he said.
         22        Q   Yes, sir.  But affirmatively, you made a
         23    decision also not to consult any advice from Mr. Solomon
         24    or Mr. Zarrinkelk; correct?
11:05:04 25            MR. WIECHERT:  Assumes facts not in evidence.

```
11:05:05   1              THE WITNESS:  Yes.  That is correct.  I -- as I
           2   said, I didn't feel a need to do that.  I thought
           3   David's got it all.  He's a really smart guy.  He's
           4   talked to all the lawyers.  He's the one dealing with
11:05:15   5   all this stuff.  And if I need to sign this, it's
           6   because it needs to be signed and everything is good.
           7   BY MR. WALKER:
           8        Q    But there was no barrier preventing you from
           9   securing advice from either Mr. Solomon or
11:05:23  10   Mr. Zarrinkelk --
          11        A    Yes.
          12        Q    -- at any time prior to your signature of this
          13   letter; correct?
          14              MR. WIECHERT:  Asked and answered.
11:05:29  15   Argumentative.
          16              THE WITNESS:  Yes.
          17   BY MR. WALKER:
          18        Q    There was no barrier?
          19        A    There was no barrier.
11:05:35  20        Q    Now, Item 3 says, "Upon receipt of
          21   $12.5 million from WTT, Swartz IP agrees to make the
          22   following distributions."
          23              Now, one is for slightly more than $3 million
          24   to Partners Fund; correct?
11:05:47  25        A    That's what it says.
```

```
11:05:48   1      Q    What was Partners Fund?
           2      A    I don't know.
           3      Q    What was the purpose of that $3 million
           4   transfer of the Class TT money?
11:05:55   5      A    I don't know.
           6           MR. WIECHERT:  Calls for speculation.  No
           7   foundation.
           8           THE WITNESS:  Sorry.
           9           I don't know.
11:06:01  10   BY MR. WALKER:
          11      Q    The next distribution referenced is one for
          12   just under $4.5 million to or as directed by Pineboard
          13   Holdings.
          14           Did I read that correctly?
11:06:11  15      A    Yes, you did.
          16      Q    And what was Pineboard Holdings?
          17      A    Pineboard Holdings was a company that was set
          18   up as an investment vehicle right -- by -- right around
          19   the time that the Weston guys kind of showed up.  They
11:06:25  20   put some money into it and the money was used for
          21   various, you know, deals and various overhead and
          22   payroll and things of that sort.
          23      Q    What was your position in relation to Pineboard
          24   Holdings?
11:06:37  25      A    I was an officer.  I don't remember what
```

Page 88

```
11:06:39   1    specifically.
           2        Q    So this letter was providing an almost
           3    $4.5 million distribution of Class TT's investment funds
           4    to a company which you held a financial interest?
11:06:50   5             MR. WIECHERT:  Calls for a conclusion.
           6             THE WITNESS:  I held --
           7             MR. WIECHERT:  No foundation.
           8             THE WITNESS:  I held the -- I held an office
           9    and I helped run it, yes.
11:06:56  10    BY MR. WALKER:
          11        Q    Now, going to Item 5B.
          12        A    Okay.
          13        Q    SIP agreed to either -- well, let's look at A
          14    and B.  Going to Item 5 on Page 282.
11:07:13  15        A    I see it.
          16        Q    "From the proceeds of the note."  Did you
          17    understand the proceeds of the note would be the funds
          18    that Class TT was investing?
          19             MR. WIECHERT:  Calls for speculation.  No
11:07:21  20    foundation.
          21             THE WITNESS:  I did not read the document, so I
          22    did not have an understanding of it at the time.
          23    BY MR. WALKER:
          24        Q    Looking at 5A, Swartz IP agreed to "either
11:07:29  25    invest the sum of 12.5 million in securities to be held
```