# EXHIBIT X

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| THE WIMBLEDON FUND, SPC (CLASS TT),<br><br>Plaintiff,<br><br>v.<br><br>GRAYBOX, LLC; INTEGRATED ADMINISTRATION; EUGENE SCHER, AS TRUSTEE OF BERGSTEIN TRUST; CASCADE TECHNOLOGIES CORP. and THE LAW OFFICES OF HENRY N. JANNOL,<br><br>Defendants.<br><br>AND CONSOLIDATED ACTION AND RELATED THIRD PARTY ACTIONS | CONSOLIDATED CASE NO.: 2:15-CV-6633-CAS-AJWx<br><br><br><br>CONFIDENTIAL COMPROMISE SETTLEMENT AND RELEASE AGREEMENT |

### CONFIDENTIAL COMPROMISE SETTLEMENT AND RELEASE AGREEMENT

This Confidential Settlement and Mutual Release Agreement ("Agreement") is dated November 16, 2017 (the "Effective Date"), and is by and between David Bergstein ("Bergstein"), Graybox, LLC ("Graybox") and Advisory IP Services, Inc., f/k/a Swartz IP Services Group, Inc. ("SIP"), each individually and for the benefit of certain other named defendants in the matter of *The Wimbledon Fund, SPC (Class TT) v. Graybox, LLC et al*, Case No. 2:15-cv-06633-CAS-AJW, consolidated with *The Wimbledon Fund, SPC (Class TT) v. Bergstein et al*, Case No. 2:15-cv-02287-CAS-AJW (the "Consolidated Action")—namely, Eugene Scher as Trustee of Bergstein Trust ("Scher"), Cascade Technologies Corp. ("Cascade"), The Law Offices of Henry N. Jannol ("Jannol"), Jerome Swartz ("Swartz"), Kiarash Jam ("Jam"), Integrated Administration ("IA"), and Aaron Grunfeld ("Grunfeld") (collectively with Bergstein, Graybox, and SIP, the "TT Defendants") and The Wimbledon Fund, SPC (Class TT) (the "TT Fund"). The TT Fund, on the one hand, and Bergstein, Graybox, and SIP, on the other hand, may at times herein be referred to as the "Parties" and each individually a "Party."

The Parties agree to enter into this Agreement to resolve all claims and issues among the Parties pursuant to the following agreed upon terms and conditions.

### RECITALS

**WHEREAS**, the TT Fund, on the one hand, and SIP, on the other hand, entered into a Note Purchase Agreement ("NPA") dated November 14, 2011;

DEFENDANT EXHIBIT
16 Cr. 746 (PKC)
Z017

**WHEREAS**, the NPA reflected a maturity date of November 14, 2016, subject to redemption;

**WHEREAS**, the NPA did not contain any provision prohibiting related party transactions;

**WHEREAS**, pursuant to a December 18, 2006 Investment Management Agreement and July 9, 2008 Amended and Restated Investment Management Agreement, Weston Capital Asset Management, LLC and its related affiliate Weston Capital Management LLC (together, "Weston") became the Fund's manager with authority to manage and direct the Fund's investments, in accordance with and subject to any limitations set forth in the NPA;

**WHEREAS**, on February 8, 2013, the TT Fund filed a complaint alleging breach of the NPA contract against SIP in the Supreme Court of New York, County of New York, Index No. 650446/2013 (the "New York Action");

**WHEREAS**, on November 24, 2015, final judgment in the amount of $23,051,971.31 was entered in the New York Action against SIP and in favor of the TT Fund (the "SIP Judgment");

**WHEREAS**, on July 30, 2015, the TT Fund filed a complaint in the United States District Court for the Southern District of Texas, Case No. 4:15-cv-02193, against Bergstein, Swartz, Grunfeld, and Jam, seeking a declaration that those defendants are the alter egos of SIP and therefore personally liable for payment of the SIP Judgment (the "Texas Action");

**WHEREAS**, on August 28, 2015, the TT Fund filed a complaint asserting fraudulent transfer claims against Graybox, IA, Scher, and Cascade in the United States District Court for the Central District of California, Case No. 2:15-cv-06633-CAS (AJWx) (the "California Action");

**WHEREAS**, the defendants in the Texas Action and the California Action denied all liability and asserted various defenses to the TT Fund's claims;

**WHEREAS**, on September 9, 2015, the TT Fund filed a motion for a preliminary injunction against Graybox in the California Action, seeking a $2.412 million freeze of certain assets Graybox was expected to receive (the "Injunction Motion");

