# EXHIBIT Y

Jeffrey N. Pomerantz, Esq. (CA Bar No. 143717)
Jeffrey L. Kandel (CA Bar No. 115832)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: 310-277-6910 / Facsimile: 310-201-0760
E-mail: jpomerantz@pszjlaw.com; jkandel@pszjlaw.com

James W. Walker (admitted *pro hac vice*)
Cameron A. Welch (admitted *pro hac vice*)
Eric S. Latzer (admitted *pro hac vice*)
COLE SCHOTZ P.C.
2515 McKinney Avenue, Suite 1350
Dallas, TX 75201
Telephone: 469-557-9390 / Facsimile: 469-533-0361
E-mail: jwalker@coleschotz.com; cwelch@coleschotz.com; elatzer@coleschotz.com

Attorneys for Plaintiff, The
Wimbledon Fund, SPC (Class TT)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| THE WIMBLEDON FUND, SPC (CLASS TT),<br><br>          Plaintiff,<br><br>vs.<br><br>GRAYBOX, LLC; INTEGRATED ADMINISTRATION; EUGENE SCHER, AS TRUSTEE OF BERGSTEIN TRUST; CASCADE TECHNOLOGIES CORP., and THE LAW OFFICES OF HENRY N. JANNOL,<br><br>          Defendants. | C.D. Cal. Consolidated Case No. 2:15-cv-6633-CAS-AJWx<br><br>**PLAINTIFF'S OPPOSITION TO THE MOTION TO AMEND FILED BY DEFENDANTS KIARASH JAM AND INTEGRATED ADMINISTRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing:<br>Date: February 25, 2019<br>Time: 10:00 a.m.<br>Location: Courtroom 8D<br>Judge: The Honorable Christina A. Snyder<br>Trial date: June 25, 2019 |
| THE WIMBLEDON FUND, SPC (CLASS TT),<br><br>          Plaintiff,<br><br>vs.<br><br>DAVID BERGSTEIN; JEROME SWARTZ; AARON GRUNFELD; and KIARASH JAM.,<br><br>          Defendants. | |

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES..............................1

    I.      PRELIMINARY STATEMENT................................................1

    II.     BACKGROUND.....................................................................3

    III.   THE MOTION TO AMEND SHOULD BE DENIED. ...........8

    IV.   CONCLUSION. ....................................................................16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Appalachian Ins. Co. v. McDonnell Douglas Corp.*, 214 Cal. App. 3d 1, 262 Cal. Rptr. 716 (1989) ........................................................................... 9

*Black v. Hunt & Henriques*, No. SACV 10–1476, 2011 WL 1405411, at *2 (C.D. Cal. Apr. 11, 2011) ...................................................................... 15

*Consolidated Credit Agency v. Equifax, Inc.*, No. CV 03-01229 CAS, 2004 WL 5644363, at *3 (C.D. Cal. Aug. 5, 2004) ........................... 8, 13

*Frederickson v. Guardian Holding, Inc.*, No. LA CV12-03325, 2012 WL 12894754, at *4 (C.D. Cal. July 26, 2012) ........................................... 10

*Jackson v. Bank of Hawaii*, 902 F.2d 1385 (9th Cir. 1990) ......................... 16

*Kulberg v. Washington Mut. Bank*, No. 10–CV–1214, 2011 WL 1431512, at *5 (C.D. Cal. Apr. 14, 2011) ............................................... 9

*Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962) ........................................... 12

*Mollicone v. Universal Handicraft, Inc.*, No. 2:16-cv-07322-CAS(MRWx), 2017 WL 440257 (C.D. Cal. Jan. 30, 2017) ................... 13

*Money Deposit Co. v. Gilliam*, 671 F. Supp. 2d 1137 (C.D. Cal. 2009) .................... 11

*Morongo v. Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir. 1990) ........................................................................................................ 16

*Mortg. Indus. Solutions, Inc. v. Collabera, Inc.*, No. CV11-4008-CAS, 2013 WL 440644 (C.D. Cal. Feb. 4, 2013) ..................................... 13, 14

*Pascoe v. Morrison*, 219 Cal. 54, 25 P.2d 9 (1933) ...................................... 9

*Porsandeh v. Prudential Prop. & Cas. Inc. Co.*, No. CV–02–5343–EFS, 2004 WL 5642440 (C.D. Cal. Apr. 30, 2004) ........................................ 12

*Rashtian v. Allstate Ins. Co.*, No. CV–02—1138–EFS(SHX), 2003 WL 282408 (C.D. Cal. Feb. 6, 2003) .............................................................. 9

