LAW OFFICE OF DAVID W. WIECHERT
DAVID W. WIECHERT (Cal. Bar No. 94607)
JAHNAVI GOLDSTEIN (Cal. Bar No. 245084)
WILLIAM J. MIGLER (Cal. Bar No. 318518)
27136 Paseo Espada, Suite B1123
San Juan Capistrano, California 92675
Telephone: (949) 361-2822
Facsimile: (949) 361-5722
Email: dwiechert@aol.com
Email: jahnavi@davidwiechertlaw.com
Email: william@davidwiechertlaw.com

Attorneys for Defendants
Kiarash Jam and Integrated Administration, Inc.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| THE WIMBLEDON FUND, SPC (CLASS TT),<br><br>        Plaintiff,<br><br>v.<br><br>GRAYBOX, LLC; INTEGRATED ADMINISTRATION; EUGENE SCHER, AS TRUSTEE OF BERGSTEIN TRUST; CASCADE TECHNOLOGIES CORP., and THE LAW OFFICES OF HENRY N. JANNOL,<br><br>        Defendants. | C.D. Cal. Consolidated Case No. 2:15-cv-6633-CAS-AJWx<br>Honorable Christina A. Snyder<br><br>**DEFENDANT KIARASH JAM'S PROPOSED STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**<br><br>Filed concurrently with:<br>Defendant Kiarash Jam's Notice of Motion and Motion for Summary Judgment; Memorandum of Points and Authorities; Declaration of Kiarash Jam; Declaration of David Wiechert<br><br>Hearing Date: May 13, 2019<br>Time:          10:00 a.m.<br>Courtroom:    8D |
| THE WIMBLEDON FUND, SPC (CLASS TT),<br><br>        Plaintiff,<br><br>v. | |

---

DAVID BERGSTEIN; JEROME SWARTZ; AARON GRUNFELD; and KIARASH JAM.,

      Defendants.

AND CONSOLIDATED ACTIONS AND RELATED THIRD-PARTY ACTIONS.

Pursuant to Central District of California Local Rule 56-1, Defendant Kiarash Jam submits this Statement of Uncontroverted Facts and Conclusions of Law in support of his Motion for Summary Judgment, filed concurrently herewith.

## I.   UNCONTROVERTED FACTS

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| (1) Advisory Services, Inc. f/k/a Swartz IP Services Group, Inc.'s ("SIP") Certificate of Formation was filed with the Texas Secretary of State's Office on December 2, 2010. | Exhibit A to Wiechert Decl., at Bates-stamp # WF0000319-WF0000321. |
| (2) While the certificate listed Bergstein's attorney Aaron Grunfeld as SIP's director, filed concurrently with the certificate was SIP's bylaws and "Resolutions Adopted by Sole Director," which listed David Bergstein ("Bergstein") as SIP's sole director and named him President and Secretary of SIP. | Exhibit A to Wiechert Decl., at Bates-stamp # WF0000320, WF0000322-WF0000329, WF0000333-WF0000338. |
| (3) SIP's stated address was 10101 Fondren Road, Suite 515, Houston, Texas 77096. | Exhibit A to Wiechert Decl., at Bates-stamp # WF0000320. |
| (4) SIP's name was formally changed to "Advisory IP Services, Inc." on June 13, 2012. | Exhibit B to Wiechert Decl. |
| (5) SIP had two bank accounts with Deutsche Bank and one account with Wells | Exhibit A to Wiechert Decl., at Bates-stamp # WF0000317-WF0000318; Exhibit C to |