**WHEREAS**, Graybox opposed the Injunction Motion;

**WHEREAS**, the court granted the Injunction Motion pursuant to an initial order dated September 29, 2015, and a final order dated October 20, 2015 (the "Injunction Ruling");

**WHEREAS**, on October 6, 2015, Graybox filed a Notice of Appeal of the Injunction Ruling in the United States Court of Appeals for the Ninth Circuit;

**WHEREAS**, the Texas Action was transferred to the United States District Court for the Central District of California by order dated April 1, 2016, following which the Texas Action

---

CONFIDENTIAL COMPROMISE SETTLEMENT AND RELEASE AGREEMENT                    PAGE 2

was consolidated with the California Action by order dated May 10, 2016 (becoming the Consolidated Action);

WHEREAS, on April 18, 2016, the United States Court of Appeals for the Ninth Circuit affirmed the Injunction Ruling;

WHEREAS, on December 7, 2016, Graybox and Bergstein filed a motion to stay the Consolidated Action pending the resolution of a criminal action filed against Bergstein (the "Stay Motion");

WHEREAS, on December 15, 2016, the TT Fund opposed the Stay Motion;

WHEREAS, on January 6, 2017, the United States of America moved to intervene in support of the Stay Motion;

WHEREAS, on January 9, 2017, the court in the Consolidated Action: (i) granted the Stay Motion and ordered the Consolidated Action stayed pending resolution of the criminal action against Bergstein, and (ii) granted the United States of America's motion to intervene;

WHEREAS, on August 10, 2017, the TT Fund's duly authorized representatives and legal counsel participated in a settlement conference in New York with Bergstein, both individually and on behalf of Graybox and SIP, together with their legal counsel, at which conference the Parties entered into a binding settlement term sheet (the "Term Sheet");

WHEREAS, the Parties have agreed to fully and forever compromise, resolve and settle all matters in controversy between them on the terms and conditions set forth in this Agreement, which incorporates the material provisions of the Term Sheet;

WHEREAS, in entering into this Agreement, no party is conceding liability or fault for any and all claims, whether asserted or unasserted in the Consolidated Action, and the Parties are entering into this Agreement solely to avoid the cost and uncertainty of litigation;

WHEREAS, on August 21, 2017, pursuant to the Parties' agreement, the Term Sheet, and Section A1(a) of this Agreement, counsel for Bergstein, Graybox, and SIP caused the sum of $2,412,000 to be wired to a trust account of Cole Schotz, P.C. (as counsel for the TT Fund), the receipt of which the TT Fund acknowledges.

WHEREAS, of the $2,412,000 received by the TT Fund, the TT Fund does not object to a contention by Bergstein, SIP, and/or Graybox that the sum of $1,300,000 represents repayment of amounts allegedly transferred to Jannol and that the balance represents repayment of funds allegedly transferred to Graybox;

NOW, THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency of which is hereby acknowledged by the Parties, the Parties mutually covenant and agree as follows:

A. **Settlement Consideration and Payment.**

1. Bergstein, SIP, and/or Graybox shall pay the principal sum of NINE MILLION FOUR HUNDRED TWELVE THOUSAND DOLLARS ($9,412,000.00) to TT Fund (the "Settlement Proceeds") as follows:

    (a) Graybox, in satisfaction of all transfers alleged to have been made to Graybox in the Consolidated Action, shall cause to be released all funds currently held pursuant to the Injunction Ruling (which funds are in the principal amount of $2.412 million) ("Frozen Funds"). The Frozen Funds shall be immediately wired to a Cole Schotz Trust Account upon entry of a court order in the Consolidated Action authorizing release of the Frozen Funds. Graybox and the TT Fund shall cooperate in preparing the form order and obtaining relief from the stay imposed for the limited purpose of the release of the Frozen Funds to TT Fund. The Parties agree and stipulate that this initial payment of $2.412 Million has already been made to, and received by, TT Fund consistent with this settlement term.

    (b) SIP, or its designee, shall wire FIVE MILLION DOLLARS ($5,000,000.00) to a Cole Schotz Trust Account within thirty (30) days of execution of this Agreement by the Parties.

    (c) SIP, or its designee, shall pay the sum of $2 million to a Cole Schotz Trust Account within twelve (12) months of the execution of this Agreement by the Parties. This $2 million settlement payment shall be secured by an agreed judgment in the amount of $2 million plus interest at 8 percent (8%) in favor of TT Fund and against David Bergstein (the "Consent Judgment") upon execution of this Agreement by the Parties.