*Ryan v. Editions Ltd. West, Inc.*, 786 F.3d 754 (9th Cir. 2015) ................... 8

ii

*Schneider v. Bank of Am.*, No. 2:11–cv–2953–JAM–EFB PS, 2017 WL 3977174, at *5 (E.D. Cal. Sept. 11, 2017)..............................................12

*Scognamillo v. Credit Suisse First Boston, LLC*, 587 F. Supp. 2d 1149 (N.D. Cal. 2008) ...........................................................................15, 16

*Susilo v. Wells Fargo Bank, N.A.*, No. CV 11-1814(CAS), 2012 WL 5179531 (C.D. Cal. 2012) ............................................................14

*Swartz v. KPMG, LLP*, 476 F.3d 756 (9th Cir. 2007) (per curiam) ............................13

*United Safeguard Distribs. Assoc., Inc. v. Safeguard Business Sys., Inc.*, 145 F. Supp. 3d 932 (C.D. Cal. 2015) ................................................13

*Wheeler v. City of Santa Clara*, 894 F.3d 1046 (9th Cir. 2018)......................................9

*Yount v. Acuff Rose-Opryland*, 103 F.3d 830 (9th Cir. 1996) ...................................10

**RULES**

Fed. R. Civ. P. 15(a) ...................................................................................14

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff The Wimbledon Fund, SPC (Class TT) ("Class TT") files this Opposition to the Motion to Amend (Doc. No. 386) filed by defendants Kiarash Jam ("Jam") and Integrated Administration ("Integrated").

## I.    PRELIMINARY STATEMENT

Now more than three years into this litigation and with discovery substantially complete, Jam and Integrated seek leave to file an amended answer, including counter- and cross-claims.  The basis for Jam and Integrated's motion is their dissatisfaction with a settlement agreement (the "Settlement Agreement") that Class TT entered into in November 2017 with defendants David Bergstein ("Bergstein") and Graybox, LLC ("Graybox") and non-party Advisory IP Services, Inc. f/k/a Swartz IP Services Group, Inc. ("SIP").  Jam and Integrated are not parties to the Settlement Agreement; they did not participate in negotiating the Settlement Agreement; and they did not provide any consideration in connection with the Settlement Agreement. Nevertheless, Jam and Integrated ask this Court for leave to file what amounts to an extraordinary cause of action: a claim to "reform" the Settlement Agreement so that— contrary to the express language of the Settlement Agreement and the settling parties' intent—Class TT is compelled to release Jam and Integrated and dismiss them from this lawsuit without any consequences for their role in the criminal scheme that resulted in Bergstein's recent conviction on federal charges and eight-year prison sentence.

Jam and Integrated's motion fails at every turn.  To begin, leave to amend to assert a claim for reformation of the Settlement Agreement is futile because the claim is unsustainable as a matter of law.[1]  A claim for reformation arises only in limited circumstances—namely when, by reason of fraud or mutual mistake, certain material

---

[1] Jam and Integrated seek leave to assert cross-claims for reformation against Bergstein, Graybox, and SIP.  SIP, however, is not a party to this case.  Further, Class TT's claims against Graybox and Bergstein were dismissed with prejudice pursuant to this Court's Order dated January 5, 2018, (Doc. No. 319).

1

terms were omitted from a contract such that the contract is inconsistent with the contracting parties' intent. Jam and Integrated do not allege fraud, mutual mistake, or that the Settlement Agreement is inconsistent with the contracting parties' intent. Nor can they. Rather, Jam and Integrated—again, neither of whom is a party to the Settlement Agreement—seek to reform the Settlement Agreement in a manner that directly conflicts with the settling parties' intent and the plain terms of the agreement. Indeed, the Settlement Agreement unequivocally provides for Jam and Integrated's release *only upon* SIP and/or its designee's payment of the final $2,000,000 owed to Class TT under the agreement by no later than November 21, 2018. Class TT did not receive that payment by the negotiated deadline and, therefore, Class TT is free to prosecute its claims against Jam and Integrated.

Jam and Integrated seek reformation on the grounds that the Settlement Agreement is "unconscionable" and "contrary to public policy." These claims are unfounded. To the extent Jam's attorney at that time failed to keep his client informed or had a conflict of interest, Jam's remedy lies against his attorney, not Class TT. To the extent Bergstein entered into the Settlement Agreement "to retain leverage" over Jam in Bergstein's criminal case, that too has nothing to do with Class TT. In any event, Jam did not testify in Bergstein's case and the truth is that the Settlement Agreement afforded Jam and Integrated a *substantial benefit*, not a "severe detriment." Jam and Integrated face significant liability in this case. Jam—whom the Government in Bergstein's criminal case identified as an unindicted co-conspirator—faces liability in excess of $10,000,000, and Integrated faces liability of at least $2,000,000. Nevertheless, the Settlement Agreement offered Jam and Integrated an opportunity to secure their complete release in exchange for a significant discount—a $2,000,000 payment. Rather than make that payment, Jam and Integrated chose to file this baseless motion to amend.