2

| | |
|---|---|
| Fargo Bank, all of which listed Bergstein as the sole signatory. | Wiechert Decl.; Exhibit D to Wiechert Decl.; Exhibit L to Wiechert Decl.; Exhibit AA to Wiechert Decl.; Exhibit BB to Wiechert Decl.; Exhibit CC to Wiechert Decl.; Jam Decl. at ¶ 8. |
| (6) SIP's responsible party for tax purposes filed with the IRS was Graybox, LLC ("Graybox"), another entity wholly owned and controlled by Bergstein. | Exhibit E to Wiechert Decl.; Exhibit F to Wiechert Decl.; Exhibit G to Wiechert Decl. |
| (7) 87.5% of SIP's outstanding shares were held by Owari Opus, Inc. | Exhibit A to Wiechert Decl. at Bates-stamp # WF0000338; Exhibit H to Wiechert Decl.; Exhibit I to Wiechert Decl. |
| (8) Owari Opus Inc. was 100% owned by Bergstein. | Exhibit A to Wiechert Decl. at Bates-stamp # WF0000339-WF0000341; Exhibit J to Wiechert Decl. at Bates-stamp # JAM_TT_001149. |
| (9) The remaining 12.5% of SIP shares were intended to be held by Jerome Swartz, an individual. | Exhibit A to Wiechert Decl. at Bates-stamp # WF0000338; Exhibit H to Wiechert Decl.; Exhibit I to Wiechert Decl. |
| (10) Jam never owned shares in SIP, and no SIP share certificate bearing Defendant Kiarash Jam's ("Jam") name was ever issued to or received by Jam. | Exhibit H to Wiechert Decl.; Exhibit I to Wiechert Decl.; Exhibit K to Wiechert Decl.; Jam Decl. at ¶ 2. |
| (11) In and around November 2011, Bergstein negotiated with representatives of Weston Capital Asset Management, LLC ("Weston") for Plaintiff The Wimbledon Fund, SPC (Class TT)'s ("Wimbledon") investment of $17.7 million into SIP, on the promise that SIP's management of the money would produce a similar return Wimbledon would have experienced if its funds was left in the Tewksbury Fund – a highly regarded investment fund in which Wimbledon's investor clients believed their investments would be held. | Exhibit L to Wiechert Decl.; Jam Decl. at ¶ 3. |
| (12) Bergstein solely negotiated Wimbledon's investment into SIP on SIP's behalf. | Exhibit L to Wiechert Decl.; Exhibit Z to Wiechert Decl. at pp. 1-2; Jam Decl. at ¶ 3. |
| (13) Wimbledon's investment into SIP was memorialized in the Note Purchase | Exhibit M to Wiechert Decl.; Exhibit N to Wiechert Decl.; Jam Decl. at ¶ 4. |

DEFENDANT KIARASH JAM'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| | |
|---|---|
| Agreement ("NPA") and Reference Notes, which Jam executed on behalf of SIP as "Vice President." | |
| (14) Jam also executed a Side Letter on SIP's behalf (but not as Vice President), representing that at least $5 million of Wimbledon's investment would remain in SIP's Deutsche Bank account, however this Side Letter was never fully executed or relied upon by Wimbledon. | Exhibit O to Wiechert Decl.; Exhibit P to Wiechert Decl.; Jam Decl. at ¶ 5. |
| (15) Bergstein directed Jam to execute these documents on SIP's behalf, and Jam did so as he was accustomed to signing documents for Bergstein, whom he trusted, and which he understood numerous attorneys had vetted. | Exhibit Q to Wiechert Decl.; Exhibit S to Wiechert Decl.; Exhibit T to Wiechert Decl.; Jam Decl. at ¶ 6. |
| (16) Jam did not read the NPA, Reference Notes, or Side Letter before signing them; he returned executed copies of a revised set eleven minutes after receiving Bergstein's email directing Jam to execute the documents. | Exhibit Q to Wiechert Decl.; Exhibit R to Wiechert Decl.; Exhibit U to Wiechert Decl.; Jam Decl. at ¶ 7. |
| (17) Bergstein routinely controlled Jam in transactions in which both were involved. | Exhibit S to Wiechert Decl. |
| (18) Wimbledon did not rely on Jam's signature on the Side Letter, which was never fully executed by Weston's agent Keith Wellner, nor on Jam's signatures on the NPA or the Notes – indeed, Wimbledon has admitted that it had no oral communications with Jam and Jam never made any misrepresentations to Wimbledon. | Exhibit P to Wiechert Decl.; Exhibit Z to Wiechert Decl. at pp. 1-2 |
| (19) Wimbledon would have accepted the NPA and Reference Notes regardless of who signed them on behalf of SIP. | Exhibit P to Wiechert Decl. |
| (20) Wimbledon's investment totaling over $17,000,000 was transferred in two tranches into a SIP Deutsche Bank account, which, like all the SIP bank accounts, was opened and singularly controlled by | Exhibit A to Wiechert Decl., at Bates-stamp # WF0000317-WF0000318; Exhibit C to Wiechert Decl.; Exhibit D to Wiechert Decl.; Exhibit L to Wiechert Decl.; Jam Decl. at ¶ 8. |