    (d) The first FIVE HUNDRED THOUSAND ($500,000.00) of the Settlement Proceeds referenced in Section A1(b) above shall be held by Cole Schotz (as counsel for the TT Fund) as a retainer to fund litigation costs and expenses (the "Cole Schotz Retainer Account") in connection with the prosecution of TT Fund's claims and causes of action against Weston Capital Partners Master Fund II, Ltd. ("Partners II"), Paul Parmar ("Parmar"), and any other applicable entities, assignees, successors in interest and/or subsequent transferees related to the transfer of funds received directly or indirectly from SIP, as deemed appropriate by TT Fund ("Supplemental Litigation"). TT Fund shall have no obligation to take steps to commence the Supplemental Litigation until after receipt of the $5 million payment set forth in Section A1(b) above.

    (e) TT Fund shall commence the Supplemental Litigation contemporaneous with receipt of the $5 million payment set forth in Section A1(b) above.

2. If the balance in the Cole Schotz Retainer Account is reduced to $50,000, upon written notice of same to Bergstein's counsel, Steven Katzman of Bienert, Miller & Katzman PLC ("BMK") or any successor counsel as identified by Bergstein, Bergstein shall send payment of an additional $500,000 ("Litigation Reserve Funds") to Cole Schotz (as counsel for the TT Fund) within ten (10) days of receiving written notice from TT Fund. If the Litigation Reserve Funds are not paid on a timely basis, TT Fund shall

have the right, but not the obligation, to dismiss any pending actions resulting from the Supplemental Litigation. Bergstein's failure to timely pay the Litigation Reserve Funds into the Cole Schotz Retainer Account shall void his right to any recovery from the proceeds of the Supplemental Litigation as otherwise set forth herein. Neither Bergstein, Graybox, nor SIP shall have any further obligation to fund TT Fund's litigation costs and expenses after full payment of the Litigation Reserve Funds.

3.  TT Fund agrees to consult with Bergstein's counsel, BMK, on the status of the Supplemental Litigation from time to time as he requests. Bergstein shall use commercially reasonable efforts to cooperate in providing information for the Supplemental Litigation, however, no TT Defendant shall have the right whatsoever to direct, control, influence or make any demands in connection with TT Fund's prosecution of the Supplemental Litigation; nor does this Agreement create an attorney/client or any other form of relationship, fiduciary or otherwise, between Cole Schotz and any of the TT Defendants.

4.  TT Fund and Graybox, or Graybox's designee, shall divide by equal shares (i.e., 50% each) any funds or recovery collected in connection with the Supplemental Litigation up to the first $4.8 million actually collected. After collection of $4.8 million resulting from the Supplemental Litigation, TT Fund shall receive 100% of any further collection until the SIP Judgment is satisfied, which satisfaction amount shall be deemed to be $20,000,000 (the "Satisfaction Amount"). TT Fund shall have sole discretion to accept any settlement offer made in the Supplemental Litigation until the SIP Judgment is satisfied up to and including the Satisfaction Amount. Upon TT Fund's receipt of the Satisfaction Amount, any additional recoveries in the Supplemental Litigation shall belong to SIP.

5.  After receipt of the $5 million payment referenced in Section A1(b) above, TT Fund shall dismiss the Consolidated Action, with prejudice, as to all TT Defendants except Jam and IA. The Consolidated Action shall remain stayed against Jam and IA provided, however, that upon payment of the $2 million referenced in Section A1(c) above, TT Fund shall dismiss the Consolidated Action, with prejudice, against Jam and IA as well. In the event the $2 million payment referenced in Section A1(c) above is not timely made, then the TT Fund may move to lift the stay of the Consolidated Action and proceed against Jam and IA.

6.  Keith Kelty ("Kelty") and/or Vincent King ("King"), in their respective capacity as former directors of TT Fund and on behalf of TT Fund, agree to execute a mutually agreeable recital of truthful facts based upon their personal knowledge and/or upon facts learned following reasonable diligence, in the form set forth as Exhibit 1 to this Agreement, and provide the same to Bergstein upon the execution of this Agreement. Mr. Kelty further agrees, at the written request of Bergstein or his counsel, and provided Bergstein or his designee pays for the costs of such appearance, including all travel expenses, appear at any criminal or SEC action and testify truthfully in response to each question posed to him by any party. Bergstein agrees to provide Kelty written notice of any dates upon which any such hearing, trial or legal proceeding of any kind at which he

is expected to testify are scheduled promptly after Bergstein receives notice of each and every such hearing to facilitate Kelty's scheduling his attendance at same.