The other aspects of Jam and Integrated's motion are also without merit. Jam requests leave to file a counterclaim seeking a declaration that he is not an alter ego of

SIP.  This claim is improper because it is untimely and because it duplicates Class TT's claim which seeks a declaration that Jam *is* SIP's alter ego.  Jam and Integrated also seek leave to assert two new affirmative defenses: first, that Class TT's claims against them have been "settled" by virtue of the Settlement Agreement; and second, that Jam and Integrated's liability is limited to $2,000,000.  These "defenses" fail for the same reason Jam and Integrated's proposed claim for reformation fails: the defenses are inconsistent with the express terms of the Settlement Agreement and the law.

For these reasons, and because Class TT will suffer prejudice if leave to amend is permitted at this late stage, Jam's and Integrated's motion should be denied in its entirety.

## II.    BACKGROUND

### A.    Class TT's Consolidated Complaints

This litigation began approximately three and a half years ago at which time Class TT filed two complaints.  First, on July 30, 2015, Class TT filed a complaint (the "Alter Ego Complaint") in the Southern District of Texas against Jam, Bergstein, Aaron Grunfeld ("Grunfeld"), and Jerome Swartz ("Swartz") (collectively, the "Alter Ego Defendants"), seeking a declaration that those individuals are the alter egos of SIP and, therefore, liable for the full amount of Class TT's judgment against SIP. [Alter Ego Complaint, Doc. No. 1, Case No. 4:15-cv-02193 in the Southern District of Texas].[2]  Second, on August 15, 2015, Class TT filed a complaint (the "Fraudulent Transfer Complaint") in this Court against Integrated, Graybox, Eugene Scher ("Scher"), as Trustee of Bergstein Trust, Cascade Technologies Corp. ("Cascade"), and the Law Offices of Henry N. Jannol ("Jannol") (the "Fraudulent Transferee Defendants")—some of the individuals and entities who benefited from the Alter Ego Defendants' fraud.  [Fraudulent Transfer Complaint, Doc. No. 1].

---

[2] Unless otherwise indicated, this brief refers to documents filed in this consolidated action – Case No. 2:15-cv-06633-CAS-AJW.

On September 21, 2015, Jam, Bergstein, and Grunfeld filed a motion to dismiss the Alter Ego Complaint or, alternatively, to transfer venue to this Court. [Motion, Doc. No. 17, Case No. 4:15-cv-02193 in the Southern District of Texas]. With that motion pending, on January 14, 2016, Class TT filed an amended complaint against the Alter Ego Defendants. [Amended Alter Ego Complaint, Doc. No. 40, Case No. 4:15-cv-02193 in the Southern District of Texas]. On April 1, 2016, the Southern District entered an order transferring the claims against the Alter Ego Defendants to this Court. [Order, Doc. No. 64, Case No. 4:15-cv-02193 in the Southern District of Texas]. Shortly thereafter, this Court entered an order consolidating the claims against the Alter Ego Defendants and the Fraudulent Transferee Defendants into one action (the "Consolidated Action"). [Order, Doc. No. 134].

### B. Integrated's Unsuccessful Motion To Dismiss And Answers To Class TT's Complaints

On October 23, 2015, Integrated filed a motion to dismiss the Fraudulent Transferee Complaint. [Motion, Doc. No. 72]. This Court denied the motion. [Order, Doc. No. 82]. Shortly thereafter, on December 3, 2015, Integrated filed an answer to the Fraudulent Transferee Complaint. [Answer, Doc. No. 83]. Integrated did not assert any counterclaims, cross-claims, or third-party claims in its answer. [Answer, Doc. No. 83].

On January 15, 2016, Class TT filed an amended complaint against the Fraudulent Transferee Defendants. [Amended Fraudulent Transferee Complaint, Doc. No. 105]. Integrated answered the complaint on February 4, 2016. [Answer, Doc. No. 116]. Once again, Integrated did not assert any counterclaims, cross-claims, or third-party claims in its answer. [Answer, Doc. No. 116].

### C. Jam's Unsuccessful Motion To Dismiss And Answers To Class TT's Complaints

On May 16, 2016, Jam filed a motion to dismiss the amended Alter Ego Complaint. [Motion, Doc. No. 138]. This Court denied the motion. [Order, Doc. No. 151].