| | |
|---|---|
| Bergstein. | |
| (21) Bergstein solely determined the trajectory of SIP's funds, with Jam having no control over SIP's use or transferring of its funds. | Exhibit S to Wiechert Decl.; Exhibit V to Wiechert Decl.; Exhibit W to Wiechert Decl.; Jam Decl. at ¶ 8. |
| (22) On February 8, 2013 Wimbledon filed in New York state court a complaint against SIP for breach of the Note Purchase Agreement. | Exhibit X to Wiechert Decl. at p. 2. |
| (23) Bergstein asked Jam to sign an affidavit regarding service of the complaint as an officer of SIP. | Jam Decl. at ¶ 9. |
| (24) On November 24, 2015, the New York court entered judgment in Wimbledon's favor for $23,051,971.31. | Exhibit X to Wiechert Decl. at p. 2. |
| (25) On July 30, 2015, Wimbledon filed the instant alter-ego claims against, *inter alia*, Bergstein and Jam in United States District Court for the Southern District of Texas. | Exhibit X to Wiechert Decl. at p. 2; C.D. Cal. Case No. Case No. 2:16-cv-02287-CAS-SS, Dkt. No 1. |
| (26) On April 4, 2016 this case was transferred to this Court and it was subsequently consolidated into Case No. 2:15-cv-6633-CAS. | Exhibit X to Wiechert Decl. at pp. 2-3; C.D. Cal. Case No. Case No. 2:16-cv-02287-CAS-SS, Dkt. Nos. 64-65 |
| (27) In 2017, Bergstein and Wimbledon began settlement negotiations. | Exhibit X to Wiechert Decl. at p. 3. |
| (28) Bergstein, through his counsel, negotiated on behalf of himself, Graybox, LLC ("Graybox") (to which he was its sole member), and SIP. | Exhibit X to Wiechert Decl. at p. 3; Exhibit Y to Wiechert Decl. at pp. 5-6. |
| (29) On November 16, 2017, Bergstein, SIP, Graybox, and Wimbledon executed a "Confidential Compromise Settlement and Release Agreement" (the "Settlement Agreement") which purported to settle Wimbledon's claims against Bergstein, SIP and Graybox in exchange for $9,412,000. | Exhibit X to Wiechert Decl. at p. 1; Exhibit Y to Wiechert Decl. at pp. 5-6. |
| (30) Bergstein executed the Settlement Agreement on SIP's behalf. | Exhibit X to Wiechert Decl. at p. 14. |
| (31) The $9,412,000 payment to Wimbledon was to be made in three installments: (1) Graybox was to make an | Exhibit X to Wiechert Decl. at p. 4 ¶¶ (A)(1)(a)-(c). |

DEFENDANT KIARASH JAM'S STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW

| | |
|---|---|
| initial $2,412,000 payment on the date the Settlement Agreement was executed; (2) SIP was to pay $5 million within 30 days of the Settlement Agreement's execution; and (3) SIP was to pay an additional $2 million within twelve months of the Settlement's execution. | |
| (32) The third installment payment SIP was to make was secured by a consent judgment against Bergstein and in favor of Wimbledon. | Exhibit X to Wiechert Decl. at p. 4 ¶ (A)(1)(c). |
| (33) The Settlement Agreement provided that if the first two installments were paid, Wimbledon would release Bergstein, Graybox, and SIP, along with all other parties to the instant lawsuit except for Jam and Integrated Administration. | Exhibit X to Wiechert Decl. at p. 5 ¶ 5, pp. 6-7 ¶ (B)(1). |
| (34) Jam and Integrated Administration would be released only if the third installment (SIP's additional payment of $2 million) was paid. | Exhibit X to Wiechert Decl. at p. 7 ¶ (B)(2). |
| (35) Graybox made the first installment payment, and SIP, using Bergstein's personal funds and assets (and the assets of his entities) made the second installment payment. | Exhibit Y to Wiechert Decl. at pp. 5-6 |
| (36) Accordingly, Wimbledon released Bergstein, Graybox, SIP, and all other parties except Jam and Integrated Administration. | Exhibit Y to Wiechert Decl. at p. 6; Exhibit DD to Wiechert Decl. |
| (37) SIP's final $2 million installment payment was never made. | Exhibit Y to Wiechert Decl. at p. 6. |
| (38) Even though Wimbledon had an active complaint alleging Jam was the alter ego of SIP, it did not invite Jam to the negotiations of the Settlement Agreement and indeed Jam was in no way involved in the negotiations which culminated in the Settlement Agreement's execution. | Jam Decl. at ¶ 10. |
| (39) Jam did not learn about the Settlement Agreement's existence or that there were | Jam Decl. at ¶ 10. |