The TT Fund agrees to use reasonable best efforts to turnover to Bergstein's attorneys, BMK, or any successor designated by Bergstein, true and correct copies of: (i) any documents or written communications by and between the TT Fund, on the one hand, and Weston Capital Asset Management, LLC or any of its principals, including but not limited to Albert Hallac, Keith Wellner, and/or Jeffrey Hallac, on the other hand; (ii) any documents or written communications with or obtained by the TT Fund from Weston, Parmar, Partners II, or any entity acting expressly on their behalf; (iii) copies of any and all settlement agreements and related materials between the TT Fund, on the one hand, and Weston, Albert Hallac, Keith Wellner, and/or Jeffrey Hallac, on the other hand, to the extent the TT Fund is not prohibited by agreement or court order preventing such disclosure; and (iv) subject to any protective order or legal equivalent, any documents obtained during the course of the Supplemental Litigation, whether or not pursuant to formal discovery, without regard to how these documents may affect any one suit, cause of action, claim or legal proceeding. The TT Fund shall turnover the materials referenced in this paragraph to Bergstein's counsel or designee within seven (7) days of the payment and receipt of the $5 million payment identified in Section A1(b).

**B.   Releases.**

    **1.**   Upon TT Fund's receipt of the full amount of Settlement Proceeds referenced in the above Sections A1(a) and A1(b) of this Agreement, TT Fund will forever release, discharge, waive and acquit Bergstein, Graybox, SIP, Scher, Cascade, Jannol, Swartz and Grunfeld, and each of said individuals' and entities' agents, representatives, employees, officers, directors, shareholders, members, partners, subsidiary entities, parent entities, affiliate entities, lawyers, successors, and assigns, excluding, to the extent not specifically released herein, Jam and IA and IA's agents, representatives, employees, officers, directors, shareholders, members, partners, subsidiary entities, parent entities, affiliate entities, lawyers, successors, and assigns (hereafter the "Initial Defendant Released Parties") from any and all claims, demands, suits, debts, causes of action, defaults, breaches, violations and liabilities of every conceivable character or nature, whether known or unknown, which exist as of the date of this Agreement and arise from or directly or indirectly relate in any way to the facts and transactions referenced in the Consolidated Action. The scope of this release is intended to be broad, comprehensive, and general with respect to its subject matter, and includes all claims, causes of action, breaches, and violations of every possible nature, whether matured or appreciated at this time, and without regard as to whether such arise under contract, tort, statute, rule, regulation, common law, equity, or any other theory which may now or at any time be claimable or recognized by any court. This release includes all remedies and damages of every possible nature, regardless of whether such arise or are in the nature of compensatory damages, contract damages, personal injury or property damages, lost or diminished value, loss of use, trespass damages, equitable remedies, contract remedies (including termination), consequential damages, resulting damages, pre- or post-judgment interest, attorneys' fees, penalties, court costs, or statutory, punitive, "treble", enhanced or exemplary damages of any source or character.  TT Fund acknowledges that additional facts may be discovered later, but that it is its intention to fully, finally, and forever settle and release the Initial Defendant Released Parties as set forth herein, which release is

CONFIDENTIAL COMPROMISE SETTLEMENT AND RELEASE AGREEMENT     PAGE 6

intended to be full, complete and final with respect to its subject matter. This release does not release or waive any rights or obligations contained in this Agreement. For the avoidance of doubt, the "Initial Defendant Released Parties" do not include, to the extent not specifically released herein, Jam or IA, including IA's agents, representatives, employees, officers, directors, shareholders, members, partners, subsidiary entities, parent entities, affiliate entities, lawyers, successors, and assigns in any respect, and the releases contained in this Section do not extend to Jam or IA as defined herein.

2. Upon TT Fund's receipt of the full amount of Settlement Proceeds referenced in the above Section A1(c) of this Agreement, TT Fund will forever release, discharge, waive and acquit: (i) the agreed judgment referenced in Section A1(c) of this Agreement, and (ii) IA and Jam, and each of said individuals' and entities' agents, representatives, employees, officers, directors, shareholders, members, partners, subsidiary entities, parent entities, affiliate entities, lawyers, successors, and assigns (hereafter the "Supplemental Defendant Released Parties") from any and all claims, demands, suits, debts, causes of action, defaults, breaches, violations and liabilities of every conceivable character or nature, whether known or unknown, which exist as of the date of this Settlement Agreement and arise from or directly or indirectly relate in any way to the facts and transactions referenced in the Consolidated Action. The scope of this release is intended to be broad, comprehensive, and general with respect to its subject matter, and includes all claims, causes of action, breaches, and violations of every possible nature, whether matured or appreciated at this time, and without regard as to whether such arise under contract, tort, statute, rule, regulation, common law, equity, or any other theory which may now or at any time be claimable or recognized by any court. This release includes all remedies and damages of every possible nature, regardless of whether such arise or are in the nature of compensatory damages, contract damages, personal injury or property damages, lost or diminished value, loss of use, trespass damages, equitable remedies, contract remedies (including termination), consequential damages, resulting damages, pre- or post-judgment interest, attorneys' fees, penalties, court costs, or statutory, punitive, "treble", enhanced or exemplary damages of any source or character. TT Fund acknowledges that additional facts may be discovered later, but that it is its intention to fully, finally, and forever settle and release the Supplemental Defendant Released Parties as set forth herein, which release is intended to be full, complete and final with respect to its subject matter. This release does not release or waive any rights or obligations contained in this Agreement.