Jam then filed an answer to the amended Alter Ego Complaint on July 1, 2016. [Answer, Doc. No. 167]. Jam did not assert any counterclaims, cross-claims, or third-party claims in his answer. [Answer, Doc. No. 167].

On September 12, 2016, Class TT filed a second amended complaint against the Alter Ego Defendants, (Second Amended Alter Ego Complaint, Doc. No. 197), in response to which Jam filed an answer on September 29, 2016, (Answer, Doc. No. 218). Once again, Jam did not assert any counterclaims, cross-claims, or third-party claims in his answer. [Answer, Doc. No. 218].

### D. Bergstein's Indictment And The Stay Of This Action

Sometime in late 2016, the United States Attorney for the Southern District of New York indicted Bergstein on multiple criminal charges arising from the fraud underlying this litigation. Thereafter, on January 9, 2017, this Court entered an order staying the Consolidated Action pending resolution of the criminal case against Bergstein. [Order, Doc. No. 298]. At the time of the stay, the parties had been engaged in substantial discovery, and the only obstacle to Class TT beginning depositions was Bergstein and Graybox's refusal to produce certain discovery. [Declaration of James Walker, Doc. No. 291].

### E. The Settlement Agreement

On November 16, 2017, Class TT entered into the Settlement Agreement with Bergstein, Graybox, and SIP. Neither Jam nor Integrated is a party to the Settlement Agreement.

Under the Settlement Agreement, Bergstein, Graybox, and/or SIP agreed to pay Class TT $9,412,000—approximately half of the $17.7 million that was stolen from

Class TT—in three separate payments. First, Graybox agreed to authorize the release of the $2,412,000 in funds that were frozen (the "Frozen Funds") pursuant to this Court's order granting the preliminary injunction motion Class TT filed at the outset of this case. [Settlement Agreement, Doc. No. 386-1 ¶ A(1)(a)]. In accordance with the parties' agreement, on August 17, 2017, this Court lifted the stay and entered an order releasing the Frozen Funds to Class TT. [Order, Doc. No. 311]. Second, SIP or its designee agreed to wire $5,000,000 to Class TT within thirty days of execution of the Settlement Agreement. [Settlement Agreement, Doc. No. 386-1 ¶ A(1)(b)]. Third, SIP or its designee agreed to pay Class TT $2,000,000 within one year of execution of the Settlement Agreement. [Settlement Agreement, Doc. No. 386-1 ¶ A(1)(c)]. Bergstein agreed to secure this final payment by providing Class TT with a consent judgment.[3] [Settlement Agreement, Doc. No. 386-1 ¶ A(1)(c)].

In exchange for the first two payments totaling $7,412,000, Class TT agreed to release all claims against Bergstein, Graybox, SIP, Scher, Cascade, Jannol, Swartz, and Grunfeld. [Settlement Agreement, Doc. No. 386-1 ¶ B(1)]. Class TT further agreed, upon receipt of the final $2,000,000 payment owed under the Settlement Agreement, to release all claims against Jam and Integrated. [Settlement Agreement, Doc. No. 386-1 ¶ B(2)].

Pursuant to the Settlement Agreement, Graybox and SIP's designee timely paid the $7,412,000 to Class TT. As a result, on January 5, 2018, this Court entered an Order dismissing with prejudice all claims against Graybox, Bergstein, Scher, Cascade, Jannol, Swartz, and Grunfeld. [Order, Doc. No. 319]. The Court's Order further provides, "The Consolidated Action shall remain stayed as to Jam and [Integrated] unless and until [Class TT] moves for and obtains an order of this Court lifting the stay, or otherwise seeks dismissal of the case, or until further order of this Court." [Order, Doc. No. 319].

---

[3] Despite Class TT's demand, Bergstein has refused to provide this consent judgment.

This Court lifted the stay in an order entered on July 5, 2018. [Order, Doc. No. 332]. Thereafter, Class TT filed a motion to modify the Court's March 28, 2016 Scheduling Order, so that it could continue its claims against Jam and Integrated. [Motion, Doc. No. 365]. On November 11, 2018, this Court entered an amended Scheduling Order, which sets a trial date for June 25, 2019. [Scheduling Order, Doc. No. 374].[4]

The one-year deadline for SIP or its designee to make the final payment due to Class TT under the Settlement Agreement has passed, and payment has not been made. Jam was aware of the deadline to make the final payment and could have made the payment as a designee of SIP. Jam, however, chose not to do so. As a result, Jam and Integrated have not been released, and Class TT continues to pursue its claims against those parties.