DEFENDANT KIARASH JAM'S STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW

| | |
|---|---|
| even settlement negotiations until the Settlement Agreement was presented as evidence in Bergstein's criminal trial in February 2018. | |
| (40) Due to his pending appeal in that case, Bergstein is unavailable as a witness here. | Wiechert Decl. at ¶ 32. |

## II.   CONCLUSIONS OF LAW

### A.   Motion for Summary Judgment Standard

1.     Federal Rule of Civil Procedure 56(a) permits "[a] party [to] move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." A motion for summary judgment should be granted if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

2.     The moving party without the burden of persuasion "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets this initial burden, the nonmoving party must identify "specific facts showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). However, "the mere existence of a scintilla of evidence supporting the non-moving party's position" will not defeat a motion for summary judgment. *Peliculas Y Videos Internacionales*, 302 F. Supp. 2d at 1333-34 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The non-moving party must produce evidence or point to specific facts upon which a jury could reasonably find for them. *Anderson*, 477 U.S. at 252.

### B.   Choice-of-Law

3.     Under *Van Dusen v. Barrack*, 376 U.S. 612 (1964) and *Ferens v. John Deere Co.*, 494 U.S. 516 (1990), the substantive laws of the forum state where a federal diversity suit was originally filed will still govern after the case is transferred under 28 U.S.C §

DEFENDANT KIARASH JAM'S STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW

1404(a) since a § 1404(a) venue transfer results only in "a change of courtrooms," and not a change of law. *Ferens*, 494 U.S. at 531; *Van Dusen*, 376 U.S. at 637; *Ravelo Monegro v. Rosa*, 211 F.3d 509, 513 n. 3 (9th Cir. 2000).

4.   Because Wimbledon originally filed suit against Jam in United States District Court for the Southern District of Texas, and the case was transferred to this Court, pursuant to 28 U.S.C. § 1404(a), on April 4, 2016, Texas substantive law governs Wimbledon's claims.

5.   Alternatively, the law of a corporation's state of incorporation governs whether that corporate form can be disregarded. *See Amoco Chem. Co. v. Tex Tin Corp.*, 925 F. Supp. 1192, 1201 (S.D. Tex. 1996) *citing* Restatement (Second) of Conflict of Laws §§ 307, 309 (1971) ("The Court looks to the law of the State of incorporation for each corporate defendant to determine whether its corporate entity should be disregarded.") (brackets omitted).

6.   Here, because SIP was incorporated under Texas law, Texas law is to be applied to determine whether SIP's corporate form is to be disregarded.

**C.   Wimbledon's Alter-ego Claims**

7.   Under Texas law, a claim of alter-ego requires "[1] a unity between the corporation and the individual to the extent that the corporation's separateness has ceased, and [2] holding only the corporation liable would be unjust." *Endsley Elec., Inc. v. Altech, Inc.*, 378 S.W.3d 15, 23 (Tex. App. – Texarkana 2012).

8.   Texas law requires the purported alter-ego of a corporation be a shareholder of that corporation. *See Bollore S.A. v. Import Warehouse, Inc.*, 448 F.3d 317, 325 (5th Cir. 2006) ("The great weight of Texas precedent indicates that, for the alter ego doctrine to apply against an individual under this test, the individual must own stock in the corporation."); *Permian Petroleum Co. v. Petroleos Mexicanos*, 934 F.2d 635, 643 (5th Cir. 1991) ("Texas courts will not apply the alter ego doctrine to directly or reversely pierce the corporate veil unless one of the 'alter egos' owns stock in the other."); *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986) (stating that to be considered

DEFENDANT KIARASH JAM'S STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW

a corporation's alter-ego, an individual must have "ownership and control" over the corporation).

9.      Jam was never a shareholder in SIP, and therefore cannot be its alter-ego. At its inception, SIP stock was held, or was intended to be held, by two entities/persons: Owari Opus, Inc., which owned 87.5%, and Jerry Swartz, who was to own 12.5%. Bergstein was the sole owner of Owari Opus, Inc. Furthermore, Jam was never issued and never possessed a stock certificate indicating ownership in SIP.