3. Upon TT Fund's receipt of the full amount of Settlement Proceeds referenced in the above Section A1(b) of this Agreement, Bergstein, Graybox, and SIP, and each of said individuals' and entities' agents, representatives, employees, officers, directors, shareholders, members, partners, subsidiary entities, parent entities, affiliate entities, lawyers, successors, and assigns, but specifically excluding, to the extent not specifically released herein, Jam and/or IA and IA's agents, representatives, employees, officers, directors, shareholders, members, partners, subsidiary entities, parent entities, affiliate entities, lawyers, successors, and assigns, will forever release, discharge, waive and acquit, subject to the express exceptions identified below, TT Fund and said entity's agents, representatives, employees, officers, directors, shareholders, members, partners, subsidiary entities, parent entities, affiliate entities, lawyers, successors, and assigns (hereafter the "TT Fund Released Parties") from any and all claims, demands, suits, debts, causes of action, defaults, breaches, violations and liabilities of every conceivable character or nature, whether known or unknown, which exist as of the date of this Agreement and arise from or

CONFIDENTIAL COMPROMISE SETTLEMENT AND RELEASE AGREEMENT                    PAGE 7

directly or indirectly relate in any way to the facts and transactions referenced in the Consolidated Action. The scope of this release is intended to be broad, comprehensive, and general with respect to its subject matter, and includes all claims, causes of action, breaches, and violations of every possible nature, whether matured or appreciated at this time, and without regard as to whether such arise under contract, tort, statute, rule, regulation, common law, equity, or any other theory which may now or at any time be claimable or recognized by any court. This release includes all remedies and damages of every possible nature, regardless of whether such arise or are in the nature of compensatory damages, contract damages, personal injury or property damages, lost or diminished value, loss of use, trespass damages, equitable remedies, contract remedies (including termination), consequential damages, resulting damages, pre- or post-judgment interest, attorney fees, penalties, court costs, or statutory, punitive, "treble", enhanced or exemplary damages of any character. Bergstein, Graybox, and SIP, and each of said individuals' and entities' agents, representatives, employees, officers, directors, shareholders, members, partners, subsidiary entities, parent entities, affiliate entities, lawyers, successors, and assigns acknowledge that additional facts may be discovered later, but that it is their collective intention to fully, finally, and forever settle and release the TT Fund Released Parties as set forth herein, which release is intended to be full, complete and final with respect to its subject matter. The release does not release or waive any rights or obligations contained in this Agreement.

4. It is the intention of the Parties in executing this Agreement that it is a general release as between them of all matters released by Sections B1-B3. Each Party recognizes that he/she/it may have some claim, demand, or cause of action against another Party of which he/she/it is totally unaware and unsuspecting, which he/she/it is giving up by executing this Agreement. It is the intention of each of the Parties in executing this Agreement that it will deprive him/her/it of each such claim, demand, or cause of action and prevent him/her/it from asserting it against another Party. In furtherance of this intention, **each Party expressly waives any rights or benefits conferred by the provisions of Section 1542 of the California Civil Code, which provides as follows:**

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Each Party acknowledges and represents that he/she/it has consulted with legal counsel of his/her/its own choosing before executing this Agreement and that he/she/it understands its meaning, including the effect of Section 1542 of the California Civil Code, and expressly consents that this Agreement shall be given full force and effect according to each and all of its express terms and provisions, including, without limitation, those relating to the release of unknown and unsuspected claims and other unknown or unsuspected matters as specified in Sections B1-B3.

C. **Mutual Party Representations.**

1. TT Fund represents that it:

   (a) Is authorized to execute and perform this Agreement;

   (b) Is freely and voluntarily entering into this Agreement with the advice of its counsel, with whom it has had the opportunity to discuss the terms of this Agreement;

   (c) Has not been induced to enter into this Agreement by any promise, inducement, representation, or conduct by TT Defendants;

   (d) Is not relying on any promise, inducement, representation, or conduct by TT Defendants extraneous to the terms of this Agreement;

   (e) TT Fund has made no other representations other than those identified in this Section C1;

   (f) Is releasing unknown Claims in Sections B1 and B2;

   (g) Has been fully informed of the terms and effect of this Agreement;

   (h) Has fully read and understood this Agreement;

   (i) Is the sole owner of the Claims released in Sections B1 and B2 and has not previously assigned or transferred any interest whatsoever in such Claims to any other person or entity;

   (j) Agrees that the terms of this Agreement are contractual, binding, and not mere recitals; and

   (k) Considers this Agreement to be a legal, valid, and binding obligation enforceable against each of the Parties according to its terms.

2. Bergstein, Graybox, and SIP represent that they:

   (a) Are authorized to execute and perform this Agreement;

   (b) Are freely and voluntarily entering into this Agreement with the advice of their legal counsel, with whom each has had the opportunity to discuss the terms of this Agreement;

   (c) Have not been induced to enter into this Agreement by any promise, inducement, representation, or conduct by TT Fund extraneous to the terms of this Agreement;

   (d) Are not relying on any promise, inducement, representation, or conduct by TT Fund;

CONFIDENTIAL COMPROMISE SETTLEMENT AND RELEASE AGREEMENT                PAGE 9

     **(e)**    Bergstein, Graybox, and SIP have made no other representations other than those identified in this Section C2;

     **(f)**    Are releasing unknown Claims in Section B3;

     **(g)**    Have been fully informed of the terms and effect of this Agreement;

     **(h)**    Have fully read and understood this Agreement;

     **(i)**    Are the sole owner of the Claims released in Section B3 and have not previously assigned or transferred any interest whatsoever in such Claims to any other person or entity;

     **(j)**    Agree that the terms of this Agreement are contractual, binding, and not mere recitals; and

     **(k)**    Consider this Agreement to be a legal, valid, and binding obligation enforceable against each of the Parties according to its terms.

     **3.**    Each Party and signatory to this Agreement covenants, represents and warrants that: (i) it/she/he joins in the execution of this Agreement voluntarily and upon the advice of such party's independent attorney; (ii) it/she/he has, to the complete satisfaction of each such Party, investigated all matters pertinent to this Agreement, and the claims, rights, and causes of action hereby being forever released, waived, and discharged; (iii) it/she/he relies solely upon such Party's respective legal counsel to advise such Party as to the legal consequences of executing this Agreement; (iv) no Party to this Agreement is relying upon any statement, representation, warranty, or prediction of any other Party or the attorney of any other Party in entering into this Agreement; (v) it/she/he is relying solely upon his or her own evaluation and analysis of the benefits and consequences, including all possible legal consequences, of entering into this Agreement; (vi) it/she/he assumes all risks of unknown facts, events, and circumstances, regardless of whether or not discoverable by the exercise of reasonable diligence; (vii) it/she/he has not assigned, transferred, conveyed, pledged, or in any way encumbered any of the claims, rights, or causes of action hereby released, waived, or discharged; and (viii) it/he/she is charged with full and unqualified legal authority as a legal signatory to enter into, execute, and fully perform this Agreement.

     **4.**    It is understood and agreed by the Parties hereto that this Agreement is a compromise of disputed claims and defenses and that the concessions made in connection with this settlement are not to be construed as an admission of liability on the part of any Party to this Agreement.

     **5.**    This Agreement contains the entire agreement between the Parties hereto with regard to the matters set forth herein and shall be binding upon and inure to the benefit of the Parties hereto, jointly and severally, and the executors, administrators, personal representatives, heirs, successors and assigns of each. This Agreement supersedes any prior or contemporaneous discussions and agreements. This Agreement shall not be suspended, amended, or modified in any manner except by an instrument in writing signed by all Parties.

6. This Agreement shall become effective upon execution by all of the Parties hereto, subject to the fulfillment of the conditions described herein.

7. As used in this Agreement, whenever the context so indicates, the masculine, feminine or neutral gender, and the singular or plural number, shall each be deemed to include the others.

8. This Agreement may be executed in multiple counterparts, which together shall constitute a single original instrument. Any executed signature page to this Agreement may be transmitted by facsimile transmission to the other Parties, which shall constitute an original signature page for all purposes.

D. **Confidentiality.**

1. The Parties shall keep the negotiations leading to this Agreement, including all matters, facts and theories discussed by and between them during the Confidential August 10, 2017 Settlement Conference, and the terms and provision of the Term Sheet executed by the Parties on said date, as well as all terms, provisions, scope and consideration exchanged, in kind and monetary, and even the fact of this Agreement, strictly and completely confidential, and the Parties shall not communicate or otherwise disclose to anyone the matters described in this paragraph of this Agreement, subject exclusively to the following exceptions:

(a) **Court.** In addition to the Notice of Settlement filed in the Consolidated Action, the Parties may disclose the existence of the Agreement to the court in which the Consolidated Action is pending or to any court with jurisdiction over this Agreement or the TT Fund. To the extent the Parties are required to make such disclosure, they shall make reasonable best efforts to make such disclosure under seal.

(b) **Compulsory Process.** The Parties may provide a copy of the Agreement or communicate or disclose the terms, amount, and fact of the Agreement in response to a subpoena or other compulsory process, only after using reasonable efforts to object to such disclosure. The Party in receipt of such a compulsory process shall give the other Party notice of such receipt and notice 7 days before such disclosure occurs.

(c) **Tax, Financial, or Legal Advisors.** The Parties may provide a copy of the Agreement or communicate or disclose the terms, amount, and fact of the Agreement with their tax, financial, or legal advisors, so long as said advisors agree to keep such information confidential under the same terms as the Parties as set forth in this Agreement.

(d) The terms of the Agreement may be voluntarily disclosed by Bergstein as he deems necessary or required in the matters of *United States v. Bergstein et al*, Case No. 16-cr-746-PKC-1 and/or *Securities and Exchange Commission v. Bergstein*, Case No. 16-cv-8701-AJN, both pending in the Southern District of New York, or any other criminal or civil matter to which Bergstein is an interested party. In the event Bergstein voluntarily discloses the terms of this Agreement as provided in this Section, the TT Fund is thereafter released of its obligation to maintain the confidentiality of this Agreement.

(e)     The Parties acknowledge that any breach of this Section D1 is a material breach of this Agreement. The Parties also acknowledge that this Section D1 is a material inducement to the Parties entering into this Agreement.

2.   **Construction and Interpretation of this Agreement.**

(a)     **Choice of Law.** This Agreement is made and is performable in Los Angeles County, California. This Agreement and all claims arising out of or related to it, whether sounding in tort, statute, or otherwise, are governed by the laws of the State of California, without giving effect to California's principles of conflicts of law.

(b)     **No *Contra Proferentem*.** The Parties acknowledge that this Agreement was drafted and negotiated by their respective attorneys and that the terms of this Agreement shall not be construed for or against either or any one of the Parties under the *contra proferentem* principle.

(c)     **Headings.** The headings used in this Agreement are for convenience only and do not impart any substantive meaning.

3.   **Severability.** The Parties intend as follows:

(a)     That if any term of this Agreement is held to be unenforceable, then that term will be modified to the minimum extent necessary to make it enforceable, unless that modification is not permitted by law, in which case that term will be disregarded;

(b)     That if an unenforceable term is modified or disregarded in accordance with this Section D3, then the rest of the Agreement will remain in effect as written; and

(c)     That any unenforceable term will remain as written in any circumstances other than those in which the term is held to be unenforceable.

4.   **Entire Agreement.** This Agreement contains the entire understanding of the Parties with respect to the subject matter of this Agreement. On the Effective Date, this Agreement supersedes all other agreements, whether written or oral, between the Parties.

5.   **Modification and Waiver.** No amendment of this Agreement will be effective unless it is in writing and signed by the Parties. No wavier of satisfaction of a condition or failure to comply with an obligation under this Agreement will be effective unless it is in writing and signed by the party granting the waiver, and no such waiver will constitute a waiver of satisfaction.

6.   **Successors; Assigns.** This Agreement is binding upon and inures to the benefit of the Parties and their respective heirs, executors, administrators, successors and permitted assigns. However, a Party may not assign this Agreement in whole or in part without the prior written consent of the other Parties.

7. **No Third-Party Beneficiaries.** The Parties acknowledge that there are no third-party beneficiaries of this Agreement.

8. **Counterparts.** If the Parties sign this Agreement in several counterparts, each will be deemed an original but all counterparts together will be considered one instrument.

9. **Notices.**

　(a)　For a notice or other communication under this Agreement to be valid, it must be in writing and delivered: by hand; by a national transportation company, with all fees prepaid; or by registered or certified mail, return receipt requested and postage prepaid.

　(b)　A valid notice or other communication under this Agreement will be effective when received by the Party to which it is addressed. It will be deemed to have been received as follows:

　　(i)　If it is delivered by hand, delivered by a national transportation company, with all fees prepaid, or delivered by registered or certified mail, return receipt requested and postage prepaid, upon receipt as indicated by the date on the signed receipt; and

　　(ii)　If the Party to which it is addressed rejects or otherwise refuses to accept it, or if it cannot be delivered because of a change in address for which no notice was given, then upon that rejection, refusal, or inability to deliver.

　(c)　For a notice or other communication to a Party under this Agreement to be valid, it must be addressed using the information specified below for that Party or any other information specified by that Party in accordance herewith:

| | |
|---|---|
| To TT Fund: | James W. Walker, Esq.<br>**COLE SCHOTZ P.C.**<br>2515 McKinney Avenue, Suite 1350<br>Dallas, TX 75201<br><br>Nick Hoffman, Esq.<br>**HARNEYS**<br>4th Floor, Harbour Place<br>103 South Church Street<br>PO Box 10240<br>Grand Cayman, KY1-1002<br>Cayman Islands |
| To Bergstein, SIP, and/or Graybox: | Steven Jay Katzman, Esq.<br>**BIENERT, MILLER & KATZMAN, PLC**<br>903 Calle Amanecer, Ste. 350<br>San Clemente, CA 92673 |

CONFIDENTIAL COMPROMISE SETTLEMENT AND RELEASE AGREEMENT　　PAGE 13

(d) If a notice or other communication addressed to a Party is received after 5:00 p.m. on a business day at the location specified in the address for that Party, or on a day that is not a business day, then the notice will be deemed received at 9:00 a.m. on the next business day.

E. **Dispute Resolution.**

1. **Consultation with Mediator.** If any dispute arises out of or relates to this Agreement, the Parties shall attempt to resolve said dispute by telephone conference or in-person meeting with a mutually acceptable mediator. The Parties shall each pay ½ of the mediation fees assessed by the selected mediator associated with the attempt to resolve said dispute. If the Parties cannot agree to a mediator, the JAMS office in Los Angeles, California will be asked to appoint an appropriately qualified mediator for the purpose of conducting the mediation referenced in this paragraph.

2. **Litigation.** If the Parties have attempted but failed to resolve said dispute pursuant to the immediately preceding mediation provision, it is agreed that any of the Parties may file a lawsuit. Any such lawsuit shall be filed in the U.S. District Court for the Central District of California, Los Angeles Division. The Parties acknowledge that said courts have personal jurisdiction over them and waive any objection as to said courts having personal jurisdiction over them. If any Party files a lawsuit in breach of this Section E2 and a court finds such a breach, that Party shall pay the other Party's reasonable and necessary attorney's fees related to the enforcement of this Section E2 within thirty (30) days of such a decision or ruling, regardless of whether the Party opposing the breach of this Section E2 is ultimately the prevailing party in any litigation permitted by this Section E2.

3. In any litigation permitted by this Section E2, the prevailing party shall recover all of its costs of litigation, including but not limited to expert witness fees and reasonable and necessary attorney's fees, from the non-prevailing party.

**FULLY AGREED AND ACCEPTED BY:**

_____  Dated: November 21, 2017
David Bergstein, Individually

**GRAYBOX, LLC**  Dated: November 21, 2017
By: _____
David Bergstein, Duly Authorized Representative

**ADVISORY IP SERVICES GROUP, INC,**
**F/K/A SWARTZ IP SERVICES GROUP, INC.**  Dated: November 21, 2017
By: _____
David Bergstein, Duly Authorized Representative

THE WIMBLEDON FUND, SPC (CLASS TT)      Dated: November 16, 2017

By: _____
Duly Authorized Representative


APPROVED AS TO FORM:

By: _____      Dated: November 21, 2017
Steven Jay Katzman, Esq.
BIENERT, MILLER & KATZMAN, PLC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
ATTORNEYS FOR DAVID BERGSTEIN, GRAYBOX, LLC AND
ADVISORY IP SERVICES GROUP, INC, F/K/A SWARTZ IP SERVICES GROUP, INC.


By: _____
James W. Walker, Esq.
COLE SCHOTZ P.C.
2315 McKinney Avenue, Suite 1350
Dallas, TX 75201
ATTORNEYS FOR PLAINTIFF THE WIMBLEDON FUND, SPC (CLASS TT)

---

CONFIDENTIAL COMPROMISE SETTLEMENT AND RELEASE AGREEMENT      PAGE 15