### F. Jam's Role In Connection With Bergstein's Crimes

On March 1, 2018, the jury in Bergstein's criminal trial found him guilty on all counts—namely, two counts of investment advisor fraud; two counts of securities fraud; one count of conspiracy to commit wire fraud; and one count of wire fraud. Jam in his motion to amend attempts to portray himself as a victim of Bergstein, a so-called "fly" in Bergstein's "entangled web." [Motion, Doc. No. 386 at 1].

The reality, however, is that Jam played an integral role in Bergstein's crimes. Indeed, in the sentencing memorandum submitted in Bergstein's criminal trial, the government identified Jam as an unindicted co-conspirator. Specifically, the government noted:

- "Bergstein also took steps with *a co-conspirator named Kia Jam* to launder and disburse [] proceeds, including by transferring them through attorney trust

---

[4] At Jam and Integrated's request, Class TT entered into a stipulation to extend the deadline for Jam and Integrated to file an amended pleading. On December 13, 2018, the Court entered an order granting the parties' stipulation and setting January 22, 2019 as the new deadline to file an amended pleading. [Order, Doc. No. 379].

accounts and shell entities that he and his associates controlled, such as Graybox and the Bergstein Family Trust."

- *Bergstein's assertion that Jam was not a co-conspirator is belied by a mountain of evidence*, including the numerous emails cited above, which show that Jam knowingly participated in the scheme by executing contracts central to the fraud and moving the fraud proceeds at Bergstein's direction."

[Declaration of James W. Walker, Exhibit A at 7, 24-25 (emphasis added).]

### G. Jam and Integrated's Motion To Amend

Jam and Integrated filed their motion to amend on January 22, 2019. [Motion, Doc. No. 386]. Through their motion, Jam and Integrated seek leave to amend their respective answers to the second amended Alter Ego Complaint and the amended Fraudulent Transferee Complaint to include: (i) two new affirmative defenses based on the Settlement Agreement; and (ii) a counterclaim against Class TT and "cross-claims" against Bergstein, Graybox, and SIP[5] for reformation of the Settlement Agreement. [Motion, Doc. No. 386 at 8]. Jam also requests leave to assert a counterclaim against Class TT seeking a declaration that he is not SIP's alter ego. [Motion, Doc. No. 386 at 8].

## III. THE MOTION TO AMEND SHOULD BE DENIED.

The law governing motions to amend is well settled. To determine whether leave to amend is appropriate, this Court considers any one or more of the following four factors: bad faith, undue delay, prejudice to the non-moving party, and/or futility. *Ryan v. Editions Ltd. West, Inc.*, 786 F.3d 754, 767 (9th Cir. 2015); *accord Consolidated Credit Agency v. Equifax, Inc.*, No. CV 03-01229 CAS (CWx), 2004 WL 5644363, at *3 (C.D. Cal. Aug. 5, 2004). Here, leave to amend should be denied because: (i) Jam and Integrated's proposed claim for reformation of the Settlement Agreement is unsustainable as a matter of law; (ii) Jam failed to timely bring his

---

[5] As noted, SIP is not a party to this case.

proposed declaratory judgment claim and, in any event, the claim is improper because it duplicates Class TT's declaratory judgment claim; (iii) Jam's and Integrated's proposed affirmative defenses are unsustainable as a matter of law; and (iv) leave to amend at this late stage will cause Class TT substantial prejudice.

### A. Jam's and Integrated's Claims For Reformation Of The Settlement Agreement Are Unsustainable As A Matter Of Law.

This Court should deny Jam and Integrated's motion seeking leave to file a claim for reformation of the Settlement Agreement because the claim is unsustainable as a matter of law. Leave to amend, therefore, is futile. *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018) ("Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal.").

"To state a claim for reformation under California law, a plaintiff must plead that 'by reason of fraud practiced by one of the parties, or of the mutual mistake of the parties or of a mistake of one of them, which the other at the time knew or suspected, there were omitted from the instrument certain material terms and conditions.'" *Kulberg v. Washington Mut. Bank*, No. 10–CV–1214 W(BLM), 2011 WL 1431512, at *5 (C.D. Cal. Apr. 14, 2011) (quoting *Pascoe v. Morrison*, 219 Cal. 54, 56, 25 P.2d 9 (1933)). "[R]eformation is an equitable action which seeks to rewrite the terms of a contract to aline with the parties' intent." *Rashtian v. Allstate Ins. Co.*, No. CV–02—1138–EFS(SHX), 2003 WL 282408, at *2 (C.D. Cal. Feb. 6, 2003). "'Basic to a cause of action for reformation is a showing of a definite intention or agreement on which the minds of the parties had met which pre-existed and conflicted with the instrument in question.'" *Kulberg*, 2011 WL 1431512 at *5 (quoting *Appalachian Ins. Co. v. McDonnell Douglas Corp.*, 214 Cal. App. 3d 1, 21, 262 Cal. Rptr. 716 (1989)).

Jam and Integrated fail to plead any facts to support a claim for reformation. They do not allege mutual mistake or fraud, nor can they. They do not claim their

proposed change to the Settlement Agreement—releases in favor of Jam and Integrated—is consistent with the settling parties' intent, nor can they. In fact, Jam and Integrated's proposed change is decidedly *inconsistent* with the settling parties' intent, as evidenced by the express terms of the Settlement Agreement. *See Frederickson v. Guardian Holding, Inc.*, No. LA CV12-03325 JAK (AJWx), 2012 WL 12894754, at *4 (C.D. Cal. July 26, 2012) ("Under California law, 'when a contract has been reduced to writing, a court must ascertain the parties' intent from the writing alone, if possible. . . . Contract interpretation is governed by the objective intent of the parties as embodied in the words of the contract.'" (quoting *Yount v. Acuff Rose-Opryland*, 103 F.3d 830, 836 (9th Cir. 1996)).

Indeed, the Settlement Agreement expressly provides that Class TT "shall dismiss the Consolidated Action, with prejudice, against Jam and [Integrated]" *only* "*upon* payment of the $2 million referenced in Section A1(c)" of the agreement.[6] [Settlement Agreement, Doc. No. 386-1 ¶ A(2) (emphasis added)]. The Settlement Agreement further provides that "[i]n the event the $2 million payment referenced in Section A1(c) above is not timely made, *then the TT Fund may move to lift the stay of the Consolidated Action and proceed against Jam and [Integrated]*." [Settlement Agreement, Doc. No. 386-1 ¶ A(2)]. The Settlement Agreement, "[f]or the avoidance of doubt," also states that the "'Initial Defendant Released Parties' *do not include*, to the extent not specifically released herein, Jam or [Integrated] . . . ." [Settlement Agreement, Doc. No. 386-1 ¶ B(1)]. The agreement thus demonstrates the settling

---

[6] Jam and Integrated question why Class TT did not receive the final $2,000,000 payment due under the Settlement Agreement, nor did it obtain the consent judgment that Bergstein was to supposed provide under the agreement. [Motion, Doc. No. 386 at 13 ("[F]or no apparent rhyme or reason, Wimbledon did not follow the terms of the Settlement Agreement and failed to ever obtain the Consent Judgment it was entitled to in order to secure the outstanding $2,000,000 owed under the Settlement Agreement – and now, seek to go after Jam and [Integrated] for monies Wimbledon could have, and should have, already legally secured . . . .")]. The fact is that Bergstein—a convicted felon who conspired with Jam to defraud Class TT—is refusing to comply with the Settlement Agreement, despite Class TT's demands. This should come as no surprise to Jam and Integrated. To suggest that Class TT is at fault for Bergstein's refusal to comply is absurd.

parties' clear intent *not* to provide the very releases that Jam and Integrated seek by way of their reformation claim.

Jam and Integrated contend the Settlement Agreement is unconscionable and contrary to public policy. Specifically, Jam and Integrated argue: (i) they were wrongfully excluded from the group of defendants who were released upon the $5,000,000 payment due under the Settlement Agreement so that Bergstein could "attempt to retain leverage over Jam and dissuade Jam from testifying negatively against Bergstein in his criminal trial"; and (ii) Jam and Integrated's previous attorney, Jannol, breached his fiduciary duty by "achieving his release secretly and contrary to the best interests and duties owed to his clients . . . ." [Motion, Doc. No. 386 at 8].

These allegations are insufficient to support Jam and Integrated's claim that the Settlement Agreement is unconscionable or against public policy. With respect to the unconscionability claim, Jam and Integrated fail to allege that the Settlement Agreement—to which Jam and Integrated are not parties—was the product of "oppression or surprise due to unequal bargaining power," nor do they claim the agreement is "overly harsh" or leads to "one-sided results." *Money Deposit Co. v. Gilliam*, 671 F. Supp. 2d 1137, 1142 (C.D. Cal. 2009) (stating that under California law, a contract is unconscionable if it is both procedurally and substantively unconscionable, "the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results"). Jam claims the Settlement Agreement has "potentially caus[ed] Jam severe detriment." [Motion, Doc. No. 386 at 6]. This allegation, even if true, does not establish a claim for unconscionability. *See id.* (stating that a contract is unconscionable if it is *both* procedurally and substantively unconscionable). The allegation is baseless, in any event. First, Bergstein had no obligation to secure a release for Jam and Integrated, nor did Class TT have an obligation to settle with all defendants. Second, as explained above, the Settlement Agreement actually provides a substantial benefit to

Jam and Integrated, as it offered them a clear opportunity to secure their release for an amount substantially less than the liability they face in this case.[7]

    Jam and Integrated, moreover, fail to identify any "public policy" to support their claim that the Settlement Agreement is unenforceable. No such public policy exists. Again, Class TT had no obligation to negotiate or settle with all defendants in this case, nor did Bergstein have an obligation to ensure that Jam and Integrated were involved in settlement discussions or released as defendants. Public policy does not support reforming a settlement agreement due to a non-party's dissatisfaction with the agreement. To the contrary, public policy in California "favor[s] the enforcement of written settlement agreements." *Porsandeh v. Prudential Prop. & Cas. Inc. Co.*, No. CV–02–5343–EFS (SHx), 2004 WL 5642440, at *3 (C.D. Cal. Apr. 30, 2004).

    Jam and Integrated's claim that their attorney, Jannol, breached his fiduciary duty is of no moment.[8] *See Schneider v. Bank of Am.*, No. 2:11–cv–2953–JAM–EFB PS, 2017 WL 3977174, at *5 (E.D. Cal. Sept. 11, 2017) ("'[I]f an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice.'" (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 634 n.10 (1962))). Also of no moment is Jam's claim that Bergstein wanted to "retain leverage over Jam and dissuade Jam from testifying negatively against Bergstein in his criminal trial . . . ." [Motion, Doc. No. 386 at 8]. Bergstein's alleged "motivation" does not support a claim for reformation.[9]

---

[7] As explained, Jam—as a designee of SIP—could have secured his release by making the final $2,000,000 payment due to Class TT under the Settlement Agreement. He chose not to do so.

[8] Jannol became a defendant in January 2016. [Amended Fraudulent Transferee Complaint, Doc. No. 105]. Jannol continued to represent Jam and Integrated until June 2018—approximately seven months *after* the Settlement Agreement was executed in November 2017—when Jam and Integrated's current attorney became counsel of record. [Substitution Orders, Doc. Nos. 322, 325].

[9] Jam did not ultimately testify at Bergstein's trial.

12

Because Jam's and Integrated's claims to reform the Settlement Agreement are unsustainable as a matter of law, leave to amend should be denied.

### B.    Jam's Declaratory Judgment Claim Is Improper.

Jam requests leave to file a counterclaim seeking a declaration that he is not an alter ego of SIP.  The Court should deny leave to amend for two reasons: first, the proposed counterclaim is duplicative of Class TT's declaratory judgment claim; and second, the proposed counterclaim is untimely.

Jam's proposed declaratory judgment counterclaim is improper because it duplicates Class TT's declaratory judgment claim.  "When an action for declaratory relief is duplicative of the relief sought under another cause of action, dismissal of the declaratory relief claim is proper." *Mollicone v. Universal Handicraft, Inc.*, No. 2:16-cv-07322-CAS(MRWx), 2017 WL 440257, at *13 (C.D. Cal. Jan. 30, 2017) (dismissing declaratory judgment claim because it duplicated other causes of action) (citing *Swartz v. KPMG, LLP*, 476 F.3d 756, 766 (9th Cir. 2007) (per curiam)); *United Safeguard Distribs. Assoc., Inc. v. Safeguard Business Sys., Inc.*, 145 F. Supp. 3d 932, 961 (C.D. Cal. 2015) (same).  Jam's proposed declaratory judgment claim is plainly duplicative of Class TT's declaratory judgment claim.  Jam seeks a declaration that he is *not* SIP's alter ego, and Class TT seeks a declaration that Jam *is* SIP's alter ego.  Under these circumstances, leave to amend should be denied.

Leave to amend should also be denied because Jam's proposed counterclaim is untimely.  One of the factors a court considers in "determin[ing] the propriety of a motion for leave to amend" is undue delay.  *Consolidated Credit Agency v. Equifax, Inc.*, No. CV 03-01229 CAS (CWx), 2004 WL 5644363, at *20 (C.D. Cal. Aug. 5, 2004) (denying leave to amend).  "Leave to amend is often denied, where, as here, a plaintiff had knowledge of the relevant facts and theory of the case long before a plaintiff sought leave to amend." *Mortg. Indus. Solutions, Inc. v. Collabera, Inc.*, No. CV11-4008-CAS (AGRx), 2013 WL 440644, at *3 (C.D. Cal. Feb. 4, 2013).  As this Court has held:

> [T]he liberality of Rule 15(a) does not mean that amendment will be allowed regardless of the diligence of the moving party. Where the party seeking amendment knows or should know of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend may be denied."…"Late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." Delay can contribute to a finding of prejudice, for "expense, delay, and wear and tear on individuals and companies count toward prejudice."

> *Susilo v. Wells Fargo Bank, N.A.*, No. CV 11-1814(CAS) (PJWx), 2012 WL 5179531, at *1 (C.D. Cal. Oct. 16, 2012). (citations omitted).

Jam could have asserted his proposed counterclaim at the outset of this case. Indeed, Jam's "defense" has always been that he is not SIP's alter ego. This theory has "been known to [Jam] since the inception of the cause of action." *Id.* Jam provides no explanation—because none exists—for failing to assert his proposed counterclaim in the two answers he filed in July and September 2016. Accordingly, the Court should deny leave to amend.

### C. Jam and Integrated's Proposed New Affirmative Defenses Are Without Merit.

Jam and Integrated seek leave to assert two new affirmative defenses: first, they claim Class TT has already settled its claims against Jam and Integrated pursuant to the Settlement Agreement, "which should be reformed to fully release [Jam and Integrated] regardless of any payment outstanding from Bergstein, Graybox, and/or SIP"; and second, they claim Jam and Integrated's "liability to [Class TT] is limited solely to the $2,000,000 payment [Class TT] alleges Bergstein, Graybox, and/or SIP owes to [Class TT] to which [Class TT] now seeks from [Jam and Integrated]." [Integrated's Proposed Amended Answer, Doc. No. 386-2 at 14; Jam's Proposed Amended Answer, Doc. No. 386-4 at 16-17].

These proposed affirmative defenses are unsustainable as a matter of law for the reasons stated above.  Specifically, the first defense fails because there is no basis to reform the Settlement Agreement, which only provided for Jam and Integrated's release upon payment of $2,000,000 by "SIP or its designee."  The second defense similarly fails because it is inconsistent with the Settlement Agreement.  Of course the Settlement Agreement only limited Jam and Integrated's liability in the event the final $2,000,000 payment was made.  The payment, however, was *not* made.  As a result, Class TT is permitted to prosecute its claims against Jam and Integrated for the full extent of its damages.

### D. Class TT Will Suffer Prejudice If Leave To Amend Is Granted.

This Court should deny leave to amend because Class TT will suffer prejudice if Jam and Integrated are permitted at this late stage to move forward with their amended defenses and new claims.

Discovery in this matter is substantially complete, and the discovery end date is a little over a month after the hearing date for this motion.  If leave to amend is granted, the amendments will dramatically change the scope of this case—which began approximately three and a half years ago—and the parties will have to "engage in discovery unique to" Jam's and Integrated's new claims, "resulting in a potential delay in future hearing dates and vacation of the trial" scheduled on June 25, 2019. *Black v. Hunt & Henriques*, No. SACV 10–1476 JVS (MANx), 2011 WL 1405411, at *2 (C.D. Cal. Apr. 11, 2011) (denying leave to amend because the non-moving party would suffer prejudice).  In particular, Jam and Integrated will presumably attempt to conduct discovery concerning the negotiation of the Settlement Agreement and their relationship with their former attorney, Jannol.  Jam and Integrated's "shift in legal theories will 'nullif[y] prior discovery [and impose] the burden of necessary future discovery,' which will drag [this] case on even longer" and cause Class TT substantial prejudice.  *Scognamillo v. Credit Suisse First Boston, LLC*, 587 F. Supp. 2d 1149

(N.D. Cal. 2008) (quoting *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citing cases in which courts have denied leave to amend due to prejudice). Under these circumstances, leave to amend should be denied. *Id.* ("'In light of the radical shift in direction posed by these claims, their tenuous nature, and the inordinate delay, we conclude that the district court did not clearly abuse its discretion in denying leave to amend.'" (quoting *Morongo v. Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990))).

## IV.     CONCLUSION.

For the foregoing reasons, this Court should deny Jam and Integrated's motion to amend.


Dated: February 4, 2019          PACHULSKI STANG ZIEHL & JONES LLP
                                                     -and-
                                 COLE SCHOTZ P.C.


                                 By: /s/ James W. Walker
                                 James W. Walker (admitted *pro hac vice*)
                                 Cameron A. Welch (admitted *pro hac vice*)
                                 Eric S. Latzer (admitted *pro hac vice*)
                                 Attorneys for Plaintiff,
                                 The Wimbledon Fund, SPC (Class TT)

1

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was sent to all counsel of record in this consolidated lawsuit via CM/ECF on this the 4th day of February 2019.

/s/ James W. Walker
James W. Walker