10.      Alternatively, Jam is entitled to summary judgment because he did not exercise the perquisite dominance and control over SIP required under Texas law.

11.      As noted above, the two elements of an alter-ego claim under Texas law are "[1] a unity between the corporation and the individual to the extent that the corporation's separateness has ceased, and [2] holding only the corporation liable would be unjust." *Endsley Elec., Inc.*, 378 S.W.3d at 23. As to the first element, the factors Texas courts weigh in determining whether there is an inextricable unity between the individual and the corporation are "the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes." *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 229 (Tex. 1990). In other words, Texas courts look to see whether an individual "owns or controls the corporate entity and operates the company in a manner indistinguishable from his personal affairs and in a manner calculated to mislead those dealing with him to their detriment." *Lisanti v. Dixon*, 147 S.W.3d 638, 644 (Tex. App. – Dallas 2004).

12.      Jam's involvement in SIP was meager and was limited to executing the Note Purchase Agreement, Reference Notes, and Side Letter. Bergstein directed Jam to execute these papers, and Jam was the signor only because he happened that day to have the easiest access to a computer printer and scanner. Moreover, Jam was not a shareholder in SIP, was not a signatory on SIP's bank accounts, and never directed transfers of monies

DEFENDANT KIARASH JAM'S STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW

from SIP's accounts. Furthermore, while he executed the Note Purchase Agreement and side letter as SIP's Vice President, this was incorrect as Jam was never formally named as SIP's Vice President. However, even if Jam was Vice President, that fact in and of itself is not in any determinative of whether Jam is SIP's alter-ego. *See Nichols v. Tseng Hsiang Lin*, 282 S.W.3d 743, 747 (Tex. App. – Dallas 2009) ("An individual's standing as an officer, director, or majority shareholder of an entity alone is insufficient to support a finding of alter ego.").

13.    Alternatively, even if Jam is found to be SIP's alter-ego, Wimbledon has already settled its claims against Jam given that it settled with SIP via the Settlement Agreement.

14.    Texas law does not consider a corporation and its alter-ego to be akin to joint tortfeasors. *See Lewis v. Exxon Co., USA*, 786 S.W.2d 724, 732 (Tex. App. – El Paso 1989) *abrogated on other grounds by Ruiz v. Conoco, Inc.*, 868 S.W.2d 752 (Tex. 1993) ("Lewis' amended petition merely alleges that the Holts operated H&H Trucking, Inc., as their 'alter-ego' . . . Under these allegations, H&H Trucking, Inc., would be liable if at all, only on a respondeat superior theory, and the Holts would be liable, if at all, following a finding of liability on the part of H&H Trucking only on a theory of alter ego, neither of which is sufficient to characterize them as 'alleged joint tort-feasors' . . ."). Thus, Texas's abrogation of the common law rule which precluded a plaintiff from pursuing claims against other joint tortfeasors after settling and releasing another joint tortfeasor is not applicable to a corporation/alter-ego situation.

15.    Under Texas law, the settlement and release of a corporation equates to the settlement and release of its alter-ego, and vice versa. This notion is consistent with the underlying principles of piercing the corporate veil under an alter-ego theory, which presumes that there is no actual separation between the corporation and the individual owner/shareholder and that the two are actually one and the same. *See Richard Nugent and CAO, Inc. v. Estate of Ellickson*, 543 S.W.3d 243, 264 (Tex. App. – Houston 2018) ("The concept of alter ego, as typically applied in the corporate context, collapses the

distinction between a corporation and its shareholder or shareholders by treating them as one and the same for liability purposes."). It logically flows then that to settle with one is to settle with the other given that there actually is no corporation – it is just an individual acting under the guise of a corporate form.

16. Therefore, assuming Jam is SIP's alter-ego is to assume that Jam and SIP are one and the same, when Wimbledon released SIP via the Settlement Agreement, it equally settled with Jam, thus meaning Wimbledon's current claim that Jam is liable for SIP's obligations have been settled and released.


Respectfully submitted,


Dated: April 10, 2019          LAW OFFICE OF DAVID W. WIECHERT

                               By: */s/ David W. Wiechert*

                               David W. Wiechert
                               Jahnavi Goldstein
                               William J. Migler
                               Attorneys for Defendants
                               Kiarash Jam and Integrated Administration, Inc.

DEFENDANT KIARASH JAM'S STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW